1  KEKER & VAN NEST LLP
   ASHOK RAMANI - #200020
2  aramani@kvn.com
   MICHAEL S. KWUN - #198945
3  mkwun@kvn.com
   DAN JACKSON - #216091
4  djackson@kvn.com
   SHARIF E. JACOB - #257546
5  sjacob@kvn.com
   EDWARD A. BAYLEY - #267532
6  ebayley@kvn.com
   633 Battery Street
7  San Francisco, CA 94111-1809
   Telephone:    415 391 5400
8  Facsimile:    415 397 7188

9  Attorneys for Plaintiff, Counter-Defendant,
   and Counter-Claimant, NETFLIX, INC.

10              UNITED STATES DISTRICT COURT

11       NORTHERN DISTRICT OF CALIFORNIA--OAKLAND DIVISION

12

13  NETFLIX, INC.,                          Case No. 4:11-CV-6591 PJH

14              Plaintiff, Counter-Defendant,    **REDACTED VERSION OF MOTION FOR
                and Counter-Claimant,            SUMMARY JUDGMENT OF
                                                 INVALIDITY UNDER 35 U.S.C. § 101**
15       v.
                                                 Date:      January 21, 2015
16  ROVI CORPORATION; ROVI                       Time:      9:00 a.m.
    TECHNOLOGIES CORPORATION; ROVI              Dept.:      Courtroom 3, 3rd Floor
17  GUIDES, INC. (f/k/a GEMSTAR-TV               Judge:     Hon. Phyllis J. Hamilton
    GUIDE INTERNATIONAL); and UNITED
18  VIDEO PROPERTIES, INC.,

19              Defendants;                       Complaint Filed:    December 21, 2011

20  ROVI CORPORATION; ROVI                        Trial Date:         None
    TECHNOLOGIES CORPORATION; ROVI
21  GUIDES, INC. (f/k/a GEMSTAR-TV                **REDACTED VERSION OF DOCUMENT
    GUIDE INTERNATIONAL); UNITED                  SOUGHT TO BE SEALED**
22  VIDEO PROPERTIES, INC.; APTIV
    DIGITAL, INC.; and STARSIGHT
23  TELECAST, INC.,

24              Counter-Claimants; and

25  ROVI CORPORATION; UNITED VIDEO
    PROPERTIES, INC.; APTIV DIGITAL,
26  INC.; and STARSIGHT TELECAST, INC.,

27              Counter-Defendants.

28

886189

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................................1

II.    ARGUMENT ........................................................................................................3

    A.    The TV Guide Claims fail the *Alice* test and are invalid under § 101. ....................7

        1.    The TV Guide Claims are all directed to abstract ideas. .............................7

            a.    The asserted claims of the '962 patent are directed to the abstract idea of searching for shows using selectable categories. ...................................................................................8

            b.    The asserted claims of the '929 patent are directed to the abstract idea of categorizing shows using "combination categories." ..................................................................................9

            c.    The asserted claims of the '709 and '762 patents are directed to the abstract idea of identifying shows to watch based on a viewing history .........................................................10

        2.    There is nothing in the TV Guide Claims to transform the abstract ideas into patentable subject matter. ........................................................11

            a.    The '962 patent's claims add nothing to make them patentable. ...................................................................................12

            b.    The '929 patent's claims add nothing to make them patentable. ...................................................................................13

            c.    The '709 patent's claims add nothing to make them patentable. ...................................................................................14

            d.    The '762 patent's claims add nothing to make them patentable. ...................................................................................14

    B.    The '906 Claims also fail the *Alice* test and are therefore invalid under § 101..................................................................................................15

III.    CONCLUSION..................................................................................................19

**APPENDIX** ...................................................................................................20

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

<u>**Federal Cases**</u>

4

*Accenture Global Servs., GmbH v. Guidewire Software, Inc.*
   728 F.3d 1336 (Fed. Cir. 2013)...................................................................... 5, 14

5

*Alice Corp. Pty. v. CLS Bank International*
   134 S. Ct. 2347 (2014) ............................................................................. *passim*

6

*AmDocs (Israel) Ltd v. Openet Telecom, Inc.*
   No. 1:10cv910, 2014 WL 5430956 (E.D. Va. Oct. 24, 2014) ........................... 6

7

8

*Bancorp Serv. v. Sun Life Assur. Co.*
   687 F.3d 1266 (Fed. Cir. 2012)............................................................................ 5

9

*Bilski v. Kappos*
   561 U.S. 593 (2010) ............................................................................... 1, 3, 4, 5

10

11

*buySAFE, Inc. v. Google, Inc.*
   765 F.3d 1350 (Fed. Cir. 2014)............................................................................ 5

12

*CMG Financial Services, Inc. v. Pacific Trust Bank, F.S.B.*
   No. CV 11-10344 PSG (C.D. Cal. Aug. 29, 2014).............................................. 7

13

*Cogent Med., Inc. v. Elsevier Inc.*
   C-13-4479-RMW, 2014 WL 4966326 (N.D. Cal. Sept. 30, 2014).............. 2, 6, 7, 11

14

15

*Comcast IP Holdings I, LLC v. Sprint Commc'ns Co. L.P.*
   CV 12-205-RGA, 2014 WL 3542055 (D. Del. July 16, 2014)............................ 7

16

17

*Compression Tech. Solutions LLC v. EMC Corp.*
   557 Fed. Appx. 1001 (Fed. Cir. Mar. 10, 2014) *aff'g* No. C-12-01746, RMW, 2013
   WL 2368039 (N.D. Cal. May 29, 2013) ............................................................. 5

18

19

*Cyberfone Sys., LLC v. CNN Interactive Grp., Inc.*
   2014 WL 718153 (Fed. Cir. Feb. 26, 2014) ........................................................ 5

20

*CyberSource Corp. v. Retail Decisions, Inc.*
   654 F.3d 1366 (Fed. Cir. 2011).................................................................. *passim*

21

22

*DDR Holdings, LLC v. Hotels.com, L.P.*
   No. 2013-1505, 2014 WL 6845152 (Fed. Cir. Dec. 5, 2014) ........................... 19

23

*Dealertrack, Inc. v. Huber*
   674 F.3d 1315 (Fed. Cir. 2012)............................................................................ 5

24

25

*Diamond v. Diehr*
   450 U.S. 175 (1981) ..................................................................................... 4, 18

26

*DietGoal Innovations LLC v. Bravo Media LLC*
   13 CIV. 8391 PAE, 2014 WL 3582914 (S.D.N.Y. July 8, 2014)................... 7, 14

27

28

886189

*Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*
 758 F.3d 1344 (Fed. Cir. 2014)........................................................... 3, 5, 6, 16

*Eclipse IP LLC v. McKinley Equip. Corp.*
 No. SACV 14-742-GW(AJWx), 2014 WL 4407592 (C.D. Cal. Sept. 4, 2014)...................... 7

*Enfish, LLC v. Microsoft Corp.*
 No. 2:12-cv-07360-MRP-MRW, 2014 WL 5661456 (C.D. Cal. Nov. 3, 2014) ...................... 7

*Every Penny Counts, Inc. v. Wells Fargo Bank, N.A.*
 No. 8:11-cv-2826-T-23TBM (M.D. Fla. Sept. 11, 2014) ........................................... 7

*Fort Prop., Inc. v. Am. Master Lease LLC*
 671 F.3d 1317 (Fed. Cir. 2012)................................................................... 5

*Gametek LLC v. Zynga, Inc.*
 No. CV-13-2546 RS, 2014 WL 1665090 (N.D. Cal. Apr. 25, 2014) ............................... 7

*Gottschalk v. Benson*
 409 U.S. 63 (1972).......................................................................... 4, 8, 10, 11

*I/P Engine v. AOL Inc.,* No. 2013-1307, 2013-1313,
 2014 WL 3973501 (Fed. Cir. Aug. 15, 2014) ................................................... 12

*In re Roslin Inst. (Edinburgh)*
 750 F.3d 1333 (Fed. Cir. 2014)................................................................... 3

*Le Roy v. Tatham*
 55 U.S. 156 (1852)............................................................................... 4

*Loyalty Conversion Sys. Corp. v. American Airlines, Inc.*
 No. 2:13-CV-655 (E.D. Tex. Sept. 3, 2014) ..................................................... 7

*Mayo Collaborative Services v. Prometheus Laboratories, Inc.*
 132 S. Ct. 1289 (2012) ..................................................................... 5, 12, 15

*McRO, Inc. v. Atlus U.S.A.,* SACV 13-1870-GW FFMX,
 2014 WL 4772196 (C.D. Cal. Sept. 22, 2014) ................................................... 6

*Open Text S.A. v. Alfresco Software Ltd.*
 No. 13-cv-04843-JD, 2014 WL 4684429 (N.D. Cal. Sept. 19, 2014) ............................ 6, 7, 14

*Parker v. Flook*
 437 U.S. 584 (1978)...................................................................... 4, 9, 10, 11, 18

*Planet Bingo, LLC v. VKGS LLC*
 No. 2013-1663, 2014 WL 4195188 (Fed. Cir. Aug. 26, 2014) ................................... 6

*Tuxis Techs., LLC v. Amazon.com, Inc.*
 No. 13-1771-RGA (D. Del. Sept. 4. 2014) ..................................................... 7

*Ultramercial, Inc. v. Hulu, LLC*
 No. 2010-1544, 2014 WL 5904902 (Fed. Cir. Nov. 14, 2014) ........................... *passim*

*Walker Digital, LLC v. Google, Inc.*
 C.A. No. 11-318-LPS, 2014 WL 4365245 (D. Del. Sept. 3, 2014)............................... 7

iii

886189

**<u>Federal Statutes</u>**

35 U.S.C. § 101 ................................................................................................................ *passim*

**<u>Federal Rules</u>**

Fed. R. Civ. P. 56(a) ................................................................................................................ 3

REDACTED VERSION OF MSJ OF INVALIDITY UNDER 35 U.S.C. § 101
Case No. 4:11-CV-6591 PJH

886189

PLEASE TAKE NOTICE that plaintiff, counter-defendant, and counter-claimant Netflix, Inc. ("Netflix") will, and hereby does, move for summary judgment, which motion will be heard in the above-captioned Court on January 21, 2015, at 9:00 a.m., or as soon thereafter as the Court may order.

Netflix moves for summary judgment of invalidity under 35 U.S.C. § 101.  Although the Court's standing order permits only one such motion, at the initial case-management conference, the Court indicated that the parties may be permitted to file at least two such motions because of the number of patents that are at issue in this case.  Should the Court not grant Netflix's motion in its entirety, Netflix will seek leave to file at least one additional motion for summary judgment.

## I.    INTRODUCTION

In a series of cases culminating earlier this year in *Alice Corp. Pty. v. CLS Bank International,* 134 S. Ct. 2347 (2014), the Supreme Court has declared unambiguously that patent claims that merely cover abstract ideas are invalid as a matter of law under 35 U.S.C. § 101. Where, as here, a claim is drawn to an abstract idea, the Court must "search for an inventive concept" as a "threshold test" of patentability.  *Alice*, 134 S. Ct. at 2355; *Bilski v. Kappos*, 561 U.S. 593, 602 (2010).  A claim cannot pass that test by reciting generic computer technology and using technical jargon.  *See Alice*, 134 S. Ct. at 2358.

Claims, like Rovi's, that offer nothing more than computer-implemented abstract ideas— such as recommending shows based on one's own viewing history or searching for shows using categories—fail that threshold test of patentability and do not merit any further expenditure of precious time and resources.  *See id.*  As Judge Mayer noted in a recent concurring opinion, "the section 101 determination bears some of the hallmarks of a jurisdictional inquiry," and "addressing section 101 at the outset of litigation will have a number of salutary effects." *Ultramercial, Inc. v. Hulu, LLC,* No. 2010-1544, 2014 WL 5904902, at *8 (Fed. Cir. Nov. 14, 2014).  Addressing section 101 at an early stage allows "basic deficienc[ies]" to be revealed before courts needlessly devote judicial resources to a case.  *Id.*  Addressing section 101 early also "provides a bulwark against vexatious infringement suits," by allowing dismissal of meritless suits before substantial sums and effort have been expended on wide-ranging discovery.  *Id.*  An

1    early determination also benefits the public, because "[s]ubject matter eligibility challenges

2    provide the most efficient and effective tool for clearing the patent thicket, weeding out those

3    patents that stifle innovation and transgress the public domain." *Id.* at *9.  In post-*Alice*

4    decisions, district courts have time and again—often early in the case before claim construction

5    and discovery—found computer-implemented patent claims invalid for failure to claim patentable

6    subject matter.

7         The patent claims asserted by Rovi fall into two categories.  The first category, which

8    accounts for the asserted claims of all but one of the asserted patents, consists of claims reciting

9    ways to identify television shows to watch or record.  As a convenient shorthand, these are

10   referred to as the "TV Guide Claims."[1]  The second category consists of the asserted claims (1-3,

11   6, 8, and 10-11) of the '906 patent (the "'906 Claims").  The '906 Claims are discussed separately

12   because they do not relate to identifying TV shows, but to bookmarking across devices with

13   different capabilities.

14        The TV Guide Claims, when stripped of technical jargon and generic computing elements,

15   as *Alice* instructs, all claim abstract ideas for identifying television shows to watch or record.

16   People have been using these abstract ideas since the advent of television, whether purely in their

17   minds or through use of pen and paper.  People have long used TV Guide, first published as "The

18   TeleVision Guide" in 1948 by Rovi's predecessor.  The very idea of identifying something to

19   watch on television is simply a particular example of the even more abstract idea of searching for

20   material of interest—as, for example, visitors to libraries have done for millennia.  As Judge

21   Whyte recently held, the idea of searching a library for items of interest to the user is abstract and

22   unpatentable under § 101.  *See Cogent Med., Inc. v. Elsevier Inc.*, C-13-4479-RMW, 2014 WL

23   4966326, at *4-*6 (N.D. Cal. Sept. 30, 2014).

24        The '906 Claims are also invalid under § 101.  The '906 Claims recite methods for

---

[1] Specifically, the "TV Guide Claims" are: Claims 1, 3, 5-6, 9-10, 13-14, 16, 18-19, 23-24, and 26-27 of Patent No. 7,974,962 ("the '962 patent"); Claims 11-14, and 16-20 of Patent No. 7,945,929 ("the '929 patent"); Claims 13-20 of Patent No. 7,065,709 ("the '709 patent"); and Claims 1, 6, 13, 15, and 17 of Patent No. 6,898,762 ("the '762 patent").  These patents, along with the other patent-in-suit, Patent No. 7,103,906 ("the '906 patent"), are attached as Exhs. A-E to the accompanying Declaration of Michael S. Kwun.  Exhibit references hereafter are to the Kwun Declaration.

delivering media to one device, bookmarking the media, then resuming delivery to a different device, potentially using a different format.  But the inventors frankly—and fatally—admitted that *every* element of their claims of any specificity whatsoever was already conventional.  *See* Exh. H at RVNF00003035-36.  The *only* thing supposedly inventive about the claims, according to the inventors themselves, was the idea of ███████████████████████████████████ ███████████████████████  *Id.* at RVNF0003036.  That, however, is nothing more than the abstract idea of bookmarking across devices.  Nor did the inventors claim any particular inventive technological advance for implementing that idea; they merely identified the abstract idea as a desirable goal and, on that basis alone, claimed as their own all possible ways of achieving it. This functional claiming is exactly what *Alice* prohibits.  *See* 134 S. Ct. at 2354.

Thus, for the reasons detailed below, the Court should grant summary judgment to Netflix because all of Rovi's asserted claims are invalid under § 101.

## II.     ARGUMENT

Rule 56 provides that the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The validity of the asserted claims under § 101 is a "threshold" issue for the Court to decide as a matter of law.  *Bilski*, 561 U.S. at 602; *see also*, *e.g.*, *Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*, 758 F.3d 1344, 1348 (Fed. Cir. 2014); *In re Roslin Inst. (Edinburgh)*, 750 F.3d 1333, 1335 (Fed. Cir. 2014).  This threshold inquiry should be addressed "at the outset of litigation," and may be accomplished without "formal claim construction" where the asserted claims disclose "no more than an abstract idea garnished with accessories."  *Ultramercial*, 2014 WL 5904902, at *8 (Mayer, J., concurring) (quotation marks and citation to district court opinion omitted).

Section 101 provides that "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title."  35 U.S.C. § 101.  The Supreme Court has "long held that this provision contains an important implicit exception:  Laws of nature, natural phenomena, and abstract ideas are not patentable."  *Alice*, 134

S. Ct. at 2354 (quoting *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2107, 2116 (2013)).  Indeed, the law has excluded abstract ideas from patent protection for more than 160 years.  *See, e.g., Le Roy v. Tatham*, 55 U.S. 156, 174-75 (1852).

The rule against patenting abstract ideas has become especially important in the context of computer-related patents.  In *Gottschalk v. Benson*, for example, the Court held that a computerized method for converting binary-coded decimal numerals into pure binary numerals was not patentable; otherwise, "the patent would wholly pre-empt the mathematical formula and in practical effect would be a patent on the algorithm itself."  409 U.S. 63, 72 (1972).  In *Parker v. Flook*, the Court rejected as unpatentable a computerized method for sounding an alarm when parameters of a catalytic conversion process exceeded limits established by a mathematical formula.  437 U.S. 584, 594-96 (1978).  In contrast, in *Diamond v. Diehr,* 450 U.S. 175 (1981), the Court held that a computer-implemented method for curing rubber was patent eligible.  But as the Court explained in *Alice,* although the *Diehr* claim made use of a well-known formula, "it used that equation in a process designed to solve a technological problem in 'conventional industry practice.'" 134 S. Ct. at 2358 (quoting *Diehr,* 450 U.S. at 178 & n.3).  The *Diehr* invention's use of a thermocouple to record temperatures during processing that previously had been unmeasurable transformed the application of a conventional formula into an inventive application.  *Id.* (citing *Mayo,* 132 S. Ct. at 1299).  "In other words, the claims in *Diehr* were patent eligible because they improved an existing technological process, not because they were implemented on a computer."  *Id.*

More recently, in *Bilski,* the Court rejected claims to a computer implementation of "the basic concept of hedging" which "is a fundamental economic practice long prevalent in our system of commerce and taught in any introductory finance class."  561 U.S. at 611 (citation and quotation marks omitted).  Finally, in *Alice*, the Court rejected claims to a computerized process of "intermediated settlement," which is also a "long prevalent" concept and "a building block of the modern economy."  134 S. Ct. at 2356 (quoting *Bilski*, 561 U.S. at 611).

In *Alice*, the Court set forth a two-step test "for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of

those concepts." 134 S. Ct. at 2355.[2]  *First*, the Court must "determine whether the claims at issue are directed to one of those patent-ineligible concepts." *Id.*  If so, then **second**, the Court must "consider the elements of each claim both individually and as an ordered combination to determine whether the additional elements transform the nature of the claim into a patent-eligible application." *Id.* (citation and quotation marks omitted).  The Supreme Court describes this second step "as a search for an inventive concept—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.* (quotation marks and brackets omitted).  This "requires more than simply stating the abstract idea while adding the words 'apply it.'" *Id.* (quotation marks and brackets omitted).  It also requires more than the recitation of "well-understood, routine, conventional activity" or technology.  *Mayo*, 132 S. Ct. at 1294.  In particular, "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention," particularly given "the ubiquity of computers."  *Alice*, 134 S. Ct. at 2358.

After *Alice* was decided in June, the number of decisions invalidating computer-related patents under § 101—which was already on the rise after the Court's 2010 *Bilski* decision[3]—has skyrocketed.  The Federal Circuit has repeatedly invoked *Alice* to invalidate several patents in the past few months alone.  For example, on September 3, 2014, the Federal Circuit invalidated claims directed to a computer implementation of the abstract idea of a "transaction performance guaranty."  *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014).  In *Digitech*, the Federal Circuit affirmed the invalidity of "an ineligible abstract process of gathering and combining data."  758 F.3d at 1351.  "Without additional limitations, a process that employs mathematical algorithms to manipulate existing information to generate additional information is

---

[2] The *Alice* Court attributes the test to *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 132 S. Ct. 1289 (2012), but because *Alice* describes the test more explicitly than *Mayo* did, it is referred to here as the "*Alice* test."

[3] *See, e.g.*, *Compression Tech. Solutions LLC v. EMC Corp.*, 557 Fed. Appx. 1001 (Fed. Cir. Mar  10, 2014), *aff'g* No. C-12-01746 RMW, 2013 WL 2368039 (N.D. Cal. May 29, 2013); *Cyberfone Sys., LLC v. CNN Interactive Grp., Inc.*, 2014 WL 718153 (Fed. Cir. Feb. 26, 2014); *Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336 (Fed. Cir. 2013); *Bancorp Serv. v. Sun Life Assur. Co.*, 687 F.3d 1266 (Fed. Cir. 2012); *Dealertrack, Inc. v. Huber*, 674 F.3d 1315 (Fed. Cir. 2012); *Fort Prop., Inc. v. Am. Master Lease LLC*, 671 F.3d 1317 (Fed. Cir. 2012); *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366 (Fed. Cir. 2011).

not patent eligible." *Id*.  Recent non-precedential opinions further illustrate the trend.  *See, e.g.*, *Planet Bingo, LLC v. VKGS LLC*, No. 2013-1663, 2014 WL 4195188, at *2 (Fed. Cir. Aug. 26, 2014) (affirming invalidity of claims directed to computerized bingo game).

Likewise, district courts around the country have diligently applied *Alice* to invalidate claims under § 101.  It has occurred twice in this district alone.  In *Cogent*, Judge Whyte invalidated claims that—like Rovi's TV Guide Claims—involved methods for searching for content (in that case, medical literature) based on personalized criteria.  *See* 2014 WL 4966326, at *4-*6.  Judge Whyte found that those claims were drawn to "the abstract idea of maintaining and searching a library of information.  Given a database of information, the alleged invention catalogues the information and sets aside particular information that may be especially relevant based on the particular user."  *Id.* at *4.  That idea "is little different than the basic concept of organizing a physical library so that an individual can search for information by going to the relevant portion of the library and picking a book.  Should someone want preselected books, she can ask a librarian."  *Id.*  In *Open Text S.A. v. Alfresco Software Ltd.*, No. 13-cv-04843-JD, 2014 WL 4684429 (N.D. Cal. Sept. 19, 2014), Judge Donato invalidated claims reciting an electronic system for facilitating communications, finding that the claims recited a "commonplace and time-honored practice."  *Id.* at *4.

Other districts have followed suit and repeatedly invalidated patents as required by *Alice*.  In *McRO, Inc. v. Atlus U.S.A.*, SACV 13-1870-GW FFMX, 2014 WL 4772196 (C.D. Cal. Sept. 22, 2014), the court invalidated claims directed to methods for synchronizing animated characters' facial expressions and lip movements.  *Id.* at *8.  Although at "first blush," the claims did "not seem directed to an abstract idea," after excluding the elements that the patentee itself conceded to be known in the prior art, as *Alice* requires, all that was left was an unpatentable abstract idea.  *Id.* at *8-*11.  Even more recently, in *AmDocs (Israel) Ltd v. Openet Telecom, Inc.*, Judge Brinkema of the Eastern District of Virginia invalidated, on a Rule 12 motion, four patents that address the collection of network-usage information across a network.  No. 1:10cv910, 2014 WL 5430956 (E.D. Va. Oct. 24, 2014).  The claims were explicitly tied to machines and deployed technical language including "completing a plurality of data records from the filtered and

886189

aggregated network communications usage information" and "submitting queries to the database utilizing predetermined reports for retrieving information on the collection of the network usage information from the network devices." *Id.* at *8 (quoting '510 patent). Nonetheless, after "looking past the mere claim language," Judge Brinkema determined that the claims are "directed to the abstract idea of using a database to compile and report on network usage" and that the remaining claim language "does not add much" to that abstract idea. *Id.* at *6, *8. The list goes on.[4]

### A. The TV Guide Claims fail the *Alice* test and are invalid under § 101.

#### 1. The TV Guide Claims are all directed to abstract ideas.

As explained in more detail below, all of the TV Guide Claims are directed to abstract ideas for identifying television shows to watch or record. These abstract ideas are mere variation on the basic idea of the claims Judge Whyte invalidated in *Cogent*: "the abstract idea of maintaining and searching a library of information." 2014 WL 4966326, at *4.

The mere fact that a claim recites many elements does not render it concrete. Indeed, in *Ultramercial,* an eleven-step process was held to be abstract because the "ordered combination of steps recites an abstraction—an idea, having no particular concrete or tangible form." 2014 WL 5904902, at *4; *see also Gametek LLC v. Zynga, Inc.,* No. CV-13-2546 RS, 2014 WL 1665090, at *1 (N.D. Cal. Apr. 25, 2014) (holding—at the pleading stage—that a patent claiming "a method

---

[4] *See, e.g.*, *Enfish, LLC v. Microsoft Corp.,* No. 2:12-cv-07360-MRP-MRW, 2014 WL 5661456 (C.D. Cal. Nov. 3, 2014) (invalidating patents directed to an information management and database system with a particular index structure); *Every Penny Counts, Inc. v. Wells Fargo Bank, N.A.*, No. 8:11-cv-2826-T-23TBM (M.D. Fla. Sept. 11, 2014) (invalidating claims for "a method of and a system of automated saving or automated charitable giving"); *Eclipse IP LLC v. McKinley Equip. Corp.*, No. SACV 14-742-GW(AJWx), 2014 WL 4407592, at *11-*12 (C.D. Cal. Sept. 4, 2014) (invalidating claims to a "computer-based notification system"); *Tuxis Techs., LLC v. Amazon.com, Inc.*, No. 13-1771-RGA, slip op. (D. Del. Sept. 4. 2014) (invalidating claims to computer-implemented "upsell offer" process); *Walker Digital, LLC v. Google, Inc.*, C.A. No. 11-318-LPS, 2014 WL 4365245 (D. Del. Sept. 3, 2014) (invalidating claims to a computerized process for exchanging and controlling information); *Loyalty Conversion Sys. Corp. v. American Airlines, Inc.*, No. 2:13-CV-655, slip op. (E.D. Tex. Sept. 3, 2014) (invalidating claims to computerized loyalty rewards system); *CMG Financial Services, Inc. v. Pacific Trust Bank, F.S.B.*, No. CV 11-10344 PSG (MRWx) (C.D. Cal. Aug. 29, 2014) (invalidating claims to system for automated account transactions); *Comcast IP Holdings I, LLC v. Sprint Commc'ns Co. L.P.*, CV 12-205-RGA, 2014 WL 3542055 (D. Del. July 16, 2014) (invalidating claims for a method of network optimization); *DietGoal Innovations LLC v. Bravo Media LLC*, 13 CIV. 8391 PAE, 2014 WL 3582914, at *3 (S.D.N.Y. July 8, 2014) (invalidating claims for "computerized meal planning").

REDACTED VERSION OF MSJ OF INVALIDITY UNDER 35 U.S.C. § 101
Case No. 4:11-CV-6591 PJH

886189

by which a game operator can offer additional items to players for purchase mid-game without interrupting play [process]" was an unpatentable abstract idea even though the method contained twelve steps).  Moreover, at step one of the *Alice* test, even the "addition of merely novel or non-routine components to the claimed idea" does not perforce "turn[] an abstraction into something concrete."  *Ultramercial,* 2014 WL 5904902, at *4.

a.     **The asserted claims of the '962 patent are directed to the abstract idea of searching for shows using selectable categories.**

The asserted claims of the '962 patent are directed to the abstract idea of "searching for shows" using "selectable categories."  Exh. A, '962 patent, claim 1; *see also id.*, claims 3, 5-6, 9-10, 13-14, 16, 18-19, 23-24, 26-27. Consider claim 1 of the '962 patent, which is representative:

> A method for searching for shows comprising:
>
> > providing a search engine application;
> >
> > receiving one or more characters in said search engine application, wherein said one or more characters are entered in an alpha-numeric input area;
> >
> > matching said characters using said search engine application to one or more database entries;
> >
> > providing results corresponding to said database entries in a results listing, wherein said results comprise one or more show listings and one or more selectable categories of shows;
> >
> > receiving a user selection from said results listing of one of said selectable categories;
> >
> > providing at least one additional show listing corresponding to said selected selectable category in response to the user selection of said selected selectable category; and
> >
> > enabling a user to perform an action by selecting one of said at least one additional show listings.

*Id.*, claim 1.

Users of TV Guide and its equivalents have been searching for shows ever since such publications first appeared, nearly seventy years ago: looking through the program listings for a show of interest.  *See* Exh. F (showing example of TV Guide listings grid from 1996).  Both the Supreme Court and the Federal Circuit have made clear that a claim that "can be performed in the human mind, or by a human using a pen and paper . . . is merely an abstract idea and is not patent-eligible under § 101."  *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372-73 (Fed. Cir. 2011); *see also Benson*, 409 U.S. at 67-72 (claim that "can be done mentally" was

1  directed to an abstract idea); *Flook,* 437 U.S. at 586 ("the computations can be made by pencil

2  and paper calculations").

3          Nor can Rovi rely on language in the claims requiring that some search results be grouped

4  into "selectable categories."  Humans have long used such categories in making

5  recommendations.  For example, if asked for recommended children's books, a librarian might

6  well suggest reading *Charlotte's Web* and *The Little Prince* (individual books) and the *Narnia*

7  series (a category).  If a friend is looking for science-fiction movies, one might respond with

8  *Avatar* and *Gravity* (individual movies) and the *Star Wars* series (a category).  Grouping some

9  recommendations into categories is entirely conventional.  Further, groupings are merely the

10  manipulation of computer data.  "[B]ecause they are not physical objects or substances, and they

11  are not representative of physical objects or substances," such categorization cannot save Rovi's

12  claims.  *Ultramercial,* 2014 WL 5904902, at *6 (quoting *Bilski,* 545 F.3d at 963); *see also*

13  *CyberSource,* 654 F.3d at 1370 (holding that "the mere collection and organization of data" is

14  insufficiently transformative to satisfy the demands of § 101).

15          The claims of the '962 patent, therefore, are drawn to an abstract idea, according to step

16  one of the *Alice* test.

17                      **b.      The asserted claims of the '929 patent are directed to the**
                                **abstract idea of categorizing shows using "combination**
18                              **categories."**

19          The asserted claims of the '929 patent are directed to the abstract idea of categorizing

20  shows using "combination categories"—categories like "spooky comedies," or "science-fiction

21  dramas."  Claim 11 is representative of the asserted claims:

22          A system for locating programs of interest to a user, the system comprising:

23              a receiver that receives a plurality of program listings, wherein at least one of
                  the program listings is associated with two or more simple categories; and

24              a processor that generates at least one combination category by:

25                  identifying the two or more simple categories associated with the at least
                      one program listing; and

26                  combining at least a subset of the identified simple categories associated
27                      with the at least one program listing into the at least one combination
                        category, wherein the combination category comprises more than one
                        of the identified simple categories.
28

886189

1    Exh. B, '929 patent, claim 11; *see also id.,* claims 12-14, 16-20.[5]

2           Categorization is one of the most basic functions of the human (indeed, any) brain.  Fans

3    of rom-coms (romantic comedies) have known since long before *When Harry Met Sally* how to

4    categorize using "combination categories" using nothing more than their minds.  Because

5    everything in these claims "can be done mentally" by anyone with a TV Guide, the claims are

6    directed to an abstract idea.  *Benson*, 409 U.S. at 67-72; *see also Alice*, 134 S. Ct. at 2355-57;

7    *Flook*, 437 U.S. at 586-96; *CyberSource*, 654 F.3d at 1372-73.

8                          **c.      The asserted claims of the '709 and '762 patents are directed to
                                   the abstract idea of identifying shows to watch based on a
9                                    viewing history.**

10          The asserted claims of the '709 patent are directed to the abstract idea of identifying

11   shows to watch based on a viewing history. Claim 13 is representative:

12          A method for use in an interactive program guide system for providing a
            customized viewing experience to a user, comprising:
13
                    generating a viewing history database comprising program listings and
14                       associated program criteria;

15                  determining at least one of the associated program criteria from the viewing
                         history database that meets a user preference profile;
16                  determining from a program listing database a set of programs not yet
                         watched;
17
                    applying the at least one of the associated program criteria to the set of
18                       programs not yet watched to generate at least one personal viewing
                         recommendation; and
19                  providing the personal viewing recommendation to a user.

20   Exh. C, '709 patent, claim 13; *see also id.,* claims 14-20.  These claims merely computerize what

21   people have long done based on nothing other than their own memories of what they have already

22   seen, their personal preferences, and readily-available program listings.  Thus, the claims are

23   directed to a patent-ineligible abstract idea.  *See, e.g.*, *Alice*, 134 S. Ct. at 2355-57; *Flook*, 437

24   U.S. at 586-96; *Benson*, 409 U.S. at 67-72; *CyberSource*, 654 F.3d at 1372-73.

25   _____
     [5] It is immaterial to the patentability analysis under § 101 whether the claims recite a "system" or
26   a "method."  *See Alice*, 134 S. Ct. at 2360.  The Supreme Court has long warned against making
     patent eligibility depend on the draftsman's art.  *Id.*  "Holding that the system claims are patent
27   eligible would have exactly that result."  *Id.*  Moreover, as in *Alice*, the system claims here "are
     no different from the method claims in substance."  *Id.*  The so-called "systems" are "purely
28   functional and generic.  Nearly every computer will include" elements "capable of performing the
     basic calculation, storage, and transmission functions" recited in the system claims.  *Id.*

The '762 patent shares a common specification with the '709 patent, and the asserted

claims of the '762 patent are likewise directed to the abstract idea of identifying shows to watch

based on a viewing history:

> A method for use in a client-server interactive television program guide system for tracking a user's viewing history, comprising:
>
>> tracking a user's viewing history;
>>
>> storing the user's viewing history on a program guide server;
>>
>> finding programs with the program guide server that are consistent with the user's viewing history;
>>
>> determining, with the program guide server, whether the programs found by the program guide server were not previously viewed on user television equipment; and
>>
>> displaying, with a program guide client implemented on the user television equipment, a display of program titles, wherein the display:
>>
>>> includes the programs found by the program guide server, wherein some of the programs have been previously viewed on the user television equipment and some of the programs have not been previously viewed on the user television equipment; and
>>>
>>> visually distinguishes the programs determined by the program guide server to have been previously viewed from the programs that have not been previously viewed.

Exh. D, '762 patent, claim 1; *see also id.,* claims 6, 13, 15, 17.  As with the '709 patent, these

claims identify shows to watch based on what the user has previously watched.  Again, equivalent

steps "can be performed in the human mind, or by a human using a pen and paper," and a TV

Guide.  *CyberSource*, 654 F.3d at 1372-73; *see also Flook*, 437 U.S. at 586-96; *Benson*, 409 U.S.

at 67-72.

In sum, the TV Guide Claims are drawn to abstract ideas that are just as unpatentable as

the "abstract idea of maintaining and searching a library of information."  *Cogent*, 2014 WL

4966326, at *4.  Because these claims are directed to abstract ideas, we must proceed to step two

of the *Alice* test.  *See id.* at *4-*6; *Alice*, 134 S. Ct. at 2355.

### 2.   There is nothing in the TV Guide Claims to transform the abstract ideas into patentable subject matter.

At *Alice*'s second step, "we must examine the elements of the claim to determine whether

it contains an inventive concept sufficient to transform the claimed abstract idea into a patent-

eligible application."  134 S. Ct. at 2357 (quotation marks omitted).  None of the asserted claims

contains any such inventive concept.  On the contrary, the claims do nothing more than recite "well-understood, routine, conventional activity." *Mayo*, 132 S. Ct. at 1294.

Nor can limiting the claims to a "particular technological environment," such as a set-top box or interactive program guide, save a claim. *Alice,* 134 S. Ct. at 2358  "Any transformation from the use of computers or the transfer of content between computers is merely what computers do and does not change the analysis." *Ultramercial,* 2014 WL 5904902, at *6.

> **a.      The '962 patent's claims add nothing to make them patentable.**

None of the elements of the asserted claims of the '962 patent transforms the abstract idea of searching for shows using selectable categories into patentable subject matter.  For example, the claims recite a "search engine" that uses alpha-numeric user input. *See* Exh. A, '962 patent, claims 1, 3, 5-6, 9-10, 13-14, 16, 18-19, 23-24, 26-27.  But the claims are not drawn to any particular search engine, and certainly do not "purport to improve the functioning of" any search engine. *Alice*, 134 S. Ct. at 2359.  They simply recite a generic search engine, which is non-inventive. *See id.*  Indeed, Judge Mayer made precisely this point in his concurrence in *I/P Engine v. AOL Inc.:*  A system that uses a search engine to filter "information for relevance to a user's query … ***does not pass muster under section 101***." No. 2013-1307, 2013-1313, 2014 WL 3973501, at *11 (Fed. Cir. Aug. 15, 2014) (Mayer, J., concurring) (emphasis added).  Given that "the use of search engines was well-established" in 1998, when the patent at issue in *I/P Engine* was filed, *id.*, it is beyond dispute that search engines were well-known and non-inventive when the '962 patent was filed, on January 6, 2005. *See* Exh. A, '962 patent at 1.[6]

Likewise, considered as an ordered combination, the claims "add nothing that is not already present when the steps are considered separately." *Alice*, 134 S. Ct. at 2359 (quotation marks, brackets and ellipses omitted).  Again, the claims neither specify, nor purport to improve

---

[6] Judge Mayer's analysis illustrates that, as the Supreme Court has recognized, "the § 101 patent-eligibility inquiry and, say, the § 102 novelty inquiry might sometimes overlap." *Mayo*, 132 S. Ct. at 1304; *see also id.* at 1294 (steps that "involve well-understood, routine, conventional activity" are unpatentable under § 101).  Sections 101, 102, and 103 provide different approaches to the "search for an inventive concept," *Alice*, 134 S. Ct. at 2355, and a patentee cannot avoid that inquiry under § 101 by arguing that it should be left for § 102 or § 103. *See Mayo*, 132 S. Ct. at 1304.  On the contrary, "to shift the patent-eligibility inquiry entirely to these later sections risks creating significantly greater legal uncertainty, while assuming that those sections can do work that they are not equipped to do." *Id.*

886189

the functioning of, any particular search engine or computer. *See id.* "Instead, the claims at issue amount to nothing significantly more than an instruction to apply the abstract idea of" searching for shows using selectable categories "using some unspecified, generic computer." *Id.* at 2360 (quotation marks omitted).

Rovi concedes as much in its responses to the contention interrogatory that asks Rovi to identify why the '962 patent's claims are patentable under § 101. Rovi's leading contention is that the '962 patent's claims "require computer implementation of a search engine application. This alone is a strong indication that the machine prong of the machine-or-transformation test is met." Exh. G at 17. Wrong. "[T]he mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention," particularly given "the ubiquity of computers." *Alice*, 134 S. Ct. at 2358. Rovi then goes on to burnish its failed argument by reciting every claim element and concluding that the claims are "not unpatentable abstract ideas for at least the reasons stated above." Exh. G at 17. But as explained immediately above, these claim elements "do not purport to improve the functioning of" any search engine. Or, in Judge Brinkema's words, the elements that Rovi ticks off "d[o] not add much" and thus fail under § 101.[7]

### b. The '929 patent's claims add nothing to make them patentable.

Similarly, the only tangible elements of the asserted claims of the '929 patent are a "receiver" and a "processor." *See* Exh. B, '929 patent, claims 11-14, 16-20. But receivers are conventional components of set-top boxes, *see* '929 patent at col. 5:57-:63, and processors are essential to every computer. *Alice*, 134 S. Ct. at 2360. These generic computer features cannot confer patent eligibility on these claims, *see id.*, which otherwise recite nothing beyond using "categories" to search for shows. *See* Exh. B, '929 patent, claims 11-20. Considering the elements of these claims individually and as an ordered combination reveals the absence of any inventive concept, and the claims are therefore invalid under § 101. *See Alice*, 134 S. Ct. at 2359-60.

---

[7] Rovi's response to the § 101 contention interrogatory for the other TV Guide Claims is similar. Exh. G at 14-17.

886189

1

   **c.**  **The '709 patent's claims add nothing to make them patentable.**

2

   The asserted claims of the '709 patent also fare no better at the second step of the *Alice*

3

test.  Friends and family have long tried, as best as possible, to limit recommendations to

4

"programs not yet watched"; that notion is utterly conventional.  And although these claims recite

5

a "database," *see* Exh. C., '709 patent, claims 11-14, 16-20, that "amounts to electronic

6

recordkeeping—one of the most basic functions of a computer."  *Alice*, 134 S. Ct. at 2359; *see*

7

*also DietGoal*, 2014 WL 3582914, at *13 ("creating customized lists by retrieving information

8

from a stored database [is] one of the most basic functions of the generic computer").  Claims 17-

9

20 also recite "user equipment," a "communications path," and "processing circuitry," but these,

10

again, are generic computer components that are, as a matter of law, insufficient to transform the

11

abstract idea into patentable subject matter.  *See* Exh. C, '709 patent, claims 17-20; *Alice*, 134 S.

12

Ct. at 2360.

13

   **d.**  **The '762 patent's claims add nothing to make them patentable.**

14

   Finally, the asserted claims of the '762 patent recite a "program guide server" and

15

"program guide client."  *See* Exh. D, '762 Claims 1, 6, 13, 15, 17.  But these elements merely

16

perform the functions any person with a TV Guide could otherwise perform—*i.e.*, choosing

17

something to watch based on her preferences and viewing history.  As with the '962 patent, Rovi

18

argues that the '762 patent satisfies the dictates of § 101 because the patent requires "computer

19

implementation."  Exh. G at 15.  But as the Federal Circuit held in *Accenture Global Servs.,*

20

*GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336 (Fed. Cir. 2013), reciting a "server

21

component" does not make an abstract idea patentable.  *Id.* at 1344; *see also Open Text*, 2014 WL

22

4684429, at *2, *5; *see generally Alice*, 134 S. Ct. at 2359-60.  Finally, the added gloss of

23

"visually distinguishing" the watched from unwatched shows is beyond doubt conventional.

24

Retailers have long known to highlight new products using stickers or signs; email programs have

25

long highlighted unread messages; TV Guide itself has long added an "(R)" to its program listings

26

to visually distinguish reruns from new episodes.

27

   Thus, the TV Guide Claims are all drawn to abstract ideas, and add nothing to those

28

unpatentable ideas other than "'well-understood, routine, conventional activity'" that is non-

886189

inventive. *Alice*, 134 S. Ct. at 2359 (quoting *Mayo*, 132 S. Ct. at 1294). The TV Guide Claims, therefore, fail both steps of the *Alice* test and are invalid under § 101. *See id.*

**B.      The '906 Claims also fail the *Alice* test and are therefore invalid under § 101.**

The '906 Claims are directed to the abstract idea of bookmarking across devices, as the inventors themselves acknowledged in an invention disclosure form that was submitted to the patent office during prosecution. *See* Exh. H at RVNF0003028 ███████████████

████████████████████████████████████████████████████████████████

███████. Notably *absent* from the claims is any specific inventive solution explaining *how* one might bookmark across devices. Instead, the claims rely on broad and generic limitations that "simply instruct the practitioner to implement the abstract idea with routine, conventional activity." *Ultramercial,* 2014 WL 5904902, at *5. As explained below, to the extent that the claims attempt to cloak the abstract idea in a veneer of technological jargon, that is no more than "a drafting effort designed to monopolize the [abstract idea] itself." *Mayo,* 132 S. Ct. at 1297.

Applying step one of the *Alice* test, the '906 Claims are directed to an abstract idea. Bookmarking is itself an abstraction, as is all the more clear on the present facts where the "book" that is marked can be "media" of any type. *See* Exh. E, '906 patent, claim 1. That the abstracted "book" can be resumed on a second device fails to make the idea any less abstract. In *Ultramercial,* the Federal Circuit held that an *eleven step* method for displaying an advertisement in exchange for access to copyrighted media was directed to an abstract idea because it was "devoid of concrete or tangible application." 2014 WL 5904902, at *4. Although certain limitations added "a degree of particularity," the majority of the limitations described only an abstract idea, and that was enough for purposes of step one of the *Alice* test. *Id.* Similarly, the '906 Claims are not directed to a *concrete* or *tangible* application of the abstract idea of resuming delivery of media on a second device; instead, the claims are directed to a generically described "media-on-demand" system that is defined only by the broad, functional limitations of the claims.

All of the '906 Claims are directed to bookmarking across devices. Claim 1 requires "recording a bookmark specifying a position in the media" and delivery of media that is "configured in a format compatible with identified device properties" of the receiving device.

Claim 10, the sole other independent claim, likewise requires "recording a bookmark specifying a position in the media" and delivering the media to a "[first/second] client device in a [first/second] format compatible with said [first/second] client device."  All the claims thus require adjusting the content format based on the capabilities of the receiver, an idea going back to the beginning of time—speaking in English to one person and Spanish to another; adjusting one's explanation for a child versus an adult.  *See Digitech,* 758 F.3d 1344, 1348-51 (claims directed to "device profiles" that allow translation of color information based on device capabilities do not claim patent eligible subject matter).

Indeed, the inventors themselves explained how bookmarking across devices could be accomplished *by spoken communication.* ███████████████████████████████

████████████████████████████████████████████████████████████████████████

██████████" Exh. H, RVNF0003032.  Similarly, upon arriving at a friend's house where people are watching the last quarter of a football game on a TiVo, one might say, "I was listening to the game at home on the radio but left at the end of the third quarter"—thereby interrupting delivery of the media—"so does anyone mind if we rewind so I can see what I missed?"—thereby resuming delivery in a different format (video versus radio).  An "invention" that can be performed like this, with the human mind, is an abstract idea.  *CyberSource,* 654 F.3d at 1372-73.

Moving to step two of the *Alice* test, the claims include elements that, considered individually, are utterly conventional.  The claims here are dressed up with seemingly technical language about "communication links" and pausing and resuming delivery, but that additional verbiage adds no inventive concept to the basic, abstract notion of bookmarking across devices. The inventors themselves, in their contemporaneously-drafted invention disclosure form, *conceded* that ***every single element*** of their invention, when considered individually, was conventional:

- *Streaming media on demand was conventional:* █████████████████████

   ██████████████████████████████████████████████████████████████

   ██████████████████████████████████████████████████████████████

   ██████████████████████████████████████████████████████████████

1 █████████████████████████████████████████████

2 ██████████████████████████ Exh. H. at RVNF0003035.

3 • *Converting formats based on device capability was conventional:* ████████

4 █████████████████████████████████████████████

5 █████████████████████████████████████████████

6 ████████████████████████████████████████████

7 ████████████████████ *Id.* at RVNF0003036.

8 • *Bookmarking in digital media was conventional:* ██████████████

9 ████████████████████████████████████████████

10 █████████████████████████████████████████████

11 █████████████████████████████████████████

12 █████████████████████████████████████████████

13 ████████████████████████████████████████████

14 ██████████████████ *Id.*

15 • *Identifying device properties was conventional.* █████████████

16 █████████████████████████████████████████████

17 █████████████████████████████████████████████

18 █████████████████████████████████████████████

19 ████████████████████████████████████████████

20 ██████████████████ *Id.*

21       Moreover, the limitations of the independent claims (claims 1 and 10) of the '906 patent

22 do nothing to claim a concrete and particularized implementation of the abstract idea of

23 bookmarking across devices.  For example, the limitations that describe delivering media in a

24 format compatible with the receiving device do nothing to limit the claims, because it simply

25 would make no sense to deliver media to a device in a format the device could not understand—

26 and the commonsense notion that a square peg does not fit in a round hole surely cannot be an

27 "inventive concept" sufficient for patentability.  Similarly, recording a bookmark "specifying a

28 position in the media" merely describes what a bookmark is.  And the claims provide *no* inventive

886189

instructions regarding *how* to stream media, bookmark, identify device properties, or convert formats—they merely claim technology conceded by the inventors to be conventional, as described above.

The dependent claims fare no better.  Claim 2 recites that the "identified device properties" should be identified prior to delivering the media, analogous to the admittedly conventional step of finding out what language a listener understands before speaking to her in that language.  Claim 3 adds the conventional step of storing the media on a server, which has been done as long as there have been hard drives.  The remaining dependent claims seek no less than to claim all possible variants of format conversion—converting on the fly (claims 4 and 5), converting ahead of time (claims 6 and 8), or both (claims 7 and 9).  Not only do claims 4 through 9 claim every possible variant of format conversion in broad, generic terms, these variants are conventional.  Converting on the fly is no different from the real-time translation that is done regularly at international events—or, as the inventors noted, ██████████████████████

███████, Exh. H. at RVNF0003035—and converting ahead of time is no different from translating books before they are read.  Combining these two approaches is what parents do every day with children's textbooks—reading explanations that have been preformatted for children, but reframing the explanations on the fly as necessary to ensure a particular child will understand. Finally, claim 11 merely recites concededly conventional steps.

Nor can the "ordered combination" of elements save the '906 Claims.  The question when evaluating an "ordered combination" is whether there was anything *inventive* in the combination. *Alice,* 134 S. Ct. at 2355 (quoting *Mayo,* 132 S. Ct. at 1298).  A process is "unpatentable under § 101" if, once the abstract idea "is assumed to be within the prior art, the application, considered as a whole, contains no patentable invention."  *Flook,* 437 U.S. at 594.  And here, the inventors themselves described the inventive step of the '906 patent as bookmarking across devices, Exh. H. at RVNF0003035-36—*i.e.,* the abstract idea itself.  The remainder of the ordered combination is merely a broad, generic recitation of the conventional steps for implementing that abstract idea.  Unlike the technological solution in *Diehr,* here, the inventors have themselves conceded that the only thing supposedly "inventive" about the claims is the abstract idea itself,

886189

which as a matter of law cannot be inventive.

The Federal Circuit's recent decision in *DDR Holdings, LLC v. Hotels.com, L.P.,* No. 2013-1505, 2014 WL 6845152 (Fed. Cir. Dec. 5, 2014), confirms this conclusion.  In holding that the '399 patent, one of the patents at issue in *DDR Holdings,* claims patentable subject matter, the majority distinguished the claims from those at issue in *Ultramercial* because the '399 patent imposes limitations beyond the abstract idea, and those limitations were not "broadly and generically" claimed.  *Id.* *12.  "Unlike the claims in *Ultramercial*, the claims at issue here specify how interactions with the Internet are manipulated to yield a desired result—a result that overrides the routine and conventional sequence of events ordinarily triggered by the click of a hyperlink."  *Id.*  In contrast, the '906 Claims are directed to *conventional* streaming, *conventional* bookmarking, *conventional* format conversion, and *conventional* capability exchanges.  Exh. H at RVNF0003036-37.  Nothing in the claims recites an *inventive* approach to any of these conventional steps.  Instead, the '906 Claims are precisely like those at issue in *Ultramercial,* broadly and generically claiming an abstract idea itself.

In sum, the '906 Claims are directed to the abstract idea of bookmarking across devices. Beyond that abstract idea, the limitations of the '906 Claims are completely conventional, whether considered individually or as an ordered combination. The '906 Claims fail to capture patentable subject matter.

### III.    CONCLUSION

Applying the *Alice* two-step test, the TV Guide Claims and the '906 Claims are invalid.[8]

Dated: December 15, 2014                              Respectfully submitted,

                                                     KEKER & VAN NEST LLP


                                             By:    */s/ Michael S. Kwun*
                                                     MICHAEL S. KWUN

                                                     Attorneys for Plaintiff, Counter-Defendant,
                                                     and Counter-Claimant, NETFLIX, INC.

---

[8] For the Court's convenience, an appendix is attached highlighting the language of the asserted claims, to illustrate which portions of the language of the claims are directed to abstract ideas, conventional activity, or both, respectively.

**Appendix**

Blue: abstract idea; Green: conventional activity; Yellow: both abstract and conventional.

**U.S. Pat. No. 7,974,962 ('962 patent)**

1. A method for searching for shows comprising:

 providing a search engine application;

 receiving one or more characters in said search engine application, wherein said one or more characters are entered in an alpha-numeric input area;

 matching said characters using said search engine application to one or more database entries;

 providing results corresponding to said database entries in a results listing, wherein said results comprise one or more show listings and one or more selectable categories of shows;

 receiving a user selection from said results listing of one of said selectable categories;

 providing at least one additional show listing corresponding to said selected selectable category in response to the user selection of said selectable category; and

 enabling a user to perform an action by selecting one of said at least one additional show listings.

3. The method of claim 1 wherein said database entries are related to on-demand programming.

5. The method of claim 1 wherein said results further comprise titles of shows.

6. The method of claim 1 wherein said one or more characters are selected from one or more entries in said alpha-numeric input area.

9. The method of claim 1 wherein said one or more characters are entered using a keyword search field.

10. The method of claim 1 wherein said step of enabling said user to perform an action comprises enabling said user to watch a show corresponding to said selected additional show listing.

13. The method of claim 1 wherein said step of enabling said user to perform an action comprises enabling said user to obtain additional information corresponding to said selected additional show listing.

14. A system for searching for shows comprising:

 an input device that receives inputs from a user; and

 a search engine application configured to:

 in response to receiving one or more characters from said input device that are entered in an alpha-numeric input area;

 match said characters to one or more database entries;

 provide results corresponding to said database entries to an output device, wherein said ⊖ results comprise one or more show listings and one or more selectable categories of shows; and

 cause said output device to display said results in the results listing;

 in response to receiving a user selection of one of said selectable categories in said results listing from said input device;

 cause said output device to display at least one additional show listing corresponding to said selected selectable category; and

 in response to receiving a user selection of one of said at least one additional show listings:

 enable said user to perform an action.

16. The system of claim 14 wherein said database entries are related to on-demand programming.

18. The system of claim 14 wherein said results further comprise titles of shows.

REDACTED VERSION OF MSJ OF INVALIDITY UNDER 35 U.S.C. § 101
Case No. 4:11-CV-6591 PJH

886189

19. The system of claim 14 wherein said input device enables said user to select said one or more characters from one or more entries in said alpha-numeric input area.

23. The system of claim 14 wherein said input device enables said user to enter said one or more characters using a keyword search field.

24. The system of claim 14 wherein said action comprises watching a show corresponding to said selected additional show listing.

26. The system of claim 14 wherein said action comprises obtaining additional information corresponding to said selected additional show listing.

27. A computer readable medium for searching for shows, having computer readable program code recorded thereon for:

provding a search engine application;

receiving one or more characters in said search engine application, wherein said one or more characters are entered in an alpha-numeric input area;

matching said characters using said search engine application to one or more database entries;

providing results corresponding to said database entries in a results listing, wherein said results comprise one or more show listings and one or more selectable categories of shows;

receiving a user selection from said results listing of one of said selectable categories;

providing at least one additional show listing corresponding to said selected selectable category in response to the user selection of said selected selectable category; and

enabling a user to perform an action by selecting one of said at least one additional show listings.

**U.S. Pat. No. 7,945,929 ('929 patent)**

11. A system for locating programs of interest to a user, the system comprising:

a receiver that receives a plurality of program listings, wherein at least one of the program listings is associated with two or more simple categories; and

a processor that generates at least one combination category by:

identifying the two or more simple categories associated with the at least one program listing; and

combining at least a subset of the identified simple categories associated with the at least one program listing into the at least one combination category, wherein the combination category comprises more than one of the identified simple categories.

12. The system of claim 11, wherein the processor is configured to combine at least a subset of the identified simple categories associated with the at least one program listing into the at least one combination category by:

combining the identified simple categories into groups of two or more of the identified simple categories; and

determining, for each of the groups of simple categories, whether the respective group is contained within a list of supported categories;

wherein the at least one combination category comprises one of the groups of simple categories contained within the list of supported categories.

13. The system of claim 12, wherein the processor is further configured to:

automatically identify a plurality of simple categories that are of high interest to the user; and

generate the list of supported categories from the plurality of simple categories that are of high interest to the user.

REDACTED VERSION OF MSJ OF INVALIDITY UNDER 35 U.S.C. § 101
Case No. 4:11-CV-6591 PJH

886189

14. The system of claim 13, wherein the processor is configured to automatically identify a plurality of simple categories that are of high interest to the user by identifying a first simple category that received more user selections than a second simple category.

16. The system of claim 12, wherein each of the plurality of program listings has associated metadata, and wherein the processor is further configured to automatically assign each of the plurality of program listings at least one of a plurality of simple categories based on the associated metadata.

17. The system of claim 12, wherein the processor is further configured to assign the at least one combination category to the at least one program listing.

18. The system of claim 12 further comprising a display, wherein the processor is further configured to present at least a subset of the two or more simple categories associated with the at least one program listing in a selectable list on the display.

19. The system of claim 18, wherein the processor is further configured to present the the at least one combination category in the selectable list on the display.

20. The system of claim 19, wherein the processor is further configured to:

search for program listings that match a category selected from the selectable list by the user; and

present the matching program listings on the display.

**U.S. Pat. No. 7,065,709 ('709 patent)**

13. A method for use in an interactive program guide system for providing a customized viewing experience to a user, comprising:

generating a viewing history database comprising program listings and associated program criteria;

determining at least one of the associated program criteria from the viewing history database that meets a user preference profile;

determining from a program listing database a set of programs not yet watched;

applying the at least one of the associated program criteria to the set of programs not yet watched to generate at least one personal viewing recommendation; and

providing the personal viewing recommendation to a user.

14. The method defined in claim 13 wherein generating a viewing history database comprises storing the program listings and the associated program criteria for at least one of:

programs that the user has watched;

programs for which the user has scheduled reminders;

programs for which the user has scheduled for recording;

programs for which the user has searched; and

programs for which the user has ordered.

15. The method defined in claim 13 wherein the associated program criteria comprises at least one of program categories, ratings, casting, and languages.

16. The method defined in claim 13 wherein the at least one of the associated program criteria is the same as at least one criteria defined in the user preference profile.

17. An interactive program guide system for providing a customized viewing experience to a user, comprising:

user equipment on which an interactive program guide client is implemented, wherein the interactive program guide client is operative to provide the user with an opportunity to create a user preference profile;

a communications path over which the user preference profile is provided by the interactive program guide client to a program guide server, wherein the program guide server comprises:

a first database comprising program listings and associated program criteria based on the user's viewing history at the interactive program guide client,

a second database comprising program listings available from the program guide server, and

22

886189

processing circuitry operative (1) to determine at least one of the associated program criteria from the first database that meets the user preference profile, (2) to determine from the second database a set of programs not yet watched by the user at the interactive program guide client, (3) to apply the at least one of the associated program criteria to the set of programs not yet watched to generate at least one personal viewing recommendation, and (4) to provide the personal viewing recommendation to the user at the interactive program guide client over the communications path.

18. The system defined in claim 17 wherein the first database comprising program listings and associated program criteria is based on at least one of:

programs that the user has watched;

programs for which the user has scheduled reminders;

programs for which the user has scheduled for recording;

19. The system defined in claim 17 wherein the associated program criteria comprises at least one of program categories, ratings, casting, and languages.

20. The system defined in claim 17 wherein at least one of the associated program criteria is the same as at least one criteria defined in the user preference profile.

**U.S. Pat. No. 6,898,762 ('762 patent)**

1. A method for use in a client-server interactive television program guide system for tracking a user's viewing history, comprising:

tracking a user's viewing history

storing the user's viewing history on a program guide server;

finding programs with the program guide server that are consistent with the user's viewing history;

determining, with the program guide server, whether the programs found by the program guide server were not previously viewed on user television equipment; and

displaying, with a program guide client implemented on the user television equipment, a display of program titles, wherein the display:

includes the programs found by the program guide server, wherein some of the programs have been previously viewed on the user television equipment and some of the programs have not been previously viewed on the user television equipment; and

visually distinguishes the programs determined by the program guide server to have been previously viewed from the programs that have not been previously viewed.

6. The method defined in claim 1 further comprising collecting program ratings information with the program guide server based on the user's viewing history.

13. A client-server interactive television program guide system for tracking a user's viewing history, comprising:

user television equipment on which an interactive television program guide client is implemented, wherein the interactive television program guide client is wherein the interactive television program guide client is programmed to provide an individual user's viewing history information to a program guide server over a communications path, wherein:

the program guide server is programmed to find programs based on the individual user's viewing history information, determine whether the programs found by the program guide server have been previously viewed on user television equipment, and to indicate the programs to the interactive television program guide client over the communications path; and

the interactive television program guide client is further programmed to display, on the user television equipment, a display of program titles, wherein the display:

REDACTED VERSION OF MSJ OF INVALIDITY UNDER 35 U.S.C. § 101
Case No. 4:11-CV-6591 PJH

886189

includes the programs found by the program guide server, wherein some of the programs have been previously viewed on the user television equipment and some of the programs have not been previously viewed on the user television equipment; and

visually distinguishes the programs determined by the program guide server to have been previously viewed from the programs that have not been previously viewed.

15. The system defined in claim 13 wherein:

the interactive television program guide client is further programmed to provide user preference information to the program guide server over the communications path; and

the program guide server is further programmed to obtain programs based on the user preference information and to indicate the programs to the interactive television program guide client.

17. The system defined in claim 15 wherein the program guide server is further programmed to collect program ratings information based on the viewing history information.

**U.S. Pat. No. 7,103,906 ('906 patent)**

1. A method for providing configurable access to media in a media-on-demand system comprising the steps of:

delivering the media to a first client device through a first communications link, wherein the media is configured in a format compatible with identified device properties of said first client device and said first client device is associated with a first user;

recording a bookmark specifying a position in the media; and

delivering the media to a second client device through a second communications link, said delivery to said second client device beginning at said position specified by said recorded bookmark, wherein the media is configured in a format compatible with identified device properties of said second client device and said second client device also is associated with said first user.

2. The method according to claim 1, further comprising the steps of:

identifying device properties for each of said first and second client devices, device properties of said first client device being identified prior to commencing delivery of the media to said first client device and device properties of said second client device being identified prior to commencing delivery of the media to said second client device.

3. The method according to claim 2, wherein the media is stored in a media-on-demand server (MODS) and delivered to said first and said second client devices via said first and said second communications link respectively.

6. The method according claim 3, further comprising:

storing the media in selected ones of a plurality of media-on-demand servers, each MODS in said plurality of media-on-demand servers storing the media in at least one format compatible with a selected device type;

selecting a MODS for delivering the media to said first client device, said selected MODS having stored thereon the media in a format compatible with said first client device; and

delivering from said selected MODS the media in a format compatible with said first client device.

8. The method according claim 3, further comprising:

storing the media in selected ones of a plurality of media-on-demand servers, each MODS in said plurality of media-on-demand servers storing the media in at least one format compatible with a selected device type;

selecting a MODS for delivering the media to said second client device, said selected MODS having stored thereon the media in a format compatible with said second client device; and

24

886189

delivering from said selected MODS the media in a format compatible with said second client device.

10. A method for providing configurable access to media in a media-on-demand system comprising:

delivering the media to a first client device in a first format compatible with said first client device, wherein said first client device is associated with a first user;

interrupting said delivery of said media;

recording a bookmark specifying a position in the media when said interruption occurred; and

resuming delivery of the media to a second client device in a second format compatible with said second client device, said resumed delivery beginning at a position in the media specified by said recorded bookmark, wherein said second client device also is associated with said first user.

11. The method according to claim 10, further comprising the steps of:

identifying a device type for each of said first and second client devices;

delivering the media to said first client device in said first format, said first format selected based upon said identified device type for said first client device; and.

delivering the media to said second client device in said second format, said second format selected based upon said identified device type for said second client device.

REDACTED VERSION OF MSJ OF INVALIDITY UNDER 35 U.S.C. § 101
Case No. 4:11-CV-6591 PJH

886189