UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE PHYLLIS J. HAMILTON, JUDGE

NETFLIX, INC.,

PLAINTIFFS,

VS. NO. C-11-06591 PJH
PAGES 1 - 155

ROVI CORPORATION, ET AL.,

DEFENDANTS.

OAKLAND, CALIFORNIA
WEDNESDAY, MARCH 25, 2015
TRANSCRIPT OF PROCEEDINGS

APPEARANCES:

**FOR PLAINTIFFS:**
**KEKER & VAN NEST LLC**
633 BATTERY STREET
SAN FRANCISCO, CALIFORNIA 94111-1809
**BY: ASHOK RAMANI, ESQUIRE**
**MICHAEL KWUN, ESQUIRE**
**SHARIF E. JACOB, ESQUIRE**
**EDWARD A. BAYLEY, ESQUIRE**
**TINA SESSIONS, ATTORNEY AT LAW**

FURTHER APPEARANCES ON NEXT PAGE

REPORTED BY: KATHERINE WYATT, CSR, RPR, RMR

**FURTHER APPEARANCES:**

**FOR DEFENDANTS:**

**MCDERMOTT WILL & EMERY LLP**

275 MIDDLEFIELD ROAD, SUITE 100

MENLO PARK, CALIFORNIA 94025

**BY: YAR R. CHAIKOVSKY, ESQUIRE**
**HONG S. LIN, ESQUIRE**

AND

**MCDERMOTT WILL & EMERY LLP**

227 WEST MONROE STREET

CHICAGO, ILLINOIS 60606-5096

**BY: AMOL PARIKH, ESQUIRE**

MARCH 25, 2015 9:00 O'CLOCK A.M.

P R O C E E D I N G S

**THE CLERK:** CALLING CIVIL CASE NUMBER 11-6591, NETFLIX VERSUS ROVI CORPORATION, ET AL.

COUNSEL, PLEASE STEP FORWARD, AND STATE YOUR APPEARANCES.

**MR. RAMANI:** YOUR HONOR, GOOD MORNING. ASHOK RAMANI FROM KEKER AND VAN NEST ON BEHALF OF PLAINTIFF NETFLIX. I'M JOINED, IF I MAY, BY MY COLLEAGUES, ALL OF WHOM WILL BE SPEAKING TODAY. MICHAEL KWUN, SHARIF JACOB, TINA SESSIONS AND ED BAYLEY.

AND WE'RE ALSO JOINED AT COUNSEL TAPE BY NETFLIX'S DIRECTOR OF LITIGATION AND INTELLECTUAL PROPERTY, ISAAC PETERSON.

**THE COURT:** GOOD MORNING.

**MR. CHAIKOVSKY:** GOOD MORNING, YOUR HONOR. YAR CHAIKOVSKY ON BEHALF OF ROVI DEFENDANTS. AND WITH ME THIS MORNING I ALSO HAVE HONG LIN FROM MCDERMOTT WILL AND EMERY. I HAVE AMOL PARIKH. I HAVE CASEY CAMPBELL. AND IN ADDITION TO THAT FROM OUR CLIENT, MIKE SCHWARTZ.

**THE COURT:** ALL RIGHT. GOOD MORNING. ALL RIGHT. I APOLOGIZE FOR COMING OUT LATE, BUT WE WERE BUSY TRYING TO PUT ALL OF OUR QUESTIONS TOGETHER SO THAT WE CAN MAKE SURE THAT THIS IS A PRODUCTIVE SESSION.

I KNOW YOU HAVEN'T HAD ANY TIME TO REVIEW THEM, BUT I'D LIKE YOU -- SINCE YOU ALL HAVE TEAMS, EVERYONE CAN BE THINKING ABOUT THEM AS ONE PERSON IS ADDRESSING OTHER ISSUES. WHAT I'D LIKE TO

DO THIS MORNING IS TO START FIRST WITH THE ALICE QUESTION WITH THE MOTION BROUGHT BY NETFLIX BECAUSE, OBVIOUSLY, IF THE COURT FINDS THAT TO BE DISPOSITIVE THERE MIGHT, PERHAPS, BE NO NEED TO EVEN GO FORWARD WITH CLAIM CONSTRUCTION.

BUT IF THE COURT WEREN'T TO FIND ALL OF THE CLAIMS TO BE BARRED BY VIRTUE OF THE INELIGIBILITY OF THE PATENT, MY CONCERN IS I WANT TO MAKE SURE THAT THERE'S CONSISTENCY IN ANY PARTICULAR RULING.

AND I WANT TO KNOW WHAT THE IMPACT OF THE ALICE ANALYSIS WILL BE ON CLAIM CONSTRUCTION AND VICE VERSA.  ARE THERE CLAIM CONSTRUCTION ISSUES THAT WOULD STILL NEED TO GO FORWARD EVEN IN THE FACE OF A FAVORABLE ALICE-TYPE RULING, AT LEAST ON THE CLAIMS YOU'VE BROUGHT?  AND VICE VERSA.

SO I WANT YOU TO ADDRESS THOSE ISSUES, ALTHOUGH I'LL HEAR ARGUMENTS ON BOTH MOTIONS.  IF I DETERMINE I'M GOING TO DETERMINE THE NETFLIX MOTION BEFORE CLAIM CONSTRUCTION, I WANT TO KNOW WHAT I -- HOW FAR I NEED TO GO WITH REGARD TO CLAIM CONSTRUCTION IF YOU PREVAIL ON THAT.  SO THAT'S REALLY IMPORTANT.

AND THE CONVERSE IS ALSO TRUE.  I WANT TO KNOW THOSE ISSUES FOR YOU.  BUT LET'S START FIRST WITH THE PLAINTIFFS' MOTION ON THE PATENT ELIGIBILITY.

NOW, THIS IS A SOFTWARE PATENT?  THE PATENTS ARE SOFTWARE PATENTS, CORRECT?

**MR. RAMANI:** YES, YOUR HONOR.  THE PATENTS ARE SOFTWARE PATENTS.  AND IF I MAY, YOUR HONOR, WE'RE ACTUALLY PREPARED TO

ADDRESS YOUR QUESTIONS NOW.

I THINK THEY ARE LARGELY, IF NOT ENTIRELY, ADDRESSED WITHIN THE PRESENTATION THAT WE HAVE PREPARED. AND MY PARTNER, MICHAEL KWUN, IS ACTUALLY GOING TO ADDRESS THE 101 MOTION.

**THE COURT:** OKAY.

**MR. CHAIKOVSKY:** AND, YOUR HONOR, THEY ARE NOT SOLELY SOFTWARE PATENTS, AS YOU CAN IMAGINE. WE HAVE SEVERAL PATENTS HERE THAT ARE NOT SOFTWARE-RELATED. YOU KNOW, THE PATENTS RELATE TO ACTUALLY CLIENT-SERVER ARCHITECTURES, AS YOU'VE SEEN IN THE '906 PATENTS WITH THE MEDIA-ON-DEMAND SYSTEM THAT EXISTS.

SO ROVI WOULD SAY THESE ARE NOT SOLELY SOFTWARE PATENTS. I UNDERSTAND THAT IS NETFLIX'S POSITION, BUT THAT IS NOT ROVI'S POSITION.

THE '762, THE '709 ALSO RELATE TO CLIENT-SERVER INTERACTIONS AND SYSTEMS. IT'S MUCH MORE, FOR EXAMPLE, USER TELEVISION EQUIPMENT OR SIMPLE STRUCTURES. THERE'S A DETAILED STRUCTURE MUCH AS YOU SAW AT THE TUTORIAL WITH RESPECT TO THE CLAIMS DESCRIBING. AND WE ALSO WILL PRESENT THAT IN OUR 101 MOTION.

**THE COURT:** OKAY. WELL, I WOULD LIKE YOU TO ALSO CONTINUE LOOKING AT THE QUESTIONS AND MAKE SURE IN YOUR PRESENTATION THAT YOU ANSWER EACH ONE OF THEM.

**MR. CHAIKOVSKY:** WILL DO.

**THE COURT:** OKAY?

**MR. CHAIKOVSKY:** THANK YOU, YOUR HONOR.

**THE COURT:** ALL RIGHT. SO LET'S START WITH THE 101

MOTION. AND YOU'RE MR. KWUN?

**MR. KWUN:** MR. KWUN, YES, YOUR HONOR.

**THE COURT:** OKAY.

**MR. KWUN:** SO, YOUR HONOR, I CAN ADDRESS THE QUESTIONS THAT YOU'VE RAISED IN THE CONTEXT OF THE PRESENTATION, OR MAYBE IT WOULD BE EASIER FOR YOU IF I JUST ADDRESS THEM HEAD ON. DO YOU HAVE A PREFERENCE?

**THE COURT:** YOU HAVE A PRESENTATION YOU WISH TO MAKE. ARE YOU STILL GOING TO HAVE A PRESENTATION AFTER YOU ADDRESS THESE?

**MR. KWUN:** THERE WILL CERTAINLY BE THINGS IN THE PRESENTATION THAT DON'T GET COVERED. MAYBE SOME OF THEM YOU WON'T NEED, BUT WHY DON'T WE JUST START WITH --

**THE COURT:** I DON'T WANT TO YOU THINK THAT --

**MR. KWUN:** THE ONLY THINGS THAT MATTER.

**THE COURT:** THAT'S RIGHT. THESE AREN'T THE ONLY THINGS THAT MATTER. SO WHY DON'T YOU GO AHEAD AND MAKE YOUR PRESENTATION? BUT YOUR TEAM WILL BE PAYING ATTENTION, AND THEY WILL LET YOU KNOW IF THERE'S SOME QUESTION THAT I ASKED YOU TO ADDRESS THAT YOU HAVE NOT.

**MR. KWUN:** THANK YOU, YOUR HONOR.

SO FOR THE 101 MOTION, OBVIOUSLY OUR POSITION IS THAT ALL OF THE CLAIMS OF THE FIVE PATENTS-IN-SUIT ARE INVALID BASED ON THE ABSTRACT IDEA CARVEOUT TO THE PATENTABLE SUBJECT MATTER UNDERSTAND 35 USC 101.

AND IF YOU LOOK AT THE PAPERS -- AND I THINK THAT ONE OF YOUR QUESTIONS ACTUALLY GETS AT THIS POINT -- ROVI REALLY DOESN'T ACTUALLY DISPUTE AT ALL THAT THE IDEAS WE PROPOSE FOR THE FIVE PATENTS THAT THOSE IDEAS ARE ABSTRACT.

THEY TAKE SOME ISSUE WITH WHETHER OR NOT THOSE ACTUALLY ARE THE IDEAS TO WHICH THE PATENTS ARE DIRECTED, BUT THEY DON'T SAY ANYTHING ABOUT THOSE IDEAS THEMSELVES, THE ONES WE PROPOSE BEING NONABSTRACT.

AND, ACTUALLY, ALTHOUGH THEY DO ATTEMPT TO DISPUTE THAT THOSE ARE THE PURPOSES OF THE PATENTS, THEY REALLY JUST KIND OF REARRANGE THE WORDS OF THE PURPOSE AND RESTATE WHAT LARGELY ENDS UP BEING THE SAME IDEAS THAT WE DO. AND THEY MAKE NO ATTEMPT AT ALL TO ARGUE THAT ANY OF THE INDIVIDUAL ELEMENTS OF ANY OF THE PATENTS -- OR, EXCUSE ME -- OF ANY OF THE CLAIMS OF ANY OF THE PATENTS ARE, BY THEMSELVES, CONSIDERED INDIVIDUALLY ANYTHING OTHER THAN CONVENTIONAL.

SO, REALLY, ONCE YOU GET PAST THOSE POINTS, THE ISSUE BEFORE THE COURT TODAY BOILS DOWN TO WHETHER THE ASSERTED CLAIMS HAVE ORDERED COMBINATIONS OF ELEMENTS THAT ARE INVENTIVE. AND THEY DON'T. THE CLAIMS ARE MADE UP OF CONVENTIONAL ELEMENTS, ALL STATED AT A VERY HIGH LEVEL. AND THE WHOLE OF THE ORDERED COMBINATIONS END UP BEING PRECISELY THE SAME AS THE SUM OF THEIR CONVENTIONAL PARTS.

SO I JUST WANTED TO HIGHLIGHT FOR THE COURT THAT WE NOW HAVE SIX PRECEDENTIAL DECISIONS FROM THE FEDERAL CIRCUIT ABOUT SECTION

101 BRIEFLY SUMMARIZED HERE IN THIS SLIDE (INDICATING). AND ALL BUT ONE OF THEM --

**THE COURT:** THIS SLIDE, I DON'T SEE A NUMBER DOWN IN THE CORNER.

**MR. KWUN:** THIS IS SLIDE NUMBER THREE. IT'S DOWN IN THE RIGHT-HAND CORNER. IT'S PRETTY TINY. I APOLOGIZE FOR THAT.

**THE COURT:** IT DOESN'T SHOW ON MINE.

**MR. KWUN:** I CAN MENTION THE SLIDE NUMBERS, IF THAT HELPS.

**THE COURT:** YES, IF YOU WOULD.

**MR. KWUN:** YES. OKAY. SO HERE IN SLIDE THREE WE HAVE A SUMMARY OF THE SIX PRECEDENTIAL DECISIONS FROM THE FEDERAL CIRCUIT ON THE 101 ISSUE. ALL BUT ONE OF THESE FIND THE PATENT CLAIMS INVALID. FIVE OF THESE ARE COMPUTER-IMPLEMENTED METHODS. ONE OF THEM, ACTUALLY, THE BREAST CANCER GENE PATENT, IS NOT ABOUT A COMPUTER-IMPLEMENTED METHOD, BUT, NONETHELESS, ONE OF THE ABSTRACT IDEA NOTION.

SO ALL OF THESE ADDRESSED ABSTRACT IDEAS UNDER ALICE. AND SOME OF THESE CASES HAVE WHAT SOUND LIKE PRETTY NARROW ABSTRACT IDEAS. FOR EXAMPLE, LIMITED SPECIFICALLY TO TWO BREAST CANCER GENES, OR TO A VERY PARTICULAR SEQUENCE OF STEPS IN THE CONTENT EXTRACTION CASE. THAT'S THE WELLS FARGO CASE AT THE BOTTOM.

AND AS YOU'VE NOTED YOUR QUESTIONS, YOUR HONOR, ONE OF THE QUESTIONS DOES, INDEED, GO THE OTHER WAY AND FIND A PATENT INVALID. THAT'S THE DDR CASE. AND WE'RE GOING TO DISCUSS THAT

IN SOME DEPTH IN A LITTLE BIT.

SO BUT I ALSO WANTED TO LET THE COURT KNOW THAT THERE'S BEEN A WEALTH OF CASES ON THE ABSTRACT IDEA EXCLUSION RIGHT HERE IN THIS DISTRICT. AND WHEN WE FILED OUR MOTION THERE WERE TWO CASES, AND THEY ARE THE TOP TWO CASES ON THIS SLIDE NUMBER FOUR.

THAT'S THE OPEN TEXT V. ALFRESCO FROM JUDGE DONATO, AND THE COGENT CASE FROM JUDGE WHYTE, WHYTE WITH A Y.

WE NOW HAVE MANY MORE CASES. I FOUND SEVEN CASES. I'M NOT GOING TO GUARANTEE YOU THAT THAT'S ALL THE CASES. BUT I FOUND SEVEN CASES. AND IN EVERY SINGLE ONE OF THESE CASES THE JUDGE INVALIDATED CLAIMS UNDER SECTION 101. IN ONE OF THE CASES THE, OPEN TV CASE, ALSO AGAINST NETFLIX, WHICH IS RIGHT HERE AT THE BOTTOM OF THE SLIDE, JUDGE SEEBORG INVALIDATED THE CLAIMS OF TWO PATENTS ENTIRELY. BUT FOR THE '169 PATENT HE SAID:

"YOU KNOW, THIS MIGHT DEPEND ON CLAIM CONSTRUCTION. IF THE CLAIMS ARE NARROW DURING CLAIM CONSTRUCTION, WHO KNOWS? POSSIBLY THIS COULD BE A SPECIFIC APPLICATION."

SO HE DECLINED TO DECIDE THE ISSUE ONE WAY OR THE OTHER BEFORE CLAIM CONSTRUCTION.

THAT'S LESS OF AN ISSUE HERE BECAUSE YOU'RE ALSO GOING TO HEAR CLAIM CONSTRUCTION TODAY. IF YOU DECIDE THAT CLAIM CONSTRUCTION IS A BARRIER TO DECIDING THE 101 QUESTION, YOU CAN, OF COURSE, YOU KNOW, RESOLVE THE MARKMAN ISSUE AND THEN ADDRESS THE 101 ISSUE.

SO I GUESS IT MAKES SENSE THAT YOU DECIDED TO CONSOLIDATE

THESE TWO HEARINGS.

BUT I DO WANT TO SAY THAT ALTHOUGH JUDGE SEEBORG DEFERRED DECISION ON THE '169, HE ACTUALLY WAS PRETTY SKEPTICAL THAT IT WOULD SURVIVE. THAT'S THE WAY IT SEEMED, ANYWAY. AND WHAT HE SAID WAS, QUOTE:

> "PLAINTIFFS MAY BE HARD-PRESSED TO SHOW THAT THE BROAD LANGUAGE OF THE CLAIMS, WHICH ON ITS FACE ARGUABLY COULD DESCRIBE A POWERPOINT PRESENTATION IN A COURTROOM, SHOULD BE CONSTRUED TO HAVE A MUCH NARROWER SCOPE."

I HOPE I'M NOT INFRINGING THE PATENT RIGHT NOW.

SO JUST ON THE NEXT SLIDE HERE I HAVE A FEW MORE OF THESE NORTHERN DISTRICT CASES THAT I MENTIONED. I'M NOT GOING TO GO THROUGH ALL OF THESE.

I WILL JUST NOTE THAT IN THE OPEN TEXT V. BOX DECISION, JUDGE DONATO HAD WHAT I THOUGHT WAS A NICE WAY OF THINKING ABOUT THE ORDERED COMBINATION NOTION, WHICH MAY BE ONE OF THE MORE IMPORTANT ISSUES HERE TODAY. AND HE THOUGHT OF IT AS ASKING WHETHER THE COMBINATION OF ELEMENTS, QUOTE:

> "SOMEHOW CREATES A SYNERGISTIC RESULT THAT IS MORE THAN THE SUM OF ITS PARTS," UNQUOTE. "MORE THAN THE SUM OF ITS PARTS."

I THOUGHT THAT WAS A PRETTY GOOD IDEA OF WHAT THE ORDERED COMBINATION NOTION IS. I COULDN'T EVEN FIT ALL SEVEN OF THESE CASES ON TWO SLIDES, SO I HAD TO GO OVER TO A THIRD SLIDE. SO ON THE NEXT SLIDE I HAVE THE MOST RECENT NORTHERN DISTRICT CASE ON

THIS ISSUE THAT I COULD FIND FROM JUDGE FREEMAN JUST EARLIER THIS MONTH.

THREE PATENTS AT ISSUE, ALL OF THEM INVALIDATED -- OR, EXCUSE ME -- FOUR PATENTS AT ISSUE. ALL OF THE CLAIMS INVALIDATED. AND THE ONLY THING I'LL NOTE HERE IS THAT ON THE '802 AND THE '512 PATENTS, JUDGE FREEMAN RIGHTFULLY NOTED THAT IT DOESN'T MATTER WHETHER THE SPECIFICATION MIGHT DESCRIBE SOMETHING THAT COULD ARGUABLY BE CALLED "INVENTIVE." THE QUESTION IS WHAT THE CLAIMS SAY.

AND IF YOU HAVE A PERFECTLY NARROW, LIMITED INVENTION IN YOUR SPECIFICATION, BUT THEN IN YOUR CLAIMS YOU HAVE SOMETHING BROAD, GENERIC, SOMETHING VERY LOOSEY-GOOSEY, YOU'RE STILL GOING TO HAVE A PROBLEM UNDER 101 BECAUSE IT'S THE CLAIMS, OF COURSE, THAT MATTER.

OKAY. BUT YOU HAD SOME QUESTIONS HERE ABOUT HOW WE'RE GOING TO DEAL WITH ULTRAMERCIAL AND DDR. AND I DO WANT TO MENTION THAT IN THE DDR CASE THERE WAS NO PETITION FOR REHEARING FILED. AND, IN FACT, THE PARTIES HAVE SETTLED. SO AT LEAST FOR NOW DDR IS GOING TO STICK WITH US.

AND SOME COMMENTATORS HAVE NOTED THAT DDR IS VERY HARD TO RECONCILE WITH THE OTHER DECISIONS COMING OUT OF THE FEDERAL CIRCUIT ALL OF WHICH HAVE INVALIDATED CLAIMS UNDER 101. AND, YOU KNOW, IT MAY BE THAT IN SOME CASES IT'S GOING TO BE VERY HARD TO FIGURE OUT HOW TO WEND YOUR WAY BETWEEN THESE TWO CASES.

IN OUR CASE IT'S REALLY NOT MUCH OF AN ISSUE BECAUSE OUR

CLAIMS ARE PRETTY DIFFERENT FROM WHAT IS GOING ON IN DDR.

AND TO EXPLAIN THE DIFFERENCE BETWEEN ULTRAMERCIAL AND DDR. I'M GOING TO START WITH ULTRAMERCIAL. SO IN ULTRAMERCIAL THE IDEA WAS:

"LET'S SHOW AN ADVERTISEMENT BEFORE THE USER IS ALLOWED TO SEE A VIDEO."

AND THEN THEY DON'T PAY FOR VIDEO. THEY PAY BY WATCHING THE ADVERTISEMENT. THAT'S A PRETTY OLD PROBLEM. PREDATES COMPUTERS. AND, OF COURSE, WE'VE BEEN DOING THIS SINCE AD-SUPPORTED TELEVISION, AD-SUPPORTED RADIO.

SO THE ABSTRACT IDEA THAT THE ULTRAMERCIAL PATENT WAS ADDRESSED TO: VERY, VERY OLD.

AND THE PATENT, IF YOU LOOK AT IT, IT DESCRIBES FOUR ROLES. AND I MADE THE FACILITATOR, WHAT THE PATENT CALLS "THE FACILITATOR" IN THIS SLIDE, I'VE MADE THAT HULU. AND I'VE MADE THAT HULU BECAUSE THEY WERE THE DEFENDANT IN THAT CASE. AND THEY ALSO IN THE CLAIMS REFER TO A CONTENT-PROVIDER. THAT WOULD BE, IN THIS SLIDE, WARNER BROTHERS.

AND THEN, THERE'S ALSO A SPONSOR, WHICH IS TO SAY A SOURCE OF ADVERTISEMENT. AND THAT HERE I'VE JUST ILLUSTRATED AS "POP SECRET MICROWAVE POPCORN."

AND THEN, FINALLY, THERE'S A CONSUMER WHO WANTS TO SEE SOME SORT OF VIDEO. IN THIS EXAMPLE, THE WARNER BROTHERS VIDEO. SO, AGAIN, THE ABSTRACT IDEA IS SHOWING AN ADVERTISEMENT BEFORE DELIVERING CONTENT. AND THE PATENT CLAIMS SAY THAT THE

FACILITATOR SHOULD RECEIVE MEDIA CONTENT FROM THE CONTENT PROVIDER.

WELL, THAT'S EXACTLY WHAT A SITE LIKE HULU DOES, WHETHER THE VIDEO IS AD-SUPPORTED OR NOT. IT'S ENTIRELY CONVENTIONAL. AND, AS A MATTER OF FACT, IF YOU THINK ABOUT IT, IT'S EXACTLY WHAT A TELEVISION STATION DOES, OR A RADIO STATION. ENTIRELY CONVENTIONAL.

THE PATENT ALSO SAYS THAT THE FACILITATOR SHOULD FACILITATE THE DISPLAY OF A SPONSOR MESSAGE FROM THE SPONSOR TO THE CONSUMER. SO, BASICALLY, THEY SHOULD SEE AN AD. AND THAT'S ALSO CONVENTIONAL. THAT'S WHAT WE HAVE, AGAIN, ON TV OR ON RADIO. AND, INDEED, THAT'S THE STANDARD MODEL FOR SHOWING ADS ON THE INTERNET.

SO AFTER THE AD IS SHOWN TO THE USER, THE CONSUMER, THE PATENT TEACHES THAT YOU SHOULD:

"OKAY. GIVE THEM ACCESS TO THE MEDIA."

SO HERE I'VE ILLUSTRATED THAT BY SHOWING THAT HULU STREAMS THE CONTENT TO THE CONSUMER. I BET YOU YOU CAN GUESS WHAT THE NEXT SLIDE IS. THAT'S CONVENTIONAL, AS WELL.

HULU, THEY STREAM CONTENT WHETHER IT'S AD-SUPPORTED OR NOT. THEY DON'T DO THE ACTUAL STREAMING PART. THEY DON'T DO ANY DIFFERENTLY UNDER THE ULTRAMERCIAL PATENT. AND, INDEED, TELEVISION PROGRAMS, RADIO PROGRAMS: "AFTER A MESSAGE FROM OUR SPONSOR," THEY DELIVER THAT CONTENT. SO THERE'S NOTHING TERRIBLY NEW THERE, EITHER.

AND EVEN UNDER THE PATENT YOU'LL SEE THAT JUST AS BEFORE EVERYBODY IS DOING THE SAME THING. THE CONTENT PROVIDER IS PROVIDING THE CONTENT. THE FACILITATOR IS DOING THE STREAMING. THE CONSUMER IS WATCHING THINGS. THE SPONSOR IS CREATING THEIR ADVERTISEMENTS.

SO ALL OF THE ROLES IN THE ORDERED COMBINATION ARE EXACTLY THE SAME. WELL, SO WHAT EXACTLY HAPPENED THAT ALLOWED THE DDR PATENT TO AVOID THE SAME FATE AS THE ULTRAMERCIAL PATENT AND THE OTHER PATENTS THAT HAVE GONE DOWN IN THE FEDERAL CIRCUIT?

WELL, THE DDR SOLUTION, ACCORDING TO THE FEDERAL CIRCUIT, THE SITUATION THERE IS THAT WE'RE NOT TALKING ABOUT AN OLD PROBLEM, BUT RATHER ONE IS THAT, QUOTE:

"SPECIFICALLY ARISING IN THE REALM OF COMPUTER NETWORKS."

AND THE SOLUTION THAT CAME UP IN THE DDR PATENT WAS ONE THAT WAS, QUOTE:

"NECESSARILY ROOTED IN COMPUTER TECHNOLOGY," UNQUOTE.

SO LET'S FIGURE OUT WHAT WAS GOING ON. THIS IS -- I'M JUST GOING TO ILLUSTRATE WHAT HAPPENED IN THE CONVENTIONAL INTERNET WORLD BEFORE THE DDR PATENT. SO I HAVE A WEBSITE HERE FOR A BIKE STORE THAT WE'VE CALLED "OAKTOWN BIKES" THAT, STRANGELY ENOUGH, IS LOCATED AT 1301 CLAY STREET.

THE WEBSITE FOR OAKTOWN BIKES ALSO INCLUDES AN ADVERTISEMENT THAT YOU CAN SEE THERE. THAT'S IN BLUE. IT SAYS:

"LOCK YOUR BIKE WITH A K-LOCK."

SO THAT'S AN ADVERTISEMENT FOR A BIKE LOCK FROM A COMPANY CALLED "K-LOCK."

AND IF THE USER CLICKS ON THAT AD IN THE CONVENTIONAL WORLD AFTER THEY GOT THAT CLICK ON THAT AD FROM THE OAKTOWN BIKES WEBSITE, WHAT HAPPENED IS THEY GET WHISKED AWAY TO A SITE FOR THE ADVERTISER.

SO HERE YOU CAN SEE AT THE LEFT, BOTTOM LEFT, THAT THIS NEW WEBSITE IS COMING FROM THE K-LOCK SERVER. AND THE K-LOCK PEOPLE PRESUMABLY ADVERTISE THEIR LOCK IN A VARIETY OF DIFFERENT PLACES. AND THEY PROBABLY DON'T WANT TO KEEP A LANDING PAGE ON THEIR OWN WEBSITE FOR EVERY SINGLE PLACE WHERE THEY HAVE AN AD.

SO AS IT TURNS OUT, HERE THEY HAVE SOME WONDERFUL INFORMATION ABOUT A K-LOCK. AND IF THE USER IS INTERESTED IN BUYING THAT K-LOCK, WELL, THERE'S AN EASY WAY TO DO THAT. THEY CLICK RIGHT HERE (INDICATING). BUT WHAT HAPPENS? THEY BUY THE LOCK FROM AMAZON. SO THAT'S A LOST SALE FOR OAKTOWN BIKES.

AND IF YOU THINK ABOUT IT, THIS IS A PROBLEM THAT DOESN'T HAPPEN IN THE REAL WORLD, IN THE BRICK AND MORTAR WORLD. IF YOU ACTUALLY GO TO THE STORE, THE ACTUAL BRICK AND MORTAR OAKTOWN BIKES, AND THERE'S AN ADVERTISING CIRCULAR, AND THERE'S AN AD FOR A K-LOCK BIKE LOCK, WELL THE USER LOOKS AT IT AND SAYS:

"HEY, I WOULD LIKE TO BUY THAT."

WHAT HAPPENS? THEY LOOK UP, AND THEY SEE A K-LOCK RIGHT THERE IN THE STORE. AND THEY END UP BUYING IT. AND THEY BUY IT FROM OAKTOWN BIKES. SO NO LOST SALE.

SO THIS PROBLEM OF THE USER BEING WHISKED AWAY TO THE ADVERTISER SITES, THAT'S UNIQUE TO THE INTERNET. WE'RE NOT SOLVING AN OLD PROBLEM.

SO THE OTHER THING THAT COMES UP IN THE DDR CASE, ASIDE FROM THE FACT THAT THIS WAS A UNIQUELY TECHNOLOGICAL SOLUTION TO A PROBLEM ROOTED IN TECHNOLOGY, IS THAT THE FEDERAL CIRCUIT SAID THAT THE DDR PATENT, WHEN YOU LOOKED AT THE LIMITATIONS OF THE PATENT AND YOU LOOKED AT THEM AS AN ORDERED COMBINATION, THAT THE ORDERED COMBINATION WAS UNCONVENTIONAL.

SO HOW DOES THAT WORK? WELL, OKAY. NOW LET'S LOOK WHAT HAPPENS UNDER THE DDR INVENTION. WE START OFF AT THE SAME WEBSITE. USER CLICKS ON THE SAME AD. THE AD SERVER AD SUPPORT TRACKS THAT AD. CLICK.

BUT WHAT HAPPENS? INSTEAD OF GETTING WHISKED AWAY TO K-LOCK, THE K-LOCK SERVER DOES NOTHING AT ALL. INSTEAD, THE AD SERVER, WHICH BEFORE ALL IT DID WAS TRACK THE AD CLICK, THE AD SERVER NOW HAS TO CREATE A BRAND NEW WEB PAGE. I CALL IT A "MASHUP PAGE." BECAUSE WHAT IT DOES IS IT TAKES THE DISTINCTIVE VISUAL ELEMENTS OF THE HOST SITE -- HERE OAKTOWN BIKES -- AND IT KIND OF MASHES IN THE MIDDLE OF THAT THE PRODUCT INFORMATION FOR THE ADVERTISED PRODUCT.

SO IF YOU LOOK -- IT'S GOING TO BE A LITTLE SMALL ON YOUR SCREEN -- BUT IF YOU LOOK AT THE TOP OF THAT WEB BROWSER YOU'LL SEE THAT YOU'RE ACTUALLY ON A SITE THAT COMES -- A WEB PAGE THAT COMES FROM ADSERVER.COM.

BUT TO THE USER IT LOOKS LIKE THEY ARE STILL ON THE OAKTOWN BIKES WEBSITE. AND IF THEY CLICK ON THAT "BUY" BUTTON, SINCE THEY ARE NOT ON THE K-LOCK SERVER, THEY ARE UNDER THE CONTROL OF ADSERVER, AND THE ADSERVER KNOWS WHAT THE HOST IS. THAT "BUY" BUTTON WILL ALLOW THEM TO BUY THE LOCK FROM OAKTOWN BIKES. SO NO LOST SALE. SOLVES THE PROBLEM THAT OCCURRED ONLY ON THE INTERNET.

AND IN THIS SOLUTION, IN THIS ORDERED COMBINATION, THE AD SERVER NOW PLAYS A WHOLE NEW ROLE. WHEREAS BEFORE IT MERELY SAT IN THE BACKGROUNDS AND WATCHED WHAT HAPPENED AND RECORDED WHEN SOMEBODY CLICKED ON AN AD, NOW IT'S ACTUALLY CREATING CONTENT. NOT JUST THAT. IT'S CREATING CONTENT ON THE FLY, DEPENDING ON WHAT WAS THE HOST WEBSITE, WHAT WAS THE ADVERTISED PRODUCT. IT'S A VERY DYNAMIC ACTION THAT IS TOTALLY DIFFERENT FROM WHAT THE AD SERVER WAS DOING BEFORE.

AND K-LOCK, THEIR SERVER ISN'T INVOLVED AT ALL. TOTALLY DIFFERENT ROLE.

SO THAT IS, I THINK, WHAT IS DIFFERENT ABOUT THE ORDERED COMBINATION, AND WHY THE ORDERED COMBINATION, ACCORDING TO THE FEDERAL CIRCUIT, WAS UNCONVENTIONAL.

SO, AGAIN, WE HAD A PROBLEM ARISING IN SPECIFICALLY MODERN TECHNOLOGY; HAPPENED ONLY ON THE INTERNET. A SOLUTION NECESSARILY ROOTED IN MODERN TECHNOLOGY; HAS TO DO ALL ABOUT THE SERVERS AND THE ROLES THEY PLAY, AND THE ORDERED COMBINATION; TOTALLY REDEFINED THE ROLES OF ALL THE ACTORS INVOLVED.

ALL RIGHT. SO NOW LET'S LOOK AT OUR PATENTS, BECAUSE, OF COURSE, YOU'RE NOT INTERESTED IN WHETHER OR NOT THE DDR PATENT IS INVALID HERE. YOU'RE HERE TO DECIDE OUR PATENTS.

SO THE FIVE PATENTS-IN-SUIT I'VE JUST SUMMARIZED AGAIN WHAT WE SAY ARE THE ABSTRACT IDEAS. AND THIS IS SLIDE 24. '906 PATENT. THIS IS THE BOOKMARKING PATENT. AND WE'VE KIND OF SUMMARIZED THE PURPOSE OF THAT PATENT AS BOOKMARKING ACROSS DEVICES.

IF YOU WANT TO SAY IT IN A FEW MORE WORDS:

"BOOKMARKING ACROSS DEVICES WITH DIFFERENT FORMATS."

THAT'S ALSO FINE.

THE '962 PATENT IS ABOUT SEARCHING FOR SHOWS USING SELECTABLE CATEGORIES. THE '929 PATENT IS ABOUT CATEGORIZING SHOWS USING SO-CALLED COMBINATION CATEGORIES.

AND THEN, THE '709 AND '762 PATENT, THEY SHARE A COMMON SPECIFICATION. AND THAT SPECIFICATION DESCRIBES IDENTIFYING SHOWS TO WATCH BASED ON A VIEWING HISTORY.

AND JUST BEFORE WE GET TOO MUCH FURTHER JUST WANT TO REMIND THE COURT OF A FEW GUIDEPOSTS WE HAVE FROM THE FEDERAL CIRCUIT AND THE SUPREME COURT. ACTUALLY, I GUESS ALL OF THESE ARE FROM THE SUPREME COURT. IS THAT IF YOU ADD, QUOTE:

"WELL-UNDERSTOOD, ROUTINE, CONVENTIONAL ACTIVITIES,"

UNQUOTE, THAT'S NOT INVENTIVE. AND IF YOU, QUOTE:

"MERELY" -- WELL, ACTUALLY NOT QUOTE. I'M PARAPHRASING. IF YOU MERELY RECITE GENERIC COMPUTER COMPONENTS,

THAT IS NOT INVENTIVE.

AND PURELY FUNCTIONAL AND GENERIC COMPUTER HARDWARE, THAT'S NOT INVENTIVE. AND THAT'S A POINT THAT WE'LL ADDRESS ON SOME OF YOUR QUESTIONS.

AND THEN, ALSO RELEVANT TO SOME OF YOUR QUESTIONS: THE MERE ATTEMPT TO LIMIT THE USE OF AN IDEA TO A PARTICULAR TECHNOLOGICAL ENVIRONMENT, THAT'S NOT INVENTIVE. SO THAT WOULD BE, FOR EXAMPLE, DO IT ON A COMPUTER. DO IT ON THE INTERNET. DO IT WITH A SET-TOP BOX.

ALL RIGHT. SO IF YOU LOOK AT ROVI'S INFRINGEMENT CONTENTIONS, WHICH ARE EXHIBIT I IN THE SECOND KWUN DECLARATION, THE REPLY DECLARATION, YOU'LL SEE ON PAGE FOUR THAT THEY HAVE A DEFINITION OF WHAT THEY SAY ACTUALLY EMBODIES THE INFRINGING ACTIVITY. AND THEY REFER TO NETFLIX'S HARDWARE, WHICH THEY SAY REFERS TO ANY PROCESSOR, COMPUTER, SERVER, SERVER FARM, CLOUD PLATFORM OR OTHER EQUIPMENT.

SO I THINK THAT THAT IS A VERY, VERY BROAD GENERIC DEFINITION. THEY ARE TRYING TO SWEEP IN PRETTY MUCH ANYTHING THAT IS A COMPUTING DEVICE. AND I THINK IT SHOWS WHY THESE PATENTS CLEARLY ARE NOT ACTUALLY AIMED AT SPECIFIC MACHINES.

SO LET'S LOOK AT THE '906 PATENT, IN PARTICULAR. THIS IS THE BOOKMARKING PATENT. THE ABSTRACT IDEA, BOOKMARKING ACROSS DEVICES. I HAVE UP HERE IN THIS SLIDE, SLIDE 28 -- EXCUSE ME. SLIDE 27, CLAIM ONE OF THE '906 PATENT. THE OTHER INDEPENDENT CLAIM IN THE PATENT, WHICH IS CLAIM TEN, FUNCTIONALLY IS VERY,

VERY SIMILAR.

I'VE HIGHLIGHTED IN BLUE WHAT I WOULD SAY IS THE ABSTRACT IDEA AS REPRESENTED HERE IN THE CLAIM. AND I WILL ADMIT THAT THESE HIGHLIGHTINGS, IT'S A LITTLE MUSHY EXACTLY WHERE THE BORDERS ARE. SO I'M NOT GOING TO SAY THIS IS THE ONLY WAY YOU CAN SLICE IT AND DICE IT.

BUT FOR ILLUSTRATIVE PURPOSES I WANTED TO BE ABLE TO DO SOMETHING FOR YOU, YOUR HONOR. SO I'VE HIGHLIGHTED IN BLUE THE ABSTRACT IDEA. AND THERE'S A LOT OF WORDS THERE. THERE'S A LOT MORE WORDS THAN "BOOKMARKING ACROSS DEVICES."

BUT, REALLY, IF YOU TAKE A LOOK AT IT, THAT'S ALL THAT THEY SAY. SO YOU HAVE, FOR EXAMPLE, THAT YOU ARE GOING TO DELIVER MEDIA TO A FIRST CLIENT DEVICE. THAT'S ON THE THIRD LINE. AND THEN, IF YOU DROP DOWN YOU ALSO HAVE THAT YOU ARE GOING TO DELIVER MEDIA TO A SECOND CLIENT DEVICE.

WELL, IF YOU ARE GOING TO BOOKMARK ACROSS DEVICES YOU ARE GOING TO HAVE A COUPLE OF DEVICES YOU ARE GOING TO WATCH THESE ON. SO THAT'S REALLY NO DIFFERENT THAN THE ABSTRACT IDEA.

WE ALSO SAY THAT -- THE CLAIM ALSO SAYS THAT THE MEDIA HAS TO BE CONFIGURED IN A FORMAT COMPATIBLE WITH THE DEVICE PROPERTIES OF THE FIRST CLIENT. DOWN AT THE BOTTOM IT SAYS THE SAME THING FOR THE SECOND CLIENT.

THAT'S JUST SAYING THESE CLIENTS BETTER UNDERSTAND WHAT THE HECK THEY ARE RECEIVING. SO IF YOU ARE GOING TO ACTUALLY STREAM MEDIA TO THESE DEVICES, DO IT IN A WAY THAT THEY ARE ACTUALLY

GOING TO UNDERSTAND.

AND THEN, IN THE MIDDLE WE HAVE:

"RECORDING A BOOKMARK SPECIFYING A POSITION IN THE MEDIA."

THAT'S PLAINLY THE ABSTRACT IDEA OF BOOKMARKING ACROSS DEVICES. SO THEN, AND IN GREEN I'VE HIGHLIGHTED ELEMENTS THAT MERELY INSTRUCT THE PRACTITIONER HOW TO IMPLEMENT THE ABSTRACT IDEA.

SO IF YOU ARE GOING TO SEND MEDIA TO TWO DEVICES IT'S GOT TO GET THERE SOMEHOW. SO YOU ARE GOING TO HAVE TO HAVE A FIRST COMMUNICATIONS LINK AND A SECOND COMMUNICATIONS LINK. AND, INDEED, YOU NEED THOSE TWO LINKS BECAUSE THEY ARE TWO DIFFERENT DEVICES.

AND THEN, WE HAVE THE WORD "IDENTIFIED" THAT APPEARS TWICE BEFORE "DEVICE PROPERTIES." SHOULD THAT'S JUST SAYING THAT BEFORE YOU SEND SOMETHING WITH THE RIGHT DEVICE PROPERTIES, YOU HAVE TO IDENTIFY THOSE DEVICE PROPERTIES. THAT'S KIND OF A TAUTOLOGICAL TRUTH, SO I DON'T THINK THAT ADDS ANYTHING.

AND THEN, WE HAVE THAT THE FIRST CLIENT DEVICE IS ASSOCIATED WITH THE FIRST USER. AND THEN, DOWN AT THE BOTTOM THAT THE SECOND CLIENT DEVICE IS ALSO ASSOCIATED WITH SAID FIRST USER.

IT SOUNDS KIND OF FANCY, BUT REALLY, AGAIN, THAT'S JUST A BOOKMARK. THE WHOLE NOTION OF A BOOKMARK IS IT KEEPS YOUR PLACE FOR A GIVEN USER WHEN YOU WANT TO RESUME THINGS.

SO THAT'S THE ENTIRE CLAIM. AND THAT IS ABOUT AS PURE A

ALICE SITUATION THAT YOU CAN HAVE.

AND WHAT WE HAVE FROM THE ULTRAMERCIAL CASE FROM THE FEDERAL CIRCUIT IS A REMINDER THAT STEPS THAT MERELY INSTRUCT THE PRACTITIONER TO IMPLEMENT THE ABSTRACT IDEA WITH ROUTINE CONVENTIONAL ACTIVITIES, SAY USER COMMUNICATION LINK, ARE INSUFFICIENT TO TRANSFORM THE PATENT-INELIGIBLE IDEA INTO PATENT-ELIGIBLE SUBJECT MATTER.

AND I'M NOT GOING TO DRAG YOU THROUGH THE ENTIRE DISCLOSURE THAT THE INVENTOR FILES WITH THE PATENT OFFICE, UNLESS YOU WANT ME TO. BUT ALL OF THOSE STEPS, THE INVENTORS SAID WERE CONVENTIONAL AND WELL-KNOWN BEFORE THE PATENT.

**THE COURT:** YOU'RE TALKING ABOUT IN THE ULTRAMERCIAL CASE?

**MR. KWUN:** NO, I'M SORRY. IN OUR CASE. IF YOU LOOK AT EXHIBIT H TO THE KWUN DECLARATION THAT'S FILED ALONG WITH THE MOTION, THAT IS AN INVENTION DISCLOSURE FORM THAT THE INVENTORS OF THE '906 PATENT FILED WITH THE PATENT OFFICE. AND WHAT THEY WERE TRYING TO DO IS THEY WERE TRYING TO SWEAR BEHIND THE FILING DATE TO GET AN EARLIER CONCEPTION DATE FOR PRIOR ART PURPOSES. AND TO DO THAT THEY SAID:

> "HERE'S WHAT WE ACTUALLY SUBMITTED TO OUR PATENT GROUP AT THE COMPANY."

AND THE DISCLOSURE GOES IN EXHAUSTIVE DETAIL ABOUT WHAT EXISTED BEFORE THE INVENTION AND ACTUALLY SAYS THAT TRANSCODING WASN'T NEW; THAT STREAMING WASN'T NEW; THAT BOOKMARKING WASN'T

NEW; THAT IDENTIFYING DEVICE PROPERTIES WASN'T NEW. ALL OF THOSE THINGS, NOT ONLY NOT NEW, THEY WERE WELL-KNOWN. SO IF YOU THINK ABOUT THE MODEM OR THE FAX MACHINE THAT WE USED TO USE TO CONNECT TO THE INTERNET OR TO SEND FAXES TO EACH OTHER, AND WHEN YOU MAKE THAT PHONE CALL IT STARTS OFF WITH THE TERRIBLE SCREECHING NOISES, THOSE ARE MODEMS TRYING TO FIGURE OUT WHAT A COMMON FORMAT IS THAT THEY CAN USE. THAT'S IDENTIFYING DEVICE PROPERTIES.

AND, AGAIN, NOT ONLY IS THERE THE GENERAL STATEMENT BY ROVI THAT GENERIC HARDWARE INFRINGES, FOR THE '906 CLAIMS, SPECIFICALLY, ROVI ACCUSES ALL NETFLIX'S HARDWARE AND SOFTWARE THAT PROVIDE THE FEATURE OF BOOKMARKING VIDEO PLAYBACKS ON A FIRST DEVICE AND RESUMING PLAYBACK ON A SECOND DEVICE, OR THAT PROVIDE ANY SIMILAR FUNCTIONALITY.

I THINK THAT'S A CLEAR SIGN THAT WHAT ROVI BELIEVES IS THAT THIS CLAIM IS ENGAGED IN FUNCTIONAL CLAIMING. HIGH LEVEL GENERIC CLAIMING.

'962 PATENT. SO THIS IS SEARCHING USING SELECTABLE CATEGORIES. AND HERE WE, AGAIN, HAVE CLAIM ONE FROM THE PATENT. THIS IS ONE WE HAVE IDENTIFIED AS REPRESENTATIVE. AND IN BLUE, AGAIN, THE ABSTRACT IDEA.

SEARCHING FOR SHOWS AND SELECTABLE CATEGORIES. SO THAT'S PRETTY STRAIGHTFORWARD AS WHAT IS THE ABSTRACT IDEA.

NOW, IF YOU LOOK IN THE DARK GREEN, THESE ARE THE POINTS THAT, AS BEFORE, WE CONTEND REALLY JUST INSTRUCT THE IMPLEMENTER,

THE PRACTITIONER TO IMPLEMENT THE ABSTRACT IDEA OF SEARCHING FOR SHOWS WITH SELECTABLE CATEGORIES.

SO IT SAYS:

"PROVIDE A SEARCH ENGINE APPLICATION." WELL, IF YOU ARE GOING TO SEARCH YOU NEED SOME WAY OF SEARCHING.

"MATCH USING THE SEARCH ENGINE APPLICATION." THAT'S WHAT SEARCH ENGINES DO.

"PROVIDE RESULTS IN A RESULTS LISTING." AGAIN, THAT'S WHAT SEARCH ENGINES DO.

"WHEREIN THE RESULTS COMPRISE," AND THEN FROM THE ABSTRACT IDEA, WE HAVE TO HAVE SELECTABLE CATEGORIES. AND THEN, THE REST OF THIS HERE SAYS THAT YOU SHOULD ACTUALLY DO SOMETHING WITH THOSE RESULTS. OR MORE TO THE POINT, YOU SHOULD LET THE USER DO SOMETHING WITH THE RESULTS. THAT'S INHERENT IN THE IDEA OF SEARCHING FOR SHOWS USING SELECTABLE CATEGORIES.

AND IT SAYS:

"RECEIVE A USER SELECTION FROM THOSE RESULTS AND SHOW

WHAT'S BASICALLY IN THOSE SELECTABLE CATEGORIES." DRILL DOWN ON THE PROGRAM IN THOSE CATEGORIES, AND THEN LET THE USER DO SOMETHING WITH THAT.

SO LET'S SAY WE HAD A SELECTABLE CATEGORY THAT WAS THE ORIGINAL STAR WARS TRILOGY. THEY CAN CHOOSE THAT. THEY CAN FIND OUT THAT THE ORIGINAL STAR WARS TRILOGY HAS "A NEW HOPE, EMPIRE STRIKES BACK" AND "RETURN OF THE JEDI."

AND THEY CAN SAY:

"OH, MY FAVORITE IS 'EMPIRE STRIKES BACK.' I'M GOING TO WATCH THAT ONE." THAT'S PRETTY MUCH INHERENT IN THE ABSTRACT IDEA.

WE HAVE A NEW COLOR ON THIS SLIDE WHICH ON HERE IS LOOKING TO ME LIKE YELLOW, BUT WAS INTENDED TO BE A LIGHTER VERSION OF GREEN. I TRIED TO MAKE EVERYTHING THAT WAS GREEN OF SOME SHADE, THESE STEP TWO OF ALICE.

THESE ARE WHAT I HAVE NOTED AT THE BOTTOM WHAT WE'RE CALLING "TOKEN EXTRA-SOLUTION ACTIVITY." AND THEY ARE REALLY, TO BE A LITTLE GLIB, THEY ARE SORT OF THE "BLAH, BLAH, BLAH."

THEY ARE POINTS THAT ARE SOMEWHAT EXTRANEOUS TO THE ACTUAL PURPOSE OF THE INVENTION, AND THEY ARE JUST KIND OF TACKED ONTO THE CLAIM. SO HERE IT SAYS THAT THE SEARCH ENGINE SHOULD HAVE AN ALPHANUMERIC INPUT AREA. THAT'S OBVIOUSLY VERY CONVENTIONAL.

AND THAT THESE RESULTS SHOULD COME FROM A DATABASE. NO BIG SURPRISE THERE.

AND OH, YOU KNOW, IN ADDITION TO SELECTABLE CATEGORIES YOU MIGHT ALSO WANT TO DISPLAY SOME ACTUAL SHOW LISTINGS. SO INSTEAD OF JUST SAYING "THE ORIGINAL STAR WARS TRILOGY," OH, MAYBE YOU'RE INTERESTED IN "2001: A SPACE ODYSSEY."

AND WE HAVE FROM ULTRAMERCIAL, BACKED UP BY MAYO FROM THE SUPREME COURT, ON THE NEXT SLIDE. THAT, AGAIN, WE HAVE THE POINT ABOUT THE STEPS THAT MERELY IMPLEMENT THE ABSTRACT IDEA ARE NOT ENOUGH. BUT DOWN AT THE BOTTOM WE ALSO NOTE THAT:

"ADDING TOKEN EXTRA-SOLUTION ACTIVITY DOES NOT CONVERT

THE ABSTRACT IDEA INTO PATENT-ELIGIBLE SUBJECT MATTER."

AND IN SOME OF THE CASES YOU'LL SEE THE PHRASE "PRE SOLUTION ACTIVITY OR POST SOLUTION ACTIVITY." THOSE ARE MORE SPECIFIC VERSIONS, OBVIOUSLY. AND SOMETIMES INSTEAD OF "TOKEN" YOU'LL SEE "INSIGNIFICANT." OBVIOUSLY, ALL THE SAME THING, THOUGH.

BUT THAT COVERS WHAT YOU'VE SEEN ON THAT PREVIOUS SLIDE. AND HERE IS WHAT THEY HAVE ACCUSED IN TERMS OF HARDWARE ON THE NEXT SLIDE, FOR THE '962 PATENT. AND IT'S ACTUALLY THE SOFTWARE AND THE HARDWARE.

BUT, AGAIN, THEY HAVE CLAIMED THINGS ENTIRELY FUNCTIONALLY HERE. NOW, I'M NOT SAYING THAT THEY HAVEN'T ACTUALLY SOMEWHERE ELSE ALSO DRILLED DOWN TO THE SPECIFIC SOFTWARE, BECAUSE THEY DO HAVE CLAIM CHARTS THAT, AT TIMES, IS A LITTLE MORE SPECIFIC.

BUT IN THE MAIN, THEY ARE ACCUSING THINGS THAT ARE VERY BROAD, VERY GENERIC. THEY WOULDN'T BE ABLE TO DO THAT IF THE CLAIMS WERE TIED TO SPECIFIC MACHINES. YOU WOULDN'T BE ABLE TO SAY THAT ALL NETFLIX'S HARDWARE WHICH, REMEMBER, INCLUDES SERVER, SERVER CLOUDS, COMPUTERS, ALL SORTS OF THINGS. YOU WOULDN'T BE ABLE TO MAKE ACCUSATIONS LIKE THIS IF YOU WERE LIMITED TO SPECIFIC HARDWARE.

AND NEXT WE HAVE THE '929 PATENT. SO THIS IS THE ABSTRACT IDEA OF CATEGORIZING SHOWS USING COMBINATION CATEGORIES. SO JUST TO REMIND THE COURT COMBINATION CATEGORIES THESE, ARE THINGS LIKE: MY WIFE REALLY LIKES HISTORICAL FICTION. SO THOSE ARE THINGS THAT ARE BOTH HISTORY AND FICTION. SO THAT'S

COMBINATION CATEGORY.

I HAVE A SOFT SPOT IN MY HEART FOR ROMANTIC COMEDIES. SO THAT'S ROMANCE AND COMEDY. THAT'S WHAT A COMBINATION CATEGORY IS. IT TAKES TWO SIMPLE CATEGORIES, COMBINING THEM TOGETHER IT'S A COMBINATION CATEGORY.

AND HERE WE HAVE, AGAIN, A LOT OF BLUE, BECAUSE THERE'S A LOT OF WORDS TO DESCRIBE A PRETTY SIMPLE CONCEPT. THIS IS THE ABSTRACT IDEA, AGAIN. AND WE SAY THAT YOU MAKE -- BASICALLY SAYS YOU MAKE COMBINATION CATEGORIES OUT OF SIMPLE CATEGORIES. YOU FIND A PROGRAM THAT HAS AT LEAST TWO SIMPLE CATEGORIES ASSOCIATED WITH IT, AND THEN YOU COMBINE SOME SUBSET OF THOSE CATEGORIES INTO A COMBINATION CATEGORY.

SO, FOR EXAMPLE, WHEN "HARRY MET SALLY," YOU LOOK AT IT AND SAY:

"OH, IT'S A COMEDY. IT'S ALSO A ROMANCE. WHY DON'T I MAKE THE COMBINATION CATEGORY ROMANCE COMEDIES?"

SO THAT'S ALL THE BLUE. IN DARK GREEN WE HAVE AT LEAST ONE OF THE PROGRAM LISTINGS IS ASSOCIATED WITH TWO OR MORE SIMPLE CATEGORIES. WELL, YOU CAN'T MAKE A COMBINATION CATEGORY THAT HAS ANY PURPOSE UNLESS THERE IS AT LEAST ONE PROGRAM LISTING THAT IS ASSOCIATED WITH TWO SIMPLE CATEGORIES. OKAY?

IF EVERY SINGLE PROGRAM LISTING IS ASSOCIATED WITH ONLY ONE CATEGORIES OR NO CATEGORIES NONE OF YOUR PROGRAMS ARE GOING TO BE DESCRIBED BY COMBINATION CATEGORIES. SO THAT DOESN'T

REALLY ADD ANYTHING.

AND THEN, IN LIGHT GREEN WE HAVE THE REST OF THE CLAIM. WE HAVE A RECEIVER. WE HAVE A PROCESSOR. YOU'LL NOTE THAT THERE IS NOTHING IN HERE SAYING WHAT SORT OF RECEIVER AND THERE'S NOTHING HERE SAYING WHAT SORT OF PROCESSOR.

THERE IS A CLAIM CONSTRUCTION POINT HERE, YOUR HONOR, ABOUT RECEIVER AND WHETHER OR NOT A RECEIVER HAS TO BE ESSENTIALLY IN A SET-TOP BOX OR SET-TOP BOX-LIKE EQUIPMENT. BUT YOU WILL SEE THAT THERE'S NOTHING IN HERE THAT ACTUALLY DEPENDS ON THAT.

THERE'S NOTHING IN HERE THAT SAYS:

"OH, WELL, BECAUSE IT'S IN A SET-TOP BOX I CAN DO SOMETHING EXTRA SPECIAL AND COOL."

IF WE'RE RIGHT, BECAUSE WE'RE THE ONE ADVANCING THE POSITION THAT A RECEIVER IS A NARROW THING. IF WE ARE RIGHT THIS WILL BE NARROWER THAN IF ROVI IS RIGHT.

HOWEVER, THAT WILL MERELY BE AN ATTEMPT TO LIMIT THE ABSTRACT IDEA OF COMBINATION CATEGORIES TO A PARTICULAR TECHNOLOGICAL ENVIRONMENT.

THE NEXT SLIDE I HAVE THE SAME LAW THAT YOU'VE SEEN BEFORE. THIS WAS JUST IN CASE WE WENT THROUGH THE PATENTS IN A DIFFERENT ORDER. I'LL JUST SKIP PAST THAT.

AND WE HAVE THE ACCUSATION BY ROVI OF WHAT HARDWARE AND SOFTWARE INFRINGES. IT'S VERY SIMILAR. WE DON'T NEED TO DWELL ON THAT VERY MUCH.

AND THEN, WE HAVE THE '709 PATENT, SO WE'RE GET TO OUR LAST TWO PATENTS THAT SHARE A COMMON SPECIFICATION, THE '709 AND THE '762, BOTH OF WHICH IMPLEMENT THE ABSTRACT IDEA OF IDENTIFYING SHOWS TO WATCH BASED ON A VIEWING HISTORY.

SO THIS IS CLAIM 13 FROM THE '709 PATENT. OH, AND ACTUALLY LET ME BACK UP A LITTLE BIT, TO SLIDE THREE WITH THE '929 PATENT.

I DO WANT TO NOTE THAT WHAT WE'RE SAYING IS THE REPRESENTATIVE CLAIM HERE IS CLAIM 11. AND THAT MAY BE STRANGE BECAUSE WE'VE HAD A LOT OF CLAIM ONES. WE'RE NOT CHERRY-PICKING. CLAIM 11 IS THE FIRST CLAIM ASSERTED BY ROVI, AND IT'S AN INDEPENDENT CLAIM. SO IT'S NOT THAT WE DIDN'T LIKE CLAIM ONE? IT'S THAT WE'RE NOT ACCUSED OF INFRINGING CLAIM ONE, SO IT'S NOT REALLY AT ISSUE HERE.

SO BACK TO THE '709 PATENT, WHICH IS ON PAGE 36, SLIDE 36. HERE, AGAIN, WE -- OUR REPRESENTATIVE CLAIM ISN'T CLAIM ONE. IT'S CLAIM 13. AGAIN, THAT'S BECAUSE THAT IS THE FIRST CLAIM THAT WE'RE ACCUSED OF INFRINGING. SO IT'S NOT CHERRY-PICKING.

SO BLUE IS THE ABSTRACT IDEA. YOU'LL SEE IT TALKS ABOUT PROVIDING A CUSTOMIZED VIEWING EXPERIENCE, GENERATING A VIEWING HISTORY DATABASE. AND THEN, IF YOU DROP DOWN TO THE NEXT SET OF BLUE:

> "GENERATING AT LEAST ONE PERSONAL VIEWING RECOMMENDATION."

SO, AGAIN, IDENTIFYING SHOWS TO WATCH BASED ON A

VIEWING HISTORY. THAT'S FAIRLY STRAIGHTFORWARD IS THE FACT THAT THE ABSTRACT IDEA.

IN DARK GREEN WE HAVE:

"DETERMINING AT LEAST ONE OF THE ASSOCIATED PROGRAM CRITERIA FROM THE VIEWING HISTORY DATABASE."

THAT SOUNDS PRETTY GOOD. BUT, REALLY, THE POINT IS IF I'M GOING TO RECOMMEND SOMETHING TO YOU BASED ON WHAT YOU'VE WATCHED BEFORE, I HAVE TO GENERALIZE. I HAVE TO FIGURE OUT: WHAT IS IT ABOUT THESE PROGRAMS YOU'VE WATCHED BEFORE THAT IS WHY YOU WATCH THEM?

SO I MIGHT LOOK AT A BUNCH OF PROGRAMS YOU'VE WATCHED AND SAY:

"I SEE A LOT OF COMEDIES."

THAT'S DETERMINING AT LEAST ONE OF THE ASSOCIATED PROGRAM CRITERIA FROM THE VIEWING DATABASE. REALLY, THERE'S NO WAY TO IDENTIFY SHOWS TO WATCH BASED ON A VIEWING HISTORY UNLESS YOU MAKE SOME SORT OF GENERALIZING FROM THE VIEWING HISTORY. SO THAT'S NECESSARY TO IMPLEMENT THE ABSTRACT IDEA.

AND THEN, WE HAVE:

"APPLYING THE ASSOCIATED PROGRAM CRITERIA."

WELL, IF I WENT TO ALL THAT WORK TO FIGURE OUT YOU LIKE COMEDIES, PRESUMABLY I'M GOING TO USE THAT INFORMATION TO ACTUALLY MAKE THE RECOMMENDATION. AND, INDEED, IF I DON'T -- IF I DON'T USE THE CRITERIA THAT I TOOK FROM THE VIEWING HISTORY TO MAKE RECOMMENDATIONS, I CAN'T PERFORM THE ABSTRACT IDEA OF

IDENTIFYING SHOWS TO WATCH BASED ON VIEWING HISTORY. SO THAT IS NECESSARY TO IMPLEMENT THE IDEA.

AND, FINALLY, AND PERHAPS MOST EASILY:

"PROVIDING THE PERSONAL VIEWING RECOMMENDATION TO A USER."

THAT'S OBVIOUSLY NECESSARY TO ACTUALLY IDENTIFY SHOWS TO WATCH. I SUPPOSE IN THEORY ONE COULD IDENTIFY THE SHOWS AND THEN NOT TELL ANYONE. BUT I THINK AS A PRACTICAL MATTER THAT'S NECESSARY TO IMPLEMENT THE ABSTRACT IDEA.

AND THEN, WE HAVE THE LIGHT GREEN. THE VIEWING HISTORY DATABASE. THERE'S A LITTLE MORE DETAIL THERE. YOU KNOW, WHY DON'T YOU KEEP TRACK OF THE ACTUAL PROGRAM LISTINGS AND THE ASSOCIATED PROGRAM CRITERIA? MAYBE STRICTLY SPEAKING, NOT ENTIRELY NECESSARY, BUT UTTERLY CONVENTIONAL. THERE'S NOTHING INVENTIVE GOING ON THERE.

FIGURE OUT WHETHER THE ASSOCIATED PROGRAM CRITERIA THAT YOU HAVE GENERALIZED FROM THE VIEWING HISTORY, WHETHER THOSE MEET A USER PREFERENCE PROFILE. SO THIS ONE IS A LITTLE TRICKIER TO FIGURE OUT WHAT IS GOING ON. SO LET ME EXPLAIN THROUGH AN EXAMPLE.

MY SONS, I HAVE TO HELP FIGURE OUT WHAT THEY SHOULD READ AT NIGHT ALL THE TIME. AND THEY LIKE TO READ BOOKS ABOUT SPACE, OUTER SPACE. AND LET'S SAY THAT MY SON SAYS THAT:

"DAD, I DON'T WANT TO READ ANYMORE STAR WARS SERIES BOOKS."

ACTUALLY, AS A PRACTICAL MATTER, HE WILL NEVER SAY THAT. HE LOVES STARS WARS. BUT LET'S SAY THAT HE HAS SAID:

"I DON'T WANT TO READ ANYTHING FROM THE STAR WARS SERIES."

HE HAS NOW GIVEN ME SOMETHING FROM A USER PREFERENCE PROFILE. HE'S EXPLICITLY TOLD ME:

"STAR WARS SERIES, BAD."

SO EVEN THOUGH HE GENERALLY LIKES SPACE BOOKS, NOT STAR WARS, NOT BOOKS FROM THE STAR WARS SERIES.

SO IT SAYS DO SOMETHING LIKE THAT. LET THE USER GIVE SOME EXPLICIT PREFERENCE PROFILES. AND SO IN THAT INSTANCE, OKAY, FINE. I WON'T GIVE HIM A BOOK FROM THE STAR WARS SERIES. MAYBE I'LL SUGGEST TO HIM THAT HE READ A BOOK FROM ZITA THE SPACEGIRL SERIES OF BOOKS.

IT ALSO SAYS HERE THAT YOU CAN DETERMINE FROM THE PROGRAM LISTING DATABASE, I.E. THE CATALOG, WHAT PROGRAMS HAVE NOT BEEN WATCHED. AND THEN, IT SAYS, YOU KNOW, ONLY USE THE PROGRAMS NOT YET WATCHED TO FIGURE OUT WHAT TO RECOMMEND.

SO GOING BACK TO ZITA THE SPACEGIRL, AS IT SO HAPPENS MY SON HAS READ THE FIRST BOOK IN THE ZITA THE SPACEGIRL SERIES. SO MAYBE I'LL RECOMMEND TO HIM THE SECOND BOOK. I WON'T RECOMMEND THE STAR WARS BOOK BECAUSE HE SAYS "NO."

I WILL RECOMMEND A SPACE BOOK BECAUSE THAT'S WHAT HE LIKES TO READ. AND I WON'T RECOMMEND ZITA THE SPACEGIRL, BECAUSE HE'S ALREADY READ IT.

SO THOSE ARE ALL ADDITIONAL DETAILS, BUT THOSE ARE ALL THINGS THAT PARENTS HAVE BEEN DOING FOR THOUSANDS OF YEARS. THERE'S NOTHING UNCONVENTIONAL ABOUT ANY OF THAT.

AND I WANT TO TURN NOW TO THE '762 PATENT ON THE NEXT SLIDE, SLIDE 37. THIS IS CLAIM ONE FROM THE '762 PATENT. AND THE COLORING SHOULD HOPEFULLY BE FAMILIAR TO YOU BY NOW.

IN BLUE WE HAVE THE ABSTRACT IDEA. TRACKING A VIEWING HISTORY. FINDING PROGRAMS THAT ARE CONSISTENT WITH THE USER'S VIEWING HISTORY.

SO THAT'S PRETTY FORWARD AS THE ABSTRACT IDEA.

IN DARK GREEN WE HAVE TRACKING THE USER'S VIEWING HISTORY AND STORING IT. WELL, IF YOU ARE GOING TO USE THE VIEWING HISTORY YOU BETTER KEEP TRACK OF IT AND YOU BETTER HAVE IT SOMEWHERE.

AND THEN, WE ALSO HAVE DISPLAYING A DISPLAY OF PROGRAM TITLES WHEREIN THE DISPLAY INCLUDES THE PROGRAMS FOUND. THAT'S SORT OF SIMILAR TO ONE OF THE OTHER PATENTS WE JUST LOOKED AT. YOU BETTER DELIVER THOSE RECOMMENDATIONS, THOSE THINGS THAT YOU IDENTIFIED TO THE USER. THAT'S ALL THAT IS SAYING.

AND THEN, HERE WE HAVE IN LIGHT GREEN, OR YELLOW, DEPENDING ON YOUR POINT OF VIEW, WE HAVE THE REST OF THE CLAIM. AND IT SAYS, YOU KNOW, USE A SERVER. NOTHING NEW ABOUT CLIENT-SERVER ARCHITECTURE BY 1998. FIGURE OUT WHETHER THOSE SHOWS HAVE BEEN PREVIOUSLY VIEWED AND VISUALLY DISTINGUISH YOUR RESULTS.

SO UNLIKE IN THE '709 AND '762 PATENT YOU ACTUALLY, IN MY EXAMPLE, I WOULD SAY TO HIM:

"DO YOU WANT TO READ ZITA THE SPACEGIRL, THE FIRST BOOK, WHICH YOU HAVE ALREADY READ? DO YOU WANT TO REREAD THAT, OR DO YOU WANT TO READ THE SECOND BOOK, WHICH YOU HAVEN'T READ YET?"

AND THAT'S REALLY NO DIFFERENT FROM WHAT YOU HAVE SEEN IN STORES WHEN THEY SAY, YOU KNOW:

"THIS IS THE NEW HOT ITEM." OR "JUST ARRIVED."

OR WHEN YOU LOOK IN TV GUIDE AND IT TELLS YOU SOME SHOWS ARE RERUNS. OTHER SHOWS ARE NOT.

OR WHEN YOU TELL YOUR SON:

"DO YOU WANT TO READ THE SAME BOOK THAT YOU ALREADY READ," WHICH HE, STRANGELY ENOUGH, OFTEN WANTS TO DO, "OR DO YOU WANT TO READ A NEW BOOK?"

I HAVE THE SAME LAW FOR THE SAME REASON. WE CAN SKIP PAST THAT.

AND THEN, MAKING ITS FINAL APPEARANCE ARE THE REMARKABLY SIMILAR INFRINGEMENT CONTENTIONS FOR THE '709 AND THE '762 PATENTS. AGAIN, THEY ARE ENTIRELY FUNCTIONALLY DEFINED HERE.

SO, AGAIN, I JUST CLOSE HERE, AND THEN I'M GOING TO GO BACK TO YOUR QUESTIONS TO MAKE SURE. I THINK I HAVE MISSED A FEW.

BUT FOR ALL OF THE PATENTS THEY ARE ALL DIRECTED TO

ABSTRACT IDEAS. ALL OF THE ELEMENTS ARE ENTIRELY CONVENTIONAL. AND IN SHARP DISTINCTION WITH DDR, ALL OF THE ROLES ARE ENTIRELY THE SAME. WE STILL HAVE MEDIA SERVERS STREAMING. WE STILL HAVE USERS WATCHING. WE DON'T HAVE ANY BRAND NEW ROLES. WE DON'T HAVE ANYTHING AKIN TO THE ADSERVER THAT MAGICALLY, SUDDENLY IS DOING THIS MASHUP DISPLAY OF ADVERTISING.

AND ALL OF THESE ARE PROBLEMS THAT PREDATED THE INTERNET ERA. BOOKMARKING IS NOTHING NEW. RECOMMENDING PROGRAMS IS NOTHING NEW. CATEGORIZING THINGS IS NOTHING NEW. ROMCOMS ARE NOTHING NEW. VERY DIFFERENT FROM DDR.

BUT I DO WANT TO GO THROUGH YOUR QUESTIONS. SO I'M JUST GOING TO GO THROUGH THEM IN ORDER.

YOU START OFF BY ASKING WHETHER ALL SOFTWARE PATENTS MEET THE FIRST PRONG OF THE ALICE MAYO TEST. ARE THEY ALL DIRECTED TO ABSTRACT IDEAS?

**THE COURT:** DO YOU AGREE OR DISAGREE WITH THE NOTION THAT ALL OF THESE PATENTS ARE ESSENTIALLY SOFTWARE PATENTS?

**MR. KWUN:** I THINK THAT THEY ARE ESSENTIALLY SOFTWARE PATENTS. THERE IS AN ATTEMPT TO TACK ON SOME HARDWARE HERE AND THERE, BUT I DON'T THINK THAT CHANGES THE FUNDAMENTAL NATURE OF THE PATENTS.

IF YOU LOOK AT WHAT THEY ARE TRYING TO ACCOMPLISH AND HOW THEY ACCOMPLISH IT THE KEY TO IT IS THE SOFTWARE. BUT I DON'T KNOW THAT YOU NEED TO GET TOO HUNG UP ON THAT. I THINK THESE CASES REALLY ARE MORE ABOUT THE COMPUTER IMPLEMENTATIONS RATHER

THAN HARDWARE VERSUS SOFTWARE, PARTICULARLY.

BUT, YOU KNOW, I THINK THAT THE QUESTION ABOUT WHETHER OR NOT ALL SOFTWARE PATENTS MEET THE FIRST PRONG OF THE ALICE MAYO TEST, IN ULTRAMERCIAL THE FEDERAL CIRCUIT SAID THEY ARE NOT SAYING THAT. THEY DIDN'T FLAT OUT SAY THAT THE ANSWER IS "NO."

BUT THEY ALSO SAID THAT IT COULD BE THAT NOT ALL SOFTWARE PATENTS ARE GOING TO BE INVALID. AND IF YOU LOOK AT DDR, DDR IS A SOFTWARE IMPLEMENTATION. IF YOU THINK THAT DDR WAS CORRECTLY DECIDED -- AND FOR NOW, OBVIOUSLY, WE NEED TO ASSUME THAT -- THAT WOULD SEEM TO SUGGEST THAT THEY ARE NOT ALL GOING TO BE INVALID.

INTERESTINGLY, IN DDR THE COURT DODGED THE FIRST QUESTION. THE COURT SAID:

> "YOU KNOW, WE CAN'T REALLY QUITE TELL WHETHER THERE'S AN ABSTRACT IDEA HERE. WE'RE GOING TO ASSUME THERE IS, SKIP FORWARD TO THE SECOND QUESTION AND SEE WHETHER OR NOT THERE'S A PROBLEM THERE."

SO I THINK THAT AS A PHILOSOPHICAL MATTER I WOULD SAY THE ANSWER HERE IS "NO." NO ONE HAS SAID THAT ALL SOFTWARE HAS TO BE DIRECTED TO ABSTRACT IDEAS.

THAT SAID, THE COURTS HAVE ALSO TALKED ABOUT THE FACT THAT AT SOME LEVEL EVERYTHING IS DIRECTED TO AN ABSTRACT IDEA. AND I THINK, YOU KNOW, IF YOU LOOK AT THESE TWO STEPS, THEY KIND OF COUNTERBALANCE EACH OTHER. IF YOU FALL BACK TOO FAR AWAY FROM THE ACTUAL PATENT AND YOU PICK WAY TOO BROAD AN ABSTRACT IDEA, THAT'S GOING TO MEAN THERE ARE A LOT MORE LIMITATIONS LEFT TO

EXPLAIN IN STEP TWO.

SO IT'S POSSIBLE THAT YOU COULD FRAME PRACTICALLY ANY PATENT AS BEING DIRECTED TO AN ABSTRACT IDEA IF YOU STEP FAR ENOUGH BACK FROM THE PATENT CLAIMS. BUT THAT WILL JUST MAKE IT HARDER TO INVALIDATE AT STEP TWO. SO IT MAY BE THAT THIS IS KIND OF LIKE IN A PRELIMINARY INJUNCTION THAT YOU'RE BALANCING THESE TWO FACTORS, AND IF YOU GO TOO ABSTRACT OR THE FIRST ONE, THE PATENTEE IS GOING TO HAVE A BETTER CHANCE OF SUCCEEDING AT STEP TWO.

**THE COURT:** ALL RIGHT. YOUR ARGUMENTS ALL TODAY PRETTY MUCH WENT TO THE SECOND PRONG OF THE ALICE TEST, THE INVENTIVE CONCEPT NOTION.

**MR. KWUN:** YES.

**THE COURT:** DO YOU SEE ANY DISPUTE THAT, INDEED, ALL OF THE PATENTS PRESENT ABSTRACT IDEAS?

**MR. KWUN:** THERE IS A DISPUTE. SO, AGAIN, IF YOU ACTUALLY LOOK AT THEIR BRIEF WHEN THEY ACTUALLY TRY TO DISCUSS OUR ACTUAL IDEAS, NEVER DO THEY SAY THAT THE IDEAS WE PROPOSE ARE NOT ABSTRACT. ALL THEY SAY IS THAT OUR ABSTRACT IDEAS FAIL TO SWEEP IN ALL OF THE LIMITATIONS. SO -- AND THAT PRESUMABLY THEIR POSITION IS THAT IF YOU DID SWEEP IN ALL OF THE LIMITATIONS, SOMEHOW THAT WOULD MAKE THE IDEA NOT ABSTRACT.

SO I DO WANT TO POINT OUT THAT IN THE BREAST GENE CANCER CASE, WHICH WAS DECIDED IN RE BRCA1 AND BRCA2, AND THEN IT GOES ON FOR A VERY LONG TIME, DECIDED BY THE FEDERAL CIRCUIT. IT'S A

PRECEDENTIAL DECISION, IT WAS DECIDED AT THE END OF DECEMBER. IT'S IN THE MATERIALS. I HAVE A CITATION IN THERE. IT'S A 2014 DECISION POST-ALICE, THAT THE CLAIMS THAT WERE AT ISSUE IN THAT CASE, CLAIMS SEVEN AND EIGHT, METHOD CLAIMS, BOTH OF THEM HAD ONLY TWO LIMITATIONS.

AND IN ADDRESSING STEP ONE OF THE ALICE TEST, THE FEDERAL CIRCUIT IGNORED THE SECOND LIMITATION. AND, BASICALLY, WHAT THEY HAD IS THEY HAD TWO LIMITATION. THE FIRST LIMITATION SAID:

"LET'S DO A COMPARISON TO SEE WHETHER OR NOT THERE HAS BEEN A GENE MUTATION."

AND THEN, IN THE SECOND LIMITATION THEY SAID:

"AND HERE'S HOW YOU DO THAT COMPARISON."

SO YOU HAD WHAT YOU'RE TRYING TO ACCOMPLISH IN THE FIRST LIMITATION, AND HOW YOU ARE GOING TO ACCOMPLISH IT IN THE SECOND LIMITATION. THE FEDERAL CIRCUIT COMPLETELY IGNORED THE SECOND LIMITATION FOR PURPOSES OF STEP ONE IN ALICE.

SO I THINK WHAT YOU CAN DRAW FROM THAT IS THAT YOU DON'T LOOK AT THE INDIVIDUAL, DISCRETE STEPS OF IMPLEMENTATION IN STEP ONE. THAT'S STEP TWO. STEP TWO IS: ARE THOSE DISCRETE STEPS OF HOW YOU IMPLEMENT THE ABSTRACT IDEA, IS THERE SOMETHING MAGIC HAPPENING IN THOSE? IS THERE SOMETHING THAT SUBSTANTIALLY ADDS TO THE ABSTRACT IDEA?

SO THERE IS A DISPUTE OVER WHETHER OR NOT WE NEED TO ACCOUNT FOR EVERY SINGLE LIMITATION IN OUR ABSTRACT IDEA THAT WE PROPOSE AT STEP ONE, BUT I THINK THE CASE LAW CLEARLY SAYS "NO."

ULTRAMERCIAL ALSO, THE WAY THE COURT ADDRESSES THEY SAY THE MAJORITY OF THE LIMITATIONS EMBODY THE ABSTRACT IDEA. SO, PLAINLY NOT ALL OF THE LIMITATIONS.

I ALSO DON'T THINK THERE'S A RULE THAT IT HAS TO BE A MAJORITY. NOWHERE IS THAT STATED IN THE CASES.

BUT, THEORETICALLY, THERE IS A DISPUTE THERE.

YOUR SECOND QUESTION HERE YOU NOTICE THAT WE ONLY DISCUSSED CERTAIN REPRESENTATIVE CLAIMS. SO FIRST I WILL NOTE THAT FOR THE '906 PATENT WE ACTUALLY DISCUSSED EVERY SINGLE CLAIM. WE DISCUSSED -- WE LISTED OR HAD A DISCUSSION OF THE CLAIM ONE. BUT THEN, ON PAGE 18 OF OUR OPENING BRIEF, WE ACTUALLY EXHAUSTIVELY GO THROUGH EVERY SINGLE DEPENDENT CLAIM. AND, AS A MATTER OF FACT, WE WENT THROUGH CLAIMS WHICH WEREN'T EVEN ASSERTED. PERHAPS OVERKILL.

AND IN THE OTHER PATENTS WE DO DISCUSS LIMITATIONS FROM MANY OF THE DEPENDENT CLAIMS. SO WE DON'T HAVE NECESSARILY EACH CLAIM LAID OUT, EXCEPT IN THE APPENDIX, WHICH IS IN OUR FIRST -- IN OUR MOVING PAPERS. AND IT IS WITHIN OUR 25 PAGES. WE WEREN'T TRYING TO CHEAT THERE.

WE DO ACTUALLY MENTION ALL OF THE INDIVIDUAL CLAIMS, INCLUDING THE DEPENDENT CLAIMS. BUT THE OTHER THING I'LL NOTE IS THE CONTENT EXTRACTION CASE VERSUS WELLS FARGO ALSO FROM THE FEDERAL CIRCUIT IN DECEMBER.

IN THERE, THE PATENTEE SAID THAT THE DEFENDANT FAILED TO MEET ITS BURDEN BECAUSE IT FAILED TO DISCUSS ALL OF THE CLAIMS.

AND THAT THE DISTRICT COURT COMMITTED REVERSIBLE ERROR BY NOT EXPLICITLY DISCUSSING ALL OF THE INDIVIDUAL CLAIMS.

AND WHAT THE COURT SAID THERE WAS TWO THINGS. ONE IS THEY SAID:

> "WELL, THE DISTRICT COURT DID SAY THAT IT CONSIDERED ALL OF THE DEPENDENT CLAIMS AND FOUND THAT THERE WAS NOTHING MORE TO BE ADDED BY THEM."

SO EVEN THOUGH THERE WASN'T A, YOU KNOW, EXHAUSTIVE LIMITATION-BY-LIMITATION ANALYSIS, CLEARLY THE COURT CONSIDERED THAT.

AND THAT THE FEDERAL CIRCUIT LOOKED AT IT, AND THEY AGREED. BUT, MORE IMPORTANTLY, WHAT THEY SAID IS THAT THE PATENTEE DIDN'T POINT OUT WHAT FROM THESE DEPENDENT CLAIMS WOULD HAVE MADE A DIFFERENCE. AND THAT THAT WAS THEIR BURDEN.

SO, IN OTHER WORDS, ONCE THE PARTY CHALLENGING A PATENT UNDER SECTION 101 HAS IDENTIFIED WHAT ARE REPRESENTATIVE CLAIMS, THE BURDEN THEN SHIFTS TO THE PATENTEE TO EXPLAIN WHAT IT IS FROM THE ALLEGEDLY NONREPRESENTATIVE CLAIMS THAT MAKES A DIFFERENCE AND WHY.

AND THEY DO HAVE FOOTNOTES WHERE THEY NOTE THAT WE HAVE NOT MENTIONED CERTAIN LIMITATIONS. BUT THEY NEVER EXPLAIN WHY ANY OF THOSE MATTER. AND MY FAVORITE OF THE LIMITATIONS THAT THEY MENTION IN A FOOTNOTE IS THEY MENTION THAT IN ONE OF THE CLAIMS IT HAS TO BE ON A COMPUTER-READABLE MEDIUM.

AND, YOUR HONOR, FRANKLY, IF PUTTING SOMETHING ON A DISK OR

PUTTING SOMETHING IN MEMORY MAKES IT AN INVENTIVE CLAIM, THAT'S NEWS TO ME. SO WE HAVE ONLY DISCUSSED IN DETAIL THE REPRESENTATIVE CLAIMS, BUT WE HAVE ACTUALLY ADDRESSED ALL THE CLAIMS. AND ROVI HAS FAILED TO EXPLAIN WHY THAT'S A PROBLEM.

QUESTIONS FOR NETFLIX ON THIS FIRST PAGE:

"HOW DO YOU DISTINGUISH DDR HOLDINGS?"

I THINK WE HAVE COVERED THAT.

ON YOUR ALICE ISSUES ON PAGE TWO OF YOUR QUESTIONS:

"ALICE ISSUES REGARDING THE TV GUIDE PATENTS. CLAIMS ARE TIED TO USER TELEVISION EQUIPMENT, WHICH YOU SAY IS MOR SPECIFIC THAN A GENERIC COMPUTER."

ALL THAT "USER TELEVISION EQUIPMENT" MEANS IS THAT THEY ARE NOW APPLYING THE NOTION OF USING VIEWING HISTORY TO MAKE RECOMMENDATIONS. THEY ARE APPLYING IT TO A SPECIFIC TECHNOLOGICAL ENVIRONMENT.

THERE WAS NOTHING THAT ACTUALLY INTERTWINED THAT MACHINE TO COME UP WITH SOMETHING NEW AN INVENTIVE. IT'S NO DIFFERENT THAN SAYING:

"DO IT ON THE INTERNET. DO IT ON A COMPUTER."

HERE IT'S DONE ON A COMPUTER THAT HAPPENS TO BE CONNECTED TO A TV.

DOWN AT THE BOTTOM:

"EVEN IF YOU AGREE -- IF THE COURT AGREES THAT THE PATENT IN THE '906 PATENT DOES NOT DISCLOSE HOW TO BOOKMARK, WHY ISN'T THAT AN ENABLEMENT ISSUE?"

WELL, FRANKLY, YOUR HONOR, IT COULD BE AN ENABLEMENT ISSUE, AS WELL, THOUGH WE DIDN'T PUT THAT IN OUR INVALIDITY CONTENTIONS. BUT WE COULD HAVE FRAMED IT THAT WAY, AS WELL.

BUT WHAT YOU GET FROM THE SUPREME COURT IS YOU CAN'T SAY:

"OH, THAT SHOULD BE ADDRESSED SOMEWHERE ELSE," AND THEN SAY "IT'S NOT A 101 ISSUE."

IT COULD VERY WELL BE BOTH, BECAUSE THERE COULD BE OVERLAP BETWEEN 101, THE ISSUES ADDRESSED BY 101, AND THE ISSUES ADDRESSED BY 102, 103 AND 112. THAT DOESN'T MEAN THAT YOU CAN IGNORE THE 101 INQUIRY.

AND OUR POINT IS NOT THAT A PERSON OF ORDINARY SKILL IN THE ART WON'T KNOW HOW TO BOOKMARK. BOOKMARKING IS A PRETTY EASY CONCEPT. WE'VE ALL DONE WITH IT A BOOK. THAT'S NOT VERY HARD.

THE PROBLEM IS IF YOU STATE -- THAT IS, IF YOU TAKE AN ABSTRACT IDEA, AND THEN YOUR IMPLEMENTATION IS SIMPLY DO IT, THAT'S NOT INVENTIVE.

AND IF YOU INSTEAD SAID:

"WELL, I HAVE COME UP WITH A FABULOUS NEW WAY TO BOOKMARK THAT SOLVES A PARTICULAR PROBLEM ON COMPUTERS THAT IS REALLY TRICKY, AND LET ME TELL YOU ABOUT IT," THAT MIGHT BE A DIFFERENT SITUATION.

BUT IF YOU MERELY SAY:

"I HAVE THE IDEA OF BOOKMARKING ON A COMPUTER," THAT IS NOT INVENTIVE.

AND YOU ASKED:

"HOW DO YOU DISTINGUISH THE BOOKMARK IN THIS CASE FROM THE TAG AND CARD VERIFICATION?"

I THOUGHT YOU MIGHT ASK ABOUT ONE OF THESE CASES, SO THE CARD VERIFICATION SOLUTIONS V CITIGROUP DECISION OUT OF THE NORTHERN DISTRICT OF ILLINOIS, IN SEPTEMBER OF 2014. SO FIRST OF ALL, THE COURT THERE WAS ADDRESSING A MOTION TO DISMISS, AND THE COURT DENIED THE MOTION WITHOUT PREJUDICE. SO THE COURT DIDN'T ACTUALLY, ONCE AND FOR ALL, DECIDE THE ISSUE OF 101.

AND THE QUESTION IS WHETHER OR NOT THIS TAG THAT THEY APPLIED WAS UNCONVENTIONAL. AND THE CLAIMS -- I FOUND THE CLAIMS A LITTLE BIT OPAQUE, TO BE PERFECTLY HONEST. BUT THE CLAIMS IN CARD VERIFICATION SOLUTION, THE EXAMPLE THEY GAVE IS IF YOU TAKE A CREDIT CARD NUMBER, AND YOU WANT TO SEND IT, SAY, OVER THE INTERNET OR SOME OTHER INSECURE MEDIUM, THAT MIGHT BE A PROBLEM.

SO WHAT THEY WOULD DO IS BREAK THE CREDIT CARD NUMBER IN TWO AND ATTACH A TAG TO BOTH PIECES. AND THAT TAG SOMEHOW ALLOWED THEM TO BE REASSEMBLED AT THE OTHER END.

AND THEN, THE TAG WAS ALSO SEPARATELY SENT BY SOME OTHER MEANS TO THE RECEIVING SITE SO THAT THEY KNEW WHAT THEY WERE SUPPOSED TO REASSEMBLE.

BEYOND THAT, I DON'T REALLY UNDERSTAND THE DETAILS, YOUR HONOR. BUT I DO THINK THAT THE QUESTION OF -- YOU KNOW, ARGUABLY YOU COULD SAY THAT THE QUESTION OF SECURITY OVER THE INTERNET IS A SPECIFIC TECHNOLOGICAL PROBLEM. BUT, FRANKLY, I WOULD SAY CARD VERIFICATION SOLUTIONS WAS PROBABLY WRONGLY DECIDED. THAT WOULD

BE MY ENDPOINT. BUT IF YOU WANT TO DISTINGUISH IT I WOULD SAY THAT THIS WAS ON A MOTION TO DISMISS. THE COURT DIDN'T FULLY GRASP WHETHER OR NOT THE TAG MIGHT BE A PROBLEM. AND WHAT THE COURT SAID WAS NOT THAT THE TAG MADE IT INVENTIVE, BUT THAT THE TAG MIGHT MAKE IT INVENTIVE.

HERE WHERE THE COURT HAS HAD A TUTORIAL, WHERE THE COURT IS GOING TO HEAR THE CLAIM CONSTRUCTION, AND WHERE YOU ALSO HAVE THE PARTIES' POSITIONS THROUGH INFRINGEMENT CONTENTIONS AND THE LIKE THAT HAVE BEEN SUBMITTED AS PART OF THAT MSJ RECORD, I THINK WE'RE IN A VERY DIFFERENT POSTURE THAN IN CARD VERIFICATION SOLUTIONS.

OKAY. AND THEN:

"THE RELATIONSHIP BETWEEN 101 AND CLAIM CONSTRUCTION POSITIONS. FOR NETFLIX I NOTED THAT IT'S POSSIBLE THAT OUR CONSTRUCTION COULD MATTER ON THE PROGRAM GUIDE AND PROGRAM LISTING, RECEIVER, SEARCH ENGINE APPLICATION, AND HOW DOES THAT AFFECT THE ALICE ANALYSIS?"

SO ON PROGRAM GUIDE THE QUESTION IS REALLY: IS THIS LIMITED TO CLASSIC TELEVISION-STYLE LISTINGS THAT HAVE A TIME AND A CHANNEL?

SO WE THINK IT IS. AND THAT'S GOING TO BE ADDRESSED DURING CLAIM CONSTRUCTION. BUT THAT'S MERELY LIMITING THE IDEA TO A PARTICULAR TECHNOLOGICAL ENVIRONMENT. AND THE REASON I SAY THAT IS THAT NOTHING IN THE INVENTION BUILDS ON THAT.

IT'S NOT LIKE THEY HAVE SOME SPECIAL WAY OF FINDING PROGRAMS THAT WAS ESPECIALLY COOL OR INVENTIVE BECAUSE OF TIMES OR CHANNELS. THAT WAS JUST TACKED ON. AND THAT TACKING ON OF A NARROWING LIMITATION WHERE IT'S NOT ACTUALLY PART OF THE INVENTIVE FORCE OF THE CLAIM, THAT DOESN'T GET YOU PAST 101.

AND THEN, SO THE SAME PROBLEM WITH A RECEIVER. WE TALKED ABOUT THAT SAYING THAT YOU ARE GOING DO THIS IN THE CONTEXT 1HAVE A SET-TOP BOX DOESN'T REALLY CHANGE THE NOTION, UNDERLYING NOTION OF HOW YOU'RE MAKING COMBINATION CATEGORIES.

WHETHER THE SEARCH ENGINE APPLICATION HAS TO BE ON A VIDEO RECORDER, AGAIN, THERE'S NOTHING IN THE REST OF THE CLAIM THAT SAYS:

"AND I HAVE A SPECIAL WAY OF DOING THINGS THAT'S REALLY COOL JUST FOR VIDEO RECORDERS."

SO THEY TACKED THAT ON, OR WE SAY THEY TACKED THAT ON. BUT IT'S NOTHING BUT LIMITING TO A SPECIFIC TAUTOLOGICAL ENVIRONMENT.

AND THEN, RELATED QUESTION:

"IS A TELEVISION A SUFFICIENTLY SPECIFIC DEVICE FOR PURPOSES OF MACHINE OR TRANSFORMATION TESTS?"

SO I GUESS AT ROOT WHAT WE'RE REALLY GOING TO WANT TO KNOW IS WHETHER IS THAT A SPECIFIC ENOUGH MACHINE TO AVOID THE 101 PROBLEM. IS THAT ACTUALLY THE QUESTION?

**THE COURT:** RIGHT.

**MR. KWUN:** SO I THINK THE QUESTION IS: THAT DEPENDS.

IF THE SPECIFIC MACHINE IS THAT IT TURNS OUT THAT WHEN YOU'RE MAKING SOME NEW CANCER-CURING DRUG THAT IF YOU THROW A TELEVISION INTO YOUR BEAKER THAT MAGICALLY YOU GET WOULD A DIFFERENT DRUG. SEEMS HIGHLY UNLIKELY. BUT, YOU KNOW, THAT WOULD MEAN THAT THE TELEVISION IS CORE TO THE ACTUAL INVENTION.

SO THE TELEVISION ACTUALLY IS WHAT IS INVENTIVE ABOUT THE INVENTION? WELL, YOU KNOW, MAYBE IN THAT SITUATION THAT WOULD BE SUFFICIENTLY TRANSFORMATIVE.

THAT'S A VERY -- IF I HAD MORE TIME TO THINK ABOUT IT I MIGHT COME UP WITH A BETTER EXAMPLE. BUT AS A GENERAL MATTER, SAYING:

"DO IT ON A TELEVISION. DO IT WITH TELEVISION LISTINGS."

**THE COURT:** COMPUTER OR SOMETHING ELSE.

**MR. KWUN:** YES. I DON'T SEE HOW THAT -- YOU KNOW, THE QUESTION THAT THE COURT SHOULD GRAPPLE WITH IS: WHAT IS IT ABOUT THAT NARROWING THAT IS INVENTIVE? DOING IT ON A TELEVISION, DID THAN CHANGE THE NATURE OF THE RECOMMENDATION? WAS THERE SOMETHING NEW AND DIFFERENT THAT WAS SIGNIFICANTLY ADDED TO THE ABSTRACT IDEA BY SAYING: "DO IT ON A TELEVISION"?

AND I THINK HERE THE ANSWER IS CLEARLY "NO."

**THE COURT:** ALL RIGHT. THANK YOU.

MR. CHAIKOVSKY, ON THE 101, WHO IS GOING TO MAKE THAT ARGUMENT?

**MR. CHAIKOVSKY:** I AM, YOUR HONOR.

YOUR HONOR, THANK YOU. ON BEHALF OF ROVI. YAR CHAIKOVSKY.

FIRST, I WOULD LIKE TO NOTE, YOU KNOW, WE DID NOT HEAR FROM NETFLIX ONCE WHAT'S THE POLICY REASONS BEHIND 101 AND THE 101 ANALYSIS PREEMPTION? ARE WE PREEMPTING ANY POLICIES, ANY NOTIONS OR INVENTIONS? DO THESE CLAIMS THAT ARE HERE PREEMPT?

YES, WE NEED TO APPLY THE TEST, AND WE'RE GOING TO GO THROUGH IT IN THE SLIDES WE HAVE PREPARED, AND WE'LL ANSWER YOUR QUESTIONS, YOUR HONOR.

BUT, YOU KNOW, OUR NOTIONS ARE BASIC ABSTRACT IDEAS PREEMPTED? IN THEIR BRIEFING THEY HAVE SUGGESTED WE HAVE PREEMPTED TV GUIDE. WE HAVE NOT PREEMPTED THE USE OF TV GUIDE OR TV GUIDE IS AN ABSTRACT IDEA. EACH ONE OF OUR INVENTIONS IS MUCH MORE AND MUCH GREATER -- AND WE'LL SHOW THEM -- THAN SIMPLY THIS TV GUIDE (INDICATING) AND A USER STRUGGLING TO FIND INFORMATION IN THE TV GUIDE AND TRYING TO USE IT.

AND GOING TO YOUR HONOR'S QUESTION, SOFTWARE IS PATENTABLE. IN MAYO THE SUPREME COURT SAID SOFTWARE IS PATENTABLE. IN ALICE THE SUPREME COURT SAID SOFTWARE AND COMPUTER PROGRAMS ARE PATENTABLE.

IN FACT, THERE WERE EFFORTS FROM BILSKI ON FORWARD TO SUGGEST THAT BUSINESS METHODS ARE NOT PATENTABLE. AND THERE'S ONLY DISSENTS OR CONCURRING OPINIONS TO TRY TO STRIKE OUT BUSINESS METHODS.

SO ABSOLUTELY SOFTWARE IS PATENTABLE. WE MUST LOOK AT, IT SPECIFICALLY. AND THE INVENTIONS THAT ARE HERE, THERE IS NO

CATEGORICAL EXCLUSION, WHETHER STATUTORILY OR JUDICIALLY. IN ADDITION, IN ADDITION, THE AMERICAN INVENTS ACT, WHICH JUST CAME OUT A FEW YEARS AGO, YOUR HONOR, SPECIFICALLY ADDRESSED THIS ISSUE. SO WE HAD CONGRESS AND OUR PRESIDENT PUT INTO ACTION THE AMERICAN INVENTS ACT. AND IN THAT THERE WAS AN OPPORTUNITY FOR CONGRESS TO EXCLUDE SOFTWARE PROGRAMS.

AND WHAT DID THEY DO? THEY ONLY EXCLUDED TAXABLE BUSINESS METHODS. THEY DID NOT EXCLUDE -- IN FACT, THEY EXPLICITLY STATED -- AND, YOUR HONOR, IT'S IN THE MCRO DECISION FROM JUDGE PFAELZER, THE AIA, IF YOU WANT TO LOOK AT IT SEPARATELY, OR JUDGE PFAELZER'S MCRO DECISION WHICH LAYS OUT THE HISTORY OF PATENT-ELIGIBLE SUBJECT MATTER FROM THE SUPREME COURT DECISIONS VERY, VERY WELL, AND INCLUDE RECOUNTS THE AIA.

CONGRESS AND THE PRESIDENT SPECIFICALLY FOUND THAT COMPUTER PROGRAMS ARE PATENTABLE AND STATED SO. I CAN SHOW YOU, IF YOU WANT TO SEE THE SPECIFICS. I JUST WANTED TO RECENTER THAT AS WE GO FORWARD IN OUR PRESENTATION.

**THE COURT:** BUT YOUR POSITION IS THAT THESE PATENTS DON'T GO TO SOFTWARE ALONE.

**MR. CHAIKOVSKY:** I AGREE THAT WE'LL GO PATENT BY PATENT. MANY OF THESE PATENTS, THE '906, '762, '709, GO TO MUCH MORE THAN SOFTWARE. ARE THERE SOFTWARE COMPONENTS? THERE ARE OBVIOUSLY SOFTWARE COMPONENTS WITHIN THE PATENTS.

BUT EVEN IF THEY WERE COMPUTER PROGRAMS ALONE, EVEN IN THAT INSTANCE IF THE COURT WERE TO BELIEVE THAT THEY WERE COMPUTER

PROGRAMS ALONE IT'S VERY CLEAR THAT COMPUTER PROGRAMS ARE PATENTABLE SUBJECT MATTER.

WHAT WAS LEFT OUT BY NETFLIX'S COUNSEL IS DDR IS THE LAW, AS NETFLIX'S COUNSEL MENTIONED. IT'S BEEN SETTLED.

WHAT WAS LEFT OUT IS ULTRAMERCIAL HAS FILED A PETITION EN BANC DUE TO THE UNSETTLED NATURE OF THIS QUESTION.

SO THAT DECISION IS POTENTIALLY GOING TO BE DECIDED BY ALL JUDGES OF THE FEDERAL CIRCUIT BECAUSE THERE IS A TENSION BETWEEN DDR AND ULTRAMERCIAL AND NO KNOWN TENSION. SO THERE'S GREAT EFFORTS TO TRY TO DESCRIBE THE DIFFERENCES, BUT WE'RE NOT GOING TO KNOW THE ANSWER BECAUSE WE'RE LIKELY TO SEE AN EN BANC FEDERAL CIRCUIT TAKE IT.

I HOPE WE DON'T END UP WITH THE ALICE RESULT THAT WE ENDED UP WITH IN THE FEDERAL CIRCUIT WITH FIVE DIFFERENT OPINIONS WHICH THEN LED TO THE SUPREME COURT ADDRESSING THIS ISSUE.

BUT THAT'S WHAT WE HAVE IN A POST-ALICE WORLD. AND SO THAT CHARACTERIZATION IS NOT NECESSARILY -- AND WE'LL GO THROUGH THAT SLIDE BY SLIDE.

THE OTHER THING I FOUND TROUBLING IN NETFLIX'S PRESENTATION AND DISINGENUOUS WAS GOING THROUGH OUR INFRINGEMENT CONTENTIONS, YOU HAVE TO LOOK AT THE PATENT, AND THE CLAIMS OF THE PATENT. OUR INFRINGEMENT CONTENTIONS UNDER THE LOCAL RULES OF THE NORTHERN DISTRICT OF CALIFORNIA ARE THERE SIMPLY TO PROVIDE NOTICE OF WHAT WE'RE ACCUSING OF INFRINGEMENT.

WE HAVEN'T EVEN FINISHED ANALYZING THEIR CODE TO PUT THE

DETAILS INTO THOSE INFRINGEMENT CONTENTIONS AS TO HOW THEY INFRINGE SO THAT WE CAN PROVIDE THE ADDITIONAL DETAIL.

WE'RE IN THE PROCESS OF DOING THAT. MOREOVER, IF THEY WANT TO ACCUSE US OF HAVING THESE BROADER INFRINGEMENT CONTENTIONS, WE SHOWED IN OUR BRIEFING, YOUR HONOR, THEIR INVALIDITY CONTENTIONS WITH RESPECT TO 101 IS: THERE'S AN ABSTRACT IDEA.

WELL, THEN, WE SHOULD STRIKE EVERYTHING THEY JUST SAID, BECAUSE IN THEIR INVALIDITY CONTENTIONS THEY DIDN'T TELL ME ANY OF THIS. NONE OF THIS COLOR CODING, CHARTS, ET CETERA WERE ANYWHERE IN THEIR INVALIDITY CONTENTIONS.

SO, QUITE FRANKLY I'M NOT SURE THEY SHOULD BE ALLOWED TO BRING THIS MOTION BECAUSE THEY DIDN'T GIVE ME NOTICE UNTIL THEY FILED AN IMPERMISSIBLE SUMMARY JUDGMENT MOTION IN DECEMBER WHICH YOUR HONOR THEN TABLED APPROPRIATELY UNTIL THIS DAY.

BUT WE NEVER HAD NOTICE. OUR FIRST NOTICE --

**THE COURT:** FIRST OF ALL, IT WASN'T IMPERMISSIBLE. IT IS JUST NOT THE WAY IN WHICH I WANTED TO DEAL WITH THIS ISSUE. THERE ARE PLENTY OF JUDGES ON THIS COURT THAT WILL HEAR ONE OF THESE MOTIONS BEFORE CLAIM CONSTRUCTION.

**MR. CHAIKOVSKY:** SO I APOLOGIZE.

**THE COURT:** I WON'T.

**MR. CHAIKOVSKY:** I APOLOGIZE FOR THAT MISCHARACTERIZATION.

BUT WITHOUT SEEKING LEAVE, THEY DID FILE A SUMMARY JUDGMENT. AND THAT'S THE FIRST TIME WE GOT NOTICE OF ANY DETAIL OF WHAT

THEIR ARGUMENTS MAY BE. AND THOSE ARGUMENTS CHANGE AS WE SIT HERE TODAY. AND WE'LL GO THROUGH THAT.

SO WE'RE FOCUSING NOW ON OUR PRESENTATION, AFTER I WENT THROUGH THAT INTRODUCTORY REMARKS. NETFLIX MISAPPLIES 30 YEARS OF SUPREME COURT PRECEDENCE. THIS ISN'T JUST ABOUT ALICE. NONE OF THE PRIOR CASES HAVE BEEN ABROGATED. THEY ALL EXIST. AND WE'LL SHOW YOU.

IN ALICE, WHAT DID THE SUPREME COURT SAY? THEY SAID WE'RE TO TREAD CAREFULLY IN CONSTRUING THIS EXCLUSIONARY PRINCIPLE LEST IT SWALLOW ALL OF PATENT LAW.

AND IT WAS STATED IN ORAL ARGUMENTS. IN FACT, JUSTICE BREYER COMMENTED DURING ORAL ARGUMENTS THEY HAD A CONCERN IN DEALING WITH THIS ISSUE, BECAUSE COURTS, COURTS -- DISTRICT COURTS, IN PARTICULAR -- MAY -- BUT EVEN INCLUDING THE FEDERAL CIRCUIT -- MAY GO FURTHER AND MISAPPLY THE LAW AND FIND TOO MANY NOTIONS, SUCH AS COMPUTER PROGRAMS, FOR EXAMPLE, THAT ARE PATENTABLE UNDER THE AIA INVALID.

FURTHER, THE SUPREME COURT SAID AT SOME LEVEL EVERY INVENTION IS EMBODIED IN ABSTRACT NOTIONS OR IDEAS. AND SO EVERYTHING IS BASED ON THE NOTION. I CAN DO COLOR CODING AND CHARTING OF ANY CLAIM. I CAN DO THAT FOR PROCESSOR CLAIMS, CIRCUITRY CLAIMS. AND I CAN SAY:

> "HEY, THOSE NOTIONS WERE CONVENTIONAL. THOSE NOTIONS WERE -- HERE'S THE ABSTRACT."

EVERY IDEA BOILS DOWN TO -- EVERY PATENT, EVERY INVENTION

BOILS DOWN TO AN ABSTRACT NOTION AT ITS ESSENCE. AND SO I CAN DO --

**THE COURT:** SO DOES THAT MEAN THAT YOU ARE CONCEDING THE FIRST STEP OF THE ALICE ANALYSIS?

**MR. CHAIKOVSKY:** NO. NO, THAT'S NOT TRUE. AND I'LL ACTUALLY STEP THROUGH, MEANING I CAN EXTRACT AN ABSTRACT IDEA. EXTRACT AN ABSTRACT IDEA. THAT DOES NOT MEAN THE PATENT ITSELF COVERS AN ABSTRACT IDEA. THAT'S A VERY DIFFERENT PRECEPT, EXACTLY WHAT I HAVE IN THE SLIDE IS THAT AT SOME LEVEL ALL INVENTIONS EMBODY, REFLECT, RELY UPON ABSTRACT IDEAS.

THEY MUST. THEY MUST. THAT'S WHAT IS IN THE HUMAN MIND. THAT'S HOW PEOPLE COME UP WITH IDEAS. BUT IF THE QUESTION IS WHETHER THE CLAIMED INVENTION -- DOES THE CLAIMED INVENTION SOLELY COVER AN ABSTRACT IDEA? THAT'S THE TEST. AND THEN, WE LOOK TOO SEE IF THERE'S AN ADDITIONAL INVENTIVE CONCEPT, YOU KNOW, PER MAYO AND ALICE.

AND THAT'S NOT WHAT IS BEING --

**THE COURT:** SO ARE YOU CHALLENGING --

**MR. CHAIKOVSKY:** YES.

**THE COURT:** -- BOTH STEPS?

**MR. CHAIKOVSKY:** ABSOLUTELY.

**THE COURT:** OKAY.

**MR. CHAIKOVSKY:** ABSOLUTELY, YOUR HONOR. AND IT WAS IN OUR BRIEFING, AND WE'RE DOING SO TODAY.

YOU KNOW, AND THIS GOES TO THE CHALLENGING OF BOTH STEPS.

HERE (INDICATING) ON SLIDE SIX WE HAVE THE SUPREME COURT SINCE DIAMOND VERSUS DIEHR, ALL THE WAY THROUGH ALICE, SAYING WE'VE GOT TO LOOK AT THE INVENTION AS A WHOLE. THE CLAIMS MUST BE VIEWED AS A WHOLE.

IN MAYO THEY SAID IT WAS AN ORDERED COMBINATION. AS EXPLAINED IN ALICE, MAYO CONSIDERED ALL THE ELEMENTS. ALL. IT IS CONSISTENT WITH THE GENERAL RULE THAT PATENT CLAIMS MUST BE CONSIDERED AS A WHOLE.

THAT'S AT BOTH STEPS. STEP ONE, STEP TWO, I'VE GOT TO LOOK AT THE CLAIM AS A WHOLE. I CAN'T CHERRY-PICK A PIECE OF IT AND GO:

> "HEY, HERE'S AN ABSTRACT NOTION. OH, HERE'S A CONVENTIONALITY ATTACHED UNDER THE ABSTRACT NOTION."

AND I SEEM TO HAVE LOST CONNECTIVITY.

I HAVE TO LOOK AT THE CLAIM AS A WHOLE.

I STILL HAVE NO CONNECTIVITY.

SO HERE IN THE FIRST STEP, THE ABSTRACT INQUIRY.

"ALICE CONSIDERED ALL STEPS OF THE ASSERTED CLAIM TO DETERMINE IF THE CLAIM EMBODIED AN ABSTRACT IDEA."

YOU'LL FIND THAT PAGE 2355. NETFLIX DOESN'T DO THAT.

NETFLIX LOOKS AT PIECES OF THE CLAIM.

AND IF THERE'S NO ABSTRACT IDEA, WHICH WE'LL SHOW YOU THERE'S NOT -- IN FACT, WE DO CHALLENGE THAT -- THE CLAIM'S PATENTABLE.

WE ONLY GO TO STEP TWO. I GUESS, FIRST OFF, BEFORE WE GET

TO STEP TWO I'LL SHOW YOU THAT ALICE ACTUALLY LOOKED AT THE CLAIM AS A WHOLE.

SO HERE WE HAVE ON THE LEFT-HAND SIDE OF THE SLIDE, SLIDE EIGHT, WE HAVE A SUPREME COURT'S ACCOUNTING OF ALL THE ELEMENTS OF THE CLAIM WHEN LOOKING AT CLAIM 33 IN ALICE. AND THE SUPREME COURT DOESN'T IGNORE ANY PORTION OF THE CLAIM IN ALICE.

YOU KNOW, FIRST THE SUPREME COURT SAYS:

"THE PETITIONER CLAIMS A METHOD OF EXCHANGING FINANCIAL OBLIGATIONS BETWEEN TWO PARTIES."

WELL, THAT'S THE PREAMBLE: "THE METHOD OF EXCHANGING."

WE SEE THAT AT THE TOP OF 33.

NEXT, SUPREME COURT LOOKS AT:

"THE INTERMEDIARY CREATES 'SHADOW' RECORDS TO REFLECT THE VALUE OF THE ACCOUNTS HELD AT 'EXCHANGE INSTITUTIONS.'"

WELL, THAT'S STEP A.

"CREATING THE ACCOUNTS AT THE INSTITUTIONS."

AND THIS IS THE ABSTRACT IDEA TEST. STEP ONE: LOOKING AT THE WHOLE CLAIM. THEN, I UPDATE THE RECORDS TO REFLECT THE VALUE OF EACH PARTIES' ACTUAL ACCOUNTS HELD AT THOSE INSTITUTIONS THEREBY PERMITTING TRANSACTIONS.

THOSE ARE THE NEXT TWO STEPS. I UPDATE THE ACCOUNTS, AND FOR EVERY TRANSACTION I'M GOING TO DO AN UPDATE. THOSE ARE STEPS B AND C. SUPREME COURT IS LOOKING AT THE ENTIRE CLAIM. NOT CHERRY-PICKING.

FINALLY, AT THE END OF THE DAY, THE INTERMEDIARY ISSUES

IRREVOCABLE INSTRUCTIONS. WHAT DO WE SEE AS THE LAST STEP AT D?

"AT THE END-OF-DAY," THAT'S WHERE I GET THE INSTRUCTIONS.

SUPREME COURT DID ALL OF THAT, LOOKED AT THE ENTIRE CLAIM 33. AND ONLY AFTER DOING THAT DID THEY SAY THAT THE CLAIM 33 RELATES TO THE CONCEPT OF INTERMEDIATED SETTLEMENT. ONE CONCEPT. ONE IDEA: INTERMEDIATED SETTLEMENT.

AND, THEREFORE, LOOKING AT THE ENTIRE CLAIM THEY FOUND THAT IT WAS AN ABSTRACT NOTION.

NOW, WHAT DOES NETFLIX DO? THAT'S IN SLIDE 13. THEY SUGGEST THAT ALICE CONTEMPLATES THAT THE ABSTRACT IDEA MIGHT NOT ENCOMPASS ALL OF THE CLAIM ELEMENTS. WELL, I JUST SHOWED YOU THAT IS NOT TRUE. THAT'S FALSE. IN FACT, THE SUPREME COURT LOOKS AT THE ENTIRE CLAIM. ALICE DOESN'T CONTEMPLATE ANYTHING BUT LOOKING AT THE ENTIRE CLAIM.

SO THEY ARE JUST WRONG IN THEIR BRIEFING AND WRONG IN THEIR PRESENTATION TODAY. IT'S INTERESTING FOR THIS NOTION THAT ALICE THAT CONTEMPLATES THEY CITE TO A FEDERAL CIRCUIT DECISION, ULTRAMERCIAL, THE ONE THAT HAS A PETITION EN BANC FOR REVIEW.

AND THEY CITED AND ACTUALLY THEY STILL TAKE IT OUT OF CONTEXT IN THEIR CITE IN ORDER TO GET THE COURT TO IGNORE LOOKING AT THE ENTIRE CLAIM IN DISCERNING WHETHER THERE'S AN ABSTRACT IDEA. AND IN THE PARENTHETICAL ON SLIDE 14 YOU CAN SEE THEY SAID:

"HEY, THE CLAIMS ARE DIRECTED TO AN ABSTRACT

IDEA."

WHERE? AND WE'LL USE A QUOTE:

"THE CONCEPT EMBODIED IN THE MAJORITY OF THE LIMITATIONS DESCRIBING THE ABSTRACT IDEA."

WHAT THEY FAIL TO SAY IS THE ULTRAMERCIAL COURT LOOKED AT THE ENTIRE CLAIM. SO ULTRAMERCIAL VIEWED THE CLAIM AS A WHOLE IN FINDING AN ABSTRACT IDEA, BUT THEY FOUND THE ACTIVITY LOGS JUST ADDED A DEGREE OF PARTICULARITY.

AND WE SEE THE QUOTE FROM ULTRAMERCIAL HERE ON SLIDE 14.

OR YOUR SLIDE MAY BE NUMBERED DIFFERENTLY THAN MINE, YOUR HONOR. I APOLOGIZE, BECAUSE IN THE WAY THEY PRINT OUT, YOU KNOW, WITH RESPECT TO THE DIFFERENT, YOU KNOW --

**THE COURT:** THAT'S FINE.

**MR. CHAIKOVSKY:** SO THE CASE ULTRAMERCIAL HERE SAID:

"THE ORDERED COMBINATION OF STEPS" -- THAT'S NOT SOME OF THEM. THAT'S ALL OF THEM -- "RECITES AN ABSTRACTION, AN IDEA HAVING NO PARTICULAR CONCRETE OR TANGIBLE FORM."

THERE ARE CERTAIN ADDITIONAL LIMITATIONS WHEN I LOOKED AT THE WHOLE CLAIM, SUCH AS CONSULTING AN ACTIVITY LOG. BUT ALL THEY DO IS ADD A DEGREE OF PARTICULARITY TO THE ABSTRACT NOTION. I LOOKED AT THE ENTIRE CLAIM, AND HERE'S THE ENTIRE CLAIM ON THE NEXT SLIDE. CLAIM ONE OF ULTRAMERCIAL WHERE THE SUPREME COURT -- I MEAN, THE FEDERAL CIRCUIT -- LOOKED AT THE ENTIRE CLAIM. DIDN'T IGNORE ANYTHING. CONSIDERED THE ENTIRE CLAIM. SAID:

"HEY, ADVERTISEMENT IS A CURRENCY, IS AN ABSTRACT NOTION. AND JUST REMEMBER THIS CASE IS GOING TO, YOU KNOW, HAS BEEN PETITIONED FOR REVIEW."

AND THEN, THEY SAID:

"WELL, OKAY. THESE LITTLE CONCEPTS, WHICH ARE SMALL CONCEPTS AS OPPOSED TO WHAT NETFLIX IS DOING, THEY ADDED A DEGREE OF PARTICULARITY, THE ACCESSING OF AN ACTIVITY LOG."

THAT'S WHAT THE FEDERAL CIRCUIT DID.

SO IN ANALYZING THE CLAIM AS A WHOLE IN STEP ONE AS TO WHETHER SOMETHING IS ABSTRACT -- I MEAN, THIS IS ALSO AN INTERESTING NOTION AS COMPARED TO WHAT WE JUST HEARD. AND, IN FACT, HEARD AGAIN AND AGAIN AND AGAIN TODAY BY COUNSEL FOR NETFLIX.

IN THE CASES THEY DON'T FIND SEVERAL ABSTRACT IDEAS OR PILED TOGETHER ABSTRACT IDEAS. THEY FIND ONE NOTION. ONE NOTION CALCULATING ALARM LIMITS, HEDGING FINANCIAL RISKS, INTERMEDIATE SETTLEMENT, ADVERTISEMENT AS CURRENCY, DATA COLLECTION. BROAD NOTIONS ARE ABSTRACT IDEAS. NOT NOTIONS THAT NETFLIX HAS PUT UP AND ONLY ONE NOTION.

AND THAT ONE NOTION IS KEY, BECAUSE THEY MISREPRESENTED DDR TO YOU, YOUR HONOR, TODAY, ALSO.

IN FACT, JUDGE CHEN WRITING THE MAJORITY OPINION IN DDR CRITICIZED THE ACCUSED INFRINGER, NETFLIX, FOR IDENTIFYING MULTIPLE ABSTRACT IDEAS, JUST AS NETFLIX HAS. NETFLIX, YOU KNOW -- EXCUSE ME -- NLG CHARACTERIZES THE ABSTRACT IDEA IN

NUMEROUS WAYS. AND HERE THERE'S THREE DIFFERENT WAYS.

AND BY DOING SO, JUDGE CHEN WENT ON TO SAY, IN CONTRA DISTINCTION TO WHAT WAS REPRESENTED BY COUNSEL FOR IN NETFLIX, THERE WAS NO ABSTRACT IDEA.

HE FOUND THERE WASN'T. HE ASSUMED ARGUENDO IF THERE WAS STEP TWO WASN'T MET, EITHER. BUT HE FOUND NONE AND THERE COULD BE NONE BECAUSE THERE COULD BE NO ARTICULATION. THERE WAS THESE EFFORTS BY THE ACCUSED INFRINGER TO COME UP WITH AN ARTICULATION.

AND WE'RE GOING TO SEE THAT THAT'S EXACTLY WHAT HAS HAPPENED HERE. THEY HAVE DONE THE SAME THING. AND THAT'S EXACTLY WHY THIS PATENT WAS FOUND PATENTABLE BECAUSE THEY COULDN'T CONNOTE WHAT THE ABSTRACT IDEA WAS. IT'S EVER CHANGING. WHETHER IN WORDS OR BY CHARTING IT'S EVER CHANGING.

HERE'S NETFLIX IN ITS BRIEFING -- I'M ON MY SLIDE 18, YOUR HONOR, WHERE THEY VIOLATE. AND WE'RE TALKING ABOUT THE '906 PATENT.

SO WHAT HAVE THEY DONE WITH RESPECT TO THE '906 PATENT? WE'VE HEARD WORDS SUCH AS "IT'S BOOKMARKING." THAT DOESN'T EVEN LOOK AT THE WHOLE CLAIM. THAT LOOKS AT A PIECE OF THE CLAIM.

> "WE'LL TAKE A PIECE OUT. WE LIKE IT, BOOKMARKING BECAUSE IT SOUNDS LIKE AN ABSTRACT NOTION."

IN THEIR BRIEFING -- AND YOU CAN LOOK IT UP -- BOTH THEIR OPENING AND THEIR REPLY:

> "WOW, IT'S A GENERICALLY DESCRIBED MEDIA-ON-DEMAND SYSTEM."

WELL, THAT'S IN THE PREAMBLE. YOU KNOW, NEXT THEY, SAID:

"HEY, IT'S AJUSTING THE CONTENT FORMAT BASED ON THE. CAPABILITIES OF THE RECEIVER."

THEY HAVE GOT TO DO THAT BECAUSE IT'S MORE THAN BOOKMARKING, RIGHT? SO I HAVE GOT TO DEAL WITH THE FACT THAT THIS PATENT CAN ADJUST THE CONTENT FOR DIFFERENT DEVICES IN DIFFERENT SYSTEMS IN THIS CLIENT-SERVER ARCHITECTURE. THAT'S WHAT I GOT TO REACH OUT AND DO THAT.

SO THEY ARE TRYING TO PERFECT IT, YOU KNOW, EVENTUALLY.

THEN, THEY HAVE GOT:

"HEY, THERE'S THIS ABSTRACT NOTION IN HERE" -- AND THIS WAS IN THEIR OPENING BRIEF -- "OF SPEAKING IN ENGLISH TO ONE PERSON AND SPANISH TO ANOTHER."

THIS IS JUST LIKE DDR. WE'RE REACHING. WE'RE GRASPING FOR AN ABSTRACT NOTION.

ADJUSTING ONE'S EXPLANATION FOR A CHILD VERSUS AN ADULT. BECAUSE THREE NEED TO COVER THE TRANSCODING ASPECT OF DIFFERENT DEVICES IN DIFFERENT FORMATS WHICH ABSOLUTELY IN COMBINATION WHEN LOOKED AT THE CLAIM AS A WHOLE IS A PATENTABLE CONCEPT.

SPOKEN COMMUNICATION WAS THROWN OUT FOR I DON'T KNOW WHAT REASON. AND, FINALLY, THEY "SETTLED" ON "BOOKMARKING ACROSS DEVICES."

I SAY "SETTLED" IN QUOTES BECAUSE THAT'S WHAT THEY ENDED UP IN THEIR BRIEFING. BUT, HEY, WE'LL ACCEPT A DIFFERENT FORMULATION. AND WE EVEN HEARD IT TODAY. IT'S: "BOOKMARKING

ACROSS DEVICES USING DIFFERENT FORMATS." AND WHICH IS IT?

IT CAN'T BE MULTIPLE. AS I SHOWED YOU, IT MUST BE ONE. AND THAT'S EXACTLY WHAT BOTHERED JUDGE CHEN IN DDR FROM THE FEDERAL CIRCUIT IS THERE WERE THREE. HERE THEY HAVE GOT SIX, AND NOW I GOT SEVEN BECAUSE I DON'T HAVE THE SEVENTH ONE ON HERE. AND ALL THEY DO IS PICK CLAIMS AND PICK AND PICK. DON'T LOOK AT -- THERE'S NO ANALYSIS, AS ALICE DID, OF GOING THROUGH THE CLAIM AS A WHOLE IN ORDER TO DETERMINE THAT THERE WAS AN ABSTRACT NOTION IN THE CLAIM.

WE'RE NOT SUGGESTING THE ABSTRACT NOTION MUST BE, YOU KNOW, THE ENTIRETY. BUT YOU MUST ANALYZE THE ENTIRE CLAIM WHEN LOOKING AT THE ABSTRACT NOTION. THEY DON'T DO THAT. THEY HAVE NEVER DONE THAT.

IN FACT, HERE'S AN EXAMPLE WITH RESPECT TO THE '906 IN THEIR BRIEF. AND YOU JUST SAW SOMETHING DIFFERENT. AND I'LL SHOW IT TO YOU. AND WHAT THEY SHOWED YOU IN COURT IN '906 IN THEIR BRIEF, BEYOND ME SHOWING YOU HOW IT REALLY WOULD PLAY OUT WITH THE CLAIM, NOW I'M JUST USING HOW THEY SHOWED IT.

LET'S TAKE HALF THE CLAIM AND SAY IT'S ABSTRACT, THE BOTTOM HALF THAT'S IN YELLOW. THAT'S ABSTRACT. THEY DIDN'T LOOK AT THE ENTIRE CLAIM. THE GREEN'S CONVENTIONAL. THEY LOOKED AT THE BOTTOM HALF OF THE CLAIM. DOESN'T EVEN MEET ANY OF THEIR TESTS.

EVEN IF I ACCEPT "BOOKMARKING ACROSS DEVICES," I COULDN'T DO THAT WITHOUT THE FIRST DEVICE THAT IS IN THE GREEN ABOVE. SO IT'S JUST RANDOM SPATTERING OF COLOR THAT IS ATTACHED. AND THIS

IS ONE EXAMPLE. I COULD KEEP GOING.

BUT BEYOND THAT, YOUR HONOR, THEY DID THIS IN THEIR BRIEFING.

AND, YOU KNOW, CAN I GET NETFLIX'S SLIDE 27?

SO COMPARE THIS COLOR. REMEMBER THIS COLOR GREEN, YELLOW, HALF/HALF.

**THE CLERK:** I HAVE TO SWITCH IT IF YOU WANT THEM TO SHOW SOMETHING.

**MR. CHAIKOVSKY:** HOW DO I SWITCH?

**THE CLERK:** NO, I NEED TO DO IT. THE ONLY THING IS YOURS IS GOING TO GO DOWN.

**MR. CHAIKOVSKY:** THAT'S FINE.

TOTALLY DIFFERENT. IN OUR BRIEF, WE HAD TWO COLORS, ONE ON TOP. ONE ON BOTTOM. ABSTRACT IDEA. NOW THE ABSTRACT IDEA IS IN BLUE. AND IT'S THE TOP PART. THE FIRST ELEMENT. THE MID -- THE SECOND ELEMENT, THE THIRD ELEMENT. IT'S COMPLETELY CHANGED.

THAT'S HOW WE KNOW WE DON'T HAVE AN ABSTRACT IDEA HERE. THERE IS NO ABSTRACT IDEA. THEY ARE SEARCHING FOR THE ABSTRACT IDEA. EXACTLY WHAT DDR SAID IS A PROBLEM. AND, QUITE FRANKLY, WHAT ALICE SAID IS IMPERMISSIBLE.

IF WE COULD SWEEP BACK, I WOULD PREFER IT.

AND SO YOU CAN'T LOOK AT ONLY HALF THE CLAIM AND SAY THERE'S A VIOLATION.

**THE COURT:** I'M SORRY, BUT I THOUGHT THE ENTIRETY OF THE CLAIM WAS ON THE SLIDE, THE NETFLIX SLIDE.

**MR. CHAIKOVSKY:** WITH RESPECT TO THEIR ANALYSIS, ANYWHERE IN THEIR BRIEFING OR HERE THEY DID NOT LOOK AT THE ENTIRE CLAIM. THEY ONLY LOOKED AT HALF A CLAIM. THERE'S NOTHING IN THEIR BRIEF THAT SUGGESTS THEY LOOKED AT THE ENTIRE CLAIM OR THE CLAIM AS A WHOLE, VIEWED THE CLAIM AS A WHOLE TO DISCERN THE ABSTRACT IDEA.

**THE COURT:** BUT ARE YOU SUGGESTING THAT THEY ONLY LOOKED AT THE TOP HALF OR THE BOTTOM HALF?

**MR. CHAIKOVSKY:** SO I AM SUGGESTING THEY LOOKED AT THE BOTTOM HALF IN FINDING -- IN OTHER WORDS, SEARCHING FOR AN ABSTRACT NOTION, EXACTLY WHAT DDR SAID NOT TO. DDR, AS DDR SUGGESTED -- I'LL GO BACK TO MY SLIDE SO I'VE GOT THE DDR NOTION. RIGHT? IT'S MAKING TWO WEB PAGES LOOK THE SAME. SYNDICATED COMMERCE ON THE COMPUTER USING THE INTERNET.

THOSE ARE DIFFERENT PORTIONS OF THE CLAIM THAT THE ACCUSED INFRINGER ATTEMPTED TO GATHER IN ORDER TO TRY TO COME UP WITH AN ABSTRACT IDEA, WHICH JUDGE -- THE FEDERAL CIRCUIT SAID:

"NOT PERMISSIBLE. NO ABSTRACT IDEA. MAKING TWO E-COMMERCE WEB PAGES LOOK ALIKE BY USING LICENSED TRADEMARKS, LOGOS, COLOR SCHEMES AND LAYOUTS."

AND BECAUSE THERE WAS THIS:

"LET'S TAKE A CLAIM AND LET'S TAKE PIECES AND TRY TO COME UP WITH AN ABSTRACT NOTION," THAT'S EXACTLY WHY THEY SAID THERE IS NO -- AGAIN, EVERYTHING, AS IN ALICE HAS STATED, AS ALL THE SUPREME COURT STATED, EVERY INVENTION EMBODIES, RELIES

UPON, EMBRACES SOME NOTION OF AN ABSTRACT IDEA IN ORDER TO COME TO IT.

THAT'S WHY YOU CAN COME UP WITH MULTIPLE FORMULATIONS. THAT'S NOT THE TEST FROM THE SUPREME COURT. THE TEST FROM THE SUPREME COURT IS WHEN YOU LOOK AT THE CLAIM AS A WHOLE, AS I HAVE ON MY SLIDE 16, DO I LOOK AT THE CLAIM? AND IS THE CLAIM TRYING TO PATENT, AND THEN, THEREFORE, PREEMPT TEN ENTIRE CONCEPT OF HEDGING FINANCIAL RISK IN BILSKI, THE ENTIRE CONCEPT OF CALCULATING ALARM LIMITS IN PARKER VERSUS FLOOK, THE ENTIRE CONCEPT OF INTERMEDIATE SETTLEMENT IN ALICE.

YOU KNOW, IN ULTRAMERCIAL ADVERTISEMENT AS A CURRENCY. THEY DIDN'T VIEW THAT AS BEING TIED TO THE INTERNET, ET CETERA. WHEN THEY LOOKED AT THE CLAIM THEY SAID IT WAS ADVERTISEMENT OF CURRENCY OR IN CONTENT EXTRACTION, THAT IT'S JUST DATA COLLECTION.

ARE YOU PATENTING DATA COLLECTION? SO IS THAT WHAT YOU ARE PATENTING? IF THE CLAIM CAN BE BOILED DOWN TO SOLELY THAT HIGH ABSTRACT IDEA, THAT ABSTRACT IDEA ALONE, THEN WE GO TO STEP TWO AND WE SEE WHETHER THERE'S AN ADDITIONAL INVENTIVE CONCEPT ONLY.

BUT I MUST LOOK AT THE CLAIM AS A WHOLE AND SAY:

> "I BELIEVE IT'S ATTEMPTING TO CAPTURE THIS ENTIRE ABSTRACT NOTION, SOME ABSTRACT NOTION THAT ONE WOULD IDENTIFY AS AN ABSTRACT NOTION."

AND THAT'S FUZZY, BECAUSE I KNOW THE ALICE COURT KIND OF SIDESTEPPED: HOW DO WE IDENTIFY AN ABSTRACT NOTION?

BUT THESE ARE, YOU KNOW, CALCULATING ALARM LIMITS, HEDGING FINANCIAL RISKS, INTERMEDIATED SETTLEMENT. THESE ARE ABSTRACT NOTIONS. WE DIDN'T PATENT TV GUIDE.

**THE COURT:** WHAT MAKES THE CLAIM -- I THINK IT'S IN THE '906 PATENT THAT YOU JUST SHOWED. WHAT MAKES IT NOT ABSTRACT?

**MR. CHAIKOVSKY:** YOUR HONOR, AS WE SHOWED DURING OUR TUTORIAL, AND AS WE SHOWED -- I MEAN, I DON'T EVEN NEED CLAIMS, YOUR HONOR. YOUR HONOR, THE '906 PATENT WAS VERY FOCUSED.

MEDIA-ON-DEMAND SERVER SYSTEM. THAT HAS THAT. THEN, THEREFORE, CLIENT-SERVER ARCHITECTURE. AND THAT CLIENT-SERVER ARCHITECTURE ALLOWS ME, YOUR HONOR -- I CAN BE SITTING HERE, WATCHING NETFLIX FROM THEIR SERVERS, AND WATCH IT. AND I WATCH THE MOVIE IN NETFLIX. I THEN AM ABLE TO PAUSE, EVEN THOUGH I'M WATCHING IN A FORMAT THAT THEN ONLY PLAYS ON THIS DEVICE. I WATCH IT ON THIS DEVICE. I PAUSE IT ON THIS DEVICE. AND I HAVE TO HAVE THE CAPABILITY TO THEN -- AND THIS IS BACK IN 1999 WHEN THE INVENTORS CAME UP WITH THE NOTION. WE DO LOOK AT THE TIME FRAME OF WHEN THE INVENTORS CAME UP WITH THIS.

I PAUSE -- IN 1999. DON'T LOOK AT IT IN 2015. LOOK AT IT IN 1999. AND IN 1999 I'M COMING UP WITH THIS IDEA WHERE I CAN PAUSE ON ONE DEVICE, YOU KNOW, WATCH CONTENT FROM A MEDIA-ON-DEMAND SERVER, AS YOU SAW DURING THE TUTORIAL. IT'S GOT A STREAM. THE CONTENT HAS GOT IT STREAMING FROM THE RECEIVER. BE RECEIVED BY A DEVICE, ONE DEVICE, IN ONE FORMAT FOR THAT DEVICE.

I THEN STOP OR PAUSE WATCHING IT. I RECORD A BOOKMARK OR PAUSE WATCHING THE SHOW. YOU THEN CAN LOG INTO AN ACCOUNT, YOUR HONOR, AND BEGIN WATCHING THAT DEVICE ON A DIFFERENT FORMAT ON YOUR COMPUTER. DIFFERENT DEVICE, DIFFERENT FORMAT, TRANSCODING THAT'S GOING TO HAVE TO HIT THE SAME SERVER. SO WE HAVE THIS NOTION THAT WE NEED TWO DIFFERENT DEVICES THAT ARE APPLYING IT TO TWO DIFFERENT FORMATS, A DESKTOP, A TELEVISION, YOU KNOW. AND THE DEVICES COULD GO ON AND ON.

AND I'M HITTING A SERVER WHICH HAS TO HAVE THE BRAINS TO BE ABLE TO TRANSCODE THAT INFORMATION FOR YOUR DESKTOP, FOR YOUR LAPTOP, FOR YOUR TABLET. YOU KNOW. AT THE TIME IT WAS NOTEBOOKS WITH CELLULAR CARDS. BIG CELLULAR CARDS ATTACHED TO THEM. THAT'S DESCRIBED IN THE PATENT.

AND HAVING ALL OF THAT THAT'S WHAT IS CLAIMED IN HERE. IT'S A SPECIFIC APPLICATION OF A MEDIA-ON-DEMAND SYSTEM. IT'S NOT BOOKMARKING ACROSS DEVICES. I ACTUALLY HAVE DIFFERENT FORMATS BEING SENT TO DIFFERENT DEVICES AND HAVING THE BRAINS TO BE ABLE TO INTERPRET WHICH FORMAT TO SEND THIS DEVICE, WHICH FORMAT TO SEND TO YOUR COMPUTER, YOUR HONOR, WHICH FORMAT TO SEND TO THEIR TELEVISION SETS.

THAT'S WHAT THE PATENT IS ALL ABOUT. THAT'S WHERE I GO. STEP ONE IS ULTIMATELY IMPORTANT. AND THEIR ABSTRACTION -- THIS IS JUST ONE EXAMPLE -- IS AN ABSOLUTE FAILURE.

I HOPE I'VE ANSWERED YOUR QUESTION, YOUR HONOR.

SO AFTER WE GET TO THIS ABSTRACT NOTION WHICH, YOU KNOW,

WE'LL GO THROUGH AND SHOW THAT THEY HAVE NOT DONE THIS FOR EACH ONE OF THE PATENTS. BUT IT'S ONLY AFTER YOU GET PAST THAT POINT, WHICH WE SUGGEST TO YOUR HONOR FOR THESE PATENTS YOU DON'T EVEN GET PAST POINT ONE. YOU DON'T. AND WE'VE PUT THAT IN OUR BRIEFS, AND I'VE STATED IT HERE.

BUT THEN YOU PROCEED TO STEP TWO ONLY IF YOU GET PAST STEP ONE. AND AS STATED IN ALICE, WE NEED TO LOOK AT THE ELEMENTS ONE, THE WHOLE CLAIM AGAIN. WE LOOK AT THE WHOLE CLAIM AND WE CONSIDER THE ELEMENTS SEPARATELY. NOT JUST SOME ELEMENTS, ALL OF THE ELEMENTS SEPARATELY.

SO ONE BY ONE I MUST LOOK AT THE ELEMENTS SEPARATELY TO SEE WHETHER THERE'S AN INVENTIVE CONCEPT. THEN, I LOOK AT THE WHOLE CLAIM, AND I LOOK AT THE CLAIM AS A WHOLE AGAIN.

AND I GO:

"HEY, IF I LOOKED AT IT SEPARATELY" -- AND I'M NOT THERE. SO NOW I'VE DETERMINED IT'S ABSTRACT. I HAVE TO GET PAST THAT. NOW, I GO TO STEP 2A. LOOK AT THE CLAIMS AS A WHOLE AND LOOK AT ALL THE ELEMENTS. SOMETHING THEY HAVEN'T DONE: LOOK AT ALL THE ELEMENTS SEPARATELY.

AND IF YOU LOOK AT THEM ALL SEPARATELY, AND AFTER YOU LOOK AT THEM ALL SEPARATELY, OKAY, IF YOU DETERMINE THERE'S NO INVENTIVE CONCEPT AT THAT POINT? WELL, NOW I LOOK AT THEM AS AN ORDERED COMBINATION, STEP 2B, AS WE CALL IT. YOU HAVE STEP 2A, WHICH IS SEPARATELY. STILL LOOKING AT EACH STEP OR ELEMENT IN THE CLAIM. AND THEN, STEP 2B I THEN LOOK AT THE CLAIM AS A WHOLE

AND GO:

"LOOK, IS THERE SOMETHING ADDITIVE WHEN I LOOK AT THE CLAIM AS A WHOLE?"

AND THEY HAVE TO PROVE ALL THREE OF THESE THINGS. IN OTHER WORDS, THERE'S AN ABSTRACT IDEA. WHEN I LOOK AT THEM SEPARATELY THERE'S NO INVENTIVE CONCEPT. AND WHEN I LOOK AT THEM AS AN ORDERED COMBINATION THERE'S NO INVENTIVE CONCEPT.

THEIR PAPERS AND ARGUMENT HAVE ABJECTLY FAILED WITH RESPECT TO THAT. IN FACT, I'LL PROVE -- YOU KNOW, IT'S THEIR MOTION, BUT I'LL PROVE THE DIRECT OPPOSITE WITH RESPECT TO THIS. THAT ONE, AGAIN, WE DON'T HAVE THE ABSTRACT IDEAS. BUT BEYOND THAT WE ACTUALLY HAVE PATENTABLE IMPROVEMENTS, PATENTABLE SOLUTIONS, EVEN THOUGH IT'S THEIR MOTION.

AND SO FOCUSING ON JUST THE ORDERED COMBINATION ASPECT FROM THE ALICE STEP 2B, AS WE'VE CALLED IT, RIGHT? WHAT DID ALICE TELL US?

ALICE SAID I'VE GOT TO CONSIDER THE ORDERED COMBINATION AND LOOK AT: DO THEY ADD ANYTHING WHEN VIEWED AS AN ORDERED COMBINATION? DO THEY ADD ANYTHING BEYOND THE ABSTRACT IDEA?

IF THEY ADD NOTHING, THEN IT'S NOT PATENTABLE. BUT IF THE ORDERED COMBINATION ADDS SOMETHING, ADDS ANYTHING, THEN IT MAY BE A PATENTABLE -- IT IS AN INVENTIVE CONCEPT.

SECONDLY, FROM ALICE, THE SECOND TEST IS OF 2B -- THIS IS WHEN I'M LOOKING AT THE CLAIMS AS A WHOLE, ORDERED COMBINATION -- DOES THE ORDERED COMBINATION EFFECT AN IMPROVEMENT IN THE

TECHNOLOGY OR TECHNICAL FIELD? IF SO, PATENTABLE.

THEY HAVE TO SHOW "NO" TO THE FIRST QUESTION AND "NO" TO THE SECOND QUESTION.

WE DIDN'T SEE ANY OF THAT. WE SEE COLOR CODING, GREENS, CONVENTIONAL. WE DON'T SEE THE ANSWER OF THESE QUESTIONS POSED BY THE SUPREME COURT IN ALICE. DO THE CLAIMS ADD ANYTHING WHEN VIEWED AS ORDERED COMBINATION?

IS THERE AN IMPROVEMENT IN TECHNOLOGY OR TECHNICAL FIELD? IN THE END, YOU KNOW, THE FEDERAL CIRCUIT SAID -- EXCUSE ME -- THE SUPREME COURT SAID:

"LOOK, IF A PATENT" -- AND THAT'S AT THE BOTTOM. WE DIDN'T HIGHLIGHT IT, YOUR HONOR. BUT IT'S THE LAST SENTENCE ON THE SLIDE.

"IF THE CLAIMS AMOUNT TO NOTHING SIGNIFICANTLY MORE THAN AN INSTRUCTION TO APPLY," BUT THAT'S A CONCLUSION. THEY TRY TO APPLY THAT AS IF THAT'S THE TEST.

THE COURT SAID: LOOK AT THESE TWO TESTS THAT I HAVE ON THE SCREEN. AND IF I GOT THAT, THE ANSWER TO THIS IS "NO." THEN, OF COURSE, THE CLAIMS IS GOING TO BE JUST THE ABSTRACT NOTION IN AND OF ITSELF.

THEY JUMP TO THE CONCLUSION INSTEAD OF PERFORMING THE TEST.

HERE'S AN EXAMPLE ON THIS SLIDE, OUR SLIDE 28. LOOKING AT THE '929 PATENT. THIS IS THE EXTENT OF THEIR ANALYSIS OF STEP 2B AS AN ORDERED COMBINATION WHETHER IN OPENING BRIEF OR REPLY:

"CONSIDERING THE ELEMENTS OF THESE CLAIMS INDIVIDUALLY

AND AS AN ORDERED COMBINATION REVEALS THE ABSENCE OF ANY INVENTIVE CONCEPT, AND THE CLAIMS ARE THEREFORE INVALID."

YOU'RE NOT GOING TO FIND A MORE DETAILED ANALYSIS OF ORDERED COMBINATION IN THEIR BRIEFING, AND NOR DID YOU SEE ONE OR HEAR ONE FROM THEM TODAY, ACTUALLY, YOUR HONOR.

AND THEY DIDN'T ANSWER THE TWO QUESTIONS THAT THE SUPREME COURT IN ALICE TOLD US TO ANSWER. THEY JUST SKIP OVER THAT. AND, IN FACT, AGAIN, I'LL SHOW YOU THAT WE DO HAVE THAT. AND WHAT THEY DID IS A VIOLATION. AND WHAT WE WILL DO IS SHOW THAT WE HAVE IMPROVEMENTS IN THE INTERACTIVE PROGRAM GUIDE SYSTEMS FIELD AND THE MEDIA-ON-DEMAND FIELD.

AND, YOU KNOW, I THINK THIS EXPLAINS IT ALL. AND WE KIND OF SAW MORE OF IT TODAY. NOWHERE DO THEY TAKE -- AND THEY JUST FLY TOGETHER AN APPENDIX AND COLOR CODE AN APPENDIX. YOU KNOW, ANYBODY COULD HAVE COLOR CODED AN APPENDIX LIKE THIS.

I COULD DO THIS TO ANY CLAIMS AND SAY:

"OH, I THINK THAT'S CONVENTIONAL. OH, I THINK THAT'S ABSTRACT." THAT'S NOT THE TEST.

YOU NEED TO GO THROUGH WHAT ALICE SETS FORTH AS THE TEST AND PROVIDE THE REASONING INSTEAD OF SAYING:

"OH, THESE ARE CONVENTIONAL. THESE ARE THAT."

ANSWER THE QUESTIONS. THEY DON'T ANSWER THE QUESTIONS.

THEN, THEY TRY TO SAY:

"WELL, WE DID A REPRESENTATIVE CLAIM ANALYSIS," EVEN THOUGH THEY PICKED JUST INDEPENDENT CLAIMS, ONE INDEPENDENT CLAIM

FOR EACH PATENT.

WELL, WE DON'T DO THAT. HERE WE'RE STILL WITH THE '929, WHICH I JUST SHOWED YOU IN THEIR BRIEF. THEY DIDN'T LOOK AT THE ORDERED COMBINATION. HERE ARE THE CLAIMS THAT ARE ASSERTED: 11 THROUGH 14 AND 17 THROUGH 20. AND THEY SAY:

"HEY, WE'RE LOOKING AT -- YOU KNOW, WE ALLEGEDLY ARE FULFILLING THIS TEST OF ALICE, LOOKING AT THE TEST."

WELL, THAT'S NOT TRUE. THEY HAVE DIVINED AN ABSTRACT IDEA AGAIN. THAT ABSTRACT IDEA IS, AS THEY SHOWED, CATEGORIZING SHOWS USING COMBINATION CATEGORIES.

THE ONLY PLACE THAT EXISTS IS DEPENDENT CLAIM IT'S 17. IT'S NOT IN CLAIMS 11 THROUGH 14. THAT'S NOT IN CLAIMS 18, 19 OR 20. THAT IS ONLY IN DEPENDENT CLAIM 17 WHERE I ASSIGN AT LEAST ONE COMBINATION CATEGORY TO THE PROGRAM LISTING, TO THE SHOW.

SO ONLY IN THIS DEPENDENT CLAIM, WHICH DOES NOT MEAN THERE'S AN ABSTRACT NOTION IN THE CLAIMS. ALL I'M SUGGESTING IS THEY HAVE TAKEN AN ABSTRACT NOTION THAT COMPORTS WITH A DEPENDENT CLAIM. BUT THAT DEPENDENT CLAIM, AS YOUR HONOR KNOWS, IS AN INVENTION THAT INCLUDES CLAIM 12, BECAUSE IT'S THE SYSTEM OF CLAIM 12, SO EVERYTHING IS RECITED IN 12.

AND IN 12 IT DEPENDS ON 11. SO IT DEPENDS ON THE SYSTEM OF CLAIM 11. SO 17 IS MADE UP OF 11, 12 AND 17. AND WHAT KIND OF ABSTRACT NOTION DO THEY COME UP -- DO THEY LOOK AT THE CLAIM AS A WHOLE, WHICH WOULD BE 11, 12 AND 17?

NO. IT'S JUST THEY LOOK AT 17: CATEGORIZING SHOWS. AND

WHY DO THEY DO THAT? TO MAKE IT LOOK LIKE AN ABSTRACT IDEA. THIS ISN'T ABOUT CATEGORIZING SHOWS. WE'RE GENERATING COMBINATION CATEGORIES TO IMPROVE THE LOOKING FOR INFORMATION, SHOWS, IN THE INTERACTIVE PROGRAM GUIDE SYSTEM FIELD.

JUST LIKE IN DDR, THERE WAS AN IMPROVEMENT IN INTERNET TECHNOLOGY. HERE WE HAVE AN IMPROVEMENT OF GENERATING. AND THAT'S WHY THEY SPECIFICALLY USED "CATEGORIZING SHOWS," BECAUSE THEY DON'T WANT TO TALK ABOUT IT GENERATING BECAUSE THE GENERATING WOULD NOT BE AN ABSTRACT IDEA. AND IF THEY CHANGE IT TO GENERATING, THEY HAVE A DDR PROBLEM AGAIN.

**THE COURT**: DO THE CLAIMS USE THE WORD "GENERATING"?

**MR. CHAIKOVSKY**: SO, YOUR HONOR, CLAIMS COMBINING AT LEAST A SET --

**THE COURT**: I'M SORRY. WHAT SLIDE ARE YOU ON?

**MR. CHAIKOVSKY**: SO SLIDE 30 OF MY SLIDE, YOUR HONOR.

I'VE BEEN TOLD YOUR SLIDES LINE UP, YOUR HONOR. SO I APOLOGIZE.

**THE COURT**: I HAVE 30.1 THAT LOOKS LIKE THAT.

**MR. CHAIKOVSKY**: RIGHT.

**THE COURT**: OKAY. AND SO WHERE ARE YOU READING FROM?

**MR. CHAIKOVSKY**: SO CLAIM 11, THE SECOND ELEMENT. WE HAVE:

"THE PROCESSOR GENERATES THE COMBINATION CATEGORY."

SO WE'RE GENERATING, AND WE'RE DOING IT BY DOING THESE TWO STEPS: IDENTIFYING AND COMBINING. IGNORED.

INSTEAD, LET'S JUST SAY THE ABSTRACT IDEA IS CATEGORIZING SHOWS. WELL, YOU KNOW WHY THEY DO THAT? BECAUSE THEY WANT TO MAKE IT SOUND LIKE IT'S SOMEHOW A TV GUIDE, YOUR HONOR. WE DIDN'T PATENT A TV GUIDE. WE'VE IMPROVED INTERACTIVE PROGRAMMING GUIDES.

IF YOU REMEMBER DR. SCHOENFELD SHOWING YOU THAT YOU HAD INTERACTIVE GRID GUIDES WITH ONE CATEGORY. WE'LL GET INTO THIS. I'LL SHOW YOU. I'LL PROVE --

**THE COURT:** WHEN ARE WE GOING TO GET INTO THIS?

**MR. CHAIKOVSKY:** SHORTLY? I'M MOVING FASTER? I'M MOVING FASTER?

IMPROPERLY DISSECTING CLAIMS BY IGNORING PRESENCE OF OLD ELEMENTS. THEY CAN'T DO THAT. THE LAW TELLS US WE CAN'T DO THAT.

DIAMOND VERSUS DIEHR FROM BACK IN 1981. YOU CANNOT -- AND THAT'S STILL THE LAW -- DISSECT CLAIMS INTO OLD/NEW ELEMENTS AND IGNORE THE OLD ELEMENTS. THAT'S WHAT THEY DO. THEIR ANALYSIS IGNORES OLD ELEMENTS IN DETERMINING WHETHER THERE'S AN ABSTRACT IDEA.

HERE'S AN EXAMPLE OR ANALOGY WE DID WITH A BICYCLE WHERE WE TAKE OUT THE OLD ELEMENTS: THE WHEELS, THE GEARS, THE SEATS, THE HANDLEBARS. THAT'S WHAT THEY DO, AND THEY IGNORE THEM. AND THEY TAKE OUT A PIECE, AND THEY GO:

"HEY, LET'S LOOK AT THE FRAME. THAT'S ABSTRACT."

THEY IGNORE OLD ELEMENTS TO FABRICATE AN ABSTRACT IDEA.

IN FACT, WE SEE THIS HERE IN THEIR BRIEF. WHAT DO THEY DO AGAIN? AFTER EXCLUDING THE ELEMENTS THAT THE PATENTEE ITSELF -- SO DIAMOND VERSUS DIEHR SAID I CAN'T DO THIS. AFTER EXCLUDING THE ELEMENTS THAT THE PATENTEE HIMSELF CONCEDED WERE KNOWN IN THE ART. THAT'S IN THEIR OPENING BRIEF. AS ALICE REQUIRES -- NO, IT DOESN'T. NEVER SAYS THAT. AGAIN, JUST LIKE WHEN THEY DID WITH ULTRAMERCIAL, MISREPRESENTING ALICE, ALL THAT WAS LEFT WAS AN UNPATENTABLE ABSTRACT IDEA.

THAT'S NOT THE LAW. IN FACT, THAT LAW -- THE SUPREME COURT'S TOLD US THAT'S NOT THE LAW. THEY CITE TO MCRO. IN TRYING TO MAKE IT SEEM LIKE ALICE REQUIRES IT, THEY CITE TO A CENTRAL DISTRICT OF CALIFORNIA CASE, MCRO, WHICH IS UP ON APPEAL.

AND THE MORE SHOCKING THING ABOUT MCRO IS THESE ARE SOFTWARE PATENTS THAT ARE BEING -- YOU KNOW, IN THAT CASE, MCRO, IT'S A SOFTWARE PATENT THAT'S BEING HELD INVALID. AND WE'VE HAD THE ENTIRELY SILICON VALLEY COMMUNITY AND PEOPLE LIKE NETFLIX SAYING:

"HEY, THESE SHOULD BE INVALIDATED." GUESS WHO FILED AN AMICUS BRIEF IN MCRO TO SAY THAT'S PATENTABLE, EVEN THOUGH COMPANIES WERE BEING SUED, LIKE ACTIVISION, ET CETERA.

THE BUSINESS SOFTWARE ALLIANCE, WHICH IS MADE UP OF MICROSOFT, SYMANTEC, TREND MICRO, SOME OF THE BIGGEST NAMES IN TECHNOLOGY HAVE SAID:

"THE COURT IN MCRO GOT IT WRONG, APPLIED THE WRONG TEST, APPLIED AN ABROGATED TEST IN FLOOK." AND I'LL SHOW THAT YOU RIGHT HERE.

THE COURT -- THEY MISREPRESENT ALICE, WHICH I TOLD YOU ALICE LOOKED THROUGH THE ENTIRE CLAIM. AND MCRO RELIES ON THE MISAPPLIED FLOOK NOVELTY TEST. HOW DO WE KNOW IT'S MISAPPLIED?

HERE WE GO, YOUR HONOR. THEY CITE TO FLOOK, AND THEY SAY:

"A PROCESS IS UNPATENTABLE IF THE ABSTRACT IDEA IS ASSUMED TO BE WITHIN THE PRIOR ART."

AND HERE WE GO. IN DIEHR, DIEHR CLARIFIED FLOOK. DIEHR CLARIFIED THAT:

"OLD ELEMENTS ARE NOT EXCLUDED IN THE PATENTABILITY ANALYSIS. THE FALLACY IN THIS ARGUMENT IS THAT WE DID NOT HOLD IN THE FLOOK THAT THE MATHEMATICAL ALGORITHM COULD NOT BE CONSIDERED AT ALL IN MAKING THE 101 DETERMINATION."

WE HAVE TO CONSIDER IT. IN FACT, THE SUPREME COURT HAS GONE ON TO SAY THAT PORTION OF THE FLOOK ANALYSIS YOU CAN ARGUE IT'S CLARIFIED. YOU CAN ARGUE IT'S CHANGED. BUT THE COURT SAID THE POINT OF THE NOVELTY TEST NO LONGER EXISTS. THAT'S WHAT THE MCRO COURT ERRANTLY WENT INTO.

AND, IN FACT, JUDGE PFAELZER IN THE CALTECH DECISION ACTUALLY APPROPRIATELY STATES HOW MCRO WENT WRONG.

SO ONE OF THE JUDGE'S OWN COLLEAGUES -- I THINK IT WAS JUDGE GUILFORD THAT HAD WROTE MCRO. HIS OWN COLLEAGUE IN THE CENTRAL DISTRICT SAID:

"YOU GOT IT WRONG." AND HE WAS RIGHT. THEY DID GET IT WRONG. AND THAT'S NOT THE TEST FROM THE SUPREME COURT. I CAN'T DISSECT OLD ELEMENTS. AND THEN, HERE AT THE '906 PATENT, I JUST

WANT TO SHOW REALLY QUICKLY, AND I'LL MOVE ON, YOUR HONOR, VERY QUICKLY, OUR PATENTABLE INVENTIONS.

YOU HAVE TO SOLVE A NEW PROBLEM. IN FACT, WE SAW JUDGE PFAELZER, BY COINCIDENCE, AGAIN, AND SAID:

"HEY, WE DID SOLVE A NEW PROBLEM IN MEDIA-ON-DEMAND SYSTEMS."

AND THIS IS USING THE PRIOR ART, LET ALONE JUST CONVENTIONAL IDEAS. THIS ACTUALLY IT'S THE OPPOSITE OF WHAT THEY SAY. YOU KNOW, THIS CAN BE INFORMATIVE. THERE'S NOT AN OVERLAP OF 102, 103. BUT THIS IS INFORMATIVE. THE ART, THE PRIOR ART'S NOT TO BE USED FOR THE 101 ANALYSIS.

BUT THE FACT THAT WE'VE BEEN PATENTABLE OVER THE ART TELLS YOU WE DON'T HAVE AN ABSTRACT IDEA BECAUSE WHAT WAS CONVENTIONAL WE ACTUALLY HAVE SOLVED A NEW PROBLEM. BOTH THE ITC AND JUDGE PFAELZER HAVE SAID WE'VE SOLVED A NEW PROBLEM. WE HAVE AN IMPROVEMENT.

NOW, YOUR HONOR, I GET TO THE POINT OF SHOWING THAT WE HAVE OUR TECHNOLOGICAL IMPROVEMENTS IN BOTH IPG AND MEDIA-ON-DEMAND SYSTEMS.

SO WE'VE SHOWN THAT NETFLIX IS KIND OF MAKING UP, YOU KNOW, AN ANALYSIS. AND YOU KNOW WHAT? I SUGGEST THEY ARE NOT THE ONLY ONES. THERE ARE PROBABLY OTHERS THAT HAVE CONFUSED DISTRICT COURTS IN THIS PROCESS. AND WE'RE HOPING TO BE HELPFUL HERE WITH RESPECT TO THE SUPREME COURT PRECEDENT ON THIS ISSUE AND HOW THE APPLICATION SHOULD TRANSPIRE.

BUT AS HAS BEEN THE CASE SINCE PARKER VERSUS FLOOK IN 1978, IF THE PROCESS IS NEW AND USEFUL, IF IT'S AN IMPROVEMENT -- AND, IN FACT, ALL THE WAY THROUGH ALICE IF THE FUNCTIONING OF THE COMPUTER ITSELF, FUNCTION OF THE COMPUTER ITSELF OR ANY OTHER TECHNOLOGY IS PATENTABLE, IT'S PATENTABLE. IT'S AN IMPROVEMENT IN THE FIELD. IT'S PATENTABLE.

DDR IS EXACTLY RIGHT, WHAT WE SAW FROM THE FEDERAL CIRCUIT IN DECEMBER OF 2014. IF THE CLAIMED SOLUTION IS NECESSARILY ROOTED IN COMPUTER TECHNOLOGY IN ORDER TO OVERCOME A PROBLEM SPECIFICALLY ARISING IN THE REALM OF COMPUTER NETWORKS.

AND WE'RE GOING TO SEE THAT WE'VE OVERCOME A PROBLEM IN EITHER INTERACTIVE PROGRAM GUIDE SYSTEMS -- THIS IS SLIDE 40 -- OR MEDIA-ON-DEMAND SYSTEMS.

THESE WERE PROBLEMS IN THE ART THAT WERE OVERCOME. DO WE HAVE INVENTIVE CONCEPTS WE DON'T HAVE? EVEN IF YOU FIND AN ABSTRACT IDEA, WHICH WE DISPUTE, WE HAVE INVENTIVE CONCEPTS. THEY ARE PATENTABLE.

REMEMBER, THE IMPROVEMENT TEST IS PART OF THE ALICE TEST. IT'S IN PART TWO. NEVER MIND THAT IMPROVEMENTS ARE PATENTABLE, IN AND OF THEMSELVES.

AND, IN FACT, JUDGE PFAELZER HERE SAID:

> "IF I IMPROVE A COMPUTER'S FUNCTION" -- AND THIS DEALT WITH ENCRYPTION/DECRYPTION. COMPLETELY SOFTWARE RELATED. "IF I IMPROVE A COMPUTER'S FUNCTIONALITY BY APPLYING CONCEPTS UNIQUE TO COMPUTING, I SOLVE THE PROBLEM UNIQUE TO

COMPUTING. PATENTABLE."

AND SHE STEPS THROUGH ALL THE SUPREME COURT CASES, FEDERAL CIRCUIT CASES, SEVERAL OF THEM. AND, IN FACT, THE AIA, AS I SAID, THE COMPUTER PROGRAMS ARE PATENTABLE.

AND SO AS WE SHOW HERE IN ROVI SLIDE 41, YOU GOT TO REMEMBER THE ART THAT CAME TO THESE IDEAS. WE HAD ORIGINALLY TV GUIDES. WE THEN HAVE SCROLLING GUIDES IN THE EARLY '8O'S. WE THEN HAD INTERACTIVE GUIDES IN THE LATE 1980'S.

THESE ALL COME BEFORE OUR INVENTIONS. IN THE LATE '90'S WE HAD SOMEWHAT SMARTER VIDEO-ON-DEMAND SERVERS. BUT THEN WE HAVE THE INVENTIONS TO PRESENT. AND WE HAVE TO KEEP IN MIND THAT TIME LINE IN ORDER TO SAY WHAT'S ABSTRACT. WHAT'S NOT. WHAT'S PATENTABLE. WHAT'S AN INVENTIVE CONCEPT? WHAT'S AN IMPROVEMENT? WHAT ARE SOLUTIONS?

AND AS WE SEE HERE, THESE ARE SOLUTIONS IN IPG AND MEDIA-ON-DEMAND SYSTEMS.

SO THE '906 PATENT. AND WE'VE COVERED THIS A LITTLE BIT, SO I'LL PROBABLY RUN THROUGH THIS A LITTLE BIT FASTER. THE '906 PATENT, THE PROBLEMS IN THE ART AS SHOWN HERE IN THE SPECIFICATION, I COULDN'T ACCESS DIFFERENT DEVICES IN DIFFERENT LOCATIONS, HAVING DIFFERENT FORMATS.

HERE'S TV'S. LAPTOPS. ONE AT HOME. ONE AT THE AIRPORT. I CAN'T PAUSE AND RESUME DIFFERENT DEVICE, DIFFERENT LOCATION. IT WASN'T POSSIBLE.

IT'S NOT AN ABSTRACT NOTION. SO WHAT WAS THE SOLUTION?

THE SOLUTION WAS TO DEVELOP THE MEDIA-ON-DEMAND SYSTEM, AND THE SERVER THAT IS ALLOWED TO PERFORM THE FOLLOWING STEPS: DELIVER MEDIA TO A FIRST CLIENT DEVICE. THAT'S A TV IN THIS CASE. COULD BE ANOTHER DEVICE. BUT A TV. IT'S DELIVERED TO THE HOME. IN ONE FORMAT. IT'S GOT TO HAVE A FORMAT. IN THIS CASE IT'S H.264, DOLBY.

I THEN IN STEP TWO PAUSE THAT SHOW. AND THAT'S GOING TO GO BACK UP TO THE SERVER, BECAUSE IT'S GOT TO BE BOOKMARKED IN ORDER TO SEND TO THE SECOND DEVICE. SO I HAVE GOT TO HAVE THE CLIENT-SERVER INTERACTION.

NEXT, I CAN BE IN A DIFFERENT LOCATION, FOR EXAMPLE, THE AIRPORT. CAN BE SOMEWHERE ELSE. AND THAT BOOKMARK IS THEN SENT DOWN, AND THE SHOW IS RESUMED IN A DIFFERENT FORMAT, BECAUSE I'M USING A LAPTOP. AND HERE QUICKTIME, FOR EXAMPLE. THAT'S JUST EXEMPLARY.

BUT THE FACT THAT I WAS ABLE TO DO THAT WHICH WAS NOT DOABLE BEFORE USING THIS, THAT'S RIGHT. WE DO HAVE A TECHNICAL SOLUTION. THIS WAS A PROBLEM IN THE ART. IT WASN'T ABLE TO BE DISCOVERED. IT IS IN THEIR INVENTION DISCLOSURE FORM THAT WHEN YOU LOOK AT THE TOTALITY OF THE CLAIMS THIS PROBLEM WAS NOT SOLVED.

THEY ARE THE ONES THAT FIRST THOUGHT OF APPLYING TRANSCODING TO ACTUALLY MEDIA-ON-DEMAND SYSTEMS. NO ONE HAD EVER DONE THAT.

AND, IN FACT, THAT'S CONSISTENT WITH WHAT I SHOWED YOU THAT JUDGE PFAELZER FOUND THAT SOLVED A NEW PROBLEM: PERMITTING THE

USER TO WATCH A PROGRAM ON A DIFFERENT DEVICE THAN WHICH HE OR SHE BEGAN.

THAT WAS THE PROBLEM AND THAT WAS THE SOLUTION. THERE WAS A PROBLEM. THE IMPROVEMENTS ARE PATENTABLE. AND JUST LIKE IN DDR A PROBLEM IN MEDIA-ON-DEMAND SYSTEMS WHERE BEFORE I COULD ONLY PAUSE AND RESUME IN ONE LOCATION, IN ONE FORMAT WAS SOLVED BY THESE INVENTORS OF IBM. THESE INVENTORS FILED THE PATENT IN 2000. CAME UP WITH THE IDEA IN '99. SOLVED THE PROBLEM THAT WAS -- EXISTED IN MEDIA-ON-DEMAND SYSTEMS.

AND THAT'S STATED IN LENGTH IN THE PATENT. AND SO ARE THE CLAIMS DIRECTED TO THE ABSTRACT IDEA OF BOOKMARKING ACROSS DEVICES? NO. THAT'S THE PRIOR ART, IN FACT. THE PRIOR ART, THE GOOD REFERENCE THAT JUDGE PFAELZER HAS, YOU KNOW, YOU CAN PAUSE AND RESUME ON THE SAME DEVICE. NOT ON DIFFERENT DEVICES USING DIFFERENT FORMATS. SO THAT'S ACTUALLY, YOU KNOW, TAKING AN IMPROPER NOTION. AND HAS WE'VE SEEN THEY HAVE ALREADY USED VARIOUS FORMULATIONS. AND THAT'S ALSO WHY THEY WANT TO TRY TO NOW CHANGE IT TO BOOKMARKING ACROSS DEVICES USING DIFFERENT FORMATS.

AND THEN, THE CLAIM ELEMENTS, WHEN I LOOK AT THEM AS A WHOLE CONSIDERED AS THE ORDERED COMBINATION I JUST WENT THROUGH ABSOLUTELY ADDS SIGNIFICANTLY MORE THAN WAS IN THE ART, BECAUSE I COULDN'T GO TO A DIFFERENT LOCATION. I COULDN'T PAUSE, AND THEN, YOUR HONOR, YOU PICK UP THE SHOW IN THE SAME LOCATION USING THE SAME USER ACCOUNT AT YOUR -- AT THE BENCH, YOUR HONOR.

AND SO WE DO HAVE AN IMPROVEMENT IN MEDIA-ON-DEMAND SYSTEMS. AND THESE TESTS ARE THE ALICE STEP TWO TESTS LOOKING AT WHETHER YOU HAVE ADDED MORE AS AN ORDERED COMBINATION. LOOKING AT WHETHER THERE'S AN IMPROVEMENT IN THE ART.

AND SO BEYOND THE ABSTRACT IDEA NOT BEING PROPER, THE FIRST CHECK, THE LAST TWO CHECKS SHOW YOU THAT THERE'S AN INVENTIVE CONCEPT.

MOVE ON TO THE '762 AND '709 PATENTS, YOUR HONOR. I MEAN, AS YOU RECALL, THE PROBLEM IN 1998, MASSIVE AMOUNT OF AUDIO/VISUAL DATA.

I'VE GOT TONS OF SHOWS, AND I NEED TO BE ABLE TO HANDLE IT. THIS EVER-INCREASING AMOUNT OF SHOWS. AND AS STATED IN THE PATENTS, BOTH PATENTS SHARE THE SAME SPECIFICATION: AS USERS NAVIGATE WITHIN A PROGRAM LISTINGS GRID -- REMEMBER, THAT'S THE OLD SCHOOL SYSTEMS. IPG SYSTEMS. THESE ARE IMPROVEMENTS IN IPG SYSTEMS, INTERACTIVE PROGRAM GUIDE SYSTEMS.

THE SERVER HERE WE'RE LIMITED IN FUNCTIONALITY. ALL I CAN GET IS A SCROLLING GRID BACK IN THE, YOU KNOW, 1990'S. AND SO I NEEDED TO SOLVE THIS PROBLEM. THESE PROBLEMS. LOOK HERE WITH RESPECT TO WHAT WOULD I DO (INDICATING)?

HERE I CAN CLICK ON, FOR EXAMPLE, COMEDY. AND WHEN I CLICK ON "COMEDY", I GET SOME SHOWS. SEINFELD, FOR EXAMPLE. WELL, IF I ALREADY WATCHED THAT EPISODE, ALL OF A SUDDEN I -- WHY WOULD I DO THAT? I COULD KEEP GOING. THAT PROBLEM MEANS I KEEP GOING IN LAYERS AND LAYERS. I ONLY DID THIS BECAUSE WE HAVE TO SHOW YOU

THE PROBLEM THAT'S DESCRIBED. BUT I DON'T KNOW WHETHER I'VE WATCHED THE SHOW, HAVEN'T WATCHED THE SHOW, VIEWED THE PROGRAM.

THE INTERACTIVE GUIDES HAD NO WAY OF BEING ABLE TO DISCERN THAT. AND SO WE NEED A SOLUTION. AND THAT SOLUTION IS THE CLIENT-SERVER ARCHITECTURE THAT YOU SAW BEFORE.

IN FACT, THE CLAIMS TELL YOU. AND WE'VE HIGHLIGHTED HERE ON SLIDE 52 THAT WE HAVE A CLIENT-SERVER ARCHITECTURE FOR TRACKING OF USERS VIEWING THIS.

IT'S NOT JUST SOFTWARE. THIS IS HARDWARE AND SOFTWARE. WE THEN TRACK THE USER'S VIEWING HISTORY IN THE SERVER AND STORE THE USER'S VIEWING HISTORY ON THE PROGRAM GUIDE SERVER.

WE FIND PROGRAMS ON THE SERVER THAT ARE CONSISTENT WITH THE VIEWER'S HISTORY. IN THIS CASE, ER EPISODES THAT ARE CONSISTENT BECAUSE THE USER HAD WATCHED FOUR EPISODES OF ER.

THIS COULDN'T BE DONE WITH AN INTERACTIVE -- THE PROGRAM GUIDES THAT WERE JUST SCROLLING GUIDES OR THAT COULD JUST STEP THROUGH AND LOOK AT JUST WHAT IS ON TV FOR THE NEXT TWO WEEKS.

AFTER I'VE DONE THAT I DETERMINE PROGRAMS THAT WERE NOT PREVIOUSLY VIEWED BY THE USER. SO I'VE HIGHLIGHTED THOSE. THOSE ARE HIGHLIGHTED IN GREEN. USERS CANNOT -- AND ONLY WAY I'M ABLE TO DO THIS IS BY USING A VIEWING HISTORY, AND THEN LOOKING AT THE PROGRAM GUIDE SERVER.

AFTER I DO THAT I THEN DISPLAY A PROGRAM GUIDE ON THE PROGRAM GUIDE CLIENT WHICH THE CLIENT COULD BE TV. THE CLIENT COULD BE, YOU KNOW, A TABLET TODAY. BUT BACK THEN PROBABLY A TV,

LAPTOP OR SOMETHING OF THAT NATURE. AND DISPLAY A PROGRAM WHEREIN DISPLAY INCLUDES PROGRAMS, YOU KNOW. AND SO HERE WE HAVE THE LIST OF PROGRAMS BEING SHOT DOWN. WITH RESPECT TO THE PROGRAMS THAT I'VE NOT WATCHED, IF YOU NOTE IN THE ER EPISODES ABOVE THAT ARE IN GREEN, THEY ALSO CORRESPOND TO ONLY SENDING DOWN TO THE USER THE PROGRAMS THAT HAVE NOT YET BEEN WATCHED. SO, AGAIN, I HAVE THIS CONSTANT FEEDBACK BETWEEN CLIENT-SERVER ARCHITECTURE, AND THEY CAN SEND THIS TO MULTIPLE DEVICES.

IT CAN KNOW ME ANYWHERE. THIS CAN HAPPEN WHETHER I'M AT HOME OR I'M AT THE AIRPORT, OR WHAT HAVE YOU.

AND THEN, I VISUALLY DISTINGUISH, AS A FINAL STEP, HOW MUCH I'VE WATCHED OR WHAT I HAVEN'T WATCHED. SO THE USER KNOWS WHAT HAS NOT BEEN WATCHED.

AND SO HERE, JUST LIKE IN THE -- WHAT'S IN THE VIEWING HISTORY OF THE SERVER, I ACTUALLY HAVE HERE SHOWN DOWN BELOW THAT I BRING DOWN FROM THE SERVER THE SHOWS THAT HAVE NOT BEEN WATCHED. AND THOSE ARE ALSO IN GREEN. SO CORRESPONDING ITEMS IN GREEN ARE CORRESPONDING DOWN BELOW. AND THAT'S THE '762 PATENT.

IT'S NOT SOME ABSTRACT NOTION OF IDENTIFYING SHOWS WITH A VIEWING HISTORY, WHICH I WOULD DEBATE WHETHER IT'S AN ABSTRACT NOTION. THAT'S WHAT THEY SAY. IT'S IDENTIFYING SHOWS. WELL, I CAN'T DO THIS WITHOUT THE CLIENT-SERVER ARCHITECTURE.

I'VE MADE AN IMPROVEMENT OVER WHAT CLIENT-SERVERS DID IN INTERACTIVE PROGRAM GUIDES. IN FACT, I'VE DEVELOPED A VIEWING HISTORY, AND THEN USING THAT VIEWING HISTORY DETERMINED HOW TO

SEND THAT DOWN TO YOU, YOUR HONOR, SO THAT YOU ACTUALLY GET THE BENEFIT. I CAN'T DO THIS WITH A TV GUIDE. TV GUIDE DOESN'T HAVE THIS ABSTRACT NOTION.

AND SO THE CLAIM'S NOT DIRECTED TO AN ABSTRACT IDEA. AND, AGAIN, I DEBATE TO YOU, YOUR HONOR, AS AGAIN THEY MISAPPLY THE TEST OF HOW TO IDENTIFY AN ABSTRACT IDEA. BUT EVEN IF THIS WERE CORRECT, IT'S NOT SIMPLY IDENTIFYING SHOWS BASED ON A VIEWING HISTORY. ABSOLUTELY NOT.

IT'S ACTUALLY I GOT TO WORK WITH THE CLIENT, THE SERVER, TO TRACK SHOWS IN THE VIEWING HISTORY DATABASE, AND THEN DEVELOP IT AND SEND IT DOWN TO THE CLIENTS.

SO WHEN YOU LOOK AT THE CLAIM AS A WHOLE YOU HAVE AN ORDERED COMBINATION THAT IS AN IMPROVEMENT IN THE PREEXISTING PROBLEMS. AND THAT'S EXACTLY WHAT DDR DID. THAT'S EXACTLY HOW THE SUPREME COURTS LOOKED AT THE SOLUTION, YOU KNOW, WHETHER IT'S IN ALICE, I HAVE AN INVENTIVE CONCEPT. I HAVE AN IMPROVEMENT AS I'VE SHOWN YOU IN THE SLIDES BEFORE.

THEY WOULD LIKE TO THINK NOT BECAUSE THEY INFRINGE THESE PATENTS. BUT THAT'S THE PROBLEM, YOUR HONOR. SO IN THE '709 PATENT, SAME SPECIFICATION AS THE '762. SAME ARCHITECTURE, OBVIOUSLY. SAME SPECIFICATION. CLIENT-SERVER ARCHITECTURE. AND I HAVE A METHOD OF PROVIDING CUSTOMIZED VIEWING EXPERIENCE.

HERE I USE A LITTLE BIT DIFFERENT. I HAVE A VIEWING HISTORY, BUT I USE ASSOCIATED PROGRAMMING CRITERIA. NOTHING THAT EXISTED IN THE ART. NOTHING THAT WAS CONVENTIONAL IN COMBINATION

WITH WHAT IS BEING DONE HERE.

SO I SEE WHAT MOVIES I'VE VIEWED, AND I HAVE ASSOCIATED PROGRAM CRITERIA, BECAUSE I'VE SEEN SOME COMEDIES, SOME DRAMA, SOME ROMANCE.

THEN, ON TOP OF THAT, I HAVE TO COMPARE THAT TO A USER PREFERENCE PROFILE. SO THE USER ACTUALLY HAS TO ASSIGN TO THE SYSTEM THAT I'VE GOT LIKE SEINFELD STRONG LIKE, OR COMEDY LIKE. THAT'S WHY. AND I DETERMINE AT LEAST ONE PROGRAM CRITERIA THAT MEETS THE USER'S PREFERENCE PROFILE.

HERE I'VE DETERMINED COMEDY.

"HEY, COMEDY. THEY LIKE COMEDY. THEY LIKE COMEDY."

BY DOING THAT NOW I DETERMINE FROM A PROGRAM LISTINGS DATABASE, WHICH THAT DATABASE IS AT THAT SERVER, A SET OF PROGRAMS NOT YET WATCHED. AND I GO THROUGH THERE, AND I SEE WHICH ONES THEY HAVE NOT WATCHED. AND I ELIMINATE THE PROGRAMS THAT ARE NOT YET WATCHED.

ONCE I'VE ELIMINATED "NOT YET WATCHED," I HAVE TO APPLY THE PROGRAM CRITERIA TO THE SET OF PROGRAMS. SO I HAD TO HAVE THE USER'S VIEWING HISTORY. I HAD TO HAVE THE PROGRAM CRITERIA. I HAD TO HAVE THE PREFERENCE PROFILE. I HAD TO HAVE ALL OF THIS IN ORDER TO GET TO THIS POSITION, IN ORDER TO GENERATE. AND I'M NOT PREEMPTING JUST THIS NOTION OF:

"HEY, IDENTIFYING SHOWS NOT YET WATCHED."

I ACTUALLY HAVE A SPECIFIC IMPLEMENTATION WITH USER'S VIEWING HISTORY, PROGRAM CRITERIA AND A USER PREFERENCE PROFILE

IN ORDER TO IDENTIFY THE SHOWS THAT ARE NOT YET WATCHED THAT THE USER WANTS TO SEE, THIS PERSON RECOMMENDED. AND THEN, I SHOOT THEM TO THE USER. THAT'S THE '709 AND '762 PATENTS.

AND, IN FACT, THIS IS THEIR THIRD BITE AT THE APPLE ON THESE TWO PATENTS. THEY ARGUED THIS TO THE ITC. MAYO EXISTED, SAME TEST AS ALICE WHEN THIS DECISION CAME OUT.

AND WHAT DID THE ITC SAY? PATENTABLE. IN FACT, WE HAVE THE SOLUTIONS.

"THE CLAIMS ARE SPECIFICALLY DIRECTED TO CLIENT-SERVER SYSTEMS WHEREIN AN INTERACTIVE PROGRAM CLIENT DEVICE WORKS IN TANDEM WITH A REMOTE INTERACTIVE SERVER."

BOTH WITH RESPECT TO THE '762 AND '709, THOSE ARE THE FINDINGS OF THE ITC. NO 101 INVALIDITY.

IN FACT, THEY GO ON. AND I'M NOT GOING TO READ IT -- YOUR HONOR CAN AT YOUR OWN TIME -- FOR THE SAKE OF TIME. BUT NONE OF THE ASSERTED PATENTS COVER UNPATENTABLE ABSTRACT IDEAS.

IN FACT, THE PARTICULAR DEVICES ARE INTEGRAL TO THE INVENTIONS. AND, IN FACT, YOU KNOW, THEY ARE NOT MERELY USED TO ACCELERATE INELIGIBLE MENTAL PROCESS, CITING BANCORP.

THOSE ARE THE FINDINGS. BUT THEY WOULD LIKE TO DO IT ONE MORE TIME BECAUSE THEY INFRINGE.

SO WE HAVE A PATENTABLE SUBJECT MATTER WITH RESPECT TO THE '709. TWO MORE PATENTS. I'M GOING QUICKLY.

'929. HERE IS THE PROBLEM. IN 1998, WELL, IF I LOOKED AT MOVIES LIKE ACTION, I COULDN'T GET A DRAMA SUBCATEGORY IN THE

EXISTING INTERACTIVE PROGRAM GUIDE SYSTEMS.

NEXT, I GO TO DRAMAS, AND I COULDN'T FIND THE ACTION SUBCATEGORY. WOULDN'T EXIST. THESE ARE SYSTEMS. AGAIN, THEY WOULD USE A CLIENT-SERVER ARCHITECTURE, BUT I COULDN'T DO IT. THEY ARE A PROBLEM IN 1998.

AND SO EVEN IF I LOOKED AT ALL THE ACTIONS AND ALL THE DRAMAS, WHICH IS A LOT MORE COMPLEX THAN LOOKING AT A TV GUIDE, THERE ARE NO LISTINGS THAT ARE BOTH ACTION AND TRAUMA. I WOULD HAVE TO SCROLL THROUGH ALL OF THEM AND MAKE THAT DETERMINATION TO FIGURE THAT OUT, AND THEN TRY TO MATCH THEM TOGETHER. THAT'S NOT THE TEST.

IN FACT, WHAT THE PATENT SAYS:

> "WE NEED A MORE SOPHISTICATED WAY IN WHICH THE PROGRAM GUIDE CAN HANDLE PROGRAMMABLE CATEGORIES. WE NEED TO PROVIDE AN INTERACTIVE TELEVISION PROGRAM GUIDE SYSTEM, AN IMPROVEMENT TO THOSE SYSTEMS IN WHICH MORE SPECIFIC PROGRAMMING CATEGORIES CAN BE GENERATED AGAIN."

WE'RE GENERATING CATEGORIES, AS I'VE TOLD YOU BEFORE. WE'RE NOT JUST SIMPLY CATEGORIZING.

SO WHAT DO WE HAVE IN THE '929? AS WE SEE HERE IN SLIDE 68, WE HAVE A SYSTEM FOR LOCATING PROGRAMS OF INTEREST TO USER. AND WHAT DOES THAT SYSTEM DO? AS DESCRIBED IN THE PATENT -- AS WE'LL GO THROUGH THE MARKMAN PROCESS -- WE HAVE THAT SYSTEM IN THE BACK-END. WE HAVE A RECEIVER THAT RECEIVES THE PLURALITY OF PROGRAM LISTINGS. THAT RECEIVER, AS THE PATENT DESCRIBES -- AND

WE'LL SHOW IN THE MARKMAN -- AND THE "RECEIVER" TERM ABSOLUTELY DOES MATTER, YOUR HONOR. IT RECEIVES A BACK OFFICE PROCESSOR HERE. RECEIVES THE PROGRAM LISTINGS ASSOCIATED WITH TWO OR MORE SIMPLE CATEGORIES. HERE "THE NATURAL, THE SPORTS, BASEBALL AND DRAMA" BEING SIMPLE CATEGORIES.

OF COURSE, IT CAN BE MORE SHOWS BECAUSE IT RECEIVES A PLURALITY OF PROGRAM LISTINGS. I'M USING ONE EXEMPLAR. AND THEN, YOU HAVE THE PROCESSOR HERE, THE BACK OFFICE PROFESSOR. IT CAN BE A LOCAL PROCESSOR, BUT IT'S ALSO THE BACK OFFICE PROCESSOR. AND THE PATENT, AS WE WILL SHOW, DESCRIBES THIS.

GENERATES ONE COMBINATION CATEGORY. IT GENERATES THE COMBINATION CATEGORY. IT DOESN'T JUST CATEGORIZE. THEY DON'T EXIST. WE'VE CREATED IT. IN THIS INTERACTIVE PROGRAM GUIDE SYSTEM PEOPLE HAD NOT DONE THIS BEFORE.

AND IN THIS PATENT THE CATEGORIES ARE CREATED BY IDENTIFYING THE SIMPLE CATEGORY, SUCH AS "SPORTS, BASEBALL, DRAMA."

AND, IN FACT, I SHOWED YOU CLAIM 12 ON THIS SLIDE INTENTIONALLY, BECAUSE IT SHOWS THAT THEIR REPRESENTATIVE CLAIM ANALYSIS IS INTELLECTUALLY BANKRUPT, YOUR HONOR.

AND YOU GO THROUGH CLAIM 12. CLAIM 12 SAYS I COMBINED THOSE SIMPLE CATEGORIES INTO GROUPS OF TWO OR MORE SIMPLE CATEGORIES. SO I'M GOING TO HAVE TO COMBINE THEM LIKE "SPORTS BASEBALL, SPORTS DRAMA."

AND THEN, I USE THE NEXT TWO STEPS OF DETERMINING WHETHER THOSE GROUPS EXIST IN THE PREEXISTING GROUPS IN CLAIM 12 AFTER I

HAVE OBVIOUSLY GENERATED 11. AND IF THERE'S A MATCH LIKE "SPORTS BASEBALL, SPORTS DRAMA," THAT DETERMINATION AND THAT COMBINATION CATEGORY WILL COMPRISE WHAT WE END UP USING IN OUR SYSTEM AND MAKING IT THE FINAL ELEMENT. CLAIM 11 OBVIOUSLY COVERS WHAT'S IN CLAIM 12. IT'S A DEPENDENT CLAIM. I'M JUST SHOWING IT BECAUSE THEIR REPRESENTATIVE CLAIM ANALYSIS FAILS.

THEY HAVE THIS BROAD ABSTRACT NOTION, WHICH IS INACCURATE. BUT, BY THE WAY, IT DOESN'T TAKE INTO ACCOUNT ANY OF THE DEPENDENT CLAIMS. I DIDN'T HAVE TIME TO STEP THROUGH ALL OF THEM, BUT THIS IS ONE EGREGIOUS EXAMPLE.

AND SO HERE WE ACTUALLY CREATE THESE COMBINATION CATEGORIES FOR THE USER IMPROVING UPON THE SYSTEM. AND SO THE CLAIMS ARE NOT DIRECTED TO A: I'M JUST CATEGORIZING SHOWS. I'M GENERATING. COMBINATION CATEGORIES DID NOT EXIST IN IPG SYSTEMS PRIOR TO 1998 IN ORDER FOR THE USER TO MORE EASILY FIND INFORMATION AS THE AUDIT-VIDEO INFORMATION CONTINUED TO EXPLODE.

WHEN YOU LOOK AT THE CLAIM AS A WHOLE, UNLIKE WHAT NETFLIX DID WITH ITS, YOU KNOW, DISSECTION ANALYSIS, CLAIMS ADD SIGNIFICANTLY MORE IN THE IPG SPACE AND THAT ORDERED COMBINATION, JUST LIKE IN DDR THE CLAIMS ADDED MORE TO THE INTERNET SPACE THAT I CAN VIEW THE WEBSITE WITHIN A WEBSITE.

AND THE ORDERED COMBINATION OBVIOUSLY EFFECTS THAT IMPROVEMENT IN IPG SYSTEMS.

OUR FINAL PATENT, THE '962 PATENT, YOUR HONOR. SO HERE PROBLEMS IN 2005 WITH RESPECT TO -- YOU KNOW, WE'RE GETTING A

LITTLE BIT MORE COMPLEX. THERE'S NO SELECTABLE CATEGORY IN RESPONSE TO A ALPHANUMERIC SEARCH IN INTERACTIVE PROGRAM GUIDE SYSTEMS.

FOR EXAMPLE, ON THE LEFT EXISTING OPTION ONE: AN INDIVIDUAL SHOW LISTINGS ARE GIVEN IN RESPONSE TO A SEARCH. I SEARCH FOR THE WHOLE WORD "TRUE." THE WHOLE WORD, JUST REMEMBER THAT. AND I GET THESE VARIOUS, YOU KNOW, RESULTS: "TRUE BLUE, ET CETERA, ONCE I'VE TYPED THE ENTIRE WORD "TRUE."

THEN, I BROWSE BY CATEGORY AND DOCUMENTARY, AND I HIT "TRUE CRIME." WELL, THERE MIGHT BE NO PROGRAMS, AGAIN, UNDER "TRUE CRIME," AND I'M STUCK. WHY WOULD A USER USING INTERACTIVE PROGRAM GUIDE SYSTEMS AS YOU USE TODAY -- AND THESE ARE WHAT THESE SOLUTIONS ARE HALL ABOUT IN THE ROVI PATENTS IS TO MAKE LIFE EASIER, TO DO THINGS SO THAT USERS CAN ACTUALLY, YOU KNOW, ACCESS INFORMATION THAT THEY WERE NOT ABLE TO ACCESS WITH PRIOR INTERACTIVE PROGRAM GUIDE SYSTEMS.

AND SO WE SEE HERE: WHAT WAS THE SOLUTION? THE SOLUTION WAS A METHOD FOR SEARCHING FOR SHOWS COMPRISING A SEARCH ENGINE APPLICATION. WE CAN SEE THAT APPLICATION COULD BE, AS WE DID IN THE TUTORIAL, BOTH AT THE SERVER OR IT COULD BE LOCALLY AT THE CLIENT. AND, AGAIN, IT CAN ACTUALLY BE IN BOTH LOCATIONS OR ONE OR THE OTHER.

NOW, THIS IS KEY, ALSO. I RECEIVE ONE OR MORE CHARACTERS IN THIS SEARCH ENGINE. THEY LIKE TO SAY IT'S A SEARCH ENGINE APPLICATION. WELL, THIS STEP AGAIN, WHEN ONE LOOKS AT IT, IS I'M

ABLE WITH THIS SEARCH ENGINE APPLICATION TO RECEIVE ONE OR MORE CHARACTERS WHEREIN SAID ONE OR MORE CHARACTERS ARE ENTERED IN AN ALPHANUMERIC INPUT AREA.

SO AS I'VE SHOWN HERE I'VE TYPED "S" AND "E" ON THIS PATENT, YOUR HONOR. GUESS WHAT? THEY IGNORE THAT. WHY? THAT'S INSTANT SEARCH.

YOU VIEW IT AS NORMAL TODAY WITH GOOGLE AND OTHER SOFTWARE THAT I CAN TYPE "S" AND "E" AND I'M GOING TO GET SEARCH RESULTS. THAT WASN'T CONVENTIONAL WHEN THIS PATENT WAS FILED. THAT IDEA WASN'T. IT'S NOT JUST A SEARCH ENGINE APPLICATION.

GOGGLE, WHEN IT EXISTED IN 1999 AND, YOU KNOW, 2004, DIDN'T HAVE INSTANT SEARCH. SO THAT'S JUST ONE NOTION THAT IS PROBLEMATIC WITH THEIR ANALYTICS.

NEXT, I HAVE MATCHING THE CHARACTERS USING THE SEARCH ENGINE. SO I CAN USE JUST "S" AND "E." I DON'T HAVE TO TYPE "TRUE." AND I PROVIDE RESULTS SUCH AS THE SELECTABLE CATEGORIES. AND THE SELECTABLE CATEGORIES ARE ACTORS: "SEAN CONNERY AND SEAN PENN."

AGAIN, IGNORED. I'VE GOT CATEGORIES THAT HAVE BEEN CREATED IN THE SYSTEM. THEY MUST EXIST. AND THEN, ALSO I PROVIDE SHOW LISTINGS AT THE SAME TIME. THE CLAIM REQUIRES THAT, PROVIDING BOTH. SO IT'S NOT JUST, YOU KNOW, CATEGORIES. I HAVE TO PROVIDE CATEGORIES AND SHOW LISTINGS AT THE SAME TIME TO THE USER BASED ON THEIR SEARCH.

AND THIS IS HAPPENING WITH THE LINES AS YOU CAN SEE

COMMUNICATING WITH THE SERVER AND THE DATABASES AS THE PATENT DESCRIBES. AND RECEIVING USER SELECTION OF SAID RESULTS LISTING ONE OF SELECTABLE CATEGORIES.

HERE THEY HAVE CHOSEN THE ACTOR SEAN CONNERY AS ONE OF THE SELECTABLE CATEGORIES. NEXT, BASED ON THAT I PROVIDE AN ADDITIONAL SHOW LISTING. KIND OF IGNORED AGAIN. IT'S NOT JUST CATEGORIES. I PROVIDED ADDITIONAL SHOW LISTINGS BASED ON THE CATEGORY I SELECTED. I'M NOT PREEMPTING CATEGORIZING OF SHOWS. YOU KNOW, I'M DOING MUCH MORE THAN THAT IN RESPONSE TO THE USER'S QUERY.

I'M ACTUALLY -- AND THEY HIT "SEAN CONNERY." I'M GIVING THEM MORE INFORMATION. AND THAT MORE INFORMATION HAPPENS TO BE THE MOVIES SEAN CONNERY IS IN. AND THEN, AFTER THAT I CAN PERFORM AN ACTION.

FOR EXAMPLE, VIEWING THE MOVIE. AND THE USER HAS GOT TO SELECT THAT. AND I CAN VIEW "GOLDFINGER" OR I COULD ASK FOR MORE INFORMATION ABOUT "GOLDFINGER."

THIS ISN'T JUST SOME ABSTRACT NOTION. IN FACT, IT'S MUCH MORE THAN THAT. AND SO WHAT DO WE HAVE? IT'S NOT JUST SEARCHING FOR SHOWS USING SELECTABLE CATEGORIES. ONE CAN INSTANT SEARCH FOR SHOWS, AND WE CAN INSTANT SEARCH FOR SHOWS, AND WE HAVE TO GET SHOW LISTINGS, BOTH LISTINGS AND CATEGORIES.

THEN, WE ALSO GET A FURTHER LISTING IN RESPONSE TO THAT SEARCH. AND, MOREOVER, I THEN CAN PERFORM AN ACTION BASED ON THOSE LISTINGS. IT'S NOT PREEMPTING THE IDEA OF SEARCHING FOR

SHOWS. THIS PATENT IS ANYTHING BUT SIMPLY SEARCHING FOR SHOWS.

AND THAT'S THE POLICY THAT IS DRIVING THE ABSTRACT. HAVE I PATENTED -- AND, AGAIN, I SUGGEST TO YOU THIS IS WRONG; SEARCHING FOR SHOWS USING SELECTABLE CATEGORIES IS AN ABSTRACT IDEA.

BUT EVEN ASSUMING ARGUENDO THAT THEY ARE CORRECT, I'VE NOT PREEMPTED THAT ENTIRE SPACE.

SO I WILL ANSWER YOUR QUESTIONS, YOUR HONOR. BUT, YOU KNOW, ONE OTHER THING THAT WAS TROUBLING IN THEIR BRIEFING -- AND THEY DIDN'T DO IT HERE -- BUT THEY FALL TO US FOR PROVIDING, YOU KNOW, EXPERT TESTIMONY.

WELL, WHAT DO THEY SAY IN THEIR BRIEFS? COMMON SENSE AND LIFE EXPERIENCE IS WHAT TEACHES YOU THESE THINGS. COMMON SENSE. AND THEY SAY IT OVER AND OVER AGAIN IN THEIR BRIEFING.

WELL, AS YOU ARE AWARE, YOUR HONOR -- AND THIS IS TAKEN FROM THE NINTH CIRCUIT MODEL JURY INSTRUCTIONS -- COMMON SENSE AND LIFE EXPERIENCE ARE JURY QUESTIONS AND AN INSTRUCTION THAT YOU COMMONLY PROVIDE TO JURIES IN CASES.

SO THEY TAKE THE DISINGENUOUS POSITION THAT THEY ESPOUSE COMMON SENSE AND LIFE EXPERIENCE THAT APPLIES TO QUESTIONS OF FACT, YET THEY CRITICIZE OUR EXPERT DECLARATION WHEN ALICE AND OTHER CASES, EVEN THOUGH IT'S A QUESTION OF LAW AS TO WHETHER SOMETHING IS INELIGIBLE, LOOK AT UNDERLYING FACTUAL ISSUES AS ONE MUST LOOK AT UNDERLYING FACTUAL ISSUES.

SO WITH THAT, YOUR HONOR, WE HAVE FINISHED OUR PRESENTATION. I'M HAPPY TO ANSWER YOUR SPECIFIC QUESTIONS.

**THE COURT:** HAVE YOU NOT COVERED THEM?

**MR. CHAIKOVSKY:** I THINK I'VE ANSWERED MOST OF EVERYTHING THAT YOU'VE GOT. YOU KNOW, ON THE '762 PATENT ON PAGE TWO, YOU ASKED SPECIFICALLY:

"IS THE USER TELEVISION EQUIPMENT ENOUGH TO TIE IT TO A PARTICULAR MACHINE? WHY SHOULD THE COURT FIND IT CLOSER TO THE GPS RECEIVER IN SERF (PHONETIC)."

WELL, AGAIN, IT'S VERY MUCH LIKE THE GPS RECEIVER IN SERF. THE SYSTEMS WOULDN'T FUNCTION WITHOUT THE GPS RECEIVER IN SERF.

THE USER TELEVISION EQUIPMENT, AND BY THAT MATTER, ALSO THE INTERACTIVE CLIENT-SERVER, THE SERVER ITSELF. THE SYSTEM WOULDN'T FUNCTION WITHOUT THE SERVER AND THE CLIENT, THE USER TELEVISION EQUIPMENT THAT EXISTS IN THE '762 PATENT.

SO BEYOND EVERYTHING THAT I'VE STATED AS TO WHY THIS IS PATENTABLE, IF YOU COMPARE IT TO SERF ABSOLUTELY SERF WOULD SUPPORT THE PATENTABILITY OF THIS CLAIM.

LET'S SEE IF THERE ARE ANY OTHERS THAT HAVE NOT BEEN ANSWERED.

ON THE '906 I HAVE ANSWERED EVERYTHING WITH RESPECT TO BOOKMARKING. AND THEN, WITH RESPECT TO, YOU KNOW, IF YOU AGREE WITH OUR PROPOSED CONSTRUCTIONS AND FIND THE CLAIMS ARE NOT LIMITED TO ANY PARTICULAR HARDWARE, DOES THAT AFFECT THE ANALYSIS? AS I'VE TOLD YOU, YOU KNOW, SOFTWARE IS PATENTABLE. SO EVEN IF THERE'S NOT HARDWARE IF WE HAVE IMPROVEMENTS IN THE INTERNET, LIKE DDR OR INTERACTIVE PROGRAM SYSTEMS, I WOULD

SUGGEST TO YOU MOST OF THESE CLAIMS HAVE HARDWARE IN THEM, BUT EVEN WITHOUT THEM THEY WOULD NOT. AND WOULD THE CLAIMS FAIL THE MACHINE OR TRANSFORMATION TEST? NO. NOT NECESSARILY, YOUR HONOR. THE MACHINE OR TRANSFORMATION TEST, AS LONG AS THERE'S A TRANSFORMATION OF INFORMATION AND TRANSFORMATION OF DATA YOU CAN SUCCEED ON THAT TEST. BUT THAT'S ONLY A USEFUL CLUE, AS THE COURT SAID IN MAYO, ONE ASPECT. THE TEST IS AN ALICE TEST, AS WE STEPPED THROUGH AT LENGTH HERE THIS AFTERNOON OR THIS MORNING, YOUR HONOR.

AND WE HAVE TO LOOK AT THE CLAIMS AS A WHOLE, STEP ONE, STEP 2A, STEP 2B. AND WITH THAT, YOUR HONOR, WE SUBMIT. I THINK THAT YOU'LL FIND THAT WE HAVE A PATENTABLE IDEA?

**THE COURT:** THANK YOU. ALL RIGHT, WE'RE GOING TO NEED A BREAK SOON.

MR. KWUN, IF YOU CAN DO YOUR REBUTTAL IN FIVE MINUTES.

**MR. KWUN:** ABSOLUTELY, YOUR HONOR.

**THE COURT:** AND THEN WE WILL GIVE YOU BREAK AND I'LL TELL YOU WHAT I WANT YOU TO DO ON CLAIMS CONSTRUCTION.

**MR. KWUN:** FIRST OF ALL, YOUR HONOR, THE KEY POINT I WANT TO MENTION, EVEN IF IT TOOK ME ALL FIVE MINUTES, IS THE REHEARING PETITION, THE PETITION FOR REHEARING EN BANC IN. ULTRAMERCIAL WAS DENIED OVER A MONTH AGO ON FEBRUARY 20TH.

SO THERE'S NO PENDING OPPORTUNITY FOR THE FEDERAL CIRCUIT TO REVISIT THAT.

YOU ALSO HEARD THAT THE QUESTION IS WHETHER THE CLAIMS

SOLELY COVER AN ABSTRACT IDEA. THAT IS NOT THE TEST. IF YOU LOOK IN THE MAYO DECISION, IN THE MAYO DECISION THE QUESTION IS WHETHER THE STEPS ADD NOTHING SIGNIFICANT BEYOND THE SUM OF THEIR PARTS. AND WHAT YOU HAVE IN ULTRAMERCIAL IS THE COURT SAYS:

"THE SECOND STEP IN THE ANALYSIS REQUIRES US TO DETERMINE WHETHER THE CLAIMS DO SIGNIFICANTLY MORE THAN DESCRIBE THE ABSTRACT METHOD."

SO IT'S NOT A QUESTION OF WHETHER IT SOLELY DESCRIBES THE ABSTRACT METHOD. THE QUESTION IS WHETHER IT DOES SIGNIFICANTLY MORE. AND THAT'S WHERE WE GET THINGS LIKE CONVENTIONAL ELEMENTS THAT ARE NOT ENOUGH TO MOVE THE NEEDLE.

YOUR HONOR, ON DDR I WOULD JUST URGE YOU TO READ THE DECISION AND DECIDE FOR YOURSELF WHETHER OR NOT THEY HAVE A HOLDING ON WHETHER OR NOT AT STEP ONE IT WAS DIRECTED TO AN ABSTRACT IDEA.

IF, INDEED, THEY SAID THAT IT WAS NOT DIRECTED TO AN ABSTRACT IDEA AT STEP ONE, THEN ARGUABLY THE REST OF THE CASE IS DICTA. THAT WOULD MAKE YOUR JOB EVEN EASIER.

THERE WERE SOME -- SOME OF THE ARGUMENT WAS ADDRESSED REALLY TO THE QUESTION OF: HOW DO WE FIND THE ABSTRACT IDEA? AND WHETHER OR NOT WE NEED TO CONSIDER ALL THE CLAIM ELEMENTS.

I DO THINK THAT YOU NEED TO LOOK AT THE ENTIRE CLAIM IN ORDER TO FIGURE OUT WHAT THAT CLAIM IS DIRECTED TO. I DON'T THINK THERE'S ANY WAY TO DENY THAT. AND I DON'T THINK WE HAVE ACTUALLY A DISPUTE ON THAT.

THE QUESTION IS WHEN YOU THEN FORMULATE YOUR ABSTRACT IDEA WHETHER THAT ABSTRACT IDEA HAS TO HAVE INCLUDED WITHIN IT A WORD FOR EVERY SINGLE LIMITATION, OR SOMETHING LIKE THAT. AND IF YOU LOOK AT ULTRAMERCIAL, THE ABSTRACT IDEA OF USING ADVERTISING AS CURRENCY DOES NOT INCLUDE EVERY SINGLE ELEMENT OF THE CLAIM. SO, OF COURSE, YOU NEED TO LOOK AT THE ENTIRE CLAIM, AND I WOULD URGE YOU TO DO THAT.

AND I THINK THAT OUR ABSTRACT IDEAS ARE CONSISTENT WITH THAT. AS FOR WHETHER OR NOT WE ARE JUMPING AROUND USING DIFFERENT ABSTRACT IDEAS FOR THE PATENTS, WE HAVE ONE. IF YOU LOOK AT OUR OPENING BRIEF WE CLEARLY STATE WHAT THE ABSTRACT IDEA IS. IF YOU LOOK AT THE SLIDE WE HAVE IN THE PRESENTATION CLEARLY STATE WHAT THE ABSTRACT IDEA IS. I DON'T KNOW THAT YOU'LL AGREE WITH ME WHAT THE ABSTRACT IDEA IS. SO I WANT TO OFFER YOU OTHER POSSIBILITIES AND EXPLAIN WHY NONETHELESS THE ANALYSIS WOULDN'T CHANGE.

BUT, OF COURSE, YOUR DECISION SHOULDN'T SAY:

> "WELL, THERE'S SEVEN OR EIGHT ABSTRACT IDEAS, AND I'M GOING TO USE DIFFERENT ONES IN PROPORTION TO THE OPINION."

YOU SHOULD USE ONE IDEA FOR EACH PATENT.

YOU HEARD ABOUT THE '906 PATENT THAT THE KEY TO IT, I THINK, WAS, QUOTE, "BRAINS." THERE'S NO BRAINS DISCUSSED IN THE CLAIM. SO, OBVIOUSLY, LITERALLY THE WORD "BRAINS" DOES NOT APPEAR IN THE CLAIMS. BUT MORE TO THE POINT, THE ACTUAL, YOU KNOW, SUBSTANCE OF WHAT MR. CHAIKOVSKY REFERRED TO AS THE BRAINS IS NOT

DISCLOSED.

THE BRAINS OF HOW TO TRANSCODE? NO EXPLANATION ABOUT HOW TO TRANSCODE.

THE BRAINS OF HOW TO RECORD A BOOKMARK? NOTHING AT ALL. IT JUST SAYS:

"RECORD A BOOKMARK."

THE BRAINS ABOUT HOW TO STREAM? THAT'S A PRETTY COMPLICATED TECHNOLOGY. NO DISCUSSION AT ALL. IT JUST SAYS:

"DELIVERED OVER A COMMUNICATIONS LINK."

SO I URGE YOU TO LOOK AT THE CLAIMS NOT THE SPECIFICATION LIKE JUDGE FREEMAN DID.

AS TO THE '929 PATENT, MR. CHAIKOVSKY NOTED THAT THE INDEPENDENT CLAIM ACTUALLY DISCUSSES GENERATING COMBINATION CATEGORIES RATHER THAN ASSIGNING THEM TO SHOWS, PER SE.

I WOULD SUBMIT THAT THAT ACTUALLY JUST MAKES THE IDEA TO WHICH THE CLAIMS ARE DIRECTED EVEN MORE ABSTRACT. SO IT'S THE NOTION OF CREATING THE COMBINATIONS IN THE ABSTRACT BEFORE YOU EVEN DO ANYTHING WITH THEM.

WELL, YOU KNOW, IF YOU ARE GOING TO USE A COMBINATION CATEGORY NECESSARILY BEFORE THAT YOU HAVE TO CREATE THE COMBINATION CATEGORY. AND THAT HAPPENED A LONG TIME BEFORE COMPUTERS. SOMEWHERE LONG AGO IN THE WORLD OF BOOK REVIEWS WE HEARD ABOUT HISTORICAL FICTION FOR THE FIRST TIME. WE HEARD ABOUT ROMANTIC COMEDIES FOR THE FIRST TIME.

THOSE ARE NOT A NEW PROBLEM FROM THE TECHNOLOGICAL AGE.

THOSE PEOPLE WERE GENERATING COMBINATION CATEGORIES.

YOU HEARD SOME -- YOU HEARD MR. CHAIKOVSKY SAY THAT WE HAD INSTRUCTED YOU TO IGNORE OLD ITEMS IN DOING YOUR 101 ANALYSIS.

HE QUOTED -- HE PUT UP PAGE SIX FROM OUR OPENING BRIEF. WE WERE DISCUSSING STEP ONE OF THE ALICE TEST.

AND, AGAIN, JUST LIKE THE FEDERAL CIRCUIT DID IN THE BREAST CANCER GENE LITIGATION, THAT IS ENTIRELY APPROPRIATE. IF THE CLAIM IS DIRECTED TO A CONCEPT THAT DOES NOT INCLUDE SOME OF THE IMPLEMENTATION STEPS THAT'S ENTIRELY FINE. THAT'S ENTIRELY NORMAL.

HE ALSO POINTED TO JUDGE PFAELZER'S DECISION IN THE ROVI V. HULU CASE. THAT'S WAS A PRE-ALICE DECISION THAT WAS ADDRESSING NOVELTY. SO WHEN JUDGE PFAELZER TALKED ABOUT A NEW PROBLEM I THINK IT WAS FAIR TO SAY SHE WAS ADDRESSING NOVELTY. NOVELTY IS NOT THE TEST WE'RE BEING ASKED TO APPLY HERE UNDER 101.

AND GIVEN THAT IT WAS A PRE-ALICE DECISION, I THINK ANY ATTEMPT BY JUDGE PFAELZER TO USE A WORD THAT LATER ON MAGICALLY APPEARED IN A DECISION ON ANOTHER TOPIC CAN'T REALLY LEAD TO MANY FIRM CONCLUSIONS.

I DO WANT TO MENTION THAT THE MCRO CASE WHICH WAS DESCRIBED AS COMING FROM A COUPLE OF DIFFERENT JUDGES ACTUALLY CAME FROM JUDGE WU, JUST TO MAKE THE RECORD CLEAR ON THAT.

YOU HEARD A LOT ABOUT SPECIFIC COMPUTING DEVICES. YOU SAW PICTURES OF CLOUD COMPUTERS, OF IP NETWORKS, OF ROUTERS. YOU HEARD ABOUT THE H.264 FORMAT, THE DOLBY AC3 FORMAT. ROVI DIDN'T

INVENT ANY OF THOSE THINGS. AND AS A MATTER OF FACT, NONE OF THOSE ARE SPECIFICALLY CLAIMED IN THE CLAIMS.

THE CLAIMS DON'T SAY:

"BY THE WAY, YOU SHOULD USE A CLOUD COMPUTER. BY THE WAY, YOU SHOULD USE A ROUTER THAT DOES X, Y AND Z."

WHAT THE CLAIMS SAY ARE THINGS LIKE:

"USE A CLIENT-SERVER ARCHITECTURE." NO DETAILS. THAT'S GENERIC CLAIMING OF CONVENTIONAL COMPUTER ELEMENTS.

YOU HEARD A LITTLE BIT ABOUT THE ITC DECISION AND THE FACT THAT THE ITC DECISION ADDRESSED SECTION 101. THAT WAS A PRE-ALICE DECISION.

NOW, IT WAS A POST-MAYO DECISION. BUT TO SUGGEST THAT IN THE AREA OF ABSTRACT IDEAS THAT THERE IS NO DELTA BETWEEN THE SUPREME COURT'S DECISION IN MAYO AND THE SUPREME COURT'S DECISION IN ALICE WOULD SUGGEST THAT A LOT OF COURTS HAVE BEEN FUMBLING AROUND CONFUSEDLY IN THE INTERIM. BECAUSE IF YOU LOOK POST-ALICE YOU WILL SEE A RASH OF OPINIONS THAT ARE ENTIRELY DIFFERENT ON THE 101 ABSTRACT IDEA ISSUE THAN YOU SAW BEFORE.

I WOULD POINT YOU AGAIN TO THE SIX DECISIONS FROM THE FEDERAL CIRCUIT POST-ALICE ADDRESSING ABSTRACT IDEAS, AND THE SEVEN AND ANY OF THE ONES I MAY HAVE MISSED. THE AT LEAST SEVEN DECISIONS COMING OUT OF THIS DISTRICT.

YOU ALSO HEARD IN THE '962 PATENT CLAIM ONE IS ABOUT INSTANT SEARCH. I'D SUGGEST THAT THE COURT TAKE A LOOK AT THAT AND SEE WHERE IN THERE THERE IS A REFERENCE TO INSTANT SEARCH. THERE IS

A REFERENCE TO ENTERING CHARACTERS IN A BOX.

YOU ALSO HEARD THAT COMMON SENSE IS SOMETHING JURIES SHOULD DO. WELL, FRANKLY, YOUR HONOR, OF COURSE YOU SHOULD INSTRUCT JURIES TO USE COMMON SENSE. THERE IS NO SUGGESTION IN THAT JURY INSTRUCTION THAT NO ONE ELSE IS SUPPOSED TO USE COMMON SENSE.

AND I WOULD SUBMIT THAT WE ALL HOPE JUDGES USE COMMON SENSE JUST LIKE JURIES. AND UNLESS THE COURT HAS ANY SPECIFIC QUESTIONS, I'LL SUBMIT.

**THE COURT:** NO. ALL RIGHT. WE'RE GOING TO TAKE A 15-MINUTE BREAK, AND THEN WE STILL HAVE THE CLAIM CONSTRUCTION. I'M GOING TO ASSESS 30 MINUTES TO EACH SIDE FOR THEIR FURTHER ARGUMENTS. A LOT OF YOUR ARGUMENTS TODAY I THINK WILL BE UNDOUBTEDLY BE REPEATED AGAIN IN THIS SECOND PORTION OF OUR HEARING.

SO I THINK THAT 30 MINUTES SHOULD BE ADEQUATE. THERE ARE THREE OF THE TEN DISPUTED CLAIMS THAT I'M NOT GOING TO ENTERTAIN ANY ARGUMENT ON BECAUSE THERE IS ESSENTIALLY AN AGREEMENT, ALTHOUGH IN ALL THREE INSTANCES ROVI HAS URGED THE COURT TO GO FURTHER THAN NECESSARY.

BUT THERE ARE THREE UPON WHICH YOU AGREE THAT THE PLAIN AND ORDINARY MEANING CONTROLS. SO I DON'T WANT TO HEAR A SINGLE WORD ABOUT THE NUMBER FOUR, THE FIRST DATABASE, BASED ON THE USER'S VIEWING HISTORY, AND NINE AND TEN, CLIENT DEVICE END USER. THE PLAIN AND ORDINARY MEANING WILL CONTROL.

SO PLEASE LIMIT YOUR 30 MINUTES TO THE OTHER SEVEN DISPUTED

TERMS.

EVERYBODY BACK AT QUARTER TILL 12:00.

**MR. RAMANI:** YOUR HONOR, MAY I ASK JUST ONE POINT OF CLARIFICATION ON THAT? DID YOUR HONOR WANT US TO PROCEED WITH ONE SIDE ARGUING FOR HALF AN HOUR ON ALL SEVEN TERMS?

**THE COURT:** YES. YES.

**MR. RAMANI:** AND WOULD ROVI AS THE PATENTEE BE THE PARTY TO BEGIN?

**THE COURT:** I DON'T REALLY CARE.

**MR. RAMANI:** THANK YOU, YOUR HONOR.

**THE COURT:** USUALLY THAT IS WHAT I DO, BUT I DON'T CARE.

**MR. RAMANI:** THANK YOU.

**THE COURT:** OKAY.

(THEREUPON, A RECESS WAS TAKEN.)

**THE COURT:** ALL RIGHT. DID YOU ALL DECIDE HOW YOU WISH TO PROCEED?

**MR. RAMANI:** WE DID, YOUR HONOR. THE PATENT HOLDER IS GOING TO PROCEED FIRST.

**THE COURT:** OKAY. ALL RIGHT.

**MR. CHAIKOVSKY:** THANK YOU, YOUR HONOR. AGAIN, YAR CHAIKOVSKY ON BEHALF OF ROVI. AND GIVEN OUR TIME LIMITATIONS WE'RE GOING TO COVER THE FEW TERMS THAT WE CAN. IT WILL PROBABLY BE "PROGRAM GUIDE LISTING," OR "PROGRAM GUIDE (PAREN) LISTING, ORDER OF STEPS, USER PREFERENCE PROFILE" AND "RECEIVER."

FIRST, FOCUSING ON THE "PROGRAM GUIDE/PROGRAM LISTING" TERMS IN THE '762, '709 PATENTS. I'M ON SLIDE FIVE OF OUR PRESENTATION. YOU CAN SEE WHERE THOSE TERMS EXIST IN BOTH OF THOSE PATENTS.

AND THE ISSUE HERE IS THAT ROVI'S CONSTRUCTIONS PROVIDE, YOU KNOW, A GUIDE THAT DISPLAYS PROGRAMS, LISTINGS. AND WITH RESPECT TO THE PROGRAM LISTINGS PLAIN AND ORDINARY MEANING.

WHERE NETFLIX'S CONSTRUCTION IS CREATED TO HAVE A NONINFRINGEMENT ARGUMENT IN ATTEMPTS TO LIMIT THE CLAIMS TO AN EMBODIMENT WITH CHANNELS AND TIMES IN WHICH TELEVISION PROGRAMS WILL AIR.

AND IT'S PRETTY OBVIOUS AS TO WHY THAT LIMITATION'S BEING CREATED BECAUSE THEY WANT TO ARGUE THAT NETFLIX DOES NOT PROVIDE CHANNEL AND TIME ON WHICH TELEVISION PROGRAM WILL AIR OR PREVIOUSLY HAS AIRED.

SO IMPORTING A LIMITATION FROM AN EMBODIMENT AND EXCLUDING THE VIDEO-ON-DEMAND EMBODIMENT IS THE DISPUTE THAT WE HAVE AT ISSUE.

SO AS YOU SEE HERE THE ITC, WHICH PREVIOUSLY AGREED WITH ROVI'S CONSTRUCTION, THE CLAIM SHOULD NOT BE LIMITED TO A PREFERRED EMBODIMENT, BUT SHOULD INCLUDE THE VIDEO-ON-DEMAND EMBODIMENT.

IF YOU LOOK HERE ON SLIDE SEVEN, YOU HAVE THE PROGRAM LISTINGS ARE STORED ON A SERVER. THE SERVER THEN PROVIDES THE LISTINGS TO THE CLIENTS. AND THEN, THE SERVER PROVIDES IT TO THE

CLIENTS FOR DISPLAY. SO WHAT DO WE HAVE? WE HAVE A PROGRAM GUIDE THAT DISPLAYS PROGRAM GUIDE LISTINGS. THAT'S WHAT THE GUIDE -- WE'RE NOT INTERPRETING "PROGRAM GUIDE SERVER" WHICH IS IN THE CLAIMS. WE'RE NOT INTERPRETING "PROGRAM GUIDE CLIENT." THE PARTIES ARE INTERPRETING JUST THE PROGRAM GUIDE ASPECT OF THE TERMS.

AND SO GIVEN THAT, THE ANALYTICAL FOCUS HERE MUST BEGIN AND CENTERED ON THE LANGUAGE OF THE CLAIMS THEMSELVES AS BRAINTREE LABORATORIES TELLS US, 749 F.3D AT 1354.

AND HERE WE HAVE THAT NOTHING IN THE CLAIMS OR THE SPECIFICATION LIMITS "PROGRAM GUIDE" OR "PROGRAM LISTINGS" TO THE BROADCAST TELEVISION CONTEXT. WE SEE NO SEMBLANCE OF THAT WITH THE TERM "PROGRAM GUIDE" OR "PROGRAM LISTING."

IF WE MOVE TO SLIDE TEN YOU CAN SEE "PROGRAM GUIDE/PROGRAM LISTING" IS A BROADER NOTION WHERE NETFLIX WANTS TO INTERPRET IT AS A NARROWER NOTION. THAT IS AN APPLICATION THAT PRODUCES A DISPLAY IDENTIFYING CHANNELS AND TIMES ON WHICH TELEVISION PROGRAMS WILL AIR.

IT'S A LITTLE CONCEPT WITHIN A MUCH BROADER CONCEPT THAN WHAT A "PROGRAM GUIDE" IS. AND THEN, AS SHOWN HERE FROM THE INNOVA/PURE WATER:

"WE KNOW OF NO PRINCIPLE OF LAW WHICH WOULD AUTHORIZE US TO READ INTO A CLAIM AN ELEMENT WHICH IS NOT PRESENT," MEANING IN TELEVISION WHERE IT'S NOT PRESENT.

YOU KNOW, HERE WE HAVE FROM THE '709 PATENT, AGAIN, A

DISCLOSURE THAT THE PROGRAM GUIDE SERVER OBVIOUSLY IS GOING TO USE PROGRAMS. IT DEALS WITH PROGRAMS. DOESN'T SAY: "TELEVISION PROGRAMS."

PROGRAM GUIDE SERVER ALSO DEALS WITH VIDEO-ON-DEMAND PROGRAMS. PATENT CALLS THAT OUT FOR VIDEO-ON-DEMAND PROGRAMS ARE STORED. THEY DON'T HAVE CHANNELS. THEY ARE NOT BROADCAST, ET CETERA, IN THE WAY THAT A TELEVISION IS.

FOR EXAMPLE, ONE THE REASONS WHY THIS IS BEING READ OUT IS BECAUSE THAT'S WHAT NETFLIX DOES IS DELIVER TO YOU VIDEO-ON-DEMAND PROGRAMS.

NOW, THIS SECTION OF SPECIFICATION NETFLIX WILL ARGUE:

"WELL, SOMEHOW THE VIDEO-ON-DEMAND PROGRAMS RELATE TO

OTHER TYPES OF INFORMATION" FROM THE FIRST SENTENCE IN THIS DISCLOSURE.

WELL, THAT'S NOT TRUE. AND AS THE ITC FOUND, THE OTHER TYPES OF INFORMATION HERE ARE WEBSITE LINKS, GAMES, CHAT GROUP LINKS, MERCHANDISE, INFORMATION. THAT'S THE OTHER TYPES OF INFORMATION.

THE PROGRAMS OBVIOUSLY INCLUDE ITS VIDEO-ON-DEMAND PROGRAMS AS THE SENTENCES SHOW IN THIS PORTION OF THE SPECIFICATION.

FURTHER, BEYOND THAT DISCLOSURE IN THE SPEC, THE SPECIFICATION CONTEMPLATES SEARCHING FOR PROGRAM LISTINGS OR PROGRAM DATA SEPARATELY FROM VIDEO-ON-DEMAND VIDEOS.

FOR EXAMPLE, YOU SEE IN THE '709 PATENT, COLUMN 13, LINES ONE THROUGH FIVE, THAT THE PROGRAM SERVER SEARCHES FOR PROGRAM

LISTINGS IN BLUE. AND IT ALSO IS ABLE TO SEARCH FOR VIDEO-ON-DEMAND VIDEOS.

YOU KNOW, AND WE'VE IDENTIFIED THAT DOWN BELOW AS TWO SEPARATE DATABASES. FOR EXAMPLE, YOU HAVE THE PROGRAM LISTINGS IN ONE DATABASE ON THE LEFT. YOU WOULD HAVE THE VIDEO-ON-DEMAND VIDEO ON THE RIGHT. AND SO YOU'RE ABLE TO SEARCH THROUGH BOTH DIFFERENT STRUCTURES AS DISCLOSED IN THE SPECIFICATION.

NOW, THAT DOES NOT MEAN THAT THE PROGRAM LISTINGS, PROGRAM DATA APPLIES ONLY TO BROADCAST TELEVISION AND THAT IT CANNOT APPLY TO VIDEO-ON-DEMAND VIDEOS. IT'S GOING TO APPLY TO BOTH.

WE SEE IN THE SECOND CITATION, THE '709 PATENT, COLUMN 22, LINES 11 THROUGH 17, THAT WE HAVE PROGRAM GUIDE SERVER SEARCHES THE DATABASES FOR PROGRAM GUIDE DATA OR VIDEOS, WHICH INCLUDE VIDEO-ON-DEMAND VIDEOS.

AND SO THAT PROGRAM LISTING, WHICH IS GENERIC -- COULD BE TELEVISION PROGRAM LISTINGS OR VIDEO-ON-DEMAND PROGRAM LISTINGS. HOW AM I GOING TO SEARCH FOR VIDEOS ON A VIDEO-ON-DEMAND SERVER, FOR EXAMPLE, AS I'VE SHOWN HERE WITHOUT HAVING THE LISTINGS? AND SO PROGRAM LISTINGS, FOR EXAMPLE, WOULD INCLUDE: "YOU'VE GOT MAIL," OR "YOU, ME AND DUPREE." AND IN THE VIDEO-ON-DEMAND VIDEO DATABASE I'M CLEARLY GOING TO HAVE "YOU GOT MAIL," AND OTHER SHOWS.

**THE COURT:** WAS IT JUST ME, OR DID SOMETHING FLASH ON THERE?

**MR. CHAIKOVSKY:** IT DID. I JUST -- SEE, THE

SPECIFICATION HAS PROGRAM LISTINGS AND PROGRAM GUIDE DATA.

**THE COURT:** DID YOU CHANGE THAT TO SOMETHING ELSE?

**MR. CHAIKOVSKY:** YES. RIGHT. AND SO THE CONCEPT IS THAT COULD INCLUDE BROADCAST TELEVISION LISTINGS, BUT THAT ALSO WILL INCLUDE, BASED ON THE SPECIFICATION, VIDEO-ON-DEMAND PROGRAM LISTINGS. AGAIN, THEY ARE TRYING TO IMPORT INTO THE WORD "PROGRAM LISTINGS" AND "PROGRAM GUIDE DATA" THAT IT'S "TELEVISION PROGRAM LISTINGS" OR "TELEVISION PROGRAM GUIDE DATA."

SPECIFICATION DOESN'T TELL YOU THAT. IT TELLS YOU "PROGRAM GUIDE DATA."

AND, IN FACT, ONE OF THE FORMS OF PROGRAMS IN WHICH IT'S TRYING TO ACCESS, AS SHOWING IN THESE CITATIONS, IT'S VIDEO-ON-DEMAND VIDEOS.

SO AS AN EXAMPLE WE'RE SHOWING YOU THAT, YES, IT CAN ACCESS VIDEO-ON-DEMAND VIDEOS, AND WE DON'T DISPUTE THAT IT CAN ALSO ACCESS TELEVISION PROGRAM LISTINGS. I MEAN, WE SHOWED THAT AS EXEMPLARY. BECAUSE ONE OF SKILL IN THE ART WOULD KNOW FROM READING THIS THAT IT CAN SHOW EITHER ONE.

IN FACT, ANOTHER INSTANCE WHERE THIS HAS BEEN HANDLED AT THE ITC AND THAT THE ALJ AND COMMISSION REJECTED NETFLIX'S INTENT TO LIMIT IT TO NOT INCLUDE THE VIDEO-ON-DEMAND EMBODIMENT. AS WE SEE HERE FROM THE OPINION:

> "NOTHING IN THE CLAIMS OR SPECIFICATION LIMITS 'PROGRAM LISTING' TO INFORMATION ABOUT A SCHEDULED TELEVISION PROGRAM," WHICH IS WHAT THEY ARE DOING WITH SLIGHTLY

DIFFERENT WORDS HERE, "OR LIMITS THE PROGRAM TERMS TO DEALING WITH INFORMATION ABOUT SCHEDULED TELEVISION PROGRAMMING."

DOWN BELOW:

"THE BROAD SCOPE OF 'PROGRAM LISTINGS ALSO SUPPORTED BY THE SPECIFICATION OF THE PATENT," CITING TO SOME OF THE PORTIONS THAT I JUST SHOWED YOU WITH RESPECT TO VIDEO-ON-DEMAND PROGRAMS, YOUR HONOR.

AND SO FOCUSING ON NETFLIX'S CONSTRUCTION, WHICH ATTEMPTS TO IMPORT JUST THE CONCEPT OF TELEVISION PROGRAMS INTO THESE CONSTRUCTIONS, IN ORDER TO CREATE A NONINFRINGEMENT ARGUMENT WITH RESPECT TO HOW THEY STREAM THEIR VIDEOS, YOU KNOW, THEY MAKE THESE ARGUMENTS.

THE FIRST ARGUMENT THAT THEY MAKE THAT IS INCORRECT IS THAT THE SPECIFICATION UNAMBIGUOUSLY AND CONSISTENTLY DESCRIBES "PROGRAM GUIDES" AS "ELECTRONIC PROGRAM GUIDES ON TV GUIDE LISTINGS CREATED ON THE USER'S TV SCREEN.

I JUST SHOWED YOU THAT'S NOT RIGHT. THERE'S THE VIDEO-ON-DEMAND PROGRAM LISTINGS AND THERE'S ALSO THE ITC OPINION FINDING THAT THE VIDEO-ON-DEMAND EMBODIMENT DOES NOT LIMIT "PROGRAM GUIDE" OR "PROGRAM LISTINGS" TO SCHEDULED PROGRAMS.

THERE'S ALSO DEPENDENT CLAIMS THAT THEY TRY TO ARGUE ARE CONSISTENT WITH THE TELEVISION. THAT'S JUST NOT RIGHT. IT'S THE OPPOSITE. THEY SUPPORT ROVI'S CONSTRUCTION.

AND THEY CITE TO ANOTHER CASE RELATING TO ANOTHER PATENT TO

TRY TO SUPPORT THEIR POSITION. SO LET'S TAKE THE FIRST INSTANCE. YOU KNOW, WHERE THEY SAY IT'S LIMITED TO TV GUIDE LISTINGS.

WELL, THAT IGNORES AGAIN THE VIDEO-ON-DEMAND EMBODIMENT WHILE SELECTING AND IMPORTING LIMITATIONS RELATING TO BROADCAST TELEVISION.

AND WE'RE SHOWN THESE ARE THE SPECIFICATION CITES ON THIS SLIDE THAT I I'VE SHOWN WITH RESPECT TO VIDEO-ON-DEMAND PROGRAMS THAT ARE DISCLOSED IN THE SPECIFICATION. AND AS BROADCOM VERSUS EMULEX STATES:

"AN INTERPRETATION WHICH EXCLUDES A DISCLOSED EMBODIMENT FROM THE SCOPE OF THE CLAIMS IS RARELY, IF EVER, CORRECT."

AND THAT'S AT 732 F.3D AT 1333.

YOU KNOW, THEY THEN -- NETFLIX THEN IN ITS BRIEF ATTEMPTS TO KIND OF COBBLE TOGETHER VARIOUS CITES DEALING WITH TELEVISION PROGRAM LISTINGS. AND THIS IS IN THEIR RESPONSIVE BRIEF AT PAGE SEVEN. AND YOU CAN SEE ALL THESE CITES THAT THEY HAVE TRIED TO COBBLE TOGETHER, SAYING:

"HEY, THESE RELATE TO, YOU KNOW, TELEVISION PROGRAMMING AND TELEVISION LISTINGS."

BUT AS WE SEE FROM TELEFLEX, 299 F.3D AT 1324:

"IMPORTING LIMITATIONS FROM THE WRITTEN DESCRIPTION IS A CARDINAL SIN OF CLAIM CONSTRUCTION."

WE CAN'T LIMIT IT TO ONE EMBODIMENT WHILE EXCLUDING THE VIDEO-ON-DEMAND EMBODIMENT. SO YOU CAN'T EXCLUDE VIDEO-ON-DEMAND

WHILE SELECTIVELY IMPORTING LIMITATIONS NO MATTER HOW HARD YOU TRY.

MOREOVER, IF BY SOMEHOW THE VIDEO-ON-DEMAND EMBODIMENT WERE NOT DISCLOSED, THE CLAIMS, BECAUSE THEY DON'T HAVE TELEVISION IN THEM, CAN COVER AFTER ARISING TECHNOLOGY WITHIN THE LITERAL SCOPE OF THE CLAIMS.

WE KNOW THAT FROM THE INNOGENETICS CASE, 512 F.3D AT 1371-72.

ALSO THE SUPER GUIDE CASE FROM THE FEDERAL CIRCUIT SAYING THE SAME THING, YOUR HONOR.

SO, AGAIN, BECAUSE THE CLAIMS ONLY SAY "PROGRAM GUIDE" AND "PROGRAM LISTING," NOT "TELEVISION PROGRAM GUIDE AND TELEVISION PROGRAM LISTINGS" THEY ARE NOT SO LIMITED.

THEN, THERE'S A DEPENDENT CLAIM ANALYSIS THAT WAS DONE IN THEIR BRIEFING. AND THAT ACTUALLY IS THE OPPOSITE. IT SUPPORTS OUR NOTION.

AND WITH DEPENDENT CLAIMS THERE MAY BE SOME NOTION OF SCHEDULING REMAINDERS OR SCHEDULING FOR RECORDING. BUT THAT'S IN THE DEPENDENT CLAIMS. THAT'S NOT IN THE INDEPENDENT CLAIMS.

AND SO WE KNOW THE INDEPENDENT CLAIMS MUST HAVE A DIFFERENT MEANING. THEY ARE BROADER. AND AS WE SEE FROM AMGEN HERE, 314 F.3D AT 1326:

> "WHEN A PATENT CLAIM DOES NOT CONTAIN A CERTAIN LIMITATION," WHICH THE INDEPENDENT CLAIM DOES NOT.

AND ANOTHER CLAIM DOES, THAT LIMITATION CAN'T BE READ INTO

THE FORMER CLAIM.

SO WE SAW THAT DOES NOT EXIST. AND THEY REACH INTO THE DEPENDENT CLAIMS TO TRY TO INFORM. THAT'S NOT PROPER.

AND THEN, THEY RELY ON UNITED VIDEO PROPERTIES, A CASE THAT HAS NOTHING TO DO WITH THE CASE AT HAND AND NONE OF THE PATENTS THAT ARE IN SUIT HERE, TO LIMIT IT TO THE BROADCAST TELEVISION CONTEXT.

AND WHAT'S THE BIGGEST DIFFERENCE? WELL, THE PATENT THERE, THE '690 PATENT -- IT'S ON SLIDE 22 -- IT DID NOT DISCLOSE VIDEO-ON-DEMAND PROGRAMS AT ALL.

SO BEYOND BEING A DIFFERENT PATENT WHOSE SPECIFICATION IS IRRELEVANT, IT DIDN'T DISCLOSE THE VIDEO-ON-DEMAND PROGRAMS, UNLIKE THE '709 AND THE '762 WHICH DO DISCLOSE VIDEO-ON-DEMAND PROGRAMS, AS PREVIOUSLY WE'VE DEALT WITH THIS ISSUE AT THE ITC.

AND SO AS YOU CAN SEE BELOW FROM THE EDIGITAL VERSUS FUTUREWEI TECHNOLOGIES CASE, AND ALSO CITING TEXAS DIGITAL, CLAIMS OF UNRELATED PATENTS SHED NO LIGHT ON THE CLAIMS OF THE PATENT-IN-SUIT, DESPITE EVEN IF THEY HAVE COMMON SUBJECT MATTER, COMMON INVENTOR AND THE SAME ASSIGNEE. DOES NOT MATTER. THEY SHED NO LIGHT. IT'S AN IRRELEVANT ANALYSIS.

AND SO WITH THAT, YOUR HONOR, WE SUBMIT THAT THE "PROGRAM GUIDE/PROGRAM LISTINGS" SHOULD BE INTERPRETED AS ROVI HAS AND NOT AS NETFLIX HAS, AND WE SHOULD NOT EXCLUDE THE VIDEO-ON-DEMAND EMBODIMENT.

AND THOSE ARE THE DEFINITIONS THAT SHOULD BE ACCEPTED.

IF YOU HAVE ANY QUESTIONS, THAT'S ALL I HAVE ON "PROGRAM GUIDE."

**THE COURT:** WITH REGARD TO "PROGRAM LISTING" YOU'VE ARGUED IN YOUR PAPERS THAT THE PLAIN AND ORDINARY MEANING SHOULD CONTROL.

**MR. CHAIKOVSKY:** YES.

**THE COURT:** BUT YOU'VE ALSO PROFFERED AN ALTERNATIVE CONSTRUCTION.

**MR. CHAIKOVSKY:** YES.

**THE COURT:** UNDER WHAT CIRCUMSTANCES SHOULD THE COURT FOLLOW THE ALTERNATIVE AS OPPOSED TO THE PLAIN AND ORDINARY MEANING?

**MR. CHAIKOVSKY:** YOUR HONOR, WE DON'T THINK CONSTRUCTION'S NECESSARY FOR "PROGRAM LISTING." I MEAN, IT IS WHAT IT IS. IT'S A LISTING FOR A PROGRAM. RIGHT? AND YOU CAN SEE IN OUR ALTERNATIVE IT'S "INFORMATION ABOUT AVAILABLE PROGRAMS."

SO, YOU KNOW, IF THE COURT DEEMS THAT THERE'S A DISPUTE BETWEEN THE PARTIES CONSISTENT WITH -- I KNOW YOUR HONOR DIDN'T WANT TO HEAR THE OTHER TERMS, BUT HOW WE'D HANDLE THIS IF THE COURT DEEMS THERE'S A DISPUTE BETWEEN THE PARTIES BETWEEN A CONSTRUCTION THAT NEEDS TO BE RESOLVED UNDER O2 MICRO, WE HAVE PROVIDED AN ALTERNATIVE CONSTRUCTION, IF YOU VIEW THE POSITION THAT WAY AND DO NOT WANT TO THE GO WITH THE PLAIN AND ORDINARY MEANING. THAT'S THE REASON IT WAS PROVIDED.

**THE COURT:** OKAY. ALL RIGHT. NEXT.

**MR. CHAIKOVSKY:** NEXT FOR US WE HAVE THE "ORDER OF STEPS" IN THE '709 PATENT, YOUR HONOR. AND THAT EXISTS IN BOTH CLAIMS 13 AND 17. ONE IS A METHOD CLAIM. ONE IS A SYSTEM CLAIM.

AND THE FIRST QUESTION: IS IT PROPER TO IMPOSE AN ORDER WHERE THE CLAIMS DO NOT GRAMMATICALLY AND LOGICALLY REQUIRE ANY ORDER?

AND WE SEE THAT TEST, THE GRAMMATICAL AND LOGICAL TEST FROM ALTIRIS VERSUS SYMANTEC, 318 F.3D 1370. AND THEN, THAT'S ALSO INTERACTIVE GIFT IS TELLING YOU THAT CLAIMS MUST RECITE AND REQUIRE THAT SPECIFIC ORDER. IF THEY DO NOT, THEN NONE IS REQUIRED BECAUSE METHOD STEPS ARE ALWAYS WRITTEN. AND THE NATURAL STATE OF A METHOD CLAIM IS TO NOT REQUIRE AN ORDER.

SO WE NEED TO STEP THROUGH AND SEE WHETHER THE CLAIMS GRAMMATICALLY AND LOGICALLY REQUIRE AN ORDER.

AN ANTECEDENT BASIS ALONE CAN'T DICTATE AN ORDER OF STEPS. OR IN THE DATATREASURY HERE WE HAVE AN EAST TEXAS CASE. THE FACT IS, AGAIN, BECAUSE THE METHOD CLAIM HAS GOT TO BE WRITTEN WE ARE GOING TO HAVE AN ANTECEDENT BASIS.

THE CLAIM COULD HAVE BEEN WRITTEN IN THIS WAY AND JUST CHANGED THE ANTECEDENTS FOR A SET OF PROGRAMS. AND IT DOES NOT MATTER.

AND YOU CAN DO THAT WITH ANY STEPS IN A METHOD WHERE, AGAIN, UNLESS THE CLAIMS GRAMMATICALLY AND LOGICALLY REQUIRE AN ORDER AND THE GRAMMAR IS NOT THE ANTECEDENT BASIS. THAT'S NOT WHAT ONE

RELIES ON TO DETERMINE WHAT THE ORDER OF STEPS SHOULD BE.

SO WE SEE HERE JUST SHOWING THAT GRAMMATICALLY AND LOGICALLY WE CAN PERFORM THE STEPS IN THE ALTERNATIVE ORDER. HERE THE CLAIM HAS ALREADY BEEN REARRANGED TO HAVE THE APPLYING STEP COME FIRST, AND THEN THE DETERMINING STEP COME SECOND. AND, THEREFORE, WE'LL SHOW THAT THE CLAIM STILL FUNCTIONS AND WORKS AND, THEREFORE, DOES NOT REQUIRE THAT THE DETERMINING STEP COME BEFORE THE APPLYING STEP.

SO IN THIS VISUAL WE SEE THE USER'S PREFERENCES OR LIKE AND SEINFELD STRONG LIKE, COMEDY LIKE. BECAUSE I HAVE TO APPLY THE PROGRAM CRITERIA TO THE SET OF PROGRAMS TO GENERATE PERSONAL VIEWING RECOMMENDATION.

AND SO I START THE APPLYING STEP, YOUR HONOR. AND WE'RE -- WE HAVE STARTED IT. AND WE'RE APPLYING THE PROGRAM CRITERIA TO THE SET OF PROGRAMS NOT YET WATCHED, WHICH IN THIS INSTANCE HAPPENS TO BE THE STEP "NOT YET WATCHED" AND THE STEP "WATCHED."

I'M APPLYING IT TO ALL THE PROGRAMS IN THE SYSTEM WHICH, YOU KNOW, JUST LIKE MY NAME EXISTS, EVEN IF I DIDN'T PROVIDE YOUR NAME, THE SET OF PROGRAMS "NOT YET WATCHED" EXISTS IN THE SYSTEM.

SO I HAVE APPLIED IT AT THIS POINT TO ALL -- AT THIS POINT SHOWS, PROGRAMS IN THE SYSTEM. WHILE THAT STEP IS BEING APPLIED, BUT NOT CONCLUDED, I DETERMINE FROM A PROGRAM LISTING DATABASE A SET OF PROGRAMS NOT YET WATCHED. THOSE ARE BEING CHECKED OFF. AND I DETERMINE WHETHER I'VE SEEN THOSE PROGRAMS.

AND HERE I'VE DETERMINED THE ONES THAT ARE NOT YET WATCHED.

THAT STEP IS FINISHED. AS YOU CAN SEE THE WHEEL HAS STOPPED TURNING WITH RESPECT TO THE DETERMINING STEP, WHILE THE APPLYING STEP IS STILL TRANSPIRING, WHICH IS ABSOLUTELY PROPER WITH RESPECT TO METHOD CLAIMS.

AFTER THE DETERMINING STEP IS CONCLUDED THE APPLYING STEP FINISHES. AND IT GENERATES AT LEAST ONE PERSONAL VIEWING RECOMMENDATION. AT THAT POINT, AFTER THAT, THE PROVIDING THE PERSONAL VIEWING RECOMMENDATION OF THE USER IS DONE, AND THAT IS THE SET PROGRAMS NOT YET WATCHED THAT MET THE USER'S VIEWING CRITERIA, THE COMEDY. AND WE SEE THE COMEDIES ARE SHOWING HERE. AND WE PROVIDE THEM TO THE USER IN ORDER TO GET THE RESULTS.

SO, AGAIN, SHOWING THAT WE CAN PERFORM THE APPLYING STEP PRIOR TO STARTING THE DETERMINING STEP. THE DETERMINING STEP MUST NOT START, WHICH IS THE ARGUMENT NETFLIX IS MAKING, IT MUST START BEFORE I DO THE DETERMINING. AND THAT'S JUST SIMPLY NOT THE CASE.

SO ONE MORE ASPECT OF THIS IS THE SPECIFICATION SUPPORTING. ACTUALLY IT'S IN THE EMBODIMENT OR THIS NOTION, YOUR HONOR, IN THE COLUMN 20, LINE 26 TO 38. YOU CAN SEE IN THE BLUE WHICH RELATES TO THE APPLYING STEP. ON LEFT YOU SEE THE CLAIM AS IT'S WRITTEN IN THE SPECIFICATION.

AND WHAT COMES FIRST IN THE SPECIFICATION IS THE APPLYING STEP. THE PROGRAM GUIDE SERVER MAY THEN APPLY USER PREFERENCE PROFILE CRITERIA TO THE PROGRAMS AND GENERATE PERSONAL VIEWING RECOMMENDATIONS. THAT'S THE APPLYING STEP.

IN STILL ANOTHER SUITABLE APPROACH, THE PROGRAM GUIDE SERVER FILTERS THE VIEWING RECOMMENDATIONS BASED ON MANY THINGS, ONE OF THEM BEING VIEWING HISTORIES. THAT'S A DETERMINING STEP. AND SO WE HAVE THAT IN THE SPECIFICATION. BEYOND JUST THE PLAIN MEANING OF THE CLAIMS, WHICH I THINK IS MOST IMPORTANT, WE ALSO HAVE SUPPORT IN THE SPECIFICATION FOR THE ORDER.

BUT THE MOST IMPORTANT ASPECT IS THE CLAIM LANGUAGE ITSELF IN SHOWING THAT THEY CAN BE PERFORMED AND THAT THE CLAIMS THEMSELVES DON'T GRAMMATICALLY AND LOGICALLY REQUIRE AN ORDER.

NOW, NETFLIX, AGAIN, ARGUES, YOU KNOW, TO APPLY A CRITERIA TO A SET IT MUST HAVE BEEN DETERMINED. IF THERE'S NO SET YET DETERMINED THEN THERE IS NOTHING TO APPLY THE CRITERIA TO. AND THEY ALSO AGAIN, CONSISTENT WITH PROGRAM GUIDE, CITE TO OTHER CASES TO SUPPORT THEIR POSITION.

WELL, AGAIN, AS I MENTIONED WITH RESPECT TO THE SET NOT YET WATCHED, JUST LIKE EVERY PERSON HAS A NAME BEFORE INTRODUCING THEMSELVES, IT EXISTS. A SET OF PROGRAMS THAT THE USER HAS NOT YET VIEWED EXISTS REGARDLESS OF WHETHER THE SYSTEM HAS ALREADY DETERMINED THE SET. THE SYSTEM DOESN'T HAVE TO DETERMINE THE SET IN THE SERVER AND ACTUALLY IDENTIFY IT. THERE WILL BE PROGRAMS IN THAT SYSTEM THAT THE USER HAS NOT YET WATCHED. AND I CAN APPLY THE CRITERIA TO THOSE PROGRAMS.

MOREOVER, YOUR HONOR, CITING THESE TWO CASES THAT SUPPORT THE POSITION, THEY ARE NOT ANALOGOUS BECAUSE IN THOSE CASES THEY REQUIRED AN ORDER BECAUSE THEY REQUIRED JUXTAPOSING A PHYSICAL

STRUCTURE WITH ANOTHER PHYSICAL STRUCTURE THAT IS ALREADY IN EXISTENCE BASED ON THE CLAIM LANGUAGE. THE CLAIM LANGUAGE HAS AN ORDER.

SO HERE IN COMBINED SYSTEMS ON THE LEFT, WE HAVE:

"FORMING FOLDS IN SAID TUBULAR SOCK-LIKE PROJECTILE BODY," YOUR HONOR. THAT'S THE TOP LEFT FIGURE. YOU CAN SEE 84 ON THE TOP LEFT. AND IT FORMS THIS FOLD. THAT'S A FOLD THAT IS IN THE RED BOX. AND IT'S FORMED IN THE TUBULAR SOCK.

AND THE REASON I HAVE TO FORM IT FIRST, AND IT MUST BE FORMED FIRST, IS THAT I THEN INSERT SAID FORM FOLDS. IT'S ALREADY GOT FORM FOLDS INTO THE PROJECTIVE COMPARTMENT.

I COULD NOT INSERT IT, AS YOU SEE IN THE SECOND IMAGE BELOW, IT WOULD NOT BE INSERTED WITHOUT IT BEING FOLDED. SO IT NECESSARILY HAS TO HAVE HAPPENED THAT WAY.

SIMILARLY IN LORAL FAIRCHILD WE HAVE:

"FORMING AN INSULATION LAYER WHERE THERE'S GOING TO BE INTERVALS."

AND THEN, NEXT I FORM IMPLANT BARRIER REGIONS IN THE SEMICONDUCTOR SUBSTRATE IN THE INTERVALS BETWEEN THE FIRST ELECTRODES.

SO I HAVE TO FORM THE FIRST LAYER, WHICH IS IN YELLOW. AND THEN, THE ION RADIATION HAS TO BE SHOT BETWEEN THOSE INTERVALS THAT ALREADY EXIST IN ORDER TO FORM WHAT IS 44, 46, 48 AND 50. THOSE ARE THE IMPLANTED BARRIER REGIONS. I CAN'T DO THAT WITHOUT FIRST FORMING THE INSULATED LAYER AND INTERVALS. IT'S A PHYSICAL

STRUCTURE. IT'S PHYSICALLY NOT POSSIBLE.

SO THESE CASES ARE DISTINGUISHABLE, YOUR HONOR. THAT'S ALL I HAVE. THEY HAVE AN INDEFINITE -- YOU KNOW, WHAT APPEARED TO BE A QUASI INDEFINITENESS ARGUMENT, YOUR HONOR.

I MEAN, I'M NOT GOING TO ADDRESS THAT BECAUSE THEY -- YOU KNOW, I DON'T THINK IT'S A REAL ARGUMENT.

IN IPXL, THE FEDERAL CIRCUIT SAID THE USER USES INPUT MEANS AS A MIXTURE OF A SYSTEM AND A METHOD CLAIM. WE DON'T THAT HAVE HERE. WE DON'T HAVE THE MIXTURE OF A SYSTEM AND A METHOD CLAIM.

IT'S A SYSTEM CLAIM, AND THAT'S ALL WE HAVE.

SO I ACTUALLY, GIVEN OUR TIME LIMITATIONS, I'M GOING TO GO TO "RECEIVER" NEXT. AND IF I HAVE SOME TIME I'LL ADDRESS "USER PREFERENCE PROFILE."

SO LET'S JUMP TO "RECEIVER."

CLAIM 11 SHOWS THE '929 PATENT, SLIDE 73. THE WORD "RECEIVER," AND ROVI'S CONSTRUCTION, AGAIN, IS PLAIN AND ORDINARY MEANING. BUT, AGAIN, IF THERE'S A DISPUTE BETWEEN PARTIES UNDER O2 MICRO IF A CONSTRUCTION IS NEEDED IT'S A DEVICE OR A COMPONENT OF A DEVICE THAT RECEIVES.

AGAIN, WE SEE NETFLIX INCORPORATING THE TELEVISION CONCEPT FOR REASONS WE'RE ALREADY EXPLAINED IN ORDER TO DEVELOP NONINFRINGEMENT ARGUMENTS, BECAUSE THEY WANT TO BE ABLE TO ARGUE, OBVIOUSLY, NETFLIX DOESN'T PROVIDE TELEVISION SIGNALS.

AND SO FIRST DISPUTE SHOULD "RECEIVER" BE LIMITED TO USER EQUIPMENT. DESPITE TEACHING IN THE CLAIM THE SPECIFICATION IS TO

THE CONTRARY. SO, AGAIN, NETFLIX'S CONSTRUCTION HAS USER EQUIPMENT IN IT. AND IS THAT NECESSARY IN THE RECEIVER? WELL, NO, IT'S NOT. IF YOU LOOK AT THE CLAIM, THE CLAIMS RELATE TO RECEIVING A PLURALITY OF PROGRAM LISTINGS WHEREIN I HAVE TO DEAL WITH AT LEAST ONE OF THE PROGRAM LISTINGS IN THE FIRST RECEIVER ELEMENT.

WHAT DO I DO WITH THAT AT LEAST ONE PROGRAM LISTING.

WELL, THE PROCESSOR AS WE DESCRIBED IN THE 101 GENERATES THE COMBINATION CATEGORY WITH THE AT LEAST ONE PROGRAM LISTING. SO THE RECEIVER IS RECEIVING THE PLURALITY AND HAS GOT TO USE THE ONE. AND THEN, I HAVE GOT TO GENERATE THE COMBINATION CATEGORY USING THAT PROGRAM LISTING I RECEIVED.

AND JUST THAT BASELINE, IN CITING BRAINTREE THAT ANALYTICAL FOCUS OF THE CLAIMS IS SOMETHING WE HAVE TO FOCUS ON. AND, REMEMBER, WHEN WE LOOK AT THE SPECIFICATION THAT'S SHOWN IN SET-BOX 576, THE COMBINATION CATEGORIES ARE EXPLICITLY DISCLOSED AND BEING GENERATED IN THE BACK OFFICE AWAY FROM THE USER EQUIPMENT, WHICH NETFLIX TRIES TO IMPORT INTO THE CONSTRUCTION.

THE COMBINATION CATEGORY BUILD PROCESS, WHICH I JUST SHOWED YOU IN THE CLAIMS, IS USING THE INFORMATION FROM THE RECEIVER, IS DONE AS CAN BE DONE AT THE BACK OFFICE PROCESSOR 14, OR THE TRANSMISSION SYSTEM 33, AS WE'VE HIGHLIGHTED.

THOSE ARE IN THE MAIN FACILITY IN THE BACK OFFICE. THOSE ARE NOT IN USER TELEVISION EQUIPMENT 26, WHICH IS KIND OF IN THE BOTTOM RIGHT OF THE FIGURE. AND, IN FACT, THERE WERE OTHER

CLAIMS OF THE '929 PATENT THAT WE DID NOT ASSERT WHICH HAVE RECEIVING WITH USER TELEVISION EQUIPMENT. AND GOING WITH CLAIM DIFFERENTIATION, THESE CLAIMS DON'T REQUIRE USER TELEVISION EQUIPMENT. NETFLIX IS TRYING TO IMPORT LIMITATIONS THAT EXIST IN OTHER CLAIMS INTO CLAIMS THAT DON'T HAVE SUCH LIMITATIONS. THAT'S IMPROPER.

MOREOVER, YOU SEE HERE FURTHER EVIDENCE THAT THE PROGRAM LISTINGS IS SUPPLIED TO THE MAIN FACILITY FROM ONE OR MORE DATA SOURCES, THE DATA SOURCES 18 TO THE LEFT OF THE MAIN FACILITY. SO THE PROGRAM LISTING COMING FROM THE MAIN FACILITY. THEY ARE RECEIVED IN THE MAIN FACILITY AS THE RECEIVING ELEMENT REQUIRES.

AND AS WE SEE DOWN BELOW IN COLUMN SEVEN, LINES 52 THROUGH 59, THE LIST OF SIMPLE AND COMBINATION CATEGORIES THAT ARE SUPPORTED BY THE PROGRAM GUIDE ARE SUPPLIED BY THE MAIN FACILITY 12, EITHER WITH THE PROGRAM GUIDE LISTINGS OR SEPARATELY.

SO WE HAVE THE PROGRAM LISTINGS BEING RECEIVED BY THE MAIN FACILITY. AND, IN FACT, THEN THE MAIN FACILITY IS THEN GOING TO PROVIDE THE PROGRAM LISTINGS SPECIFICALLY DISCLOSED IN THIS PATENT, YOU KNOW.

AND HERE, IN ADDITION TO THE MAIN FACILITY BEING DISCLOSED AS PROVIDING THESE PROGRAM LISTINGS, YOUR HONOR, THE PROGRAM GUIDE SERVER 22, WHICH IS ALSO NOT THE USER TELEVISION EQUIPMENT, CAN PROVIDE THE PROGRAM LISTINGS.

THE WEB SERVER 29 CAN PROVIDE THE PROGRAM LISTINGS. AGAIN, NONE OF THAT BEING THE USER TELEVISION EQUIPMENT.

FINALLY, WE GET TO THE USER TELEVISION EQUIPMENT ONE EMBODIMENT IN THE PATENT. AND THAT'S ONE OF FOUR. THERE'S FOUR DIFFERENT WAYS TO DO IT DISCLOSED IN THIS PATENT AT COLUMN SEVEN, AND ONLY ONE OF THEM IS USER TELEVISION EQUIPMENT.

SO YOU CAN RECEIVE PROGRAM LISTINGS IN ANY OF THESE WAYS. CLAIMS ARE NOT LIMITED.

NOW, SO NETFLIX IMPROPER, YOU KNOW, NOT ONLY LIMITS CLAIMS AS WE SEE HERE, KIND OF SAME NOTION TELEVISION SIGNALS. AND THEY TRY TO CITE TO THIS ONE LOCATION IN COLUMN FIVE BECAUSE THE WORD "RECEIVER" IS USED HERE. AND THEY SAY A USER TELEVISION EQUIPMENT HAS A SERVER.

WELL, YEAH, IT DOES. IT HAS A RECEIVER. IT'S NOT EQUALS A RECEIVER. USER TELEVISION IS NOT ONLY THE RECEIVER. AS I JUST SHOWED YOU IN THE LAST SLIDE THERE WERE FOUR DIFFERENT WAYS TO RECEIVE PROGRAM LISTINGS DISCLOSED IN THIS PATENT. AND THERE COULD BE OTHER WAYS, BUT THERE'S FOUR DISCLOSED. AND, IN FACT, THE PATENT GOES ON TO SAY THOSE ARE ADVANCED TELEVISION RECEIVER OR A HIGH-DEFINITION TELEVISION RECEIVER. THOSE ARE, FOR EXAMPLE, TELEVISION RECEIVERS.

BUT THAT'S JUST THE USER TELEVISION EQUIPMENT. IT DOESN'T LIMIT ALL RECEIVERS THAT HAVE BEEN DISCLOSED. JUST TELEVISION RECEIVERS. THAT'S ALL WE HAVE HERE.

AND THIS IS ALL THEY RELY ON AND IGNORE THE REMAINDER OF THE DISCLOSURE THAT HAS BEEN DISCUSSED. NOW, WHAT DO THEY DO NEXT? THEY GO TO THESE CASES UNITED VIDEO AGAIN TRYING TO ARGUE THAT

"RECEIVER" SHOULD INCLUDE USER EQUIPMENT.

WELL, THE FAILURE THERE IS THE PATENT IN THE UNITED VIDEO CASE, THE '128 PATENT, JUST LIKE OUR NONASSERTED CLAIMS IT ACTUALLY HAD USER EQUIPMENT IN THE CLAIM, UNLIKE CLAIM 11 OF THE '929 PATENT WHICH DOES NOT EXPLICITLY RECITE A RECEIVER AS AN ELEMENT.

AND, AGAIN, CITES EDIGITAL FOR THE SAME PROPOSITION. I ALSO SHOULDN'T BE LOOKING AT A CLAIM WITH AN UNRELATED PATENT SHEDDING LIGHT ON THE CLAIMS OF THE PATENT-IN-SUIT. AND HERE WHERE THEY HAVE -- YOU KNOW, DESPITE WHETHER THEY HAVE COMMON SUBJECT MATTER OR COMMON INVENTOR AND THE SAME ASSIGNEE DOES NOT MATTER. I SHOULDN'T BE LOOKING AT THIS OTHER PATENT.

AND BESIDE THE POINT THAT USER EQUIPMENT IS IN THE CLAIM IN AND OF ITSELF.

SO FOR THAT REASON, YOUR HONOR, "USER EQUIPMENT" SHOULD NOT BE IN THE CONSTRUCTION.

THE SECOND DISPUTE IS WHETHER TELEVISION SIGNALS ARE REQUIRED INSIDE OF THIS LIMITATION. AND RECEIVING TELEVISION SIGNALS HAS NO BEARING TO ANY OF THE ASSERTED CLAIMS. YOU KNOW, IF YOU IMPORT LIMITATIONS FROM THE DESCRIPTION IT'S A CARDINAL SIN OF CLAIM CONSTRUCTION. AGAIN, CITING TELEFLEX.

YOU KNOW, THE CLAIM AT ISSUE IN -- NOW, ANOTHER THING NETFLIX RELIES ON IS BROADCAST INNOVATIONS VERSUS ECHOSTAR TO ARGUE THAT THE TELEVISION RECEIVER SHOULD RECEIVE TELEVISION BROADCASTS.

BUT THE CLAIM AT ISSUE IN BROADCAST, BROADCAST INNOVATIONS -- THAT'S THE NAME OF THE PATENTEE -- RELATES TO SCRAMBLING AND DESCRAMBLING OF TV SIGNALS. WE SEE THAT HERE:

"THE CLAIM FROM BROADCAST INNOVATION'S '066 PATENT RELATES TO A RECEIVER, SAID RECEIVING THE SIGNAL, AND THAT SIGNAL IS A TELEVISION SIGNAL, AND SCRAMBLES AND DESCRAMBLES."

WHY IS IT SCRAMBLING UNLESS IT'S A TELEVISION SIGNAL? HAS NOTHING TO DO WITH WHAT IS IN THE '929. IT DOES NOT EXPLICITLY REQUIRE RECEIPT OF SIGNALS. THERE'S NO TELEVISION SIGNALS REQUIRED IN THE CLAIMS.

AND, AGAIN, WE'RE FOCUSING ON A PATENT, THE '066 PATENT, IN BROADCAST INNOVATIONS. THAT'S AN UNRELATED PATENT THAT HAS NOTHING TO DO WITH THE PATENT-IN-SUIT. IT'S NOT EVEN -- DOESN'T EVEN HAVE COMMON SUBJECT MATTER OR COMMON INVENTOR OR COMMON ASSIGNEE.

SO SHOULD "RECEIVER" BE FURTHER LIMITED TO TELEVISION SIGNALS DESPITE NO RELEVANCE OF TELEVISION SIGNALS TO THE CLAIM? ABSOLUTELY NOT, YOUR HONOR.

I KNOW HAVE A SHORT PERIOD OF TIME. I CAN QUICKLY ADDRESS "USER PREFERENCE PROFILE," YOUR HONOR, OR I CAN -- I'M HAPPY TO CONCLUDE NOW.

**THE COURT:** YOU CAN DO THE NEXT ONE.

**MR. CHAIKOVSKY:** OKAY. SO "USER PREFERENCE PROFILE" WHICH IS IN THE '709 PATENT. THAT'S IN SLIDE 43, AND WE SEE IT

SHOWS UP IN '709.

AND ROVI'S POSITION IS IT'S:

"CRITERIA RELATING TO USER INTEREST OR DISINTEREST IN PROGRAMS AND/OR PROGRAM ATTRIBUTES."

NETFLIX:

"SET OF USER-DEFINED PREFERENCES FOR PROGRAMMING CRITERIA."

WE DO HAVE SOME AGREEMENT: THAT THEY CONTAIN USER PREFERENCES FOR PROGRAM CRITERIA OR ATTRIBUTES. WE SAY: "PROGRAM ATTRIBUTES."

NETFLIX SAYS: "PROGRAM CRITERIA."

BUT, AGAIN, THE ITC HAS FOUND ALREADY IN FAVOR OF ROVI'S CONSTRUCTION. AND SO THE QUESTION IS DESPITE THAT, SHOULD THE CLAIMS EXCLUDE THE DISCLOSURE OF USER'S INTEREST OR DISINTEREST IN PROGRAMS?

THAT'S THE PART THAT THEY LIKE TO EXCLUDE FROM THE CONSTRUCTION.

**THE COURT**: SAY THAT AGAIN, PLEASE.

**MR. CHAIKOVSKY**: SHOULD THE CLAIMS EXCLUDE THE DISCLOSURE OF AN USER'S INTEREST OR DISINTEREST IN PROGRAMS?

SO IF YOU LOOK AT ROVI'S CONSTRUCTION IT HAS CRITERIA RELATING TO USER'S INTEREST OR DISINTEREST IN PROGRAMS.

AND THAT'S NOT IN THE NETFLIX'S CONSTRUCTION, AND SO THAT'S THE DISPUTE.

AS THE ITC FOUND, THE PATENT SPECIFICALLY DISCLOSED THE

USER'S INTEREST OR DISINTEREST IN THE PROGRAMS WITH RESPECT TO THE PROFILES.

IF YOU LOOK AT FIGURES 13A THROUGH F, THERE'S A SERIES OF SIX ILLUSTRATIVE VIEWS. AND THEY SHOW THAT THE PROGRAM GUIDE MAY PROVIDE A USER WITH AN OPPORTUNITY TO SET PREFERENCE LEVELS FOR SERIES, DRAMAS, CHANNELS AND OTHER TYPES OF PREFERENCE ATTRIBUTES.

IT'S NOT LIMITING. IT'S OPEN-ENDED, BUT SPECIFICALLY FOCUSED ON FIGURE 13A IN THE PATENT.

YOU KNOW, WE ACCOUNT FOR FIGURE 13A. FIGURE 13A AS YOU'RE SHOWN HERE SHOWS A USER'S INTEREST OR DISINTEREST IN A PROGRAM.

HERE "SEINFELD" OR "FRIENDS" OR "FRASIER." WE FOCUS ON "SEINFELD." AND SO WE HAVE THE FIGURE DISCLOSING INTEREST OR DISINTEREST IN PROGRAMS.

NOW, ONE MIGHT SAY BECAUSE IF YOU LOOK AT THE TOP, YOU KNOW:

> "HEY, BUT THAT'S A SERIES. AND THE SPECIFICATION DESCRIBES PROGRAM -- THE SPECIFICATION DESCRIBES PROGRAMS, PLURAL, AND SERIES HAND-IN-HAND."

IF WE LOOK AT SLIDE 47, WE SEE IN THE CONTEXT OF BOTH 13A AND HOW IT'S DESCRIBED, YOUR HONOR:

> "PROGRAMS OR SERIES OF EPISODES" INTERCHANGEABLY USED.
>
> "PROGRAMS OR SERIES OF PROGRAMS. PROGRAMS OR SERIES EPISODES."

NOT MAKING A DISTINGUISHING FACTOR. THIS PATENT DISCLOSES THE USER'S INTEREST OR DISINTEREST IN A PROGRAM OR PROGRAMS. AND

THAT IS EXACTLY WHY ROVI INCLUDED IT AND THE ITC INCLUDED THE CONCEPT WITHIN ITS CONSTRUCTION AND AFFIRMED BY THE FULL COMMISSION.

NETFLIX WOULD LIKE YOU TO IGNORE THE EMBODIMENTS OF FIGURE 13A AND/OR MISCHARACTERIZE IT AND THE DISCLOSURE IN THE SPECIFICATION.

AND AS I NOTED, THE ITC -- HERE IS THE SPECIFIC FINDING ON SLIDE 49:

"AS PROPOSED BY ROVI, THE CLAIM TERM 'USER PREFERENCE PROFILE' IS CONSTRUED" EXACTLY AS WE'RE PROPOSING HERE, YOUR HONOR, 'TO INCLUDE USER INTEREST OR DISINTEREST IN PROGRAMS'"

AND NETFLIX'S ATTEMPT TO EXCLUDE THAT WAS INCORRECT. BECAUSE THE ITC LOOKS SPECIFICALLY AT FIGURE 13A AND FOUND THAT OUR CONSTRUCTION WAS THE CORRECT CONSTRUCTION.

AND SO SHOULD THE CLAIMS EXCLUDE THE DISCLOSURE OF "USER INTEREST OR DISINTEREST IN PROGRAMS" THAT IS SHOWN IN 13A?

ABSOLUTELY NOT. WE HAVE A USER PREFERENCE PROFILE WHICH CLEARLY RELATES TO THE PROGRAM ATTRIBUTES AND WHETHER A USER LIKES OR DISLIKES, YOU KNOW, PROGRAMS OF VARIOUS SORTS. WHETHER THEY ARE A SERIES OR MULTIPLE PROGRAMS, THAT DISCLOSURE IS THERE IN THE PATENT. AND WE SUBMIT OUR CONSTRUCTION IS PROPER AND NETFLIX'S IS IMPROPER, AGAIN, IN AN ATTEMPT TO DEVELOP A NONINFRINGEMENT ARGUMENT BECAUSE THEY DO TRACK THE LIKE AND DISLIKE OF PROGRAMS ON THEIR WEBSITE.

**THE COURT:** OKAY. THANK YOU.

**MR. CHAIKOVSKY:** THANK YOU, YOUR HONOR.

**THE COURT:** ALL RIGHT. MR. RAMANI.

**MR. RAMANI:** GOOD AFTERNOON, YOUR HONOR. AND I'M SORRY I HAVE TO GREET YOU WITH THAT INSTEAD OF "GOOD MORNING." IT'S TAKEN SO LONG SO I'M TRYING TO KEEP THIS SHORT.

WE'RE GOING TO FOCUS OUR TIME ON "PROGRAM GUIDE AND "PROGRAM LISTING," AS WELL AS "ORDER OF THE STEPS" AND "RECEIVER."

AND IF WE HAVE TIME REMAINING WITHIN OUR ALLOTMENT WE'LL ALSO RESPOND TO A "USER PREFERENCE PROFILE."

SO, YOUR HONOR, LET'S GO AHEAD AND BEGIN WITH "PROGRAM GUIDE AND PROGRAM LISTING."

AND AS YOU HEARD, THE DISPUTE HERE IS STRAIGHTFORWARD. IT'S WHETHER A PROGRAM GUIDE OR PROGRAM LISTING, AS THOSE TERMS WERE USED IN 1998, MUST INCLUDE A CHANNEL AND TIME ON WHICH A TV PROGRAM WILL AIR.

I THINK AN EXAMPLE MIGHT BE HELPFUL HERE TO KIND OF GET US AWAY FROM JUST LOOKING AT SLIDES, AS HAS BEEN THE CASE ALL MORNING.

**THE COURT:** IF IT HAS TO INCLUDE A CHANNEL AND TIME THAT NECESSARILY MEANS IT'S LIMITED TO TELEVISION BROADCASTS.

**MR. RAMANI:** CORRECT, YOUR HONOR. BUT MAYBE WHEN I GO THROUGH THIS EXAMPLE IT MIGHT HELP CLARIFY OUR POSITION A LITTLE BIT, BECAUSE OUR POSITION REALLY IS NOT THAT THE SOLE CONTENT OF A PROGRAM GUIDE OR PROGRAM LISTING IS A CHANNEL AND TIME, BUT

IT'S THAT THAT IS THE ESSENTIAL FEATURE OF A PROGRAM GUIDE OR PROGRAM LISTINGS.

AND SO YOU CAN'T HAVE A PROGRAM GUIDE OR PROGRAM LISTINGS ABSENT FROM THE INFORMATION ABOUT THE CHANNEL AND TIME.

LET ME SEE IF I CAN HELP CLARIFY. SO HERE I'M HOLDING UP MY PHONE. AND IT'S CALLED AN "IPHONE" BECAUSE ITS ESSENTIAL CHARACTERISTIC IS THAT IT ALLOWS YOU TO MAKE AND RECEIVE PHONE CALLS.

NOW, AS WE ALL KNOW, THIS CAN DO A LOT OF OTHER THINGS, TOO. IT CAN ALLOW ME TO PLAY VIDEO GAMES. IT CAN ALLOW ME TO TAKE VERY NICE PICTURES, AND SO ON. BUT THE ESSENTIAL CHARACTERISTIC OF THE PHONE IS AN ABILITY TO MAKE AND RECEIVE CALLS.

HERE IN MY OTHER HAND I'VE GOT A CAMERA. IT'S PINK BECAUSE IT'S MY DAUGHTER'S, AND I THOUGHT IT WOULD BE THE EASIEST WAY TO GET THROUGH SECURITY COMPARED TO A LARGER CAMERA.

BUT THIS CAN ALSO TAKE PICTURES. BUT NOBODY WOULD CALL THIS CAMERA A "PHONE." THAT'S BECAUSE IT LACKS THE ESSENTIAL CHARACTERISTIC OF A PHONE, WHICH IS THE ABILITY TO MAKE AND RECEIVE PHONE CALLS.

IT'S THE SAME THING WITH "PROGRAM GUIDE AND PROGRAM LISTINGS." THE ESSENTIAL CHARACTERISTIC OF A PROGRAM GUIDE AND PROGRAM LISTINGS IS THE ABILITY TO DISPLAY AND ALLOW A USER TO NAVIGATE INFORMATION ABOUT SCHEDULED TELEVISION PROGRAMMING. SO INFORMATION ABOUT THE DAY, TIME AND CHANNEL.

**THE COURT:** NOT ON-DEMAND PROGRAMMING, AS WELL?

ARE YOU INCLUDING ON-DEMAND WITHIN THAT DEFINITION OF SCHEDULED TELEVISION PROGRAM?

**MR. RAMANI:** NO, YOUR HONOR, I'M NOT. AND OUR CONTENTION IS THAT ON-DEMAND PROGRAMMING BY ITSELF, LIKE MY DAUGHTER'S CAMERA, WOULDN'T BE DEEMED TO CONSTITUTE A PROGRAM GUIDE.

IT WOULD HAVE TO BE OFFERED IN CONJUNCTION WITH INFORMATION ABOUT SCHEDULED PROGRAMMING. AND WHEN WE USE THE TERM "SCHEDULED PROGRAMMING," WE'RE REFERRING TO INFORMATION ABOUT THE CHANNEL, TIME, AND/OR DAY IN WHICH A SHOW CAN BE PRESENTED.

AND I'LL GET TO THE SPECIFICATION EXCERPT SHORTLY TO HELP ILLUSTRATE WHY WE BELIEVE OUR POSITION IS CORRECT.

STARTING WITH THE PROBLEM THE INVENTION WAS INTENDED TO SOLVE, AS YOU SEE HERE CABLE, SATELLITE AND BROADCAST TELEVISION SYSTEMS PROVIDE VIEWERS WITH A LARGE NUMBER OF TELEVISION CHANNELS.

SO THE PROBLEM ITSELF AROSE OUT OF CHANNELS, OUT OF THIS 500 CHANNEL PROBLEM. AND THE SOLUTION WAS A PROGRAM GUIDE. HERE IS THE TYPIFICATION OF THE PROGRAM GUIDE THAT'S DISCLOSED IN THE PATENT. AND AS WE WILL SEE MOMENTARILY, EVERY SINGLE DEPICTION OF A PROGRAM GUIDE AND PROGRAM LISTINGS IN THE '709 AND '762 PATENTS, WHICH SHARE THE SAME SPECIFICATION, DISPLAYS THEM IN THIS FASHION, DISPLAYING INFORMATION ABOUT THE TIME, CHANNEL AND/OR DAY ON WHICH THE PROGRAM IS AVAILABLE.

SO WE CAN DO THIS BY LOOKING AT THESE DEPICTIONS. AND

FIGURE FIVE IS REALLY THE ROADMAP TO THE DISCLOSURE IN THE '709 AND '762 PATENTS, BECAUSE THIS IS THE INVENTOR'S CLAIMED PROGRAM GUIDE.

AND YOU SEE THERE ARE THREE COLUMNS THERE. THERE'S ONE TITLED: "TV GUIDE." ONE TITLED: "MSO SHOWCASE," WHICH STANDS FOR "MULTIPLE SERVICE OPERATOR SHOWCASE," WHICH IS JUST ANOTHER NAME FOR CABLE OR SATELLITE PROVIDER. AND ANOTHER COLUMN TITLED "VIEWER SERVICES."

ALL OF THE OVALS WITHIN THOSE THREE COLUMNS ARE PROGRAM GUIDE CRITERIA, SELECTABLE PROGRAM GUIDE CRITERIA. SO THE USER MAY SELECT ANY OF THOSE AND SEE INFORMATION ABOUT AVAILABLE PROGRAMS.

EVERY SINGLE ONE OF THOSE INSTANCES DEALS WITH SCHEDULED PROGRAMMING. THAT IS, IT SHOWS PROGRAMS WITH A PARTICULAR TIME, CHANNEL, AND/OR DAY.

JUST TO TAKE ONE EXAMPLE HERE, UNDER "TV GUIDE" THE "BY TIME" AND THE "BY CHANNEL" OVALS, WHEN YOU GO TO THE CORRESPONDING FIGURES FOR EACH OF THOSE OVALS YOU SEE ON THE TOP THERE IN THE FIGURE SIX IT'S ORGANIZED BY TIME. AND SO THE TOP BAR SAYS: "10:30 P.M. SATURDAY."

AND THEN, THERE'S A LISTING OF ALL THE VARIOUS PROGRAMS AND THE CHANNELS AVAILABLE AT THAT TIME.

AND "BY CHANNEL," WHICH IS FIGURE SEVEN SHOWS YOU ALL OF THE PROGRAMS AVAILABLE AND THEIR TIMES ON CHANNEL 206, WHICH IS THE "COMEDY CHANNEL."

NOW, IN THE INTEREST OF TIME, YOUR HONOR, I'M NOT GOING TO GO THROUGH ALL THE OTHER EXAMPLES, BUT THEY ARE ALL LISTED HERE. SO FOR ALL THE OTHER SELECTABLE PROGRAM GUIDE CRITERIA THAT IS DISCLOSED "MOVIES, SPORTS, CHILDREN, SEARCH, SETUP," WHICH IS WHERE YOU CAN CONFIGURE A USER PREFERENCE PROFILE TO THEN FIND MATCHING PROGRAMS, IN EVERY SINGLE ONE OF THOSE INSTANCES, THE DISCLOSURE SHOWS SCHEDULED PROGRAMS. IT SHOWS INFORMATION ABOUT THE DAY, TIME AND/OR CHANNEL OF THE PROGRAMS AVAILABLE.

NOW, THERE IS A DISCLOSURE OF VIDEO-ON-DEMAND, A TYPE OF VIDEO-ON-DEMAND IN THE PATENT, AS WELL. AND THAT'S HERE IN THE MIDDLE OF FIGURE FIVE UNDER "MSO SHOWCASE," THE OVALS "PAY PER VIEW TIME" AND "PAY PER VIEW TITLE."

THE IDEA OF PAY PER VIEW BEING, OF COURSE, YOU CAN PAY TO WATCH A CERTAIN PROGRAM, IF YOU DESIRE.

NOW, THE EXAMPLE THAT I'VE ELECTED TO SHOW HERE IS FROM FIGURE 20C, WHICH SHOWS THAT THE USER DESIRES TO WATCH THE MOVIE "ARMAGEDDON." AND JUST AS WITH ALL THE OTHER EXAMPLES, WHAT DO THEY SEE? THEY SEE "ARMAGEDDON" IS AVAILABLE AT A SPECIFIC TIME, 7:00 TO 10:30 P.M. ON AN DAY, FRIDAY, ON A CHANNEL, CHANNEL 49.

OTHER EXAMPLES OF THIS ARE FIGURE 20A AND 20B, PROVIDE SIMILAR INFORMATION. AND EACH OF THOSE EXAMPLES WILL PROVIDE SOME SCHEDULING-RELATED INFORMATION.

NOW, ROVI'S ARGUMENT HERE IS THAT THERE'S THIS DISCLOSURE IN THE SPECIFICATION THAT THE PROGRAM GUIDE SERVER MAY OBTAIN VIDEO-ON-DEMAND PROGRAMS, WEBSITE LINKS, GAMES AND SO ON.

AND OUR POINT IS WHEN YOU LOOK AT THE PRIOR SENTENCE TO THAT IT TALKS ABOUT HOW THE PROGRAM GUIDE SERVER MAY ALSO USE EXPRESSIONS TO OBTAIN OTHER TYPE OF INFORMATION OR PROGRAMS.

SO THE POINT HERE REALLY IS, JUST AS WITH MY PHONE, ITS ESSENTIAL CHARACTERISTIC IS THE ABILITY TO MAKE AND RECEIVE PHONE CALLS.  MY PHONE CAN DO OTHER STUFF, TOO.  IT HAS -- IT CAN OFFER OTHER TYPES OF INFORMATION, IF YOU WILL, IN THAT I CAN PLAY GAMES OR I CAN TAKE PICTURES.  BUT NOBODY WOULD TAKE ONE OF THOSE OTHER FEATURES BY ITSELF AND DESCRIBE THAT AS A PHONE.  NO ONE WOULD HOLD UP A SEGA GENESIS CONSOLE AND SAY:

"HEY, THIS IS A PHONE."  OR HOLD UP A CAMERA, AS I DID, AND SAY:

"HEY, THIS IS A PHONE."

SO SAME IS TRUE HERE THAT PARTICULARLY IN 1998 AT THE TIME OF FILING NOBODY WOULD HAVE SAID THAT GAMES OR VIDEO-ON-DEMAND PROGRAMS OR WEBSITE LINKS BY THEMSELVES CONSTITUTED A "PROGRAM GUIDE."  AND THAT'S, AGAIN, BECAUSE THE ESSENTIAL CHARACTERISTIC OF A PROGRAM GUIDE IS THE DISPLAY CAPABILITY TO OPERATE ON SCHEDULED PROGRAM INFORMATION, SO INFORMATION ABOUT CHANNEL, DAY, TIME AND SO FORTH.

**THE COURT:**  BUT CHANNEL AND TIMES AREN'T THE ONLY INFORMATION THAT ARE TYPICALLY PROVIDED BY A PROGRAM GUIDE.  WHY HAVE YOU LIMITED THE PROPOSED CONSTRUCTION TO THESE TWO ADDITIONAL FEATURES WHEN, INDEED, MOST PROGRAM GUIDES, AT LEAST TODAY -- I DON'T REMEMBER IN 1998, BUT AT LEAST TODAY -- ALSO

TELL YOU SOMETHING ABOUT THE PROGRAM?

**MR. RAMANI:** WELL, AS WE HAVE TO DO, YOUR HONOR, WE'RE TRYING TO PUT OURSELVES BACK IN TIME, BACK TO 1998. AND, AGAIN, BEING GUIDED BY PHILLIPS AND OTHER AUTHORITIES WE'RE LOOKING AT THE SPECIFICATION AS THE BEST GUIDE TO WHAT WAS INTENDED.

**THE COURT:** AND THERE'S NOTHING IN THE SPECIFICATION THAT REFERS TO ANYTHING OTHER THAN CHANNEL AND TIME?

**MR. RAMANI:** THERE IS, YOUR HONOR.

**THE COURT:** AS THE CRITERIA THAT A PROGRAM GUIDE WOULD REFER TO?

**MR. RAMANI:** THERE IS, YOUR HONOR. AS YOU'VE SEEN IN SOME OF THESE EXAMPLES THERE'S ALSO INFORMATION ABOUT THE DAY, FOR EXAMPLE, ON WHICH A PROGRAM MAY BE PRESENTED.

**THE COURT:** BUT YOU DON'T INCLUDE THAT, EITHER, THOUGH.

**MR. RAMANI:** WE WOULDN'T HAVE A PROBLEM INCLUDING THAT, YOUR HONOR. BUT I THINK THE CORE OF THE PROGRAM GUIDE IS CHANNEL AND TIME. AND THAT'S CONSISTENT WITH HOW THE FEDERAL CIRCUIT DEFINED THE TERM AS TO ANOTHER ROVI PATENT FILED JUST A FEW YEARS BEFORE THIS ONE.

**THE COURT:** OKAY.

**MR. RAMANI:** AND, YOUR HONOR, JUST TO CLARIFY, A PROGRAM GUIDE, YOU CAN'T HAVE A PROGRAM GUIDE THAT ALSO OFFERS VIDEO-ON-DEMAND. OUR POINT IS THAT "PROGRAM GUIDE" ALSO HAS TO OFFER INFORMATION ABOUT SCHEDULED PROGRAMMING. SO THE CONCEPT IS VIDEO-ON-DEMAND, JUST BY ITSELF, JUST LIKE GAMES OR WEBSITE LINKS

BY THEMSELVES, WOULDN'T CONSTITUTE A PROGRAM GUIDE. BUT YOU HAVE TO HAVE THE ESSENTIAL FEATURE OF SCHEDULED PROGRAMMING. AND SURE, YOU CAN ADD OTHER THINGS TO THAT, BUT THAT CENTRAL, ESSENTIAL FEATURE HAS TO BE THERE.

**THE COURT:** OKAY.

**MR. RAMANI:** SO, YOUR HONOR, THE FEDERAL CIRCUIT AGREES WITH US AND CONSTRUED "INTERACTIVE PROGRAM GUIDE" IN ANOTHER ROVI PATENT, AS WE'VE SUGGESTED:

"AN APPLICATION THAT PRODUCES INTERACTIVE DISPLAY SCREENS THAT INCLUDE TELEVISION PROGRAM SCHEDULES AND CHANNEL INFORMATION."

NOW, TECHNICALLY SPEAKING, THIS IS NOT A PATENT WITHIN THE SAME FAMILY OF THE '709 AND '762 PATENTS, BUT THIS PATENT WAS FILED JUST A FEW YEARS BEFORE, SHOWS TWO OF THE SAME INVENTORS.

AND AS WE SHOWED IN OUR BRIEF WITH THE TABLE THERE'S A LOT OF THE SAME LANGUAGE IN THE DISCLOSURE ABOUT WHAT THE PROBLEMS WERE THAT THE PATENT WAS ATTEMPTING TO ADDRESS AND HOW THE PATENTS ATTEMPTED TO ADDRESS THOSE PROBLEMS.

NOW, ROVI ALSO SAYS THAT THIS OTHER PATENT ON WHICH THE FEDERAL CIRCUIT RULED DIDN'T DISCLOSE VIDEO-ON-DEMAND. WELL, THAT'S NOT WHAT I SAID TO THE FEDERAL CIRCUIT.

HERE'S THE FEDERAL CIRCUIT OPINION WHICH ISSUED LAST YEAR, AND IT SUMMARIES THE ROVI ARGUMENT.

"ROVI CONTENDS THAT THE WRITTEN DESCRIPTION OF THE '69O PATENT DISTINGUISHES BETWEEN SCHEDULED PROGRAMMING AND

PAID PROGRAMMING, SUGGESTING THAT PAID PROGRAMMING DOES NOT HAVE TO BE SCHEDULED, AND THAT THE INTERACTIVE PROGRAM GUIDE DOES NOT CONSIST ONLY OF FORWARD-LOOKING TIME AND CHANNEL INFORMATION."

SO ROVI MADE THE SAME ARGUMENT TO THE FEDERAL CIRCUIT. IT MAKES SENSE THAT THEY MADE THAT ARGUMENT BECAUSE IN THAT CASE ROVI WAS SUING AMAZON AND WAS SUING AMAZON FOR ITS AMAZON INSTANT VIEWING SERVICE, WHICH ALSO OFFERS STREAMING VIDEO-ON-DEMAND.

NOW, IN ADVANCING THAT ARGUMENT BEFORE THE FEDERAL CIRCUIT, ROVI RELIED ON THIS FIGURE IN ITS PATENT. THIS FIGURE SHOWS A SELECTION OF A PARTICULAR PROGRAM, A WOMEN'S 400 METER BUTTERFLY. AND ALSO SHOWS THAT IT'S AVAILABLE AS PART OF AN OLYMPIC SWIMMING PACKAGE, A PACKAGE THAT INCLUDES TWO OTHER EVENTS, HUNDRED METER FREESTYLE AND HUNDRED METER BACK STROKE.

AND THE SPECIFICATION DISCLOSURE MENTIONS HERE THAT IF A USER DESIRES TO SELECT A PROGRAM FOR PURCHASE, THE USER CAN DO SO. BUT IF THAT PROGRAM IS NOT AVAILABLE BY ITSELF, BUT ONLY PART OF A PACKAGE, THEN YOU CAN DISPLAY A MESSAGE LIKE THIS ONE IN FIGURE SEVEN. AND THAT MESSAGE CONTAINS PACKAGE TITLE, PACKAGE PRICE, PACKAGE DESCRIPTION AND MAY INCLUDE A LIST OF EVENTS.

THERE'S NOTHING MENTIONED IN THERE ABOUT TIME, CHANNEL OR EVEN DAY. SO THIS WAS BEFORE THE FEDERAL CIRCUIT. THIS IS AN ARGUMENT ROVI MADE AND LOST BEFORE.

WE WOULD SUBMIT, YOUR HONOR, THAT THIS DISCLOSURE IS

MATERIALLY DISSIMILAR FROM THE ONE THAT'S BEFORE YOUR HONOR IN THE '709 AND '762 PATENTS.

UNLESS YOUR HONOR ANY QUESTIONS ABOUT THAT, I'LL MOVE TO THE NEXT TERM.

**THE COURT:** OKAY.

**MR. RAMANI:** AND THAT'S "ORDER OF THE STEPS."

YOUR HONOR, AND THE DISPUTE HAS BEEN FRAMED CORRECTLY AS TO WHETHER THE THIRD AND FOURTH ELEMENTS, WHICH WE TERM IN SHORTHAND:

"THE DETERMINING AND APPLYING STEPS" ARE PERFORMED IN ORDER. SO THAT THE DETERMINING STEP GOES FIRST. AND WE CONTEND THAT IT IS.

NOW, I DON'T THINK THE PARTIES DISAGREE ON THE LAW HERE IN THE MAIN. AND THAT IS THAT IF THE CLAIM LANGUAGE ITSELF LOGICALLY AND GRAMMATICALLY REQUIRES THE ELEMENTS BE PERFORMED IN ORDER, THEY HAVE TO BE SO PERFORMED.

OUR CONTENTION IS THAT, IN FACT, WE DO HAVE THAT SITUATION HERE AS I'LL WALK THROUGH AND EXPLAIN MOMENTARILY.

ROVI DID MAKE AN EFFORT TO DISTINGUISH TWO OF THE CASES WE CITED, IN SUGGESTING THAT THERE WERE PHYSICAL CHARACTERISTICS IN THOSE CASES THAT ARE DISTINGUISHABLE FROM OUR CIRCUMSTANCE HERE.

THEY DIDN'T ADDRESS A THIRD CASE WE CITED, WHICH IS THE MANTECH ENVIRONMENTAL VERSUS HUDSON ENVIRONMENTAL CASE. IT'S IN OUR BRIEF. IT'S 152 F.3D 1368. AND 1376 IS THE PAGE WHERE THE RELEVANT DISCUSSION OCCURS. WHERE THE FEDERAL CIRCUIT FOUND THAT

THE CLAIM HAD TO BE PERFORMED IN ORDER, BECAUSE IN EACH SUBSEQUENT CLAIM ELEMENT THERE WAS A REFERENCE BACK TO THE PRECEDING IS CLAIM ELEMENT.

SO THE CLAIM WAS FOR ADDRESSING GROUNDWATER CONTAMINATION. AND THE FIRST CLAIM SAID:

"OKAY. FIRST ELEMENT IS THAT FIRST YOU DIG A WELL."

THE NEXT ELEMENT SAID:

"THEN, YOU PUT A SOLUTION IN THE WELL."

THE NEXT ELEMENT SAID:

"THEN, YOU PUT A FERROUS ION SOLUTION IN THE SOLUTIONS ALREADY IN THE WELL."

AND THEN, THE FINAL ELEMENT SAYS:

"THEN YOU TAKE A READING OF THE FERROUS ION SOLUTION."

SO, BECAUSE OF THAT SORT OF SIGNPOSTING BACK, THE FEDERAL CIRCUIT FOUND THAT THE CLAIM STEPS HAD TO BE PERFORMED IN ORDER.

WE CONTEND, YOUR HONOR, THAT WE HAVE THE SAME SITUATION HERE. AND WE CAN TELL THIS BY LOOKING AT THE TWO CLAIM STEPS AND THE ORDER IN WHICH THEY APPEAR.

SO THE DETERMINING STEP COMES FIRST. AND I WOULD SUGGEST, YOUR HONOR, THE WAY TO THINK ABOUT THIS WOULD BE CONSIDER WHAT THE INPUT IS OF THE STEP AND WHAT THE OUTPUT IS OF THE STEP. AND THAT WILL SHOW WHY THESE HAVE TO BE PERFORMED IN ORDER.

SO THE DETERMINING STEP IS DETERMINING FROM A PROGRAM LISTING DATABASE. SO THE CONTENTS OF THE PROGRAM LISTING DATABASE IS THE INPUT TO THE DETERMINING STEP.

AND YOU DETERMINE FROM THAT DATABASE A SET OF PROGRAMS NOT YET WATCHED. SO A SET OF PROGRAMS NOT YET WATCHED WOULD BE OUTPUT FROM THE DETERMINING STEP. THEN MOVING TO THE APPLYING STEP, YOU APPLY AT LEAST ONE OF THE ASSOCIATED PROGRAM CRITERIA TO THE SET OF PROGRAMS NOT YET WATCHED. SO THESE SET OF PROGRAMS NOT YET WATCHED IS THE INPUT TO THE APPLYING STEP. AND YOU APPLY THE ONE OF THE ASSOCIATED PROGRAMMING CRITERIA TO THAT SET. AND THAT RESULTS IN THE OUTPUT, WHICH IS ONE PERSONAL VIEWING RECOMMENDATION, WHICH IN THE SUBSEQUENT STEP, WHICH IS NOT SHOWN HERE, YOU THEN PROVIDE TO THE USER.

NOW, JUST AS AN ASIDE, THERE'S A SUGGESTION FROM ROVI THAT THERE'S A DISTINCTION HERE BETWEEN WHAT SHOULD HAPPEN WITH A METHOD CLAIM AND A SYSTEM CLAIM. AND THE BRIEFING IS A LITTLE BIT CONFUSED ON THIS POINT, ESPECIALLY AS TO WHETHER THERE'S AN INDEFINITENESS ARGUMENT. I THINK YOU CAN SET ALL THAT ASIDE.

THE KEY POINT HERE IS THAT OUR ARGUMENT IS THAT THE SYSTEM CLAIM OPERATES THE EXACT SAME AS THE METHOD CLAIM, BECAUSE THE SYSTEM CLAIM SAYS THERE'S PROCESSING CIRCUITRY OPERATIVE TO, AND THEN IT LISTS ALL THE STEPS, JUST AS IN THE METHOD CLAIM.

SO WHATEVER YOU FIND FOR THE METHOD CLAIM, THE SAME RESULTS SHOULD OCCUR WITH THE SYSTEM CLAIM.

NOW, ROVI HAS MENTIONED REPEATEDLY TODAY THE ITC AND THE ALJ'S DETERMINATION AND THE FULL COMMISSION'S DETERMINATION. I JUST WANT TO BRIEFLY SAY TWO THINGS ABOUT THAT. ONE IS THAT NONE OF THAT IS BINDING ON YOUR HONOR. IT'S, AT MOST, PERSUASIVE.

AND THE SECOND POINT IS THAT WE WON THE ITC, AND SO WE'RE ONLY BACK HERE BEFORE YOUR HONOR BECAUSE THE ALJ AND THE ITC FOUND FOR NETFLIX ON SEVERAL POINTS.

IF YOU DO WISH TO CONSIDER THE ITC AT ALL, YOU SHOULD NOTE THAT THEY FOUND FOR NETFLIX ON THE ORDER OF THE STEPS CLAIM CONSTRUCTION.

SO LET ME SHOW YOUR HONOR HOW THIS WOULD WORK IF WE CARRIED OUT THE STEPS IN THE ACTUAL ORDER LISTED IN THE CLAIMS. I'M USING HERE SEVEN EXAMPLES FROM THE SPECIFICATION.

SO LET'S SAY WE HAVE A PROGRAM LISTING DATABASE. AGAIN, THE INPUT FOR THE DETERMINING STEP, OF SEVEN TITLES.

"MY STEPMOTHER IS AN ALIEN, TERMINATOR, THE SHINING, DANTE'S PEAK, ER, SEINFELD, AND A NIGHT AT THE OPERA."

SO YOU SELECT SHOWS NOT YET WATCHED FROM THAT IN THE DETERMINING STEP. SO LET'S ASSUME THAT THE SET OF PROGRAMS NOT YET WATCHED IS THESE FOUR:

"MY STEPMOTHER IS AN ALIEN, ER, SEINFELD AND THE SHINING."

AS I SAID, THAT SET OF PROGRAMS NOT YET WATCHED IS IN THE INPUT TO THE APPLYING STEP. SO WE'VE PUT THOSE FOUR PROGRAMS INTO THE APPLYING STEP, AND THEN WE APPLY AN ASSOCIATED PROGRAM CRITERIA TO THOSE FOUR PROGRAMS.

SO THE ASSOCIATED PROGRAM CRITERIA, LET'S ASSUME, IS COMEDY. SO WE DO THAT. AND, OF COURSE, THESE TITLES ONLY "MY STEPMOTHER IS AN ALIEN," AND "SEINFELD" ARE COMEDIES. AND SO THAT'S THE

PERSONAL VIEWING RECOMMENDATION THAT IS GENERATED AT THE END OF THE APPLYING STEP.

NOW, IF YOU SWITCH THE ORDER, CONTRARY TO THE PRESENTATION YOU SAW, YOU WON'T ACTUALLY GET THE SAME RESULT. LET ME SHOW YOU WHY. SO YOU START OFF WITH THE APPLYING STEP. AGAIN, THERE'S SOMETHING INTERMINATE HERE BECAUSE THE APPLYING STEP TALKS ABOUT THE SET OF PROGRAMS NOT YET WATCHED.

SO ROVI HAD THIS METAPHYSICAL ARGUMENT THE SET OF PROGRAMS NOT YET WATCHED INCLUDES ALL PROGRAMS, BECAUSE WHAT YOU'VE SEEN AND NOT SEEN IS PART OF ALL PROGRAMS.

BUT SETTING THAT ASIDE, JUST FOR THE SAKE OF EASE, LET'S JUST APPLY THIS STEP TO THE SAME SEVEN TYPE PROGRAMS THAT WERE AVAILABLE IN THE PROGRAM LISTING DATABASE.

SO THE SAME TITLES, AND WE APPLIED THE ASSOCIATED PROGRAM CRITERIA OF COMEDY TO THOSE TITLES, AND THAT RESULTS IN THE SELECTION OF:

> "MY STEPMOTHER IS AN ALIEN, DANTE'S PEAK, SEINFELD AND A NIGHT AT THE OPERA."

INCIDENTALLY, "DANTE'S PEAK" I THINK MOST PEOPLE WOULD THINK OF AS AN ACTION MOVIE, BUT FIGURE 15 OF THE PATENTS ACTUALLY CATEGORIZES IT AS A COMEDY, SO WE'VE JUST STUCK WITH THE PATENTS AS WE'RE SUPPOSED TO DO HERE.

SO THIS RESULTS AT THE END OF THE APPLYING STEP WITH THE PERSONAL VIEWING RECOMMENDATIONS. SO WE'RE LEFT KIND OF SCRATCHING OUR HEADS BECAUSE WE HAVEN'T DONE THE DETERMINING

STEP. BUT ACCORDING TO THE APPLYING STEP WE SHOULD HAVE THESE PERSONAL VIEWING RECOMMENDATIONS.

SO THEN WE GO TO THE DETERMINING STEP, AND YOU GO BACK TO THE PROGRAM LISTING DATABASE AND YOU SELECT THE SHOWS NOT YET WATCHED, AND YOU END UP WITH THE FOUR SET OF PROGRAMS NOT YET WATCHED. BUT THE PROBLEM IS THERE'S NO RECONCILING HERE THE RESULT OF THE APPLYING STEP OR THE RESULT OF THE DETERMINING STEP.

AND SO YOU ARE GOING TO END UP WITH AN APPLYING STEP THAT IMPROPERLY PROVIDES PERSONAL VIEWING RECOMMENDATIONS THAT INCLUDE PROGRAMS THE USER HAS ALREADY SEEN.

SO IF YOU FLIP THE ORDER OF THE STEPS TO ACCOMPLISH WHAT ROVI DESIRES, HERE'S WHAT YOU HAVE TO DO. SO I'VE PUT A ONE AND TWO HERE JUST TO SHOW THAT THE DETERMINING STEP COMES FIRST IN THE ACTUAL ORDER. AND I'VE JUST FLIPPED THEM. WHAT YOU HAVE TO DO IS REWRITE THE CLAIM THIS WAY.

YOU HAVE GOT TO REVISE THAT YOU'RE APPLYING THE -- AT LEAST ONE OF THE ASSOCIATED PROGRAM CRITERIA TO ALL PROGRAMS, WHETHER WATCHED OR UNWATCHED. YOU HAVE TO THEN MAKE IT CLEAR THAT YOU'RE NOT DETERMINING FROM A PROGRAM LISTING DATABASE, BUT YOU'RE DETERMINING FROM THESE SET OF PROGRAMS GENERATED FROM THE APPLYING STEP A SET OF PROGRAMS NOT YET WATCHED TO GENERATE AT LEAST ONE PERSONAL VIEWING RECOMMENDATION.

SO YOU HAVE TO COMPLETELY REVISE THE CLAIMS IN A FASHION THAT WE THINK DEMONSTRATES THAT THE CLAIMS LOGICALLY AND

GRAMMATICALLY REQUIRE THAT THEY BE PERFORMED IN ORDER WITH THE DETERMINING STEP BEFORE THE APPLYING STEP.

UNLESS YOUR HONOR HAS ANY FURTHER QUESTIONS, WE'LL MOVE ON TO THE TERM "RECEIVER."

MY COLLEAGUE, SHARIF JACOB, WILL ADDRESS THAT TERM, YOUR HONOR.

**THE COURT:** OKAY.

**MR. JACOB:** YOUR HONOR, SHARIF JACOB ON BEHALF OF NETFLIX. AND I'M GOING TO ADDRESS THE "RECEIVER" LIMITATION.

SO AS THE COURT WILL SEE AND AS ROVI MADE CLEAR THE PARTIES HAVE A DISPUTE ABOUT THE "RECEIVER" LIMITATION, AND THE DISPUTE HAS TWO PARTS. THAT IS, WHETHER THE RECEIVER RECEIVES TELEVISION SIGNALS AND WHETHER THE RECEIVER IS IN USER EQUIPMENT. AND I'M GOING TO START WITH THE NOTION --

**THE COURT:** WHETHER IT RECEIVES TELEVISION SIGNALS ONLY?

**MR. JACOB:** YES.

**THE COURT:** WHETHER IT ONLY RECEIVES TELEVISION SIGNALS OR WHETHER --

**MR. JACOB:** WHETHER IT HAS THE CAPABILITY TO RECEIVE TELEVISION SIGNALS.

**THE COURT:** OKAY.

**MR. JACOB:** THAT'S WHAT A RECEIVER MUST BE ABLE TO DO IN ORDER TO BE A RECEIVER, YOUR HONOR.

SO I'M GOING TO START WITH THIS NOTION OF TELEVISION

SIGNALS. OUR POSITION IS THAT THE PLAIN AND ORDINARY MEANING OF "RECEIVER" IN THE CONTEXT OF AN INTERACTIVE PROGRAM GUIDE IS CIRCUITRY IN USER EQUIPMENT FOR RECEIVING TELEVISION SIGNALS.

AND WE'VE CITED TWO CASES FOR THAT PROPOSITION. IN BOTH OF THOSE CASES COURTS HAVE PREVIOUSLY FOUND THAT A RECEIVER, THAT IS THE TERM RECEIVER STANDING ALONE, IS A DEVICE THAT RECEIVES TELEVISION SIGNALS.

IN THE CASE OF UNITED VIDEO, WHICH IS A PRIOR CASE THAT EXAMINED ONE OF ROVI'S PATENTS, AND THE IN ECHOSTAR, A CASE THAT LOOKED AT A PATENT THAT WAS NOT ROVI'S PATENT, BUT CONSTRUED THE TERM "RECEIVER" AND FOUND THAT IT WAS AN APPARATUS FOR RECEIVING TELEVISION BROADCASTS.

AND THE CRUCIAL THING TO UNDERSTANDING THIS DISPUTE IS TO UNDERSTAND THAT THE WORD "RECEIVER" HAS DIFFERENT MEANINGS IN DIFFERENT CONTEXTS.

SO CONTEXT MATTERS. FOR EXAMPLE, "RECEIVER" IN THE CONTEXT OF FOOTBALL MEANS ONE THING. "RECEIVER" IN THE CONTEXT OF BANKRUPTCY MEANS QUITE A DIFFERENT THING. "RECEIVER" IN THE CONTEXT OF AN INTERACTIVE PROGRAM GUIDE HAS A MEANING. AND THAT MEANING IS THAT IT RECEIVES TELEVISION SIGNALS.

SO HOW DO WE FIGURE OUT WHAT THE TERM "RECEIVER" MEANS? AND I THINK THE BEST WAY TO DO THAT IS TO FOLLOW PHILLIPS. THE SPECIFICATION IS THE SINGLE BEST GUIDE TO THE MEANING OF A DISPUTED TERM.

WHAT WAS QUITE INTERESTING ABOUT EVERY QUOTE THAT ROVI

DISPLAYED TO THE COURT AND EVERY QUOTE THAT IS IN ROVI'S BRIEFS IS THAT NONE OF THEM MENTION THE TERM "RECEIVER." AND I'M ACTUALLY GOING TO SHOW YOU A LITTLE BIT LATER IN THIS PRESENTATION THAT NONE OF THEM EVEN RELATE TO THE RECEIVER LIMITATION.

THIS IS THE ONLY LANGUAGE IN THE PATENT THAT DESCRIBES A RECEIVER. AND IT SAYS:

"USER TELEVISION EQUIPMENT HAS A RECEIVER."

THAT'S THE ONLY PART OF THE QUOTE THAT ROVI EVER MENTIONED. ROVI DOESN'T TALK ABOUT THE NEXT PART OF THIS QUOTE FROM THE SPECIFICATION WHICH SAYS WHAT A RECEIVER IS. AND THIS IS WHAT NETFLIX'S CLAIM CONSTRUCTION WAS DRAWN FROM.

"A RECEIVER IS TYPICALLY A SET-TOP BOX, SUCH AS A SET-TOP BOX SHOWN IN THE FIGURE, BUT WHICH MAY BE OTHER SUITABLE TELEVISION EQUIPMENT IN WHICH CIRCUITRY SIMILAR TO SET-TOP BOX CIRCUITRY HAS BEEN INTEGRATED."

SO THAT'S THE PATENTEE'S OWN DEFINITION OF WHAT A RECEIVER IS. AND THE ONLY QUESTION, THEN, IS: WHAT IS "CIRCUITRY SIMILAR TO SET-TOP BOX CIRCUITRY"? WHAT DOES THAT MEAN?

THE PATENT SPECIFICATION ALSO TELLS US THAT. IF YOU TURN TO COLUMN FIVE, LINE SIX THROUGH EIGHT, THE SPECIFICATION DESCRIBES WHAT A SET-TOP BOX DOES. IT SAYS:

"MULTIPLE TELEVISION AND AUDIO CHANNELS, ANALOG, DIGITAL OR BOTH ANALOG AND DIGITAL MAY BE PROVIDED TO SET-TOP BOXES."

SO WHAT DO SET-TOP BOXES DO? THEY RECEIVE TELEVISION SIGNALS.

THE DEFINITIONS, ROVI PRESENTED TWO DICTIONARIES. AND ROVI CLAIMED THAT ITS DICTIONARY DEFINITIONS SHOULD GUIDE THE COURT TO THE PLAIN AND ORDINARY MEANING. WE DIDN'T SEE THEM TODAY. AND THAT'S PERHAPS BECAUSE THOSE DICTIONARIES ACTUALLY SUPPORT NETFLIX'S CONSTRUCTION.

ROVI PICKED THE VERY BROADEST DEFINITIONS IN THOSE DICTIONARIES, SOMETHING THE FEDERAL CIRCUIT HAS REPEATEDLY CAUTIONED AGAINST: RELYING ON DICTIONARIES TO BROADEN THE TERM BEYOND THE SCOPE SET FORWARD IN THE SPECIFICATION.

IF YOU LOOK AT THE DEFINITIONS THAT ACTUALLY ARE CONSISTENT WITH INTERACTIVE PROGRAM GUIDES, YOU'LL SEE THAT A "RECEIVER" IS:

> "AN ELECTRONIC COMPONENT CAPABLE OF COLLECTING RADIO FREQUENCY BROADCASTS AND REPRODUCING THEM IN THEIR ORIGINAL AUDIO AND/OR VIDEO FORM."

FOR EXAMPLE, A TELEVISION OR RADIO RECEIVER. HERE WE'RE NOT IN THE CONTEXT OF RADIO. WE'RE IN THE CONTEXT OF TELEVISION.

ROVI'S SECOND DICTIONARY DEFINES "RECEIVER" AS:

> "A DEVICE FOR CONVERTING ELECTROMAGNETIC WAVES OR SIGNALS INTO AUDIO OR VISUAL FORM."

OKAY. SO WHAT ROVI THEN ARGUES IS ROVI ARGUES ABOUT DIFFERENT LIMITATIONS. AND THIS IS A CRUCIAL POINT. ROVI POINTS TO A BUNCH OF LANGUAGE IN THE SPECIFICATION THAT HAS NOTHING TO DO WITH THE RECEIVER LIMITATION.

IT SAYS:

"WELL, GENERATING CAN OCCUR AT THE BACK OFFICE, OR OTHER LIMITATIONS CAN OCCUR IN THE BACK OFFICE."

AND I WANT TO GO TO ONE SPECIFIC EXAMPLE THAT ROVI RELIED HEAVILY ON IN ITS PRESENTATION TODAY.

ROVI TOLD THE COURT THAT THIS LANGUAGE FROM THE '929 PATENT, COLUMN SEVEN, LINES 54 TO 59, MEAN THAT A RECEIVER CAN BE EITHER USER EQUIPMENT, THE PROGRAM GUIDE SERVER OR THE WEB SERVER, OKAY?

THIS LANGUAGE ACTUALLY HAS NOTHING TO DO WITH THE RECEIVER LIMITATION. AND IF YOU'LL BEAR WITH ME IT TAKES A COUPLE OF STEPS TO SHOW WHY THAT'S THE CASE.

THIS DESCRIPTION IS TALKING ABOUT FIGURE 64 -- OR, EXCUSE ME -- ITEM 64 IN ONE OF THE FIGURES, FIGURE TWO OF THE PATENT. OKAY?

THAT BOX 64 IS SHOWN ON THE LEFT SIDE OF THE SCREEN. THAT BOX IS RETRIEVING A LIST OF SUPPORTED PROGRAMMING CATEGORIES. THAT'S THE SPECIFIC LIMITATION THAT THAT TEXT IS REFERRING TO.

IF YOU GO TO THE CLAIMS OF THE PATENT, THAT TEXT IS TALKING ABOUT CLAIM 12 OF THE PATENT, OKAY? AND I'VE HIGHLIGHTED THE LANGUAGE IN CLAIM 12 THAT IT DESCRIBES:

"DETERMINING, FOR EACH OF THE GROUPS OF SIMPLE CATEGORIES, WHETHER THE RESPECTIVE GROUP IS CONTAINED WITHIN A LIST OF THE SUPPORTED CATEGORIES."

THAT IS, THIS LANGUAGE IN THE FIGURE IS RETRIEVING A LIST OF SUPPORTED PROGRAMMING CATEGORIES, AND THAT LIST IS USED TO FIGURE

OUT WHETHER THE SIMPLE CATEGORIES ARE CONTAINED IN THAT LIST.

THAT LIMITATION ACTUALLY DEFINES THE GENERATING LIMITATION. IT HAS NOTHING TO DO WITH THE RECEIVING LIMITATION. AND THAT'S TRUE OF ALL THE OTHER LANGUAGE THAT ROVI HAS CITED IN ITS BRIEF AND DISPLAYED TO THE COURT TODAY.

ROVI ALSO RAISES AN ARGUMENT ABOUT CLAIM DIFFERENTIATION. AND I JUST WANT TO RAISE ONE POINT. AND THAT POINT IS THAT CLAIM DIFFERENTIATION DOES NOT APPLY WHEN TWO CLAIMS EACH CONTAIN A LIMITATION EXPRESSED IN DIFFERENT WORDS THAT MEAN ROUGHLY THE SAME THING.

SO ROVI SAYS THAT CLAIM ONE CONTAINS THE LIMITATION "USER EQUIPMENT," BUT CLAIM 11 DOESN'T CONTAIN THE LIMITATION "USER EQUIPMENT." CLAIM 11 IS SIMPLY A SYSTEM VERSION OF THE METHOD CLAIM IN CLAIM ONE. THEY ARE PRECISELY THE SAME CLAIMS EXCEPT THAT CLAIM 11 IS THE SYSTEM VERSION OF CLAIM ONE.

CLAIM 11 CONTAINS A PARALLEL LIMITATION TO THE USER EQUIPMENT LIMITATION, AND THAT'S RECEIVER. IN FACT, A RECEIVER IS A SPECIES OF USER EQUIPMENT. IT'S USER EQUIPMENT THAT CAN RECEIVE TELEVISION SIGNALS.

AND IF THE COURT DOESN'T HAVE ANY ADDITIONAL QUESTIONS ON THE RECEIVER LIMITATION, I'M DONE.

**THE COURT:** WHAT ARE THE SLIDE NUMBERS? THEY ARE NOT SHOWING. THE ONE YOU REFERRED TO? WHAT ARE THE SLIDE NUMBERS THAT YOU'RE REFERRING TO?

**MR. JACOB:** OH ABSOLUTELY. I WILL.

SO THE SLIDE THAT SHOWS THE TEXT THAT ROVI RELIED ON IS SLIDE NUMBER 67.

THE SLIDE THAT SHOWS THAT THAT TEXT DOESN'T APPLY TO THE RECEIVER LIMITATION IS SLIDE NUMBER 68.

AND PERHAPS MOST IMPORTANTLY THE SLIDE THAT SHOWS THE LANGUAGE THAT ACTUALLY DEFINES THE MEANING OF THE RECEIVER IS SLIDE NUMBER 61.

**THE COURT:** ALL RIGHT. THANK YOU.

**MR. JACOB:** THANK YOU, YOUR HONOR.

**THE COURT:** ALL RIGHT. THERE'S ONE MORE TERM. GO AHEAD. I WOULD LIKE TO HEAR THAT SINCE I HEARD FROM THE OTHER SIDE.

**MR. RAMANI:** OH, YOU WOULD, YOUR HONOR? THEN. MY COLLEAGUE, MR. BAYLEY WILL ADDRESS THAT TERM. AND THEN, AT THE END, I HAVE JUST ONE OR TWO CLEANUP POINTS, IF I MAY.

**THE COURT:** OKAY.

**MR. BAYLEY:** YOUR HONOR, WE'VE BEEN HERE A WHILE SO I'LL TRY TO KEEP THIS BRIEF.

SO THE NEXT TERM THAT WE'RE GOING TO TALK ABOUT HERE IS "USER PREFERENCE PROFILE." THIS IS FOR THE '709 PATENT.

AS COUNSEL, OPPOSING COUNSEL, SPOKE ABOUT, THIS PARTICULAR TERM, THE DISPUTE IS FAIRLY NARROW, ALTHOUGH IT'S SLIGHTLY DIFFERENT THAN HOW WE ARTICULATE IT.

THE ISSUE HERE IS WHETHER OR NOT -- WELL, THE PARTIES AGREE, I SHOULD SAY, THAT THE USER PREFERENCE PROFILE NEEDS TO SHOW

PREFERENCES OF THE USER'S DEFINED FOR PARTICULAR CRITERIA ABOUT A PROGRAM. THE DISPUTE IS WHETHER OR NOT THE USER PREFERENCE PROFILE ALSO ALLOWS THE USER'S DEFINED PREFERENCES FOR INDIVIDUAL PROGRAMS. THAT WORD "INDIVIDUAL" IS IMPORTANT. AND I'LL EXPLAIN WHY IN A LITTLE BIT.

SO BUT BEFORE I DO, I WANT TO EXPLAIN WHY NETFLIX IS CORRECT THAT "A PREFERENCE FOR AN INDIVIDUAL PROGRAM" IS INCONSISTENT WITH THE CLAIM LANGUAGE AND SPECIFICATION OF THE '709 PATENT.

SO LET'S START WITH THE CLAIM LANGUAGE. WHAT I HAVE UP HERE ON THE SCREEN ARE THE FIRST TWO STEPS OF CLAIM 13, WHICH IS THE INDEPENDENT METHOD CLAIM FOR THE '709 PATENT.

SO THE FIRST STEP IN CLAIM 13 IS YOU GENERATE A VIEWING DATABASE.

NOW, THIS IS A VIEWING HISTORY DATABASE. THAT CAN BE THINGS THAT YOU WATCHED ON THIS PROGRAM GUIDE SYSTEM. NOW, THAT VIEWING HISTORY DATABASE NEEDS TO HAVE AT LEAST TWO THINGS. IT NEEDS TO HAVE THE PROGRAM LISTING, THE PROGRAM THAT YOU WATCHED; AND, TWO, PROGRAM CRITERIA THAT'S ASSOCIATED WITH THE PROGRAM THAT YOU WATCHED THAT YOU CAN THEN USE TO RECOMMEND ADDITIONAL PROGRAMS.

AND YOU KNOW THAT BECAUSE YOU MOVED TO THE SECOND STEP. AND THE PURPOSE OF THE SECOND STEP AS WE HEARD IN THE DISCUSSION ABOUT ORDER IS TO IDENTIFY CRITERIA THAT YOU ARE GOING TO USE TO GENERATE RECOMMENDATIONS FROM THE SET OF PROGRAMS NOT YET WATCHED BY THE USER.

NOW, THIS SECOND STEP DOESN'T ACTUALLY GO ABOUT SAYING HOW

YOU MAKE THAT DETERMINATION OF WHAT CRITERIA TO USE, BUT IT DOES HAVE ONE REQUIREMENT. AND THAT REQUIREMENT IS THAT WHATEVER CRITERIA YOU USE "HAS TO MEET" QUOTE/UNQUOTE THE USER'S PREFERENCE PROFILE.

SO LET ME USE AN EXAMPLE WHICH SHOULD HELP ARTICULATE THINGS.

LET'S SAY YOU WATCHED THE VERY FIRST EPISODE OF THE TELEVISION SHOW "FRASIER." I'LL REPRESENT TO YOU THAT'S CALLED "THE GOOD SON."

YOU WATCH IT ON THURSDAY AT 9:00 P.M. ON NBC. OKAY. IN YOUR VIEWING HISTORY DATABASE IT'S GOING TO HAVE THE PROGRAM LISTING "A GOOD SON," AND IT'S ALSO GOING TO HAVE ASSOCIATED PROGRAM CRITERIA ALONG WITH THAT, WHICH MAY BE SOMETHING LIKE THE FACT THAT FRASIER -- THAT EPISODE OF FRASIER IS A COMEDY. OKAY?

UNDER THIS PATENT IT'S GOING TO GO TO THE NEXT STEP, WHICH IS GOING TO SAY:

> "OKAY. I NEED TO DETERMINE CRITERIA TO RECOMMEND ADDITIONAL PROGRAMS TO THIS USER."

WHAT IT'S GOING TO DO IS IT'S GOING TO GO IN AND SAY:

> "OKAY." THIS USER HAS WATCHED" -- IT'S GOING TO LOOK AT THE ASSOCIATED PROGRAM CRITERIA IN THIS DATABASE AND SAY:

> "OKAY. THIS USER HAS WATCHED COMEDIES. AND SO I'M GOING TO USE THAT CRITERIA OF COMEDY AND USE THAT TO GENERATE RECOMMENDATIONS."

BUT BEFORE IT CAN DO THAT IT NEEDS TO VALIDATE THAT THIS IS

A VALID CRITERIA UNDER THE USER'S PREFERENCE PROFILE. SO IT HAS TO COMPARE COMEDY WITH WHATEVER SET OF PREFERENCES THE USER HAS DEFINED.

SO IF THE USER HAS SAID UNDER THE USER PREFERENCE PROFILE:

"I LIKE COMEDIES," THAT'S A VALID CRITERIA THAT CAN BE USED LATER ON.

IF THE USER SAYS:

"I DON'T LIKE COMEDIES," THEN MAYBE YOU HAVE TO THROW THAT CRITERIA OUT AND SELECT A NEW CRITERIA.

SO THE MAIN POINT THAT YOU NEED TO UNDERSTAND HERE, YOUR HONOR, IS WHAT A USER PREFERENCE PROFILE NEEDS TO DO IS MATCH UP THE ASSOCIATED PROGRAM CRITERIA THAT IS EVENTUALLY USED TO GENERATE ADDITIONAL PROGRAMS.

SO IN SAYING THAT NETFLIX'S CONSTRUCTION IS CORRECT, ROVI PRIMARILY ARGUES THAT NETFLIX'S CONSTRUCTION READS OUT A PREFERRED EMBODIMENT (SIC). THAT'S JUST NOT TRUE.

THE EXAMPLE THEY USE, IT'S FROM FIGURE 13A, WHICH THEY SAY IT SHOWS IDENTIFICATION FOR INDIVIDUAL PROGRAMS.

THAT'S ACTUALLY NOT CORRECT. IF YOU LOOK AT THE CORRESPONDING LANGUAGE IN THE SPECIFICATION WHERE IT'S ACTUALLY TALKING ABOUT -- OR NOT INDIVIDUAL PROGRAMS THAT YOU'RE SETTING PREFERENCES FOR, THAT THE USER IS SETTING PREFERENCE FOR, I SHOULD SAY, BUT SPECIFIC PROGRAM ATTRIBUTES. IN THIS CASE THE ATTRIBUTE IS THE FACT THAT IT'S AN EPISODE OF THE TELEVISION SERIES "FRASIER."

SO IF WE GO BACK TO THE EXAMPLE I USED BEFORE, LET'S SAY I WATCHED THE FIRST EPISODE OF "FRASIER," AND THAT IS IN MY VIEWING HISTORY. ANOTHER ASSOCIATED PROGRAM CRITERIA THAT COULD BE IN THAT VIEWING HISTORY IS THE FACT THAT I HAVE WATCHED EPISODES OF "FRAISER" IN THE PAST.

AND UNDER THIS INVENTION AS LONG AS I HAVE SOMETHING IN MY PREFERENCE PROFILE THAT SAYS:

"I LIKE EPISODES OF 'FRASIER.' I LIKE THOSE TYPES OF

PROGRAMS," IT CAN USE "FRASIER" TO GO INTO THE PROGRAM LISTING DATABASE AND IDENTIFY ADDITIONAL EPISODES OF "FRASIER" TO RECOMMEND TO ME.

IN THAT CASE "FRASIER" IS BEING USED AS AN ASSOCIATED PROGRAM CRITERIA TO GENERATE RECOMMENDATIONS. THAT'S WHAT YOU'RE SETTING A PREFERENCE FOR IS THAT CRITERIA, THAT ATTRIBUTE, THE FACT THAT THE PROGRAMS YOU WANT TO SEE ARE OF A TYPE OF EPISODES OF "FRASIER."

IN FACT, IF YOU LOOK AT -- IF YOU COMPARE FIGURE 13A WITH FIGURE 13B YOU SEE THAT THE ATTRIBUTE SERIES IS NO DIFFERENT THAN ANY OF THE OTHER ATTRIBUTES THAT THE USER PREFERENCE PROFILE HAS USED TO RECOMMEND PROGRAMS. IT'S NO DIFFERENT THAN, YOU KNOW, WHETHER OR NOT A USER LIKES MOVIES OR COMEDIES OR ANY OTHER TYPE OF GENRE.

IN THE INTEREST OF TIME I HAVEN'T GONE THROUGH THE OTHER FIGURES 13C AND 13F, BUT I REPRESENT THOSE ALSO HAVE OTHER TYPES OF ATTRIBUTES AND CRITERIA THAT THE USER CAN SET PREFERENCES FOR.

THERE'S NO EXAMPLES WHATSOEVER OF A USER SETTING A PREFERENCE FOR AN INDIVIDUAL PROGRAM IN THE '709 SPECIFICATION.

AND ANOTHER POINT I'LL MAKE BEFORE I EXIT DOWN IS THAT BECAUSE THIS IS A PREFERENCE FOR A CRITERIA, THIS 13A ACTUALLY SATISFIES NETFLIX'S CONSTRUCTION. WHETHER OR NOT YOU LIKE THIS SERIES "FRASIER" IS A PREFERENCE FOR A PARTICULAR PROGRAM CRITERIA, THE FACT THAT IT'S AN EPISODE OF "FRASIER."

AND ONE LAST POINT, YOUR HONOR, OPPOSING COUNSEL PUT UP A SLIDE THAT HE CONTENDED SAID THAT THE SPECIFICATION TREATS SERIES AND PROGRAMS INTERCHANGEABLY. WELL, THAT'S JUST NOT TRUE.

SO I BELIEVE THE PARTICULAR LANGUAGE I WANT TO FOCUS YOUR ATTENTION ON IS IN COLUMN 17, LINES FIVE THROUGH SIX.

IT TALKS ABOUT -- LET ME GET THE EXACT LANGUAGE HERE. IT TALKS ABOUT:

> "REMINDERS MAY BE SCHEDULED FOR INDIVIDUAL PROGRAMS OR SERIES OF PROGRAMS."

SO WHAT IT'S SAYING THERE IS THAT INDIVIDUAL PROGRAMS ARE DIFFERENT FROM SERIES OF PROGRAMS. A SERIES IS MERELY A TYPE OF PROGRAM. IT DESCRIBES A COLLECTION OF INDIVIDUAL PROGRAMS, INDIVIDUAL EPISODES OF THAT SERIES.

SO UNLESS YOUR HONOR HAS ANY ADDITIONAL QUESTIONS I'M GOING TO SUBMIT.

**THE COURT:** NO, I'M FINE. ALL RIGHT. I THINK I'VE HAD ENOUGH.

**MR. RAMANI:** THAT'S COMPLETELY FINE WITH US, YOUR

HONOR.

**THE COURT:** WHAT WERE THE OTHER ADDITIONAL MATTERS THAT YOU WANTED TO ADDRESS?

**MR. RAMANI:** JUST A HOUSEKEEPING MATTER, YOUR HONOR. WE'D LIKE TO SUBMIT THE SLIDES THAT WE USED FOR BOTH THE 101 ARGUMENT AND THE CLAIM CONSTRUCTION ARGUMENT FOR THE RECORD.

**THE COURT:** I DON'T HAVE THEM ALREADY?

**MR. RAMANI:** NO, YOU HAVE THEM. WE WOULD JUST LIKE TO MAKE THEM PART OF THE RECORD IN THE CASE. SHOULD WE MAKE A FILING OR --

**THE COURT:** I'VE DONE THAT. I'VE DONE THAT ON A FEW OCCASIONS WITH PARTICULARLY GOOD SLIDES, BECAUSE I THINK THEY CAN SOMETIMES BE INSTRUCTIVE AND EDUCATIONAL. I HAVEN'T LOOKED AT THESE. YOU'VE GIVEN ME COPIES. I THINK I'D LIKE TO TAKE A CLOSER LOOK AT ALL OF THEM BEFORE I DECIDE.

DID YOU WISH TO ALSO MAKE YOURS PART OF THE RECORD? THEY ARE USED FOR DEMONSTRATIVE PURPOSES, FOR THE MOST PART. AND I JUST REFER TO THEM WHEN I'M WORKING ON THE CASE. BUT THEY AREN'T GENERALLY MADE PART OF THE RECORD. IF THERE'S -- I'D LIKE TO HEAR WHAT YOUR PARTICULAR REASON IS FOR DOING SO.

IN FACT, ALSO IN THOSE CASES WHERE I MADE IT PART OF THE RECORD IT WAS AFTER I HAD ISSUED THE CLAIM CONSTRUCTION ORDER, AND BECAUSE I THOUGHT THEY WERE GOOD EXEMPLARS I CONTACTED COUNSEL TO SEE IF THEY HAD ANY OPPOSITION TO US MAKING THEM PART OF THE RECORD. BUT I'VE NEVER ACTUALLY BEEN REQUESTED TO DO SO.

SO YOU PROBABLY NEED TO CONVINCE ME THAT THAT'S A GOOD IDEA.

**MR. RAMANI:** WELL, YOUR HONOR, FOR FEAR OF YOUR JUDGMENT ON THE SPOT THAT YOU DON'T CONSIDER OUR SLIDES GOOD EXEMPLARS, I'D RATHER WE JUST FOLLOW YOUR NORMAL PRACTICE AND WAIT UNTIL YOUR HONOR CONSIDERS THEM, ISSUES YOUR RULING. AND THEN, IF YOUR HONOR DESIRES WE COULD ALWAYS MAKE THEM PART OF THE RECORD.

**THE COURT:** OKAY. SO YOU'LL LEAVE IT UP TO ME TO DECIDE IF THEY SHOULD BE MADE?

**MR. RAMANI:** YES.

**THE COURT:** WHAT WAS YOUR REASON FOR ASKING THEM TO BE MADE PART OF THE RECORD?

**MR. RAMANI:** JUST FOR THE SAKE OF COMPLETENESS, YOUR HONOR. I THINK THAT, ESPECIALLY WITH THE 101 SLIDES THERE WERE SOME CITATIONS IN BOTH SIDES' PRESENTATIONS TO CASES THAT MIGHT NOT HAVE BEEN IN THE --

**THE COURT:** OKAY. WITH REGARD TO THE 101 SLIDES, NO PROBLEM. BUT WITH REGARD TO THE CLAIM CONSTRUCTION SLIDES THOSE ARE JUST REALLY TO SUPPORT YOUR ARGUMENTS AND TO GIVE ME A ROADMAP TO THE PARTICULAR PATENT IN THE SPECIFICATION.

SO I DON'T REALLY SEE ANY REASON TO DO THOSE.

BUT WITH REGARD TO THE 101, DO YOU WANT TO HAVE YOURS, AS WELL?

**MR. CHAIKOVSKY:** WE WOULD HAVE NO ISSUE WITH OUR SLIDES BEING PART OF THE 101, YOUR HONOR.

**THE COURT:** OKAY. SO FOR THAT MOTION ONLY, BOTH SIDES CAN FILE THEM. YOU'LL NEED TO FILE THEM THROUGH ECF, BUT YOU HAVE MY PERMISSION TO DO SO.

**MR. RAMANI:** THANK YOU, YOUR HONOR.

**THE COURT:** OKAY.

**MR. CHAIKOVSKY:** THANK YOU.

**THE COURT:** ALL RIGHT. WE'RE ADJOURNED, THEN.

(THEREUPON, THIS HEARING WAS CONCLUDED.)

STENOGRAPHY CERTIFICATION

"I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER."

MARCH 30, 2015

KATHERINE WYATT

