# EXHIBIT A

YAR R. CHAIKOVSKY (SB# 175421)
yarchaikovsky@paulhastings.com
MICHAEL C. HENDERSHOT (SB# 211830)
michaelhendershot@paulhastings.com
HONG S. LIN (SB# 249898)
honglin@paulhastings.com
PHILIP OU (SB# 259896)
philipou@paulhastings.com
JOEL C. LIN (SB# 280679)
joellin@paulhastings.com
PAUL HASTINGS LLP
1117 S. California Avenue
Palo Alto, CA  94304-1106
Telephone:  1(650) 320-1800
Facsimile:  1(650) 320-1900

Attorneys for Defendants, Counterclaimants, and Counterdefendants ROVI CORPORATION and UNITED VIDEO PROPERTIES, INC., Defendants and Counterclaimants ROVI TECHNOLOGIES CORPORATION AND ROVI GUIDES, INC. (f/k/a GEMSTAR-TV GUIDE INTERNATIONAL); and Counterclaimants and Counterdefendants APTIV DIGITAL, INC. and STARSIGHT TELECAST, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| NETFLIX, INC.,<br><br>  Plaintiff,<br><br>  vs.<br><br>ROVI CORPORATION, ROVI TECHNOLOGIES CORPORATION, ROVI GUIDES, INC. (F/K/A GEMSTAR-TV GUIDE INTERNATIONAL), AND UNITED VIDEO PROPERTIES, INC.,<br><br>  Defendants.<br><br>ROVI CORPORATION, ROVI TECHNOLOGIES CORPORATION, ROVI GUIDES, INC. (F/K/A GEMSTAR-TV GUIDE INTERNATIONAL), UNITED VIDEO PROPERTIES, INC., APTIV DIGITAL, INC., AND STARSIGHT TELECAST, INC., | CASE NO. 4:11-CV-6591-PJH<br><br>**ROVI'S SUPPLEMENTAL MEMORANDUM CONCERNING NETFLIX'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY UNDER 35 U.S.C. § 101** |

1
2                             Counterclaimants,
3          vs.
4
   NETFLIX, INC.,
5                             Counterdefendant
   NETFLIX, INC.,
6
                              Plaintiff,
7
           vs.
8
   ROVI CORPORATION, UNITED VIDEO
9  PROPERTIES, INC., APTIV DIGITAL INC.,
   AND STARSIGHT TELECAST, INC.,
10
11                            Counterdefendants.

## I. INTRODUCTION

Rovi respectfully submits this supplemental memorandum concerning Netflix's Motion for Summary Judgment of Invalidity Under 35 U.S.C. § 101 (Dkt. 132). In view of the law on section 101, the dispositive nature of the issues before the Court, and the *de novo* standard of review to be applied on appeal, Rovi submits this memorandum for the following three reasons:

- *First*, Rovi seeks to ensure the Court has the benefit of a fulsome record—including answers to its questions—in considering the issues before it. At the outset of the hearing on Netflix's motion, the Court issued a set of written questions to the parties. Rovi endeavored to address the questions at argument. But, given the indicated importance of the questions to the Court's analysis, they are addressed here so that the Court has the benefit of a clear and full record on the topics raised.

- *Second*, Rovi wishes to update the Court as to factual developments since the hearing. At argument, Netflix repeatedly emphasized excerpts from Rovi's infringement contentions. Netflix selectively ignored the details in Rovi's prior contentions despite engaging in a thorough meet and confer process with Rovi during which Netflix made clear it had specific notice of the instrumentalities accused with respect to all of the asserted claims, except for the "receiver" and "processor" elements in the '929 patent. Rovi has since provided updated contentions to Netflix to resolve those issues, as well as other issues Netflix raised *ex post facto*. Rovi maintains that the claim language should control any section 101 inquiry but, should the Court elect to rely upon contentions as Netflix urges, it should have the benefit of Rovi's updated contentions.

- *Third*, Rovi raises two decisions decided since the hearing to the Court's attention: *OpenTV, Inc. v. Apple, Inc.*, Case No. 14-cv-01622, 2015 WL 1535328 (N.D. Cal. April 6, 2015) and *Messaging Gateway Sol'ns, LLC v. Amdocs, Inc.*, C.A. No. 12-737-RGA (D. Del. Apr. 15, 2015). While not controlling, they address considerations raised by the Court and their analysis highlights the patentability of Rovi's claims.

## II. QUESTIONS RAISED BY THE COURT

### A. "[A]re all software patents directed to abstract ideas?"

Not all software patents are directed to abstract ideas. The Federal Circuit recently made clear that "**we do *not* purport to state that all claims in all software-based patents will necessarily be directed to an abstract idea**." *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed.Cir. 2014) (emphasis added). This statement flows directly from the Supreme Court's repeated and consistent instructions on the purpose and scope of the exclusions to patentability.

From a body of patentable subject matter it has held is broad and categorical, the Supreme Court has carved out three exclusions for "fundamental principles" (*e.g.*, laws of nature, abstract ideas) that form "the building blocks of human ingenuity" (*Alice Corp. Pty. Ltd. v. CLS Bank*

*Int'l*, 134 S. Ct. 2347, 2354-55 (2014)) and therefore "are part of the storehouse of knowledge of all men" (*Bilski v. Kappos*, 561 U.S. 593, 602 (2010)). These exclusions neither exist nor are to be applied in a vacuum. The Supreme Court has "repeatedly emphasized" that they are drawn to address the preemption "concern that patent law not inhibit further discovery by improperly tying up the future use of these building blocks of human ingenuity." *Alice*, 134 S. Ct. at 2354 (quotation omitted). *See also Gottschalk v. Benson*, 409 U.S. 63, 67 (1972) ("[p]henomena of nature, . . . mental processes, and abstract intellectual concepts are not patentable, as they are the basic tools of scientific and technological work."). Thus, applying *Alice* is not a linguistic exercise divorced from the preemption concern that the exclusions exist to address. Rather, "[t]his preemption concern underlies both steps of the [*Alice*] analysis." *Cal. Inst. of Tech. v. Hughes Comms., Inc.*, 2014 WL 5661290 at *12 (C.D. Cal. Nov. 3, 2014). The concern is not whether a claim preempts a defendant's characterization of an invention, but whether the claim preempts a fundamental principle that would frustrate further innovation if patented.

       The decision in *Research Corp. Techs., Inc. v. Microsoft Corp.*, 627 F.3d 859 (Fed. Cir. 2010) (hereafter "*RCT*") is instructive. Applying *Bilski*, *RCT* reversed summary judgment that software claims were unpatentable, explaining: "this court also will not presume to define 'abstract' beyond the recognition that this disqualifying characteristic should exhibit itself so manifestly as to override the broad statutory categories of eligible subject matter." 627 F.3d at 868. Although "algorithms and formulas" were "a significant part of the claimed combination," the claim was not "even close to abstractness" that would render it unpatentable. *Id.* at 869.[1]

       None of the ideas Netflix postulates for any of Rovi's asserted patents constitute "abstract ideas" under the law and the '906 patent highlights why it would be reversible error to find so on the record here. Netflix baldly asserts that bookmarking across devices with different formats is an abstract idea but cannot not address the fact that the need to even consider the idea only arose

---

[1] Although *RCT* was decided pre-*Alice*, it remains useful guidance on software patentability, particularly as to questions raised by the Court. Rovi has located no post-*Alice* Federal Circuit decision questioning *RCT*'s section 101 analysis and it has been cited by the Federal Circuit and the Northern District in post-*Alice* decisions. *See Ultramercial*, 772 F.3d at 713 (citing *RCT* for section 101 standard of review), *France Telecom S.A. v. Marvell Semiconductor Inc.*, 39 F. Supp. 3d 1080, 1091-94 (N.D. Cal. 2014) (citing *RCT* in applying the *Mayo* test adopted by *Alice*).

1   in the context of media-on-demand systems.  There is no "brick and mortar" or "pen and paper"
2   analogue to this concept and Netflix has offered no evidence of any or that any of its proffered
3   "ideas are fundamental truths or fundamental principles the patenting of which would pre-empt
4   the use of basic tools of scientific and technological work." *Helios Software, LLC v. SpectorSoft*
5   *Corp.*, C.A. No. 12–081–LPS, 2014 WL 4796111, *17 (D. Del. Sept. 18, 2014) (denying
6   summary judgment).  *See also Ameritox Ltd. v. Millenium Health LLC*, Case No. 13-cv-832-wmc,
7   2015 WL 728501, at *27 (W.D. Wis. Feb. 18, 2015) (denying summary judgment where movant
8   "fail[ed] to proffer any meaningful evidence to support a finding of preemption").
9        Indeed, the '906 claims have been challenged as an obvious idea and upheld by three fact-
10  finders, including the ITC (where Netflix pursued and dropped a section 101 challenge) and the
11  district court in *Gemstar v. Hulu*, who expressly found the '906 patent "solve[s] a new problem."
12  *See* Case No. 12-4756 (C.D. Cal. Feb. 5, 2013) (Pfaelzer, J.) Dkt. 138 at 32 (denying summary
13  judgment that the '906 patent is invalid under 35 U.S.C. §§ 102 and 103).

14       **B.**     **The Court's Questions Concerning *DDR Holdings* and *Ultramercial*.**

15       The Court asked the parties to address *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d
16  1245 (Fed. Cir. 2014) and *Ultramercial*, 772 F.3d 709.  The analysis in *DDR* demonstrates the
17  patentability of Rovi's claims and highlights their material difference from those in *Ultramercial*.
18       *DDR* underscores the significance of the technical context at the time in which an
19  invention arose.  *See Ameritox*, 2015 WL 728501, at *24-27 (inventive concept under *Alice* is
20  assessed at "the time of the invention" due to "the concern of hindsight bias" and requires
21  evidence to support summary judgment of unpatentability).  While robust program guides and on-
22  demand services such as Netflix have become accepted parts of our lives today, the state of the
23  technology was strikingly different at the time of the invention for the patents here—chiefly the
24  late 1990s to 2000.  *See* Dkt. 121-1 (Shamos Decl.) at ¶¶ 18 and 26.  At that time, simple guides
25  had begun to be used in some set-top-boxes, but the conventional technology included paper
26  listings or a non-interactive channel that scrolled through a grid, leaving a viewer to passively sit
27  and wait for a channel to come up.  *See* Dkt. 158 at 77:5-8.  Media-on-demand systems were even
28  more nascent.  Netflix—just founded in 1997—was delivering DVDs by mail and did not start

1 streaming on-demand content for another decade and TiVo and ReplayTV did not launch their
2 DVR products until 1999. *See* Dkt 105, Ex. H at RVNF00003036.

3       As in *DDR*, Rovi's claims (1) address unique problems that arose as existing technology
4 was applied to a growing body of available programs and an increasing number of platforms due
5 to networking advances and (2) recite particular solutions rooted in and limited to program guide
6 and media-on-demand technology. 773 F.3d at 1257. Thus, as in *DDR*, Rovi's claims do not risk
7 categorically "preempt[ing] every application of" an abstract intellectual concept. *See id.* at 1259.

8       Rovi's '906 patent highlights the applicability of *DDR* here. The '906 patent is directed to
9 media-on-demand systems and addresses the problem of coordinating delivery of the same media
10 to a single user across multiple devices of varying formats. *See, e.g.*, '906 patent, 2:20-24. While
11 ubiquitous today, this problem did not exist prior to media-on-demand systems and specifically
12 arose in this context. *Id.* at 2:5-24. The '906 claims are expressly limited to "media-on-demand
13 system[s]" and articulate solutions with specific requirements rooted in this technology beyond
14 merely bookmarking across devices. *See, e.g., id.* at 12:45-61. Thus, the claims pose no risk of
15 categorically preempting an abstract idea. By their express terms, they do not preempt any
16 activity outside of a "media-on-demand system" and leave open alternatives within that space
17 (*e.g.*, using a single, universal format for all devices, beginning delivery to a second device at the
18 beginning of a video and displaying a bookmark rather than beginning midstream in the video).

19       Similarly, Rovi's '709 patent is directed to interactive program guide technology and
20 addresses the problem of viewers missing or being unable to find shows of interest as the growing
21 volume of programs outstripped existing guide technology. *See, e.g.,* Dkt. 121-1 (Shamos Decl.)
22 at ¶ 26. The problem arose in this technical context and the '709 claims are expressly limited to
23 "an interactive program guide system" and implementations rooted in this technology. The
24 claims describe a program-guide based solution of: (1) a viewing history database with program
25 listings and associated criteria; (2) a program listing database; (3) determining unwatched shows
26 that match criteria from a user's viewing history and preference profile; and (4) generating a
27 recommendation to the user based on both the viewing history and preference profile. *See, e.g.*,
28 '709 patent, 26:16-29. We may take such technology for granted today, but the claim elements

were hardly conventional at the time of the invention. As in *DDR*, the '709 patent likewise poses no risk of preempting any abstract idea. By their express terms, the claims preempt no activity outside of interactive program guide systems and their specific requirements leave open alternatives in that space (*e.g.*, a system could simply not maintain a user viewing history).

Indeed, the District of Delaware upheld a similar solution under *DDR*. In *Intellectual Ventures I LLC v. Mfrs. and Traders Trust Co.*, 2014 WL 7215193 (D. Del. Dec. 18, 2014), the claims' "central idea . . . is providing a customized web page with content based on the user's profile and website navigation history." *Id.* at *9. This mirrors the '709 patent's "providing a customized viewing experience" with recommendations based on the user's "preference profile" and "viewing history." *See* '709 patent, 26:16-29. Like the '709 patent, the claims also did "not preempt all applications of providing customized webpages" and "pass[] muster under the *Alice* framework." 2014 WL 7215193 at *9.

### C. The Court's Questions Concerning The '906 "Bookmarking" Patent.

#### 1. *"Does this patent claim all implementations of bookmarking-across-devices, or only some subset? . . . [W]hat disclosures in the patent describe the boundaries of the subset?"*

The '906 patent claims only a subset of implementations of "bookmarking-across-devices," specifically it does so in "a media-on-demand system" to seamlessly deliver of media to a user across multiple devices with differing formats. *See, e.g.*, '906 patent, 12:45-61 (claim 1). The boundaries of the subset are described by the express language of the '906 claims. First, each of the claims is expressly limited to "a media-on-demand system." *Id.* Second, the '906 patent does not claim even all ways of bookmarking-across-devices in media-on-demand systems. Rather, the claims recite particular implementations with specific elements, including a media-on-demand server ("MODS") in a client-server architecture to deliver media to multiple devices in differing formats. *See, e.g.*, *id.* at 12:45-61, 13:4-7. Thus, the claims do not pose the preemption risks of patents that merely tack on generic computers or use of the Internet.

**2.     *"How is a 'media-on-demand server' different from a regular, generic 'server'?"***

A generic server is a computer that receives requests and responds to them. The request can be of any nature and the response may take many forms. A generic server only requires basic components, such as a processor, memory, and means to communicate with clients. A media-on-demand server, in contrast, is a particular machine specifically designed to deliver video in different formats to different devices with different identified capabilities – based on transcoding formats on the fly or storing files in different formats for delivery upon request. *See, e.g.*, '906 patent, 6:15-45, 2:66-3:35 ("the media can be delivered from the selected MODS in a format compatible with the first client device" and "[s]ubsequently, the media can be delivered from the selected MODS in a format compatible with the second client device"), 3:42-56 ("Notably, the selected MODS can contain the media in a standard format. As such, the media in the standard format can be converted to a format compatible with the first client device" or "converted to a format compatible with the second client device."). In addition, the MODS must support and maintain bookmarks to ensure seamless viewing of media content across devices. *See id.* at 5:30-52. A generic server cannot perform these functions of the MODS or the claims, as it lacks the necessary specialized components (*e.g.*, transcoder capabilities (*id.* at 6:24-35, 11:1-16)).

**3.     *"Is a 'server' specific enough to meet the machine-or-transformation test?"***

A server can meet the machine-or-transformation test. *See, e.g., DDR Holdings, LLC v. Hotels.com, L.P.*, 954 F. Supp. 2d 509, 527, 528 (E.D. Tex. 2013) ("the claimed invention also passes the machine-or-transformation test" based on recitation of "a data store, server, [and] computer") *aff'd in relevant part,* 773 F.3d 1245 (Fed. Cir. 2014); *Helios Software*, 2014 WL 4796111, *17 (implementation of steps on a "computer" "satisf[ied] the machine-or-transformation test"). Indeed, *Alice* made clear "that many computer-implemented claims are formally addressed to patent-eligible subject matter." 134 S. Ct. at 2359-2360. Whether a server meets the test depends on the claim in which it appears.

The Federal Circuit has held that a machine can "impose a meaningful limit on the scope of a claim [when it plays] a significant part in permitting the claimed method to be performed."

*SiRF Tech., Inc. v. ITC*, 601 F.3d 1319 at 1333 (Fed. Cir. 2010).  In *SiRF*, a GPS receiver—which was involved in each step of and therefore "essential to the operation of the claimed methods"—was "integral" to the claims and satisfied the machine or transformation test.  *Id.* at 1332-1333.

The '906 claims' media-on-demand server is neither a "generic computer" nor a general invocation of "the Internet."  It is a specific component with particular requirements.  As in *SiRF*, the media-on-demand server is involved in each step of the claims and essential to their operation.  Thus, although a generic server may not satisfy the machine-or-transformation test in some other claims, that question is not raised here.  The '906 patent does not claim a generic server and, as in *SiRF*, the claims' specific implementations satisfy the machine-or-transformation test.

### D. The Court's Questions Concerning the '762 Patent.

With respect to the '762 patent, the Court asked the following:  "*Is the recitation of 'user television equipment' in the '762 claims enough to tie the patent to a particular machine?  Why should the court find it closer to the 'GPS receiver' of* SiRF*, rather than the 'generic computer' of* Alice*?*"  As explained further below, the language of the '762 claims, including "user television equipment," ties the claims to a particular machine that (a) is not a "generic computer" and (b) is integral to each step of the claimed methods, just as the GPS receiver in the *SiRF*.

The '762 claims explicitly require "a client-server interactive television guide system." *See* '762 patent, 24:10-12 (claim 1), 25:44-45 (claim 13).  The claimed client-server system includes both a "program guide server" that stores program listing information and users' viewing histories (*id.* at 24:14-21, 26:3-9) and a "program guide client" implemented on "user television equipment" (*id.* at 24:22-25, 25:46-26:2).  The claims are expressly tied to this specific system and, as in *SiRF*, it is involved in each of the clams' steps and is "essential to the[ir] operation." 601 F.3d at 1333.  This is materially different from the "generic computer implementation" in *Alice*, where the method claims—including the sole claim recited in the decision—do not mention a computer at all, generic or otherwise.  *See Alice*, 134 S. Ct. at 2352, n.2 (reciting method claim 33); *id.* at 2352 ("the parties have stipulated that the method claims require a computer as well").

### III. NEW FACTUAL AND LEGAL DEVELOPMENTS

#### A. Rovi's Updated Infringement Contentions

At the hearing on its motion, Netflix repeatedly argued Rovi's infringement contentions showed Rovi's claims must recite generic computing components. *See, e.g.,* Dkt. 151 at 19:10-20 ("If you look at Rovi's infringement contentions . . . I think that that is a very, very broad generic definition."), 34:18-21 ("making its final appearance are the remarkably similar infringement contentions for the '709 and '762 patents"). Netflix's argument is unfounded and irrelevant.

Contrary to Netflix's attempts to reduce the entirety of Rovi's contentions to a single phrase, Rovi detailed each of Netflix's infringing components on an element-by-element basis. These details hardly demonstrate that the claims recite "generic" components. Indeed, following "exhaustive meet and confer efforts over . . . several months," Netflix ultimately sought further detail on only one element of one patent—the "receiver" of the '929 patent. Dkt. 122 at 1, 5. While Netflix also objected to the use of "Netflix Hardware / Software," the use of the term in Rovi's claim charts was always accompanied by further details specifying the infringement of each element—details Netflix did not challenge as insufficient outside of the receiver element. *Id.* Yet at the hearing, Netflix relied on self-serving excerpts and ignored the detail set forth in hundreds of pages of claim charts. While Netflix's argument mischaracterized Rovi's contentions, it is largely moot. Rovi has since provided updated contentions to Netflix.

Neither Rovi's prior nor its updated contentions' claim charts generically point to Netflix hardware or software without further detail for any claim element. Rovi identifies the Netflix service generally in the accused instrumentality and details the infringing components for each element in the supporting charts. This practice has been recognized as appropriate. *See Grecia v. Apple, Inc.*, Lead Case No. C-14-0775EMC, 2014 U.S. Dist. LEXIS 133165, at *6-7 (N.D. Cal. Sep. 19, 2014) (listing the "Sony Entertainment Network service" as the accused instrumentality along with details provided in contentions' claim charts "provide[d] sufficient detail to put Sony on notice of the accused instrumentalities and how they [met] the claim limitations.").

Moreover, Netflix's argument is legally irrelevant. Under *Alice*, the language of claims as a whole rather than contentions controls any section 101 inquiry. *See* 134 S. Ct. at 2355, n.3 (the

1  section 101 test "is consistent with the general rule that patent claims must be considered as a
2  whole" quotation omitted).  However, should the Court entertain Netflix's arguments, Rovi
3  submits a copy of its updated contentions as Exhibit A (the claim charts total hundreds of pages
4  and will be submitted on separate media) so the Court has the benefit of the current record.

### B. Recent Authority Concerning Patent Eligibility

Since the hearing here, two decisions have addressed issues raised by the Court:  *OpenTV, Inc. v. Apple, Inc.*, Case No. 14-cv-01622, 2015 WL 1535328 (N.D. Cal. Apr. 6, 2015) and *Messaging Gateway Sol'ns, LLC v. Amdocs, Inc.*, C.A. No. 12-737-RGA (D. Del. Apr. 15, 2015) (attached as Exhibit B).  While not controlling, they address many of the issues before the Court.

In *OpenTV*, although the patentee argued its patent was a solution in "the realm of electronic communications for interactive information systems, such as interactive television," the claims did not even recite a general computer, much less were they tied to specific program guide and media-on-demand systems like Rovi's claims here.  *See* 2015 WL 1535328 at *4 ("On their face, then, the claims do not say what OpenTV claims they say."); *id.* ("nowhere do the '799 Patent claims say anything about . . . 'interactive information systems.'").  The *OpenTV* patent addressed a centuries old problem dating back to "smoke signals" and "employ[ed] the postal system or human-to-human telephone interaction to accomplish its critical objective."  *Id.*

Indeed, a cursory review of the claims reveals that they were untethered to any technical application.  *See id.* at *1, 2 (reciting claim 3).  Thus, the court found that "OpenTV's 'specific solution' boils down to the use of identification codes to organize and transmit confidential information" and "the key step in the claimed invention . . . can be accomplished via 'mail' or 'telephone.'"  *Id.* at *4.  Unsurprisingly, the court found the claims were ***not*** "'necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of [television] networks.'"  *Id.* at *5 (quoting *DDR*, 773 F.3d at 1257 (modification original)).

Rovi's claims stand in stark contrast to those in *OpenTV*.  The claims here addressed problems that arose in the context of modern media-on-demand and interactive program guide systems and recite specific technical solutions rooted in this same technology.  They do not use the mail or a telephone call to address a problem dating back to smoke signals.

The analysis in *Messaging Gateway Sol'ns*, likewise highlights the patentability of Rovi's claims under *DDR*. There, the patent claimed a method of transmitting a text message from a mobile device as an IP-format message to an Internet server. *See* Exh. B at 4, 5. The court found the claim was "directed to the abstract idea of translation"—an idea far more abstract and fundamental than those advanced by Netflix here. *Id.* at 7. However, the claim was found patentable under *DDR* because the "solution it provides is tethered to the technology that created the problem" and it contained "meaningful limitations that prevent it from preempting the abstract idea." *Id.* at 10. As detailed above, such is the case with Rovi's claims and Netflix has not offered evidence supporting summary judgment of a contrary conclusion.

## IV.   CONCLUSION

For the foregoing reasons and those set forth in its Opposition to Netflix's Motion for Summary Judgment, Rovi respectfully submits that Netflix's motion should be denied.

DATED:  April 20, 2015                    PAUL HASTINGS LLP


By:    */s/ Yar R. Chaikovsky*
              YAR R. CHAIKOVSKY

Attorneys for Defendants, Counterclaimants, and Counterdefendants ROVI CORPORATION and UNITED VIDEO PROPERTIES, INC., Defendants and Counterclaimants ROVI TECHNOLOGIES CORPORATION AND ROVI GUIDES, INC. (f/k/a GEMSTAR-TV GUIDE INTERNATIONAL); and Counterclaimants and Counterdefendants APTIV DIGITAL, INC. and STARSIGHT TELECAST, INC.