UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

NETFLIX, INC.,

               Plaintiff,

    v.

ROVI CORPORATION, et al.,

               Defendants.

Case No.  11-cv-06591-PJH  (DMR)

**ORDER RE: DISCOVERY LETTER**

Re: Dkt. No. 138

      Plaintiff/Counterdefendant Netflix Inc. and Defendant/Counterclaimant Rovi have filed a joint discovery letter.[1] [Docket No. 138.]  Netflix moves for leave to amend its Invalidity Contentions to include its second supplemental Exhibit I-15.  Rovi opposes the motion and concurrently moves to strike Exhibit I-15 to Netflix's original Invalidity Contentions.  The court held a hearing on these disputes on May 28, 2015.  For the reasons stated below, the court **grants** Netflix's motion to amend its Invalidity Contentions.

### I.     BACKGROUND

      Netflix provides an Internet service that permits a subscriber to view movies and television shows.  Compl. [Docket No. 1] ¶ 17.  Rovi is a company in the digital entertainment technology field that describes its work as including "research and development of new interactive program guide products and services."  Answer [Docket No. 16] ¶ 21.

      On December 21, 2011, Netflix filed this declaratory judgment action seeking a determination that Netflix does not infringe any valid claim of five United States patents owned by Rovi, and that those patents are invalid.  Compl. ¶ 6.  The Rovi patents listed in the Complaint do

---

[1] "Rovi" refers to Defendants Rovi Corporation, Rovi Technologies Corporation, Rovi Guides Inc. (f/k/a Gemstar-V Guide International), and United Video Properties, Inc., as well as counterclaimants Aptiv Digital, Inc. and Starsight Telecast, Inc.

United States District Court
Northern District of California

1   not include United States Patent No. 7,974,962 ("the '962 Patent"), which is the subject of the

2   current discovery dispute.

3          The invention claimed in the '962 Patent is a "search engine for a video recorder" that lets

4   the user search for shows.  The '962 Patent was raised for the first time in this case on February

5   17, 2012, when Rovi brought counterclaims for infringement of the five patents identified in the

6   Complaint as well as other patents owned by Rovi, including the '962 Patent.  *See* Answer ¶ 69-

7   151.  Rovi did not identify in this filing which of the claims of the '962 Patent were allegedly

8   infringed by Netflix, nor what Netflix product or functionality infringed the patent.

9          On March 12, 2012, Netflix filed its Answer to Rovi's counterclaims.  [Docket No. 33.]  In

10  this document, for the first time in this case, Netflix raised an affirmative defense based on

11  invalidity against Rovi's claim that Netflix infringed the '962 Patent.  *Id.* at ¶ 168 ("The '962

12  patent and each of the claims thereof are invalid for failure to comply with one or more of the

13  conditions of patentability set forth in Title 35 of the United States Code including, without

14  limitation, Sections 101, 102, 103, and/ or 112.").

15         On May 15, 2012, the case was stayed pending an action filed by Rovi with the United

16  States International Trade Commission ("ITC").  [Docket No. 47.]  The parties jointly stipulated to

17  stay the entire case, even though some aspects of the case—e.g., the infringement and invalidity of

18  the '962 Patent—were not at issue in the ITC action.  *Id.*  On July 10, 2014, after the ITC action

19  was completed, the Hon. Phyllis J. Hamilton lifted the stay in this case.  Docket No. 52.[2]

20         On October 31, 2014, Netflix timely served Rovi with its original Invalidity Contentions.

21  Exhibit I-15 to those contentions purports to show how certain claims of the '962 Patent "are

22  anticipated and rendered obvious by Netflix.com," which is Netflix's website.  The filing date of

23  _____

24         [2]   No fact or expert discovery deadlines have been set, nor any trial-related dates.  The
    parties have, however, engaged in significant motion work relating to Netflix's motion for
25  summary judgment and claim construction.  Netflix moved for summary judgment on December
    15, 2014.  *See* Docket No. 104.  On December 19, 2014, the parties filed a joint claim construction
26  and pretrial hearing statement.  On January 30, 2015, Rovi filed its opening claim construction
    brief.  Docket Nos. 60, 112, 119.  On March 25, 2015, Judge Hamilton held a hearing on the
27  parties' competing claim constructions.  *See* Docket No. 143.  The claim construction and
    summary judgment proceedings currently are pending before Judge Hamilton.

28

United States District Court
Northern District of California

the '962 Patent is January 6, 2005.  The original Exhibit I-15 includes what appears to be a screenshot of Netflix's website, illustrating certain functionality.  The image is undated and no further description is provided.  *See* Docket No. 138-1 at 3 (Original Invalidity Contentions Ex. I-15).  The original Exhibit I-15 notes that "Netflix is investigating the pre-2005 operation of Netflix.com, including but not limited to, its relevant functionality, date of availability, and additional documentation.  The information herein is provided for the purpose of timely disclosing Netflix's invalidity contentions as to its product, consistent with the Patent Local Rules.  Accordingly, Netflix will supplement its contentions as appropriate." *Id.*

Netflix served its first supplemental Exhibit I-15 on December 3, 2014, approximately one month after it served its original Invalidity Contentions.  In addition to the single screenshot that appeared in the original, the first supplemental Exhibit I-15 includes five additional screenshots of the Netflix website dating from 2004.  Docket No. 138-1 at 38-147 (First Supplemental Invalidity Contentions Ex. I-15).  It also includes a citation to a document from 2002.

On January 30, 2015, Netflix served its second supplemental Exhibit I-15.  This version differs from its immediate predecessor in that Netflix has removed the undated screenshot from its original Exhibit I-15.  The five screenshots and document citation that were added during the first supplement still appear in the second supplement.  Docket No. 138-1 at 148-238 (Second Supplemental Invalidity Contentions Ex. I-15, redacted public version).  The second supplement also includes citations to Netflix's source code from 2004.

//

//

//

//

//

//

//

//

//

United States District Court
Northern District of California

3

The table below summarizes the evidence in the different versions of Exhibit I-15:

| Invalidity Contentions | Includes |
|---|---|
| Original Ex. I-15<br><br>**Date Served**: October 31, 2014 | • Undated screenshot of Netflix website<br><br> |
| First Supp. Ex. I-15<br><br>**Date Served**: December 3, 2014 | • Undated screenshot of Netflix website<br><br><br><br>• Five screenshots dated 2004<br><br><br><br>• Citation to document dated 2002 |
| Second Supp. Ex. I-15<br><br>**Date Served**: January 30, 2015 | • **<u>Removed</u>**: Undated screenshot of Netflix website<br>• Five screenshots dated 2004<br><br><br><br>• Citation to document dated 2002<br>• Citations to source code dated 2004 |

United States District Court
Northern District of California

4

## II.     LEGAL STANDARDS

The local rules of the Northern District of California require parties to define their theories of patent infringement and invalidity early on in the course of litigation. *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1359 (Fed. Cir. 2006). "In contrast to the more liberal policy for amending pleadings, the philosophy behind amending claim charts is decidedly conservative, and designed to prevent the shifting sands approach to claim construction." *Positive Techs., Inc. v. Sony Elecs., Inc.*, No. C. 11-2226-SI, 2013 WL 322556 at *2 (N.D. Cal. Jan. 28, 2013) (quotation and citation omitted). Thus this district's Patent Local Rules permit parties to amend their infringement and invalidity contentions "only by order of the Court upon a timely showing of good cause." *See* Patent L.R. 3-6. "By requiring the non-moving party to show good cause, Local Rule 3-6 serves to balance the parties' rights to develop new information in discovery along with the need for certainty in legal theories at the start of the case." *Open DNS, Inc. v. Select Notifications Media, LLC*, No. C-11-5101 EJD (HRL), 2013 WL 2422623 at *2 (N.D. Cal. June 3, 2013) (citing *O2 Micro*, 467 F.3d at 1366).

In determining good cause, the court not only considers a party's diligence in searching for prior art or in moving to amend when new information is discovered, *see O2 Micro*, 467 F.3d at 1366, but "also considers such factors as the relevance of the new prior art and the difficulty of locating the prior art." *Fujifilm Corp. v. Motorola Mobility LLC*, No. 12-CV-03587-WHO, 2014 WL 491745 at *4 (N.D. Cal. Feb. 5, 2014) (citation omitted). "The good cause requirement does not require perfect diligence. Although hindsight is often '20/20,' identifying and evaluating prior art can be difficult, and new information learned in discovery can lead a party to understandably reevaluate evidence found earlier." *Id.* at *4; *see also Positive Techs.*, 2013 WL 322556 at *3 (diligence standard does not require defendant to"identify *all* relevant prior art references that *may* become relevant to all possible claim constructions"). Indeed, the Patent Local Rules specifically acknowledge the possibility that a party may need to supplement invalidity contentions with information found during discovery. *See* Patent L.R. 3-6 ("Non-exhaustive examples of circumstances that may . . . support a finding of good cause include: (a) a claim construction order by the Court different from that proposed by the party seeking amendment; (b) recent discovery of

material, prior art despite earlier diligent search; and (c) recent discovery of nonpublic information about the [a]ccused [i]nstrumentality which was not discovered, despite diligent efforts, before the service of the [i]nfringement [c]ontentions.").

The court may deny a motion for leave to amend invalidity contentions if it would cause "undue prejudice to the non-moving party." Patent L.R. 3-6. Where the moving party is unable to show diligence, there is "no need to consider the question of prejudice," *see O2 Micro*, 467 F.3d at 1368, although a court in its discretion may elect to do so, *see, e.g., Dynetix Design Solutions Inc. v. Synopsys Inc.*, No. Cv-11-5973-PSG, 2012 WL 6019898 at *1 (N.D. Cal. Dec. 3, 2012). The moving party bears the burden of establishing diligence. *See O2 Micro*, 467 F.3d at 1366.

### III. DISCUSSION

Netflix moves for leave to amend its Invalidity Contentions to include its second supplemental Exhibit I-15.

### A. Diligence

"[T]he diligence required for a showing of good cause has two phases: (1) diligence in discovering the basis for amendment; and (2) diligence in seeking amendment once the basis for amendment has been discovered."[3] *Positive Technologies, Inc. v. Sony Electronics, Inc.*, No. C 11-2226 SI, 2013 WL 322556, at *2 (N.D. Cal. Jan. 28, 2013).

Netflix contends that it acted diligently in discovering the basis for its proposed amendment. According to Netflix, "the passage of nine years and the attendant loss of knowledgeable employees left Netflix without an easy way to identify legacy website functionality." Thus, Netflix explains that it was required to investigate whether the accused features debuted to the public before January 2005 (the filing date of the '962 Patent) by interviewing its employees about their knowledge of the pre-2005 website. Netflix notes that this investigation began shortly after Rovi served its Infringement Contentions on August 28, 2014, which was the first time Rovi identified the accused features of the Netflix website that allegedly infringe the '962 patent.

---

[3] Rovi appears to take issue with Netflix's actions with respect to the first phase only.

United States District Court
Northern District of California

1    Before filing its original Invalidity Contentions on October 31, 2014, Netflix interviewed

2    five employees, including one of its longest-tenured employees, two vice presidents, and two

3    directors, all of whom did not have knowledge of the pre-2005 functionality of the accused

4    features.  One of the employees interviewed was Todd Yellin, a vice president who did not have

5    knowledge of pre-2005 operation of the accused features, but who did have unsorted archival

6    paper files, which included the undated screenshot that Netflix disclosed in its original Exhibit I-

7    15.  This screenshot "led Netflix to believe that prior to 2005 it had indeed publicly debuted the

8    same feature Rovi accuses of infringement."  Letter at 2-3.

9    Thereafter, Netflix continued its investigation.  It interviewed Sam Pan, a director of user

10   interface engineering who had been working at Netflix since before 2005, who consulted

11   numerous times with two other employees (Gary Chan and Joel Sass) who had been employed by

12   Netflix since before 2005.  Pan identified and authenticated the five additional screenshots that

13   Netflix disclosed to Rovi in its first supplemental Exhibit I-15 on December 3, 2014.

14   After it served its first supplemental Invalidity Contentions, Netflix interviewed Sass, who

15   directed Netflix to interview Josh Evans, who directed Netflix to Raju Alluri, a senior tools

16   engineer.  Alluri was able to obtain access to copies of Netflix's archival source code and identify

17   the portions of code that implemented the accused features on the Netflix website prior to 2005.

18   Netflix then disclosed this source code to Rovi in its second supplemental Exhibit I-15 on January

19   30, 2015.

20   Rovi argues that Netflix did not act diligently because the information about Netflix's pre-

21   2005 website was already in Netflix's possession.  It is true that in some circumstances, a party

22   may fail to show diligence when it could have discovered materials in its own possession sooner.

23   *See, e.g.*, *Synopsys Inc. v. Mentor Graphics, Inc.*, No. 12-cv-6467-MMC (DMR), 2014 WL

24   1477917 at *4 (denying defendant's motion to amend invalidity contentions to add a reference to

25   defendant's own software product, where product had been known to defendant but defendant did

26   not attempt to run the software until five months after serving its original invalidity contentions).

27   But in this case Netflix has provided a detailed account of its difficulties in finding evidence that

28   illustrates how a currently-active website functioned a decade ago.

1    Rovi also argues that Netflix did not act diligently because "Netflix had over 31 months

2    prior to serving its original invalidity contentions in which to collect [evidence]" of the invalidity

3    of the '962 Patent, because Rovi filed its Answer and Counterclaims on February 17, 2012 and

4    notified Netflix of its claim that Netflix had infringed the '962 Patent.  Letter at 7.  This curious

5    argument omits the fact that at the parties' joint request, the case was stayed from May 2012 until

6    July 2014, during which time all proceedings were stayed, all deadlines were vacated, and the

7    parties did not (and were not expected to) conduct discovery.  Docket No. 47 at 2.  The stay went

8    into effect only two months after Netflix had asserted its affirmative defense of invalidity of the

9    '962 Patent in its Answer to Netflix's counterclaims.  Once the case resumed in July of 2014,

10   Netflix timely filed its original Invalidity Contentions and provided supplemental contentions a

11   little over a month later.

12   Rovi also argues that when Netflix raised its invalidity defense in March 2012, it must

13   have already known that one of its theories would be that the Netflix website prior to 2005

14   anticipated or rendered obvious the '962 Patent.  At the hearing, Netflix's counsel averred that it

15   had not developed this theory in March 2012.  Instead, Netflix's assertion of the invalidity

16   affirmative defense at that time was based on a different theory—namely, that publicly available

17   documents (i.e., other patents with priority dates before 2005) anticipated or rendered the '962

18   Patent obvious.

19   Netflix has credibly explained its difficulties in locating the five additional screenshots,

20   which were added to the Invalidity Contentions just over a month after Netflix served its original

21   Invalidity Contentions, and the source code references, which Netflix added two months later.

22   The court is not persuaded by Rovi's argument that Netflix failed to act diligently by taking more

23   than thirty months to identify material in its own possession.  When viewed in the context of the

24   events that took place during that period of time, the court finds that Netflix acted with sufficient

25   diligence in amending its Invalidity Contentions.

26   **B.     Prejudice**

27   Rovi argues that granting Netflix leave to amend its Invalidity Contentions would result in

28   prejudice to Rovi in two ways.  First, Rovi contends that Netflix's addition of evidence in its first

and second supplemental Exhibit I-15 amounts to "adding complete new theories of invalidity." Letter at 5.

Much of this argument focuses on the undated screenshot that Netflix included in the original Exhibit I-15. Rovi contends that Netflix's original Exhibit I-15 "included no evidence of the pre-2005 operation of its alleged Netflix.com prior art reference," simply because the screenshot in the original Exhibit I-15 was undated. But it is clear that Netflix's invalidity theory has consistently asserted that its pre-2005 website anticipates or renders obvious the claims of the '962 Patent. This theory is stated in identical terms on the introductory pages of the original, first supplemental, and second supplemental Exhibits I-15. Netflix has explained how, at the time it served its original Exhibit I-15, it believed the undated screenshot to be evidence that Netflix had debuted the accused features on its website prior to 2005. Letter at 3. Netflix's inability to ascertain the exact date of the screenshot it included in the original Exhibit I-15 does not undermine the clarity of its theory of invalidity as set forth in that document. In any event, Netflix has removed the undated screenshot from Exhibit I-15 and is no longer offering it as evidence to support its invalidity theory, presumably because it has added better, more detailed screenshots whose dates can be ascertained.

Rovi also argues that "the new evidence in the supplemental contentions show different functionality than that provided in Netflix's original contentions. For instance, the image in the original contentions did not show that characters are matched to database entries and do not show any results of the searches, including selectable categories.[4] Instead, they only show that a keyword search was possible." Letter at 6. But the fact that the additional evidence is *better* evidence (i.e., it shows in greater detail the functionalities claimed by the '962 Patent than the original evidence) does not mean that the invalidity theory itself is different.

In sum, Rovi's argument that the supplemental Exhibits I-15 raise new theories of

---

[4] The '962 claims "a method for selecting shows" that includes a search engine function in which users can input alphanumeric characters, which are then matched to database entries, resulting in the provision of search results with show listings "and one or more selectable categories of shows." '962 Patent Claims 1, 1(a)-(d). Rovi's argument appears to be that the undated screenshot does not show that a search on Netflix's search engine will provide results with "selectable categories."

United States District Court
Northern District of California

invalidity is unpersuasive.  Netflix's original Exhibit I-15 supports Netflix's theory that certain claims of the '962 Patent are anticipated and rendered obvious by Netflix's pre-2005 website.  The first and second supplemental Exhibits I-15 are based on the same theory of invalidity—the only significant changes are the addition of evidence.

Finally, Rovi claims that the timing of Netflix's second supplemental Invalidity Contentions, which were served on January 30, 2015 (the same day that Rovi filed its opening claim construction brief), prevented Rovi from addressing Netflix's "new [invalidity] theories in its brief or propose new claim terms for construction."  Letter at 8.  However, as explained above, Netflix's theory of invalidity has not changed since it served its original Infringement Contentions; what has changed is that Netflix has added better evidence to support that theory.  Rovi has not explained how the addition of new evidence on the same theories affected its claim construction position, nor has it provided any concrete examples of what it might have done differently. Furthermore, Netflix had served both its original and first supplemental Invalidity Contentions by December 3, 2014, which predated the parties' joint claim construction brief, which was filed on December 19, 2014.  Accordingly, the court finds that Rovi has not demonstrated that it will suffer prejudice if Netflix is permitted to amend its Invalidity Contentions.

## IV.   CONCLUSION

For the reasons stated above, the court finds that Netflix has demonstrated good cause for amending its Invalidity Contentions to include the second supplemental Exhibit I-15, and Rovi has not shown that it will suffer undue prejudice if the amendment is permitted.  Netflix's motion is **granted.**  Because Netflix's second supplemental Exhibit I-15 removes the portions of the Invalidity Contentions that Rovi seeks to strike, Rovi's motion to strike the undated screenshot from the original Exhibit I-15 is **denied as moot.**

**IT IS SO ORDERED.**

Dated: June 2, 2015

_____
Donna M. Ryu
United States Magistrate Judge